Hassan A. Zavareei (SBN 181547)
Andrew J. Silver (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
1828 L. Street, NW, Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
       asilver@tzlegal.com

Michael R. Reese (SBN 206773)
George V. Granade II (SBN 316050)
**REESE, LLP**
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: mreese@reesellp.com
       ggranade@reesellp.com

Tanya Koshy (SBN 277095)
**TYCKO & ZAVAREEI LLP**
483 Ninth St., Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
Email: tkoshy@tzlegal.com

*Counsel for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RONALD CHINITZ, individually, and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>INTERO REAL ESTATE SERVICES,<br><br>Defendant. | Case No. 5:18-cv-05623<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ronald Chinitz ("Plaintiff"), through his undersigned attorneys, on behalf of himself and all persons similarly situated, complain against Intero Real Estate Services ("Intero"), as follows:

**INTRODUCTION**

1.  Plaintiff brings this class action complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Intero in making unlawful calls to his residential telephone lines, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and Plaintiff's privacy rights.

2. The TCPA exists to prevent communications like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . . ." *Id.* at §§ 12-13.

4. Congress also authorized the Federal Communications Commission to establish a national database of consumers who object to receiving "telephone solicitations," which the act defined as commercial sales calls. *Id.* at § 3.

5. In 2003, FCC promulgated regulations that created the National Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2). The National Do Not Call Registry is a list containing the residential telephone numbers of individuals who affirmatively indicate that they do not wish to receive unsolicited calls from commercial telemarketers. Do not call registrations must be honored indefinitely. *Id.*

6. Today, 230 million numbers on are the National Do Not Call Registry.[1]

7. Despite the widespread embrace of the National Do Not Call Registry, companies like Intero flagrantly ignore the National Do Not Call Registry and invade the privacy of consumers with unwanted calls.

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d). Plaintiff and members of the Classes have suffered aggregate damages exceeding $5,000,000,

---

[1] Simon van Zuylen-Wood, *How Robo-callers Outwitted the Government and Completely Wrecked the Do Not Call List*, WASH. POST, (Magazine) Jan. 11, 2018, *available at* https://www.washingtonpost.com/lifestyle/magazine/how-robo-call-moguls-outwitted-the-government-and-completely-wrecked-the-do-not-call-list/2018/01/09/52c769b6-df7a-11e7-bbd0-9dfb2e37492a_story.html?utm_term=.d13dcc7f7fc6 (last visited September 13, 2018).

1  exclusive of interest and costs, and is a class action in which any member of the classes of plaintiffs is a
2  citizen of a state different from any defendant.
3      9.      This Court also has federal question jurisdiction over this case pursuant to 28 U.S.C. §
4  1331, pursuant to Defendant's violation of the TCPA, and supplemental jurisdiction over Plaintiff's state
5  law claim under 28 U.S.C. § 1367.
6      10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because significant events
7  giving rise to this case took place in this District.

## PARTIES

8      8.      Plaintiff Ronald Chinitz is a citizen residing in Santa Cruz, California.
9      9.      Defendant Intero is a real estate brokerage firm. Its principal place of business is 10275
   N. De Anza Boulevard, Cupertino, California 95014.

## FACTS

10     10.     Shortly after the creation of the National Do Not Call Registry in 2003, Mr. Chinitz
placed his landline number (831-420-####) on the National Do Not Call Registry. In or around 2015,
Mr. Chinitz a VOIP provider line (408-501-####) on the National Do Not Call Registry. In or around
June 2017, Mr. Chinitz re-registered both numbers, under the mistaken impression that his original
registration had expired.

11     11.     On or around May 17, 2017, Mr. Chinitz, through his real estate agent, Katy Cowley,
listed his home in Santa Cruz, California for sale.

12     12.     Ms. Cowley placed the listing on an online real estate listing portal, Multiple Listing
Service ("MLS").

13     13.     The MLS listing for Mr. Chinitz's home expired on November 1, 2017.

14     14.     The listing included a private instruction to real estate agents that read, "OWNERS
HAVE REQUESTED NOT TO BE CONTACTED."

15     15.     On or around November 1, 2017—the day the MLS listing expired—Mr. Chinitz began
to receive unwanted calls from Intero.

16     16.     Intero, directly through its agents as well as through a third-party call center in the
Philippines, began to call Mr. Chinitz on both of his residential telephone numbers.

17. The calls happened as early as 7 a.m. and as late as 10 p.m.

18. On the first call from Intero, Mr. Chinitz requested Intero no longer call him as he was not interested in their services.

19. Despite his request, Intero, through its agents and a third-party call center, continued to call.

20. More than once, Mr. Chinitz repeated the request to stop calling him.

21. On more than one occasion, Mr. Chinitz would receive a call from or on behalf of Intero with a pre-recorded message, stating that the person on the other end could not hear Mr. Chinitz and that he or she would call Mr. Chinitz back. After the call with the pre-recorded message ended, Mr. Chinitz would then receive a call from a live person calling on behalf of Intero.

22. In particular, Intero real estate agent Keith Vong made more than one call to Mr. Chinitz, directly or through a call center.

23. On one occasion, Mr. Vong left Mr. Chinitz a voicemail message. In return, Mr. Chinitz left Mr. Vong a voicemail message, angrily asking him to stop calling. Mr. Vong called Mr. Chinitz and denied that he had called him. Mr. Chinitz repeated his request that the calls stop.

24. Despite Mr. Chinitz's request, Mr. Vong called again and left another voicemail message. Mr. Chinitz returned the call and again Mr. Vong denied calling him.

25. After receiving a few calls from or on behalf of Intero, Mr. Chinitz searched online for local offices of Intero and called 5 or 6 offices in or around San Jose, California. Employees at Intero's local offices repeatedly hung up on Mr. Chinitz.

26. Mr. Chinitz found a phone number for Intero's headquarters in Cupertino, California. He called and spoke to an employee about the unwanted calls, and the employee advised that he would relay the concerns to his boss who would call Mr. Chinitz back. Mr. Chinitz never received a call.

27. Frustrated, Mr. Chinitz called real estate companies that were affiliated with Berkshire Hathaway. It was Mr. Chinitz's understanding from his research that Berkshire Hathaway controlled Intero. In fact, Berkshire Hathaway is the parent company of HomeServices of America, Inc., which acquired Intero in 2014 ("HomeServices").

28.     Mr. Chinitz spoke to an individual in a real estate company in New England, who gave Mr. Chinitz a number for Berkshire Hathaway.

29.     Mr. Chinitz called the number and spoke to an individual at Berkshire Hathaway, who gave him the number of Liz Litin and advised that Berkshire Hathaway would have Ms. Litin call him. Ms. Litin, upon information and relief, is the Marketing Manager of HomeServices.

30.     Before Ms. Litin had a chance to call him, Mr. Chinitz called Ms. Litin himself.

31.     Mr. Chinitz advised Ms. Litin that the calls from Intero were unwanted and repeated his request that the calls stop. Ms. Litin advised Mr. Chinitz in a separate call minutes later that he would be expecting a call from the President of Intero.

32.     Mr. Chinitz received a call from an executive from Intero, who identified himself either as a President or a Senior Vice President of Intero. The executive advised that once Intero received a request not to call, it was not permitted to call again.

33.     Despite the Intero executive's assurances, Mr. Chinitz continued to receive unwanted calls from Intero.

34.     Mr. Chinitz then received another call from a person who identified himself as a manager at a local Intero real estate office and stated that he was on the line with Keith Vong. Mr. Vong initially repeated his denials of calling Mr. Chinitz. Later in the conversation, however, he admitted to making calls. Mr. Vong also denied using a third-party call center to make calls on his behalf. Again, later in the conversation he admitted that he did use a call center but he had since ceased business with them. Mr. Vong represented that Intero would no longer call Mr. Chinitz and that Intero would send Mr. Chinitz $100 check for his trouble.

35.     A couple of days later, Mr. Chinitz received a check in the amount of $100.

36.     Again, despite assurances from Mr. Vong, Mr. Chinitz continued to receive unwanted calls from Intero, though the calls were less frequent.

37.     Relief from incessant calls was only temporary. In the beginning of 2018, the frequent calls resumed.

38. Mr. Chinitz again spoke to Ms. Litin, who represented that she had kept notes of their prior correspondence in November 2017. Ms. Litin advised that she would call the Chief Executive Officer of Intero.

39. A few days later, Mr. Chinitz received a call from a woman who identified herself as a paralegal of Intero's Legal Department. She advised Mr. Chinitz of regulations regarding the National Do Not Call Registry and asked Mr. Chinitz what Intero could do to assist him. Mr. Chinitz again repeated his request that the calls stop.

40. A few days later, in early February 2018, Mr. Chinitz received a call from Intero's CEO, Tom Tognoli. Mr. Tognoli denied any responsibility for the calls, advising that Intero agents were independent contractors.

41. Though he denied any responsibility, Mr. Tognoli sent Mr. Chinitz a letter that read:

> I am sorry to learn that Intero agents have called your residence after being told that the calls were unwanted. Intero agents are independent contractors and they commonly purchase parking lists from 3rd party vendors who may from time to time include inappropriate members on their lists. I will circulate an email to the company instructing that our agents not dial the numbers you have identified in your most recent complaint.
>
> Intero respects your privacy. Please accept the enclosed check for $100 as a token of our sincerity.

42. Again, despite the assurances from yet another Intero employee, Mr. Chinitz still received several calls from Intero, including three calls on July 27, 2018.

43. Intero called Mr. Chinitz using an artificial or pre-recorded voice to deliver a message.

44. Intero did not have prior express consent pursuant to 47 U.S.C. § 227(b)(1)(B) to make those calls.

45. Intero's calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

46. Intero made calls to Mr. Chinitz before 8 a.m. and after 9 p.m. in violation of 47 U.S.C. § 64.1200(c)(1).

47. Upon information and belief, Intero has no written procedures to comply with National Do Not Call Registry regulations pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(A).

48.     Upon information and belief, Intero does not train personnel on any procedures to comply with National Do Not Call Registry regulations pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(B).

49.     Upon information and belief, Intero does not maintain and record a list of telephone numbers that it may not contact pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(C).

50.     Upon information and belief, Intero does not use any process to prevent telephone solicitations of any number on the National Do Not Call Registry and does not maintain records documenting its process pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(D).

51.     Upon information and belief, Intero does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

52.     Upon information and belief, Intero does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

53.     Upon information and belief, individuals or entities making a call for telemarketing purposes for or on behalf of Intero do not record any request from a telephone subscriber not to receive calls and do not place the subscriber's name and number on an internal do not call list pursuant to 47 U.S.C. §64.1200(d)(3).

### CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on behalf of himself and a class of all others similarly situated pursuant to Fed. R. Civ. P. 23:

55.     Plaintiff proposes to represent the following classes:

a. **National Do Not Call Registry Class ("Class A")**: All persons in the United States who received more than one call made by Defendant in a 12-month period on their residential land line and whose residential land line number appears on the National Do Not Call Registry for the time period beginning September 13, 2014 to present.

b. **National Internal Do Not Call Class ("Class B")**: All persons in the United States who received more than one call made by Defendant in a 12-month period on their residential land line and who made a request not to receive calls for the time period beginning September 13, 2014 to present.

  c. **National Early/Late Calls Class ("Class C")**: All persons in the United States who received more than one call made by Defendant in a 12-month period on their residential land line before 8 a.m. or after 9 p.m. for the time period beginning September 13, 2014 to present.

  d. **National Artificial or Pre-recorded Message Class ("Class D")**: All persons in the United States who received a call on their residential telephone line with an artificial or pre-recorded message, initiated by or on behalf of Defendant, and without the recipient's prior express consent, for the time period beginning September 13, 2014 to present.

56. Defendant and their employees or agents are excluded from the Classes.

57. Members of the Classes are so numerous that joinder is impracticable. While the exact number of class members is unknown to Plaintiff, it is believed that the Classes are comprised of thousands of members geographically disbursed throughout the United States. The Classes are readily identifiable from information and records in the possession of Defendant and third parties.

58. Common questions of law and fact exist as to all members of the Classes. These questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Classes. Such common and legal factual questions include:

  a. Whether Defendant's conduct violates the TCPA;

  b. Whether Defendant obtained valid prior express consent from artificial or prerecorded voice call recipients;

  c. Whether Defendant's calls were made for an emergency purpose;

  d. Whether Defendant's calls were made to collect on a debt;

  e. Whether Defendant adhered to requests by Class members to stop making calls to their residential telephone numbers;

  f. Whether Defendant keeps records of call recipients who revoked consent to receive calls;

  g. Whether Defendant has established written procedures to comply with National Do Not Call Registry registrations;

  h. Whether Defendant trains personnel on any procedures to comply with National Do Not Call Registry regulations;

  i. Whether Defendant maintains and records a list of telephone numbers that it may not contact;

  j. Whether Defendant uses any process to prevent telephone solicitations of any number on the National Do Not Call Registry and maintain records documenting its process;

  k. Whether Defendant has any written policies for maintaining an internal do not call list;

  l. Whether Defendant informs and trains its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. §64.1200(d)(2).

  m. Whether individuals or entities making a call for telemarketing purposes for or on behalf of Defendant record any request from a telephone subscriber not to receive calls and place the subscriber's name and number on an internal do not call list pursuant.

  n. Whether Plaintiff and members of the Classes are entitled to damages, costs, or attorney's fees from Defendant;

  o. Whether Defendant violated the privacy rights of Plaintiff and members of the Classes;

  p. Whether Defendant's conduct caused Plaintiff and members of the Classes inconvenience or annoyance;

  q. Whether Plaintiff and members of the Classes are entitled to compensatory damages;

  r. Whether Plaintiff and members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

  s. Whether Plaintiff and members of the Classes are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct.

59. Plaintiff's claims are typical of the members of Class A as all members of Class A are similarly affected by the Defendant's actionable conduct.  Defendant's conduct that gave rise to the

claims of Plaintiff and members of Class A (*i.e.* making a call to a residential land line number that appears on the National Do Not Call Registry) is the same for all members of Class A.

60. Plaintiff's claims are typical of the members of Class B as all members of Class B are similarly affected by the Defendant's actionable conduct. Defendant's conduct that gave rise to the claims of Plaintiff and members of Class B (*i.e.* failing to honor a residential telephone subscriber's do-not-call request) is the same for all members of Class B.

61. Plaintiff's claims are typical of the members of Class C as all members of Class C are similarly affected by the Defendant's actionable conduct. Defendant's conduct that gave rise to the claims of Plaintiff and members of Class C (*i.e.* making calls to a residential land line before 8 a.m. or after 9 p.m.) is the same for all members of Class C.

62. Plaintiff's claims are typical of the members of Class D as all members of Class D are similarly affected by the Defendant's actionable conduct. Defendant's conduct that gave rise to the claims of Plaintiff and members of Class D (*i.e.* using an artificial or prerecorded voice to make a call to a residential land line number) is the same for all members of Class D.

63. Plaintiff will fairly and adequately protect the interests of the Classes because he has no interests antagonistic to, or in conflict with, the Classes that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

64. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

65. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

66. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## COUNT I

### Violation of 47 U.S.C. § 227(c)(2)

### (On behalf of Plaintiff and Class A - National Do Not Call Registry Class)

67. Plaintiff incorporates by reference all above paragraphs as though fully repeated herein.

68. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

69. Under 47 C.F.R. § 64.1200(c)(2), "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70. A caller is not liable for violating the TCPA if it can demonstrate that its violation "is the result of error and that as part of its routine business practice, it meets the following standards:

(A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;

(B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;

(C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;

(D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process."

47 C.F.R. § 64.1200(c)(2)(i).

71. Defendant initiated, or caused to be initiated, telephone solicitations to residential telephone subscribers like Plaintiff and Class A members who registered their respective telephone

numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72. Upon information and belief, Defendant does not have written procedures to comply with the national do not call rules, pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(A).

73. Upon information and belief, Defendant does not train its personnel in procedures established pursuant to national do not call rules, pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(B).

74. Upon information and belief, Defendant does not maintain or record a list of telephone numbers that it may not contact, pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(C).

75. Upon information and belief, Defendant does not employ a version of the National Do Not Call Registry obtained from the administrator of a registry no more than 31 days prior to the date any call is made, and maintains records documenting this process, pursuant to 47 C.F.R. § 64.1200(c)(2)(i)(D).

76. Because Plaintiff and Class A members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c)(2), as described above, Defendant further violated 47 U.S.C. § 227(c)(5).

77. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and members of Class A are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

78. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and members of Class A are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

79. Plaintiff and members of Class A also suffered damages in the form of invasion of privacy.

80. Plaintiff and members of Class A are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II

### Violation of 47 U.S.C. § 227(c)(2)

**(On behalf of Plaintiff and Class B – National Internal Do Not Call Class)**

81. Plaintiff incorporate by reference all above paragraphs as though fully repeated herein.

82. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

83. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> "(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. **Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.** This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. **A do-not-call request must be honored for 5 years from the time the request is made.**"

47 C.F.R. § 64.1200(d)(3), (6) (emphasis added).

84. Plaintiff and Class B members made requests to Defendant not to receive calls from Defendant.

85. Defendant failed to honor Plaintiff and Class B members' requests.

86. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

87. Because Plaintiff and Class B members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

88. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and members of Class B are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

89. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and members of Class B are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

90. Plaintiff and members of Class B also suffered damages in the form of invasion of privacy.

91. Plaintiff and members of Class B are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT III

### Violation of 47 U.S.C. § 227(c)(2)

### (On behalf of Plaintiff and Class C – National Early/Late Calls Class)

92. Plaintiff incorporate by reference all above paragraphs as though fully repeated herein.

93. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

94. Under 47 C.F.R. § 64.1200(c)(1), "[n]o person or entity shall initiate any telephone solicitation to" "[a]ny residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)."

95. Defendant initiated more than one telephone solicitation to Plaintiff and Class B members' residential telephone line before 8 a.m. and/or after 9 p.m.

96. Because Plaintiff and Class B members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(c)(1), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

97. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and members of Class B are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

98. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and members of Class B are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

99. Plaintiff and members of Class B also suffered damages in the form of invasion of privacy.

100. Plaintiff and members of Class B are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT IV

### Violation of 47 U.S.C. § 227(b)(1)(B)

**(On behalf of Plaintiff and Class D - National Artificial or Pre-recorded Message Class)**

101. Plaintiff incorporate by reference all above paragraphs as though fully repeated herein.

102. The TCPA prohibits a caller from initiating any telephone call to a residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the contacted party unless the call was initiated for emergency purposes, is made solely to collect a debt owed or guaranteed by the United States or is exempted by a FCC rule or order.

103. Defendant initiated multiple telephone calls using an artificial or prerecorded voice to residential telephone lines to Plaintiff and other members of Class D.

104. Defendant failed to obtain prior express consent to initiate such calls.

105. By initiating unsolicited telephone calls to Plaintiff and Class D members' residential telephone lines without prior express consent, and by using artificial or prerecorded messages to deliver a message, Defendant has violated 47 U.S.C. § 227(b)(1)(B).

-15-
COMPLAINT

106. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(B), Plaintiff and members of Class D are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3).

107. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(B), Plaintiff and members of Class D are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(b)(3).

108. Plaintiff and members of Class D also suffered damages in the form of invasion of privacy.

109. Plaintiff and members of Class D are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(b)(3).

## COUNT V

### Violation of Cal. Bus. & Prof. C. § 17200, et seq.

**(On behalf of Plaintiff and All Classes)**

110. Plaintiff incorporate by reference all above paragraphs as though fully repeated herein.

111. Defendant's practices of initiating, or causing to be initiated, telephone solicitations to residential telephone subscribers like Plaintiff and Class members who registered their respective telephone numbers on the National Do Not Call Registry, failing to honor do not call requests, making calls before 8 a.m. and after 9 p.m., and using an artificial or pre-recorded message to initiate calls violates 47 U.S.C. § 227 et seq., and the regulations promulgated under it.

112. Defendant's conduct described herein violates Cal. Bus & Prof. Code § 17200 et seq. (the "UCL") in the following respects:

    a. Defendant's practice of calling residential telephone numbers on the National Do Not Call Registry is unlawful and a violation of the UCL.

    b. Defendant's practice of failing to honor do not call requests is unlawful and a violation of the UCL.

    c. Defendant's practice of calling residential telephone numbers before 8 a.m. and after 9 p.m. is unlawful and a violation of the UCL.

      d. Defendant's practice of initiating calls to residential telephone using an artificial or pre-recorded message is unlawful and a violation of the UCL.

      e. Each of Defendant's violations of the TCPA and its regulations constitute a separate and independent violation of the UCL because such conduct was illegal and unfair competition within the meaning of the UCL.

113. Defendant's illegal business practices are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff and members of the Classes.

114. Unless enjoined by this Court, Defendant will continue to engage in the illegal acts and practices alleged above.

115. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Classes are therefore entitled to an Order enjoining Defendant to cease the unlawful acts alleged herein and payment of their attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1. Statutory damages of $500.00 for each negligent violation of the TCPA over the last four years;
2. Statutory damages of $1,500.00 for each knowing or willful violation of the TCPA over the last four years;
3. Actual and punitive damages arising from Defendant's wrongful and illegal conduct;
4. A permanent injunction prohibiting Defendant from using artificial or prerecorded messages to make calls without recipients' prior express consent;
5. Attorney's fees;
6. Litigation expenses and costs of the instant suit; and
7. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

| | |
|---|---|
| Dated: September 13, 2018 | Respectfully submitted, |
| | _/s/ Hassan A. Zavareei_<br>Hassan A. Zavareei (SBN 181547)<br>hzavareei@tzlegal.com<br>TYCKO & ZAVAREEI LLP<br>2000 L Street, N.W., Suite 808<br>Washington, DC 20036<br>Tel.: (202) 973-0900<br>Fax: (202) 973-0950 |
| | Michael R. Reese (SBN 206773)<br>mreese@reesellp.com<br>George V. Granade (316050)<br>ggrande@reesellp.com<br>REESE LLP<br>100 West 93rd Street, 16th Floor<br>New York, New York 10025<br>Tel: (212) 643-0500<br>Fax: (212) 253-4272 |
| | *Counsel for Plaintiff Ronald Chinitz and the Proposed Class* |