UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD CHINITZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>INTERO REAL ESTATE SERVICES,<br><br>　　　　　Defendant. | Case No. 18-cv-05623-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>[Re: ECF 128] |

On July 22, 2020, this Court granted the motion for class certification filed by Plaintiff Ronald Chintz ("Plaintiff"). *See* Order, ECF 126. The Order certified two classes: A National Do Not Call ("DNC") Class for injunctive relief under Rule 23(b)(2) and for damages under Rule 23(b)(3), and an Internal DNC Class under Rule 23(b)(2). *Id.* at 26-27. On August 5, 2020, Defendant Intero Real Estate Services ("Defendant") filed a motion for leave to file for reconsideration, *see* Mot., ECF 128, which the Court granted on August 6, 2020. *See* Order, ECF 129. Plaintiff filed his opposition on August 20, 2020. *See* Opp'n, ECF 130. Pursuant to Civil Local Rule 7-1(b), the Court finds this motion suitable for decision without oral argument. For the reasons discussed below, Defendant's motion for reconsideration is DENIED.

**II.　LEGAL STANDARD**

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A motion for leave to file a motion for reconsideration may be filed prior to the entry of a final judgment in the case. Civ. L.R. 7-9(a). Defendant moves for reconsideration pursuant to Civ. L.R. 7-9(b)(3). Mot. 2. "The moving party must specifically show

reasonable diligence in bringing the motion" and one of the following circumstances: (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3). In addition, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-9(c).

### III. DISCUSSION

Defendant argues that the Court failed to consider material facts or dispositive legal arguments pertaining to: (1) the Court's finding of numerosity; (2) Defendant's objections to Plaintiff's expert report; (3) the Court's finding of predominance for the National DNC Class; (4) the Court's analysis of Plaintiff's argument that Defendant can be vicariously liable under an apparent agency theory; and (5) the certification of the Internal DNC Class. The Court addresses each in turn.

#### A. Numerosity

Defendant argues that the Court failed to consider the "undisputed evidence" that LexisNexis only flagged six numbers as "residential" lines. Mot. 3. Defendant states that the testimony of LexisNexis and the output file it provided support the finding of just six numbers, and not at least 68,918, as residential. *Id*. Defendant also objects to the method used by Plaintiff's expert to arrive at the conclusion that there were at least 68,918 National Do Not Call Registry numbers called by Defendant's sales agents. *Id.* At a bare minimum, Defendant maintains, a case-by-case review is required to determine if the remaining numbers were used for residential purposes, business purposes, or both. *Id.* at 5

Plaintiff responds that the Court rightly accepted the inferences of the Plaintiff's expert. Plaintiff cites *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) for the proposition that "the Court may consider reasonable inferences drawn from the facts before it." *Id.* at 501. And finally, Plaintiff states that Defendant "misses the forest for the trees" by narrowly focusing its challenge to the numerosity finding only on what LexisNexis could conclusively confirm. Opp'n 4. This

2

expands Plaintiff's original argument in its motion for class certification relying on *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), which stated that, "In analyzing numerosity 'a court may make common-sense assumptions and reasonable inferences.'" *Id.* at 303 (quoting *The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust*, 2016 WL 314400, at *6 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017)). In *West*, which involved the same plaintiff's expert as this case, the Court found that even if the expert's calculations overstated the actual wrong number rate by a factor of one thousand, the punitive class would still contain more than sixty members, which gives rise to a "presumption of impracticability [of joinder] based on numbers alone." *West*, 323 F.R.D. at 304-05. Judge Gonzalez Rogers applied "'common sense assumptions' and reasonable inferences" to find that plaintiffs satisfied their numerosity requirement. *Id.* at 305 (footnote and citations omitted).

In its initial order, The Court did consider Defendant's argument that LexisNexis only flagged six numbers as residential lines. Order 10-11. The Court explained that it was accepting the process used by Plaintiff's expert, which has been accepted by other courts, as a valid way to ascertain the type of data reasonably relied upon by experts in the field. *See, e.g., Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *4 (N.D. Cal. May 5, 2017), *amended* 2018 WL 558844 (N.D. Cal. Jan. 25, 2018); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2015 WL 5227693, at *11 (M.D.N.C. Sept. 8, 2015). The Court also followed *West* and *The Civil Rights Education and Enforcement Center* by making common-sense assumptions and reasonable inferences that residential real estate is sold by individuals, not businesses. Ex. A, Tr. of July 2, 2020 Class Certification Hr'g 27:6-7, ECF 130-1. Accepting the process and data relied upon by Plaintiff's expert and making common-sense assumptions and reasonable inferences established numerosity. Conclusive direct evidence is not required where Plaintiff submits expert evidence drawing reasonable inferences of numerosity.

### B. Plaintiff's Expert Report

Defendant next argues that the Court failed to consider Defendant's argument regarding Plaintiff's expert report. Mot. 5. Defendant contends that because Plaintiff "undisputedly" violated Rules 26(a)(2)(B) and (D), the report should have been stricken consistent with *Yeti by Molly Ltd*

3

1  *v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001). Mot. 5. According to Defendant,
2  Plaintiff's expert was required to produce "the facts or data" she considered in forming the
3  opinions of her report, and her failure to do so triggers an "automatic" and "self-executing"
4  remedy under Rule 37(c)(1). *Id.* at 5-6. Further, unless the violation was "substantially justified or
5  harmless," *Yeti*, 259 F.3d at 1106-07, the Court was required to exclude the report. Mot. 6. Finally,
6  Defendant argues that when the Court held that the violation was harmless, the Court failed to
7  consider the testimony of Defendant's expert, who explained it was not possible to replicate the
8  process used by Plaintiff's expert without the full data set. Mot. 6.

9      Plaintiffs responds that the Court *did not* conclude that Plaintiff violated Rule 26(a)(2)(B)
10 and that the data *was* produced, as it was in the call records associated with Defendant's agents.
11 (the "Source Data"). Opp'n 5; Order 8. The Source Data was produced, and since the initial valid,
12 non-zero records did not exist as a separate file, no separate file was produced. Opp'n 5. Plaintiff
13 next cites the Court's order that stated that even if Plaintiff needed to produce the initial valid,
14 non-zero records, any failure to do so was harmless. Opp'n 5; Order 8. Plaintiff states that
15 Defendant's only discussion of harm—which falls short of being actual evidence of harm—
16 appears in its expert rebuttal report and only states that Defendant's "experts were prevented from
17 exposing the true scope of the flaws in her analysis. This inexplicable failure to produce this data,
18 as required by the rules, substantially prejudiced [Defendant]." Opp'n 5. Plaintiff points out that
19 Defendant does not state that its expert was unable to replicate the work of Plaintiff's expert
20 without the intermediary data set. *Id.* And Defendant just states in conclusory fashion that it was
21 substantially prejudiced without any substance to support that claim. *Id.* Finally, Plaintiff states
22 that Defendant did not take the opportunity in its briefing to oppose class certification to explain
23 the harm caused by the absence of the intermediary data set. *Id.*

24     Plaintiff's recitation of the record is correct. The Court found that Plaintiff produced the
25 data his expert used to form her opinion as to the number of members in plaintiff's two classes.
26 Order 8. Defendant is incorrect when it states that Plaintiff's expert "undisputedly" violated Rules
27 26(a)(2)(B) and (D) because the Court found the opposite—there was no violation. *Id.* In a motion
28 for reconsideration brought under Civ. L.R. 7-9(b)(3), the Court can only consider material facts

4

or dispositive legal arguments which were presented to the Court before such interlocutory order. There was insufficient evidence of harm before the Court then, and the Court cannot properly consider any new allegations of harm now.

### C. Predominance

Next, Defendant argues that the Court failed to conduct a "rigorous analysis" of all the evidence bearing on predominance. Mot. 6. Defendant states that the Court "brushed past" all of Defendant's evidence and arguments about why Plaintiff's expert report was not persuasive and decided those arguments went to the "weight" of the expert's opinions, which is improper under *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011). Mot. 6. Defendant argues that the Court, like the district court in *Ellis*, limited its analysis to a determination of whether Plaintiff's evidence on commonality was admissible, and this constitutes error. Mot. 6-7. Defendants state that the Court ignored the following evidence: 1) Plaintiff's expert did not even attempt to identify calls to "residential telephone subscribers;" 2) LexisNexis did not have any data relating to whether the cell phone numbers had been used primarily for business purposes; and 3) the testimony of Defendant's experts and the Declaration from the CEO of Contact Center Compliance ("CCC"). Mot. 7.

In *Ellis*, the Ninth Circuit reversed the district court's finding on commonality because the court did not conduct a "rigorous analysis" of each Rule 23(a) factor, specifically in this instance commonalty. *Ellis*, 657 F.3d at 980 (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). Instead, the Ninth Circuit wrote,

> [T]he district court seems to have confused the Daubert standard it correctly applied to Costco's motions to strike with the 'rigorous analysis' standard to be applied when analyzing commonality….for example, the district court stated that, although 'Costco challenges the propriety of using aggregate data,' such 'arguments attack the weight of the evidence and not its admissibility.' Therefore, to the extent the district court limited its analysis of whether there was commonality to a determination of whether Plaintiffs' evidence on that point was admissible, it did so in error.

*Id.* at 982.

Here, the Court went beyond solely judging the admissibility of Plaintiff's expert report.

5

As noted in its Order, the Court considered the arguments, and evidence incorporated into the cited pages, on all three points Defendant raises now. Defendant cited its expert report by John Taylor (ECF 101-9), the declaration and supporting exhibits from Craig Davis, a custodian of records at LexisNexis (ECF 101-3), and the declaration and supporting exhibits from its counsel, Margaret T. Cardasis (ECF 101-6), to support its arguments that Plaintiff's expert did not even attempt to identify calls to "residential telephone subscribers" and LexisNexis did not have any data relating to whether the cell phone numbers had been used primarily for business purposes, and therefore Plaintiff cannot meet its predominance requirement in the face of all these individual inquiries. *See* Opp'n 16-20; Order 22-25. Plaintiff argued that he had satisfied the predominance requirement because common evidence (records produced by Mojo Dialing Solutions and historical national do not call registry records) will show that Defendant's sales associates made calls that violate the TCPA and cited his expert's report (ECF 70-1) showing that over 68,000 unique telephone numbers received over 349,000 calls that violate the TCPA. Mot. for Class Certification ("Class Cert. Mot.") 15-16. The Court credited plaintiff's expert report and cited *Krakauer* for the proposition that "The fact that a class list contains members whose claims may fail on the merits does not mean that the class cannot be certified." Order 24.

As for the testimony of Defendant's experts Taylor and Ken Sponsler (ECF 101-10) and the Declaration from the CEO of CCC (ECF 101-7), who explained that the data supplied to Plaintiff's expert was simply a "snapshot" of the National Do Not Call Registry as of a certain date, the Court considered this evidence to the extent it was offered for purposes other than striking Plaintiff's expert report. The CEO declaration, for instance, was offered in support of Defendant's motion to strike/exclude plaintiff's expert report. *See* Decl. of Ronald Allen, ECF 101-7. Defendant did tend to blend its arguments for striking Plaintiff's expert report with its merits arguments; This is what the Court referred to when it wrote, "As stated above, however, the Court overrules Intero's objections to Ms. Verkhovskaya's report." Order 24. Unlike the district

court in *Ellis*, the Court did not stop at ruling plaintiff's expert report admissible and go no further. The Court considered its arguments, along with evidence presented by Defendant, to make its finding that common questions predominate over individual inquiries. Order 22.

To restate what the Court said originally, the National DNC class is not limited to "residential telephone subscribers" and includes anyone within the "zone of interests" of the Telephone Consumer Protection Act ("TCPA"), so it is not necessary at this stage to isolate "residential telephone subscribers," as Defendant claims. Order 24-25. As the Court previously noted, the Ninth Circuit has concluded that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017). The Court understands that Defendant disagrees with the Court's conclusion. However, after reviewing the evidence a second time the Court still finds that common questions predominate.

### D. Vicarious Liability Under Apparent Agency

Defendant objects to the Court's decision that the issue of whether it is vicariously liable for the calls allegedly made by forty-nine independent contractor sales associates can be decided on a class-wide basis. Mot. 8. Defendant argues that the Court cited no evidence (because none exists) of any "manifestation" by Defendant that would lead a called party to believe any of the forty-nine sales associates had authority to place the calls in question. *Id.* Defendant cites Ninth Circuit cases that it claims show that a principal cannot be liable for an alleged agent's conduct under an apparent authority theory without proof of an act or statement by the principal, on which the plaintiff reasonably relied. *Id.* Plaintiff argues that Defendant is making an argument that goes to the merits of the case, not class certification requirements. Opp'n 8-9.

In its initial motion for class certification, Plaintiff argued that whether Defendant ratified its sales associates' phone prospecting activities can be answered by common proof indicating that Defendant had "knowledge of material facts" or "actual knowledge" of its sales associates' calling practices and accepted the benefit of those practices. Class Cert. Mot. 19. Alternatively, Plaintiff

7

argued that common evidence indicates Intero's ratification of its sales associates' TCPA violations through its willful ignorance. *Id*. The Court held in its order that whether the Defendant's sales associates had apparent authority "depends on whether a reasonable person would believe that the [Defendant's] sales associate who made the call, or the [Defendant's] sales associate who caused the calls to be placed, had authority to act on behalf of [Defendant]. Because the inquiry is limited to how a reasonable person would perceive the calls at issue, there is no need to determine how individual class members perceived the calls." Order 23-24; *see Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1306 (D. Nev. Mar. 26, 2014). Defendant is incorrect when it claims that, at class certification, the Court needs evidence of any manifestation on its part.

Additionally, Defendant overlooks the case of *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934 (9th Cir. 2017), which states, "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Id.* at 940. At this stage, Defendant appears impermissibly to argue merits over class certification issues.

### E. Certification of the Internal DNC Class

Finally, Defendant objects to the certification of the Internal DNC Class under Rule 23(b)(2). Defendant claims the Court ignored evidence that it maintains an internal-do-not-call list, and has since 2018, and the Court further failed to consider whether any of the sales associates maintained their own internal do-not-call lists. Mot. 10. Further, Defendant maintains that the Court did not consider Plaintiff's lack of evidence of whether any person on any of the alleged internal do-not-call lists was called again within a twelve-month period. *Id.* at 10-11. Finally, Defendant cites an Eleventh Circuit case, *Cordoba v. DirectTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019), and states that the Court's failure to consider it warrants reconsideration. Mot. 11.

An Eleventh Circuit case, is, of course, not binding on this Court, *see O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357, at *5 (N.D. Cal. Mar. 2, 2016), and the Court's failure to consider non-controlling authority does not constitute a manifest failure to consider dispositive legal arguments. Additionally, *Cordoba* found that an individual not on the

National Do Not Call Registry who was called by Defendant and never asked Defendant not to call them again lacked Article III standing to sue. *Cordoba*, 942 F.3d at 1271-72. *Cordoba*, though, involved a Rule 23(b)(3) class, not a Rule 23(b)(2) class that is only seeking injunctive relief. Plaintiff correctly distinguishes between the two types of classes, as the issue is not whether absent class members suffered past harm but rather whether they may be impacted by Defendant's alleged practice of violating the TCPA going forward. As the Court stated in its order, Rule 23(b)(2) "does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." Order 18 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Defendant's arguments about evidence of internal do-not-call lists and Plaintiff's lack of evidence are suited for attacking a Rule 23(b)(3) class, which this one is not.

The Court has considered all of Defendant's arguments for reconsideration. After reviewing the arguments, the evidence, and the Court's original order, the Court DENIES Defendant's motion.

**IV.   ORDER**

For the foregoing reasons, Defendant's motion for reconsideration is DENIED.

Dated: September 23, 2020

BETH LABSON FREEMAN
United States District Judge