1   TOMIO B. NARITA (SBN 156576)
    tnarita@snllp.com
2   R. TRAVIS CAMPBELL (SBN 271580)
    tcampbell@snllp.com
3   MARGARET T. CARDASIS (SBN 322167)
    mcardasis@snllp.com
4   SIMMONDS & NARITA LLP
    44 Montgomery Street, Suite 3010
5   San Francisco, CA 94104-4816
    Telephone: (415) 283-1000
6
7   Attorneys for Defendant
    Intero Real Estate Services
8
9                      UNITED STATES DISTRICT COURT
10                    NORTHERN DISTRICT OF CALIFORNIA
11
12  RONALD CHINITZ, *individually, and on*          CASE NO. 5:18-cv-05623-BLF
    *behalf of a class of similarly situated persons,*
                                                    **DEFENDANT'S OPPOSITION TO**
13                                                  **PLAINTIFF'S MOTION FOR APPROVAL**
                                                    **OF CLASS NOTICE PLAN FOR RULE**
14                     Plaintiff,                   **23(b)(3) NATIONAL DNC CLASS**
15  vs.
                                                    Date: November 19, 2020
16                                                  Time: 9:00 a.m.
                                                    Courtroom: 3, 5th Floor
17  INTERO REAL ESTATE SERVICES,
                                                    The Honorable Beth Labson Freeman
18
                       Defendant.
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   BACKGROUND BEARING ON CLASS NOTICE MOTION

### A.  The Class Certification Order

On June 22, 2020, the Court certified a National Do Not Call Registry Class ("DNC Class").  Doc. No. 126 at ECF pp. 26-28.  According to Plaintiff, the "35 account files" in Appendix A to the Court's Order reflect calls made by 49 separate sales associates.  Doc. No. 117 at ECF p. 6:4-8, Doc. No. 117-1, Doc. No. 117-2, ¶¶ 24-25.  He also asserted, based on the "Expert Report of Anya Verkhovskaya," that there were 68,918 residential telephone numbers that received a total of 349,067 calls.  *See* Doc. No. 70-1, ¶¶ 75, 106.

Intero argued that Plaintiff had failed to offer any methodology for determining whether the "residential telephone subscriber who [] registered his or her telephone number on the national do-not-call registry" was the same person who received the two or more allegedly unwanted calls within a 12-month period, as required by the statute.  *See* Doc. No. 101 at ECF pp. 24:14-26:2; *see also* 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).  The Court rejected this, however, noting that any person "within the zone of interest" of the Telephone Consumer Protection Act ("TCPA") who receives calls may also bring a claim, regardless of whether that person registered the number on the National Do Not Call Registry ("NDNCR").  *See* Doc. No. 126 at ECF p. 25:10-16; Doc. No. 138 at ECF p 7:4-8.

### B.  Plaintiff's Proposed Notice Plan

On August 21, 2020, Plaintiff filed his Motion for Approval of Class Notice Plan for the DNC Class ("the Motion").  Doc. No. 131.  Plaintiff claims he will identify and provide notice to class members using a "Class List" that he says contains "approximately 69,000 telephone numbers" that were allegedly called by one of the 49 sales associates more than once in a 12-month span during the class period.  *See* Doc. No. 131 at ECF p. 6:4-15.

Plaintiff did not submit a copy of the purported "Class List" with the Motion, however, and no document described as a "Class List" had ever been provided to Intero.  Declaration of Tomio B. Narita in Support of Defendant's Opposition to Plaintiff's Motion for Approval of Class Notice Plan ("Narita Decl."), ¶ 2.   After filing the Motion, Plaintiff claimed for the first time that the purported "Class List" is contained in an Excel file named "VERKHOVS000024 LN_Output_LN_ndncr.csv" – a file that Plaintiff did not produce until he filed his Reply in support of the Motion for Class Certification on May 29, 2020.  *Id.*, ¶¶ 3-4.  Plaintiff's expert testified that the file is an "output file" returned by LexisNexis based on the 68,918 phone numbers contained in the Mojo calling records that she supplied to LexisNexis.  Doc. No. 117-3, ¶¶ 5-7.[1]  The purported "Class List" does **not,** however, contain names, physical addresses, or email addresses for any of the class members.  Narita Decl., ¶ 5.

Plaintiff says he can identify the names and addresses of class members by using the "data in the parties' possession" from Mojo (he does not cite to specific documents) which he claims "indicate possible names and physical addresses for approximately half of the 69,000 telephone numbers in the [] List, and email addresses associated with approximately 10,000 of the numbers."  Doc. No. 131, at ECF p. 6:15-19.  He further claims that the administrator "will run reverse lookups on the phone numbers in the [] List to identify email and physical mailing addresses for Class members."  *Id.* at ECF p. 6:20-23.

---

[1] The Court sustained Intero's objections to Plaintiff's Reply declaration and refused to consider it.  Doc. No. 126 at ECF pp. 5:4-6:9.

Plaintiff also submits the declaration of Cameron R. Azari, Esq., who describes himself as "a nationally recognized expert in the field of legal notice. . ."  *See* Doc 131-1, ¶ 1; *see also id.*, ¶ 5 (a "notice expert"); ¶ 7 (describing purported qualifications to form "expert opinions"). Mr. Azari testifies that an unidentified "third party" will perform the "reverse lookups" to attempt to determine if there is an email address or physical mailing address associated with each phone number.  *Id.*, ¶ 15.  Plaintiff has since stated that "TransUnion" is the "third party" that will be used for this purpose.  Narita Decl., ¶ 7.  There is no evidence in the record, however, that TransUnion is qualified to "run reverse lookups" or that any results returned by TransUnion will accurately reflect names, email addresses, or physical addresses of class members.

The Motion explains that individual notice will be provided in the first instance via email, but Plaintiff does not propose any method for determining whether the emails are opened by the recipients.  *See* Doc. No. 131 at ECF p. 7:1-9.

## II.   **ARGUMENT**

### A.   **Legal Standard**

 "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) "requires a higher standard of notice for a Rule 23(b)(3) class action."  *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000).

Direct individual notice "must be sent to all class members whose names and addresses may be ascertained through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Individual notice "is not a discretionary consideration to be waived in a particular case," rather it is "an unambiguous requirement of Rule 23."  *Id.* at 176.  The rule is intended to

protect the due process rights of potential class members. *Id.* at 173-74; *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar.").

District courts possess broad discretion to shape class notice to comply with Rule 23. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all notice efforts together will reach a high percentage of the class." *Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("FJC"), at p. 3.  A notice plan is reasonable if it reaches at least 70% of the class.  *Id.*

**B.    Mr. Azari's Untimely And Improper Expert Opinions Should Not Be Considered**

As a threshold matter, Intero objects to the expert opinions contained in the Azari declaration as untimely.  The deadline for Plaintiff to disclose experts expired nearly nine months ago on January 17, 2020, and Mr. Azari was not disclosed at that time.  Doc. No. 61. Mr. Azari's untimely expert opinions in paragraphs 5-7, 12, 14, 22, 24, 27, 31-32, and 36-40 should not be considered.  *See, e.g.*, *Hanger v. Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 2008 U.S. Dist. LEXIS, at **8-14 (E.D. Cal. Jun. 13, 2008) (refusing to consider opinions of expert not timely disclosed).

Intero objects to paragraphs 6, 8 ("successful notice programs"), 12, 14, 36-40 because they contain improper legal conclusions.  In addition, Intero objects to paragraphs 10 and 11 because the testimony is based on hearsay, lacks foundation, and Mr. Azari is not competent to testify to the matters contained therein.

*//*

**C.    The Proposed Notice Plan Does Not Satisfy Rule 23(c)(2)(B), Because It Is Not Reasonably Calculated To Notify "Residential Telephone Subscribers" Or Persons Within The "Zone Of Interest"**

It its Order, the Court found that "residential telephone subscribers" and persons within the "zone of interest" of the TCPA are eligible to pursue a claim against Intero.  *See* Doc. No. 126 at ECF p. 25; Doc. No. 138 at ECF p. 7:4-8.  Plaintiff's Motion should be denied, because he does not explain how he will identify and provide notice to those persons.

Plaintiff does not contend that any of the names listed in the file that his counsel allegedly derived from the Mojo calling records are the "residential telephone subscribers" for the telephone numbers on the Class List, or that they are persons within the "zone of interest" of the TCPA.  Nor does Plaintiff contend that the "third party" (apparently, TransUnion) can run "reverse lookups" that will identify "residential telephone subscribers" or persons within the "zone of interest."   Indeed, Plaintiff does not even tell the Court who would fall within this undefined "zone of interest," much less how they can be notified.  Would a spouse qualify as a class member who is entitled to notice?  A sibling?  Could a parent or child of the "residential telephone subscriber" be a class member?  What about a house-sitter, or a one-time guest?  Plaintiff refuses to say who is in the "zone" and who falls outside of it.  Class members cannot reasonably be notified until this question is answered.

Plaintiff concedes that a class notice plan cannot "systematically leave any group without notice."   Doc. No. 131 at ECF p. 4:21-23; *see Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  The Court has identified two "groups" of persons within the class that may have a claim against Intero – the "residential telephone subscribers" and persons within the "zone of interest" of the TCPA.  Plaintiff has not explained how his plan will provide notice to "at least 70%" of those persons as required.  FJC at p. 3.  As a result, the plan does not satisfy Rule 23(b)(c)(B).  *See Keim v. ADF Midatlantic, LLC*, 2019 U.S. Dist.

LEXIS 229346, at **9-10 (S.D. Fla. Feb. 1, 2019) (rejecting TCPA class notice plan as insufficient because did not notify non-subscribers).

The cases Plaintiff cites (Doc. No. 15 at ECF pp. 10:10-11:12) involved unopposed motions for class settlement, were outside the context of the TCPA and the NDNCR, and for these reasons they are not persuasive.  *See, e.g., Lloyd v. Navy Fed. Credit Union*, 2019 WL 2269958, *1-2 (S.D. Cal. May 28, 2019) (unopposed motion for approval of settlement of Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") class action); *Spann v. J.C. Penny Corp*., 314  F.R.D. 312, 315-17, 330-32 (C.D. Cal. 2016) (unopposed motion for approval of settlement of false advertising class action); *Morey v. Louis Vuitton N. Am., Inc*., 2014 WL 109194, *1-4 (S.D. Cal. Jan. 9, 2014) (unopposed motion for approval of settlement of Song-Beverly Credit Card Act class action).

### D.    Plaintiff's Proposal To Use The Mojo Calling Records And The Results Of "Reverse Lookups" Will Not Provide Notice To Class Members

Plaintiff's plan to use the names his counsel allegedly found in the Mojo calling records and the returns of the "reverse lookups" to identify and notify class members will not work.  He will not even come close to notifying at least 70 percent of class members.  At best, the number is much closer to 30 percent.  That is woefully short of the required threshold.

Plaintiff's expert testified she had "no reason to doubt the accuracy of [the] names" from Mojo.  Doc. No. 72, ¶ 83.  She also testified that TransUnion and LexisNexis provide "reliable historical name and address data."  *Id*., ¶ 95.  So if both data sources are presumed to be reliable and accurate,  how will notice be given when the name or names returned by the "reverse lookup" process differs from the name or names reflected in the Mojo calling records for that same number?  How will notice be given when there is no name in the Mojo calling records and the "reverse lookup" returns multiple different names?  How will notice be given when there is

no name listed in the Mojo calling records and the "reverse lookup" does not return a name for that number?  Plaintiff does not say how his notice plan would ensure that the correct person gets notified of this action.

These are not hypothetical or statistically insignificant issues.  In a random sample of 385 telephone numbers from the "Class List," the name or names returned by LexisNexis (a company that Plaintiff's expert described as an "established and reputable" provider of "reverse lookup" services (*see* Doc. No. 72, ¶¶ 85-87, 95)) only matched the name or names that Plaintiff's counsel pulled from the Mojo calling records **29.3 percent** of the time.  *See* Declaration of Jennifer Smith In Support Of Defendant's Opposition To Plaintiff's Motion For Approval Of Class Notice Plan ("Smith Decl."), ¶¶ 14-16.[2]  Put differently, for **over 70 percent** of the numbers in this representative sample of the Class List, the name or names Plaintiff's counsel pulled from the Mojo calling records **did not match** the name or names that the "reverse lookup" associated with those same numbers on dates the numbers were dialed.  *Id*.  It would not be proper to simply assume that the names found in the Mojo calling records or the names returned from a "reverse lookup" process are accurate when the names do not match more than 70% of the time.

For example, Jennifer Yesitis is listed in the Mojo calling records for the phone number 408-476-XXXX, but the "reverse lookup" returned Ronnie Hodges and Oliver M. Go as associated with the number at the time of the allegedly unwanted calls.  *Id*., ¶ 18.  Similarly,

---

[2] Intero does not concede that these persons are class members, *i.e.*, persons who received two or more calls reflected in the Mojo data.

Angel Bazigos is listed in the Mojo calling records for the phone number 650-226-XXXX, but the "reverse lookup" returned Touchstone Technologies, Inc. as associated with the number at the time of the allegedly unwanted calls.   *Id*.  Plaintiff offers no method for determining who should be sent a notice under his proposed plan.

Plaintiff conceded during the meet and confer process that under his proposed notice plan, there would often be multiple names associated with each number.  *See* Narita Decl., ¶ 8 at Ex. 3.   Plaintiff's proposed solution is simply to send notice to any person listed in the Mojo calling records or the TransUnion data, regardless of whether or not they are a class member. *Id*.   In the event that Plaintiff proposes this shotgun blast approach to class notice for the first time in his Reply brief, it should be rejected.  *See, e.g., Yeoman v. Ikea U.S. W., Inc*., 2013 U.S. Dist. LEXIS 1585516, *13-14 (S.D. Cal. Nov. 5, 2013) (rejecting email notice plan; "[n]otice to individuals is improper . . . when it is overly broad or over-inclusive"); *Thomas v. Baca*, 2012 U.S. Dist. LEXIS 39287, *8-9 (C.D. Cal. Mar. 22, 2012) ("[s]hort of mailed notification to every individual who cycled through the [] County jail system during the class period, Plaintiffs have not suggested any method of identifying or notifying members of the class who actually slept on the floor"); *see also In re "Agent Orange" Product Liab. Litig*., 818 F.2d 145, 169 (2d Cir. 1987) (rejecting individual notice plan that was "considerably overbroad").

> **E.    Providing Email Notice Without Confirming Whether The Emails Are Opened Is Not The Best Practicable Notice Under The Circumstances**

If email notice is going to be the exclusive form of notice used for the vast majority of class members, as Plaintiff proposes, then the administrator must also track which emails are never opened.   For unopened emails, which clearly were **not** read by the potential class member, the administrator should also mail a postcard.

Plaintiff rejected this proposal, stating it meant email notice is "being held to a standard that regular mail is not." Narita Decl., ¶ 9. He misses the point. The test is whether the proposed plan for email notice is "the best notice that is practicable under the circumstances." Plaintiff does not dispute that the administrator could easily determine whether the emails are in fact opened. *See id*. at Ex. 4; *see also* How to Know If Someone Opened Your Email (Updated 2020), www.saleshandy.com/blog/know-someone-opened-your email (discussing various programs) (last accessed October 14, 2020). In instances where it is known that the prospective class member did not open the email, postcard notice would be the best notice practicable.

Plaintiff may wish to avoid the additional cost associated with mailing postcards, but this is not a relevant consideration. *See Eisen*, 417 U.S. at 177 ("There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs."); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("individual notice to class members identifiable through reasonable effort is mandatory in (b)(3) actions; requirement may not be relaxed based on high cost").

## F.      Placing A "Banner" On Intero's Website Will Not Improve Plaintiff's Inadequate Notice Plan

Plaintiff's proposal to place a "banner" on Intero's website should be rejected, as he has not explained how this would help to notify class members. *See* Doc. No. 131 at ECF p. 9:2-7. According to Plaintiff, class members did not want to receive calls regarding Intero's real estate services, and thus it is highly unlikely that they would visit Intero's website. The proposal appears to be a punitive effort to harm Intero's business reputation. It should be rejected.

## G.      Plaintiff Should Be Ordered To Provide The Data Used To Run The "Reverse Lookups" And The Results Returned By TransUnion

If the Court approves a notice plan that relies on "reverse lookups" performed by a third party, the Court should also require Plaintiff to provide Intero with the data it will give the third

party to run the "lookups" and the results returned.  It is critical that both sides have access to this data.  Intero must be able to raise concerns, where appropriate, about the notice process and, if the concerns cannot be resolved, bring them to the Court's attention.  Moreover, Intero has a fundamental due process right to know the names of the persons that Plaintiff says have a claim against the company.  Without such information, Intero will be severely and unnecessarily prejudiced in preparing its defenses.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 & n. 10 (9th Cir. 2017) (discussing the due process right of defendant to challenge individual class member claims, including through discovery from absent class members if justified).

### H.   Intero's Version Of The Notice Documents Are More Accurate

Intero proposes modest changes to Attachments 2 through 6 so that the notice documents more accurately reflect the allegations, positions of the parties, and the law.  *See* Narita Decl., ¶ 10 at Exs. 5-7.  In addition, Intero believes that class members should be able to exclude themselves by visiting the website designated for the case.  Intero believes that requiring exclusion by mailed letter only is too restrictive.  *Id.*

## III.   <u>CONCLUSION</u>

For the reasons stated herein, the Motion should be denied.  If the Court approves a notice plan, however, Intero requests that the Court also order Plaintiff provide Intero with all data any third party will use as part of the "reverse lookup" process and all results returned by the third party.

DATED: October 15, 2020                   SIMMONDS & NARITA LLP


                                          By:  ___/s/R. Travis Campbell
                                               R. Travis Campbell
                                               Attorneys for Defendant