TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
R. TRAVIS CAMPBELL (SBN 271580)
tcampbell@snllp.com
MARGARET T. CARDASIS (SBN 322167)
mcardasis@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000

Attorneys for Defendant
Intero Real Estate Services

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CHINITZ, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiff,<br><br>vs.<br><br>INTERO REAL ESTATE SERVICES,<br><br>Defendant. | CASE NO. 5:18-cv-05623-BLF<br><br>**DECLARATION OF TOMIO B. NARITA IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF CLASS NOTICE PLAN FOR RULE 23(b)(3) NATIONAL DNC CLASS**<br><br>Date: November 19, 2020<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br><br>The Honorable Beth Labson Freeman |

I, Tomio B. Narita, declare as follows:

1.    I am a partner of Simmonds & Narita LLP, counsel of record of Defendant Intero Real Estate Services ("Intero") in this matter.  I make this declaration based upon my personal knowledge, and if called as a witness, I could and would testify competently to its contents.

2.    I have reviewed Plaintiff Ronald Chinitz's Motion for Approval of Class Notice Plan for Rule 23(b)(3) National DNC Class ("the Motion") and the Declaration of Cameron R. Azari, Esq. that Plaintiff filed in support of the Motion.  *See* Doc. Nos. 131 & 131-1.  In the Motion, Plaintiff referenced a "Class List" that he claims is in the parties' possession.  *See* Doc. No. 131 at ECF pp. 6-8, 11.  Mr. Azari also testified that the parties "possess a list of telephone numbers at which Class Members were called" which he refers to as the "Class List."  *See* Doc. No. 131-1, ¶ 11.  Prior to the filing of the Motion, however, no document described as a "Class List" had ever been provided to Intero.

3.    On September 2, 2020, I emailed Plaintiff's counsel and requested that they promptly provide us with the purported "Class List."  Plaintiff's counsel failed to respond for over a week, so I sent a follow up email on September 10, 2020.  True and correct copies of my emails are attached hereto as **Exhibit 1** (Question No. 1).

4.    On September 10, 2020, Plaintiff's counsel responded and stated for the first time that the "Class List" was an Excel file "VERKHOVS000024 LN_Output_LN_ndncr.csv." Plaintiff did not produce that file to Intero until late in the evening on May 29, 2020, the date that he filed his Reply in Support of the Motion for Class Certification.  A true and correct copy of Plaintiff's counsel's email is attached hereto as **Exhibit 2** (Question No. 1 – red text).

5.    I have reviewed the file "VERKHOVS000024 LN_Output_LN_ndncr.csv" and it does not contain names, physical addresses, or email addresses for any of the phone numbers

contained therein.  Rather, it contains only a list of telephone numbers, along with columns indicating values for "Startdate," "Enddate," "BusResGov," "firstseen," and "lastseen."

6.      In my September 2, 2020 email to Plaintiff's counsel, I requested Plaintiff identify the name and contact information for the "third party" that will be used to perform the tasks described by Mr. Azari, including the "reverse lookups" discussed in paragraph 15 of his declaration.  *See* **Exhibit 1** (Question No. 3).  Plaintiff's counsel responded to me on September 10, 2020, stating "I'm not certain that Mr. Azari has identified the third party yet" and that the third party "may not be selected until after we know for sure that our plan will be adopted."  *See* **Exhibit 2** (Question No. 3 – red text).

7.      On September 14, 2020, I responded to Plaintiff's counsel's September 10, 2020 email.  I explained that it was critical that the Court know the identity of the third party that Plaintiff claims will perform "reverse lookups" in order to be able to assess the qualifications of the third party.  A true and correct copy of my email is attached hereto as **Exhibit 3** (Question No. 3 – green text).  Thereafter, Plaintiff's counsel stated that TransUnion will perform the "reverse lookups."

8.      In my September 2, 2020 email to Plaintiff's counsel, I asked how the class administrator would handle situations where multiple names, addresses, and email addresses are returned for a phone number as part of the "reverse lookup" process.  Specifically, I asked how Plaintiff and the administrator would decide who will receive notice.  *See* **Exhibit 1** (Question No. 6).  Plaintiff responded that "notice would go to each person identified."  *See* **Exhibit 3** (Question No. 6 – red text).  In other words, Plaintiff's proposed solution when different names are associated with the telephone number in the different data sources is to simply to send notice to any person listed in the Mojo calling records or the "reverse lookup" data, regardless of whether or not they are a class member.

CHINITZ v. INTERO REAL ESTATE SERVICES (CASE NO. 5:18-cv-05623-BLF)
NARITA DECL. ISO OPPOSITION TO MOTION FOR APPROVAL OF CLASS NOTICE PLAN

9.      On September 26, 2020, I sent Plaintiff's counsel another email that outlined Intero's positions regarding the parties' various disputes relating to the Motion.  Among other things, I explained that if email is going to be used as part of the notice plan, Intero believes that the class administrator can and should confirm whether the email was, in fact, clicked on and opened by the recipient.  I explained that unlike regular email, it is possible to determine whether an email was clicked on and opened.  As a result, if notice is attempted via email and the parties know that the email was never opened, Intero believes that the class administrator should mail a postcard to that person.  On September 30, 2020, Plaintiff's counsel responded and stated that Plaintiff would not agree to use a read receipt tool.  He claimed that doing so would "would result in email notice being held to a standard regular mail is not."  A true and correct copy of the email exchange is attached hereto as **Exhibit 4**.  The portions discussed in this paragraph can be found under the heading "**Email vs. Mail Notice**".

10.      I have reviewed Attachment 2, Attachment 3, Attachment 4, Attachment 5, and Attachment 6 to Mr. Azari's declaration.  Intero has redlined its proposed changes to these attachments.  Intero believes its proposed language is a more accurate recitation of the allegations, positions of the parties, and the law.  In addition, Intero believes that class members should be able to exclude themselves by visiting the website designated for the case.  Intero believes that requiring exclusion by mailed letter only is too restrictive.

    a.   Attachment 2 is Plaintiff's proposed Email Notice.  *See* Doc. No. 131-1, ¶ 18.  Attached hereto as **Exhibit 5** is the Email Notice with Intero's proposed revisions.

    b.   Attachment 3 is Plaintiff's proposed Postcard Notice.  *See* Doc. No. 131-1, ¶ 18.  Attached hereto as **Exhibit 6** is the Postcard Notice with Intero's proposed revisions.

c. Attachment 4 is Plaintiff's proposed Long Form Notice. *See* Doc. No. 131-1, ¶ 18.  Attached hereto as **Exhibit 7** is the Long Form Notice with Intero's proposed revisions.

d. Attachment 5 contains "[e]xamples of the proposed Banner Notices" that Mr. Azari states will appear "on selected advertising networks that Class Members may visit regularly."  Doc. No. 131-1, ¶¶ 27, 29.  Intero proposes the following revision: insert "goods or services of" between "promoting" and "Intero Real Estate Services."

e. Attachment 6 is Plaintiff's proposed National Informational Press Release. *See* Doc. No. 131-1, ¶ 31.  My office was not able to provide Intero's redlines to this attachment because Plaintiff did not provide me a Word version.  The language appears to track Attachment 2 and, therefore, Intero propose the same changes identified in **Exhibit 5** above.

11.    Intero remains willing to continue meet and confer efforts with Plaintiff to try and resolve the disputed aspects of Plaintiff's notice plan.  In particular, Intero believes the parties may be able to reach agreements concerning the language in Attachments 2 through 6.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California, on this 15th day of October, 2020.


 /s/ Tomio B. Narita
Tomio B. Narita

Exhibit 1

| | |
|---|---|
| **From:** | Tomio Narita |
| **Sent:** | Thursday, September 10, 2020 8:36 AM |
| **To:** | Hassan Zavareei; Michael Reese; Sabita Soneji |
| **Cc:** | Travis Campbell; Maggie Cardasis; Tomio Narita |
| **Subject:** | RE: Chinitz v. Intero - meet and confer re: Class Notice Plan |

Hassan, I don't believe we have received a response to this email.  Can we expect one?  Thank you.

Tomio B. Narita
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, California  94104
Direct line (415) 283.1010
Mobile (415) 519.6093
Main Line (415) 283.1000
Fax (415) 352.2625
email:  tnarita@snllp.com
www.snllp.com
www.fdcpadefense.blogspot.com

**From:** Tomio Narita <TNarita@snllp.com>
**Sent:** Wednesday, September 2, 2020 6:15 PM
**To:** Hassan Zavareei <hzavareei@tzlegal.com>; Michael Reese <mreese@reesellp.com>; Sabita Soneji <ssoneji@tzlegal.com>
**Cc:** Travis Campbell <TCampbell@snllp.com>; Maggie Cardasis <MCardasis@snllp.com>; Tomio Narita <TNarita@snllp.com>
**Subject:** Chinitz v. Intero - meet and confer re: Class Notice Plan

Hassan, thank you for agreeing to the stipulation to extend Defendant's time to respond to the Plaintiff's motion to approve the Rule 23 class notice plan, and for inviting us to meet and confer regarding the issues raised by the motion.  We'd like to confer about the following issues/requests:

Mr. Azari testified that the parties "possess a list of telephone numbers at which Class Members were called" which he refers to as the "Class List" and he claims the parties have the "possible physical addresses for approximately half of the Class List and possible email addresses for approximately 15% of the Class List."   *See* Azari Decl., ¶¶ 10-11.   Defendant does not have this list.  Our expert John Taylor testified in his declaration and in his report that

1

he was not able to locate the alleged list of 68,918 NDNCR telephone numbers in the documents produced by your client's expert, nor could he derive it from the Mojo calling records.  Will you agree to promptly provide us with the Class List as described in Mr. Azari's declaration?

We also need to know the dates of the allegedly violative call attempts made to each of the phone numbers on the Class List.  This data was never produced by your client's expert.  Among other things, this data will confirm whether the call attempts were made within the Class Period, whether the call attempts were made within a 12-month period of each other, and that the call attempts appear in one of the 35 Mojo accounts identified by the Court's order.  Will Plaintiff agree to provide us with the dates of the allegedly violative calls made to the numbers on the Class List?

Mr. Azari testified that a "third party" will perform the reverse lookups to: 1) "identify whether an available associated email address exists for each telephone number"; and 2) if no email address can be located, "the most likely current physical mailing address for the Class Member"?  *See* Azari Decl ¶ 15.  Will you agree to identify the name and contact information for the "third party" that will be used to perform the tasks described by Mr. Azari?

Will you agree to provide us with a copy of all data or documents that will be supplied to the third party by Mr. Azari?

Can you provide us more detail about the process the third party plans to use to identify the names, email address and the physical address associated with Class Members?  Will the third party be looking for the contact information that was associated with the telephone numbers at the time the alleged calls were made by the Intero sales associates?  Or will they only attempt to locate current names, physical address and email addresses associated with the telephone numbers?

What if there are multiple names, addresses and email addresses returned to the third party as part of the "reverse lookup" process?  How will the administrator decide which name, address and/or email address to use to send notice?

Will Plaintiff commit to provide us with a copy of all output files and other data generated by the third party as it is performing the reverse lookup process?

Please send us Word versions of Attachments 2 through 6 to Mr. Azar's declaration so that we can provide Defendant's proposed redlines.

What "easy-to-remember domain name" does Plaintiff plan to use?  Motion p. 6:1

Will any steps be taken to determine whether the recipient of an email actually opens the email?  Will Plaintiff commit to returning this data to us?

In paragraph 33 of the Mr. Azari's declaration, he states that class members will be able to enter their telephone phone number into the class website to see how many calls were made to the number.  Can you explain what data will be used when those searches are run by class members, and will you provide us with that data?

Can you tell us more about how a national press release (Azari Decl ¶ 31) will assist in notifying class members?  The calls at issue were allegedly made by California sales associates seeking to solicit business in California, so a national press release does not appear to be useful.

Can you tell us more about how a "banner advertisement" on Intero's website (Motion p. 9:2-4) will assist in notifying class members?  Members of the class are, according to Plaintiff, persons who did not want to receive calls from Intero's sales associates.  We do not understand why they would have any reason to visit Intero's website.

We look forward to hearing from you.

Tomio B. Narita
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, California  94104
Direct line (415) 283.1010
Mobile (415) 519.6093
Main Line (415) 283.1000
Fax (415) 352.2625
email:  tnarita@snllp.com
www.snllp.com
www.fdcpadefense.blogspot.com

Exhibit 2

**From:**          Kristen Simplicio <ksimplicio@tzlegal.com>
**Sent:**          Thursday, September 10, 2020 3:25 PM
**To:**            Tomio Narita; Travis Campbell; Maggie Cardasis
**Cc:**            Hassan Zavareei; Sabita Soneji; Mark Clifford; V Prentice; Michael Reese; George Granade
**Subject:**       Chinitz v. Intero - meet and confer re: Class Notice Plan
**Attachments:**   03 - Intero Real Estate Class Notice - Attachment 2 to Ex. A - Email Notice.docx; 04 - Intero Real Estate Class Notice - Attachment 3 to Ex. A - Postcard Notice.docx; 05 - Intero Real Estate Class Notice - Attachment 4 to Ex. A - Long Form Notice.docx; Chinitz v. Intero TCPA - Banner Notices - 8 19 20.pdf

Tomio,

Hassan asked me to send along our responses to your questions of September 2. Our answers to your questions below in red. In reviewing, please note that while we are happy to work with you on designing a comprehensive notice program that will comport with due process, some of your questions seemed less focused on class notice and more focused on the merits of the litigation.  While our offer to work with you to try to eliminate disagreement still stands, we are not going to allow this to turn into a redo of previous discovery and expert disputes.  If we have misunderstood your goals in asking for the information, we are happy to get on a call to understand what you need so we can try to agree to a fair notice plan that satisfies due process.

Mr. Azari testified that the parties "possess a list of telephone numbers at which Class Members were called" which he refers to as the "Class List" and he claims the parties have the "possible physical addresses for approximately half of the Class List and possible email addresses for approximately 15% of the Class List."   *See* Azari Decl., ¶¶ 10-11.   Defendant does not have this list.  Our expert John Taylor testified in his declaration and in his report that he was not able to locate the alleged list of 68,918 NDNCR telephone numbers in the documents produced by your client's expert, nor could he derive it from the Mojo calling records.  Will you agree to promptly provide us with the Class List as described in Mr. Azari's declaration?

<span style="color:red">While it is not clear to us why Mr. Taylor was not able to re-create the list of phone numbers from the data provided, the Class List of 68,918 NDNCR telephone numbers was produced on May 30, 2020 in Bates No. VERKHOVS000024.</span>

The possible physical addresses and email addresses associated with the telephone numbers in the Class List are located in the other data produced by Mojo, which Mojo produced on January 16, 2020, and Plaintiff produced to Intero on January 21, 2020 (Bates Nos. MOJO-Intero 0000498-MOJO-Intero 0000677). To determine the approximate percentage of telephone numbers associated with possible contact information in the parties' possession for class notice purposes, we completed a cross-check in-house of the 68,918 telephone numbers in the Class List with the contact data in the files produced by Mojo.   If you arrive at a different result, let us know.

We also need to know the dates of the allegedly violative call attempts made to each of the phone numbers on the Class List.  This data was never produced by your client's expert.  Among other things, this data will confirm whether the call attempts were made within the Class Period, whether the call attempts were made within a 12-month period of each other, and that the call attempts appear in one of the 35 Mojo accounts identified by the Court's order.  Will Plaintiff agree to provide us with the dates of the allegedly violative calls made to the numbers on the Class List?

As we have repeatedly made clear (and as the Court has ruled), such a list was not previously generated as a separate file. In order to advance the notice process, however, we are in the process of generating that list. Because discovery has closed, we are willing to provide you the list for purposes of analyzing and responding to class notice (and later, post-trial claims administration) purposes only, which is how we intend to use it. If you would like to use it for litigation purposes, such as for summary judgment or the preparation of a supplemental expert report, we will only agree to produce it if you agree we may do the same, i.e. refer to it in briefing and in any rebuttal report to a supplemental report by your expert. Let us know how you wish to use it and we'll prepare a stip.  If neither of those options are of interest, why don't you let us know what specifically you need to know about this list for purposes of assuring your client that notice will comport with due process, and we will see what compromise we can work out.

Mr. Azari testified that a "third party" will perform the reverse lookups to: 1) "identify whether an available associated email address exists for each telephone number"; and 2) if no email address can be located, "the most likely current physical mailing address for the Class Member"?  *See* Azari Decl ¶ 15.  Will you agree to identify the name and contact information for the "third party" that will be used to perform the tasks described by Mr. Azari?

I'm not certain that Mr. Azari has identified the third party yet, as claims administrators use a variety of vendors. This may be subject to a bidding process, and may not be selected until after we know for sure that our plan will be adopted.  If you have a vendor your client prefers to use, please let us know.  If there are other concerns about the vendor selection process, can you identify them and we can discuss?

Will you agree to provide us with a copy of all data or documents that will be supplied to the third party by Mr. Azari?

Again, this process may occur after the court hears this motion. Other than the documents identified in response to the first two questions, are there other documents you believe you need to see to evaluate whether our notice proposal comports with due process?

Can you provide us more detail about the process the third party plans to use to identify the names, email address and the physical address associated with Class Members?  Will the third party be looking for the contact information that was associated with the telephone numbers at the time the alleged calls were made by the Intero sales associates?  Or will they only attempt to locate current names, physical address and email addresses associated with the telephone numbers?

We need to confirm with the claims administrator, but it is our understanding that they will be looking for both. As noted in paragraph 15, they will have the Mojo records, which as you know, contain possible names and contact information for the various phone numbers at the time the calls were made. Reverse look ups will be done on all the numbers, and Mojo contact data in the parties' possession may be utilized as a backup or cross-reference for the reverse lookups.  That said, we welcome your thoughts on this process.

What if there are multiple names, addresses and email addresses returned to the third party as part of the "reverse lookup" process?  How will the administrator decide which name, address and/or email address to use to send notice?

To ensure the most comprehensive notice possible, the administrator proposes that notice go to each person identified (see paragraph 16).  That ensures the broadest possible reach.

Will Plaintiff commit to provide us with a copy of all output files and other data generated by the third party as it is performing the reverse lookup process?

This work will not be done until after the court has approved it. We will not pay for this process until we know the plan been approved. If there is specific information you need to respond to the motion, or concerns you have, please identify them for our consideration.  We will not produce these files after notice has been completed for use during litigation. Post-trial, we can meet and confer about the relevance of these files for purposes of claims administration and challenging of class membership.  If you wish to pay for the costs of notice, you would be entitled to have this information.

Please send us Word versions of Attachments 2 through 6 to Mr. Azar's declaration so that we can provide Defendant's proposed redlines.  Attached are 2-4, and 6. Attachment 5 is a collection of image files, but a clean PDF is attached.

What "easy-to-remember domain name" does Plaintiff plan to use?  Motion p. 6:1

It has not yet been selected, but if you have a proposal, please let us know. It will likely be something like www.InteroCallsLawsuit.com or www.InteroDoNotCallClass.com.

Will any steps be taken to determine whether the recipient of an email actually opens the email?  Will Plaintiff commit to returning this data to us?

With respect to the first part, we will discuss with our claims administrator on what technologies they have to determine whether an email has been read. Is this something that your client has decided is a necessary element to a notice plan based on email?

With respect to the second part, the read receipts will happen long after the motion for notice has been decided, so it has no relevance to your client's ability to oppose the motion. Is there a specific concern you have about email notice that we can try to address now?

In paragraph 33 of the Mr. Azari's declaration, he states that class members will be able to enter their telephone phone number into the class website to see how many calls were made to the number.  Can you explain what data will be used when those searches are run by class members, and will you provide us with that data?

That data is the data described in response to the second question.

Can you tell us more about how a national press release (Azari Decl ¶ 31) will assist in notifying class members?  The calls at issue were allegedly made by California sales associates seeking to solicit business in California, so a national press release does not appear to be useful.

A national press release is what was recommended by our claims administrator to ensure the most reach. It is more comprehensive, particularly given that so many consumers obtain news from national sources and not local media.  We can speak with them about a more narrow release if that is important to your client.

Can you tell us more about how a "banner advertisement" on Intero's website (Motion p. 9:2-4) will assist in notifying class members?  Members of the class are, according to Plaintiff, persons who did not want to receive calls from Intero's sales associates.  We do not understand why they would have any reason to visit Intero's website.

We think this is of value to increasing reach, but it is something we are willing to discuss and compromise on if we can reach agreement on the other elements of the notice.

Let us know if you would like to discuss further.

Thanks,
Kristen



**Kristen G. Simplicio** ▪ Of Counsel ▪ Tᴙᴄᴋᴏ & Zᴀᴠᴀʀᴇᴇɪ LLP ▪ www.tzlegal.com
1828 L Street, NW ▪ Suite 1000 ▪ Washington, DC 20036
p 202.973.0900 x109 ▪ f 202.973.0950

*This message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, the recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the email message.*

Exhibit 3

| **From:** | Tomio Narita |
| **Sent:** | Monday, September 14, 2020 6:51 PM |
| **To:** | Kristen Simplicio; Hassan Zavareei; Sabita Soneji; Mark Clifford; V Prentice; Michael Reese; George Granade |
| **Cc:** | Tomio Narita; Maggie Cardasis; Travis Campbell |
| **Subject:** | RE: Chinitz v. Intero - meet and confer re: Class Notice Plan |

Kristen, thank you. In an effort to keep the back and forth of our meet and confer efforts organized, our responses to your comments will appear below, in green. I also took the liberty of numbering my original questions so we can keep all of the responses relating to the questions separated.  Thank you. Tomio.

Tomio B. Narita
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, California  94104
Direct line (415) 283.1010
Mobile (415) 519.6093
Main Line (415) 283.1000
Fax (415) 352.2625
email:  tnarita@snllp.com
www.snllp.com
www.fdcpadefense.blogspot.com

---

**From:** Kristen Simplicio <ksimplicio@tzlegal.com>
**Sent:** Thursday, September 10, 2020 3:25 PM
**To:** Tomio Narita <TNarita@snllp.com>; Travis Campbell <TCampbell@snllp.com>; Maggie Cardasis <MCardasis@SNLLP.com>
**Cc:** Hassan Zavareei <hzavareei@tzlegal.com>; Sabita Soneji <ssoneji@tzlegal.com>; Mark Clifford <mclifford@tzlegal.com>; V Prentice <vprentice@tzlegal.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>
**Subject:** Chinitz v. Intero - meet and confer re: Class Notice Plan

Tomio,

Hassan asked me to send along our responses to your questions of September 2. Our answers to your questions below in red. In reviewing, please note that while we are happy to work with you on designing a comprehensive notice program that will comport with due process, some of your questions seemed less focused on class notice and more focused on the merits of the litigation.  While our offer to work with you to try to eliminate disagreement still stands, we are not going to allow this to turn into a redo of previous discovery and expert disputes.  If we have misunderstood your

goals in asking for the information, we are happy to get on a call to understand what you need so we can try to agree to a fair notice plan that satisfies due process.

1. Mr. Azari testified that the parties "possess a list of telephone numbers at which Class Members were called" which he refers to as the "Class List" and he claims the parties have the "possible physical addresses for approximately half of the Class List and possible email addresses for approximately 15% of the Class List." *See* Azari Decl., ¶¶ 10-11.  Defendant does not have this list.  Our expert John Taylor testified in his declaration and in his report that he was not able to locate the alleged list of 68,918 NDNCR telephone numbers in the documents produced by your client's expert, nor could he derive it from the Mojo calling records.  Will you agree to promptly provide us with the Class List as described in Mr. Azari's declaration?

While it is not clear to us why Mr. Taylor was not able to re-create the list of phone numbers from the data provided, the Class List of 68,918 NDNCR telephone numbers was produced on May 30, 2020 in Bates No. VERKHOVS000024.

The possible physical addresses and email addresses associated with the telephone numbers in the Class List are located in the other data produced by Mojo, which Mojo produced on January 16, 2020, and Plaintiff produced to Intero on January 21, 2020 (Bates Nos. MOJO-Intero 0000498-MOJO-Intero 0000677). To determine the approximate percentage of telephone numbers associated with possible contact information in the parties' possession for class notice purposes, we completed a cross-check in-house of the 68,918 telephone numbers in the Class List with the contact data in the files produced by Mojo.   If you arrive at a different result, let us know.

The Court has certified a class.  The Court therefore has an obligation under Fed. R. Civ. P. 23(c)(2)(B) to ensure that members of the class receive the best notice practicable, in light of the information available to the parties, including individual notice to class members who can be notified through a reasonable effort.  We believe it is imperative that the parties, the class administrator, and the Court if needed, should all have access to the same information that will be used as the starting point for the notice process that Plaintiff is asking the Court to approve.  Thus, if Plaintiff performed a "cross-check" of the Mojo calling records in order to associate the numbers with possible contact information, please provide us with that list so we are all starting from the same place.

2. We also need to know the dates of the allegedly violative call attempts made to each of the phone numbers on the Class List.  This data was never produced by your client's expert.  Among other things, this data will confirm whether the call attempts were made within the Class Period, whether the call attempts were made within a 12-month period of each other, and that the call attempts appear in one of the 35 Mojo accounts

identified by the Court's order.  Will Plaintiff agree to provide us with the dates of the allegedly violative calls made to the numbers on the Class List?

As we have repeatedly made clear (and as the Court has ruled), <u>such a</u> list was not previously generated as a separate file. In order to advance the notice process, however, we are in the process of generating that list. Because discovery has closed, we are willing to provide you the list for purposes of analyzing and responding to class notice (and later, post-trial claims administration) purposes only, which is how we intend to use it. If you would like to use it for litigation purposes, such as for summary judgment or the preparation of a supplemental expert report, we will only agree to produce it if you agree we may do the same, i.e. refer to it in briefing and in any rebuttal report to a supplemental report by your expert. Let us know how you wish to use it and we'll prepare a stip.  If neither of those options are of interest, why don't you let us know what specifically you need to know about this list for purposes of assuring your client that notice will comport with due process, and we will see what compromise we can work out.

Again, the Court is obligated to notify the class that it has certified, and thus the parties and the Court should have access to the same list and the same data that will be used as the starting point for the Rule 23(c)(2)(B) notice process. It is irrelevant if the list of allegedly violative calls and the dates of dial associated with those calls "was not previously generated as a separate file" as you claim. Ms. Verkhovskaya testified that all the data she used to reach her opinions still resides on her server, and that it can easily be exported to a file and produced. She must have run reports with that data, and the reports can be exported to a file.  One such report would have been run to determine the dates of the allegedly violative calls, and total number of such calls.  Otherwise she could not have given the testimony at paragraph 106 of her report – the very paragraph that the Court relied upon when it issued the order certifying the class: "**In my opinion, there are 68,918 Source Data telephone numbers that received two or more calls from an Intero Corporate Agent within any 12-month period when those telephone numbers had been on the NDNCR for at least 31 days prior, and the Source Data show that the total number of these calls by Intero Corporate Agents is 349,067. In my opinion, these 68,918 telephone numbers did not include any business or government telephone numbers**."

We see no reason to agree in advance to place any restrictions on how this data can or should be used by either of the parties or by the Court.  Plaintiff's expert used this data to opine on whether or not specific numbers identified in the Mojo records are associated with class members.  Making this data available to all parties and the Court as part of the notice process is essential to ensuring the notice plan presented by Plaintiff (or the parties, if an agreement can be reached) comports with due process.   Your offer to negotiate with us the terms of a stipulation that will outline such restrictions is therefore unnecessary and will only slow down the notice process.  Plaintiff, of course, is free to argue in the future that Defendant has

misinterpreted this data.  But there is no reason (and you have provided none) why this fundamental class data should be withheld.

3. Mr. Azari testified that a "third party" will perform the reverse lookups to: 1) "identify whether an available associated email address exists for each telephone number"; and 2) if no email address can be located, "the most likely current physical mailing address for the Class Member"?  *See* Azari Decl ¶ 15.  Will you agree to identify the name and contact information for the "third party" that will be used to perform the tasks described by Mr. Azari?

I'm not certain that Mr. Azari has identified the third party yet, as claims administrators use a variety of vendors. This may be subject to a bidding process, and may not be selected until after we know for sure that our plan will be adopted.  If you have a vendor your client prefers to use, please let us know.  If there are other concerns about the vendor selection process, can you identify them and we can discuss?

We believe the Court cannot approve a notice plan in the form suggested by Plaintiff unless it knows the identity and qualifications of the entity that will perform the reverse lookup process.  As Mr. Azari's declaration makes clear, the reverse lookup process is the lynchpin of Plaintiff's proposed notice plan.  The Court must know who will provide this critical function and be able to assess their qualifications.  After reading Mr. Azari's declaration, we assumed he had already identified the vendor that he would use to perform the reverse lookup process. Defendant does not agree or concede that using a reverse lookup process is an appropriate or reliable means of identifying and notifying class members.  Having said this, Defendant understands the LexisNexis offers a popular reverse lookup product.

4. Will you agree to provide us with a copy of all data or documents that will be supplied to the third party by Mr. Azari?

Again, this process may occur after the court hears this motion. Other than the documents identified in response to the first two questions, are there other documents you believe you need to see to evaluate whether our notice proposal comports with due process?

As stated above, the Court has an obligation under Rule 23(c)(2)(B) to ensure that the notice plan is appropriate. We believe it is critical that all data used to provide notice to the class be made available to both parties and the Court if needed so the process can remain transparent.  Is there some reason why Plaintiff wishes to withhold from Defendant and the Court certain data or documents that may be supplied by Plaintiff to the reverse lookup vendor?

5.  Can you provide us more detail about the process the third party plans to use to identify the names, email address and the physical address associated with Class Members?  Will the third party be looking for the contact information that was associated with the telephone numbers at the time the alleged calls were made by the Intero sales associates?  Or will they only attempt to locate current names, physical address and email addresses associated with the telephone numbers?

We need to confirm with the claims administrator, but it is our understanding that they will be looking for both. As noted in paragraph 15, they will have the Mojo records, which as you know, contain possible names and contact information for the various phone numbers at the time the calls were made. Reverse look ups will be done on all the numbers, and Mojo contact data in the parties' possession may be utilized as a backup or cross-reference for the reverse lookups.  That said, we welcome your thoughts on this process.

Thank you for this response. We ask that you confirm that "they will be looking for both" – i.e., that the vendor will be attempting to determine the names, physical addresses and email addresses of class members as of the dates the allegedly violative calls were made, as well as current names, physical addresses and email addresses of class members.  Assuming your understanding is correct, this only further illustrates the need for both Defendant and the Court to have access to the list showing the dates of the allegedly violative calls.

6.  What if there are multiple names, addresses and email addresses returned to the third party as part of the "reverse lookup" process?  How will the administrator decide which name, address and/or email address to use to send notice?

To ensure the most comprehensive notice possible, the administrator proposes that notice go to each person identified (see paragraph 16).  That ensures the broadest possible reach.

Thank you.  To clarify, is Plaintiff proposing that notice will be sent to every name, address and email address that is returned by the reverse lookup process, as well as any name or address found in the Mojo call records?  What if conflicting contact information is found that is associated with the same telephone number?  Will there be no attempt made to determine who is the correct person that should receive notice?   For example, if the reverse lookup process returns different names and contact information for the same number, or even multiple names and addresses during the 12-month period when the allegedly violative calls were made?  Will the administrator simply send notice to everyone?  And if the contact information in the Mojo calling records is different, when will that be utilized, as opposed to the reverse lookup data?

7. Will Plaintiff commit to provide us with a copy of all output files and other data generated by the third party as it is performing the reverse lookup process?

This work will not be done until after the court has approved it. We will not pay for this process until we know the plan been approved. If there is specific information you need to respond to the motion, or concerns you have, please identify them for our consideration. We will not produce these files after notice has been completed for use during litigation. Post-trial, we can meet and confer about the relevance of these files for purposes of claims administration and challenging of class membership. If you wish to pay for the costs of notice, you would be entitled to have this information.

As explained above, because the Court has an obligation to ensure that notice is given consistent with the requirements of Rule 23(c)(2)(B), Defendant believes that all aspects of the notice process should be transparent. We understand that the output files generated by the reverse lookup vendor will, inter alia, contain the data the vendor used to identify the names, physical addresses, and email addresses of class members. In other words, these output files contain the data that will be used to give notice to the class. We do not understand why Plaintiff is unwilling to make the output files available to Defendant and the Court. Neither Defendant nor the Court can evaluate whether notice has been effectively given to class members, consistent with Rule 23(c)(2)(B), without these output files. We ask again that Plaintiff commit to producing them.

8. Please send us Word versions of Attachments 2 through 6 to Mr. Azar's declaration so that we can provide Defendant's proposed redlines.

Attached are 2-4, and 6. Attachment 5 is a collection of image files, but a clean PDF is attached.

Thank you for this response.

9. What "easy-to-remember domain name" does Plaintiff plan to use? Motion p. 6:1

It has not yet been selected, but if you have a proposal, please let us know. It will likely be something like www.InteroCallsLawsuit.com or www.InteroDoNotCallClass.com.

Thank you for this response.

10. Will any steps be taken to determine whether the recipient of an email actually opens the email?  Will Plaintiff commit to returning this data to us?

With respect to the first part, we will discuss with our claims administrator on what technologies they have to determine whether an email has been read. Is this something that your client has decided is a necessary element to a notice plan based on email?

With respect to the second part, the read receipts will happen long after the motion for notice has been decided, so it has no relevance to your client's ability to oppose the motion. Is there a specific concern you have about email notice that we can try to address now?

Again, because the Court has an obligation to ensure that the class is notified consistent with Rule 23(c)(2)(B), we believe the entire process should be transparent so the Court can truly evaluate whether the plan it ultimately approves will satisfy the Rule.  Plaintiff wants the Court to approve a plan that relies entirely upon giving notice via email, with mailed notice used as a backup and only if the email is returned, or if no email address can be associated with a telephone number on the list.  But the Court might not believe this notice plan is reasonable.  If, for example, the data gathered by the vendor shows that 90% of the emails were never opened, the Court may conclude that the requirements of the Rule were not satisfied.  Thus, if email notice is to be utilized, we believe Plaintiff should commit to making available to the Defendant and the Court all data reflecting whether emails were received and opened.

11. In paragraph 33 of the Mr. Azari's declaration, he states that class members will be able to enter their telephone phone number into the class website to see how many calls were made to the number.  Can you explain what data will be used when those searches are run by class members, and will you provide us with that data?

That data is the data described in response to the second question.

Thank you for this response.  If class members are going to be able to enter a telephone number into the website and see how many calls were made to that number, this means Plaintiff must have a list that identifies the number of calls to each phone number and dates of dials for all the allegedly violative calls.  As previously stated, we ask that Plaintiff provide us with all this data.

12. Can you tell us more about how a national press release (Azari Decl ¶ 31) will assist in notifying class members?  The calls at issue were allegedly made by California sales associates seeking to solicit business in California, so a national press release does not appear to be useful.

A national press release is what was recommended by our claims administrator to ensure the most reach. It is more comprehensive, particularly given that so many consumers obtain news from national sources and not local media.  We can speak with them about a more narrow release if that is important to your client.

Thank you for this response.

13. Can you tell us more about how a "banner advertisement" on Intero's website (Motion p. 9:2-4) will assist in notifying class members?  Members of the class are, according to Plaintiff, persons who did not want to receive calls from Intero's sales associates.  We do not understand why they would have any reason to visit Intero's website.

We think this is of value to increasing reach, but it is something we are willing to discuss and compromise on if we can reach agreement on the other elements of the notice.

Thank you for this response.

Let us know if you would like to discuss further.

Thanks,
Kristen



**Kristen G. Simplicio**  ■  Of Counsel  ■  Tᴦᴄᴋᴏ & Zᴀᴠᴀʀᴇᴇɪ LLP  ■  www.tzlegal.com
1828 L Street, NW  ■  Suite 1000  ■  Washington, DC 20036
p 202.973.0900 x109  ■  f 202.973.0950

*This message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information.  If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, the recipient is prohibited from reading or using this message in any way.  If you have received this message by mistake, please call us immediately and destroy the email message.*

Exhibit 4

**From:**          Hassan Zavareei <hzavareei@tzlegal.com>
**Sent:**          Wednesday, September 30, 2020 11:39 AM
**To:**            Tomio Narita
**Cc:**            Maggie Cardasis; Travis Campbell; Michael Reese; V
                   Prentice; Mark Clifford; Sabita Soneji; Kristen Simplicio;
                   Collin Hoover; George Granade
**Subject:**       RE: Chinitz v. Intero - meet and confer re: Class Notice
                   Plan

Tomio,

Thank you for your comments. We have spoken to the notice administrator and have some additional thoughts for your consideration.

While I address your points below, I want to make a larger point regarding the notice plan as a whole.  To ensure a notice reach that comports with due process, our claims administrator has designed a multi-faceted plan that includes: (1) sending direct notice to confirmed class members; (2) casting a wider net by erring on the side to caution and sending notice to multiple addresses or emails associated with a number where appropriate; and (3) supplementing via publication notice to fill in any gaps, which includes not just providing notice to someone whose contact information may not be found but also as a belts and suspenders approach to protect against things like an overlooked email.

These three things work together. While we understand you have concerns about individual components, those concerns are often addressed by other parts of the plan.  In other words, the best notice practicable under the circumstances relies on all three features of the plan being adopted.

Further, in regard to you your comments regarding the potential for people who are not class members to receive notice, it is common in class actions for notice to be disseminated to people who are not in the class. For example, in product labeling cases, notice is nearly always done via publication in major newspapers and magazines or social media, and may be viewed by millions of people who never purchased the product. Unlike in food labeling cases, we have offered a way for everyone who receives notice to confirm if they are an intended beneficiary of the notice, via a lookup tool on the notice website.

With those points in mind, I have responded to your comments below in red.

Best,

Hassan



**Hassan Zavareei** ■ Tycko & Zavareei LLP ■ www.tzlegal.com
1828 L Street, NW ■ Suite 1000 ■ Washington, DC 20036
p 202.973.0910 (direct dial) ■ f 202.973.0950 ■ @hzavareei

*This message is for the exclusive use of the addressee and contains confidential, privileged and non-disclosable information. If the recipient of this message is not the addressee, or a person responsible for delivering the message to the addressee, the recipient is prohibited from reading or using this message in any way. If you have received this message by mistake, please call us immediately and destroy the email message.*

**From:** Tomio Narita <TNarita@snllp.com>
**Sent:** Saturday, September 26, 2020 6:31 PM
**To:** Kristen Simplicio <ksimplicio@tzlegal.com>; Hassan Zavareei <hzavareei@tzlegal.com>; Sabita Soneji <ssoneji@tzlegal.com>; Mark Clifford <mclifford@tzlegal.com>; V Prentice <vprentice@tzlegal.com>; Michael Reese <mreese@reesellp.com>; George Granade <ggranade@reesellp.com>
**Cc:** Maggie Cardasis <MCardasis@snllp.com>; Travis Campbell <TCampbell@snllp.com>; Collin Hoover <choover@tzlegal.com>; Tomio Narita <TNarita@snllp.com>
**Subject:** RE: Chinitz v. Intero - meet and confer re: Class Notice Plan

Hassan –

Thank you again for providing the Excel files: "09182020-Ticket 30 – All calls from ticket 14.csv" as well as "Class List Matched to Mojo Contact Records.xlsx."

Now that we have this data, we are better able to meet and confer regarding Plaintiff's proposed class notice plan.  Below are our positions/further questions regarding the plan.  We will also provide you separately with redline versions of the Attachments 2 through 4, and 6 to Mr. Azari's declaration.  We do not agree to Attachment 5.  We anticipate getting those redlines to you mid-next week.

<span style="color:red">We look forward to receiving your redlines but do not understand your comment regarding Attachment 5, which is the text for the online banners to be displayed on the internet via Google Display Network and Facebook. If you disagree with the content, please propose alternative language.</span>

<span style="color:red">If you disagree with using online banners via Google Display Network and Facebook, what exactly is your objection? As noted above and in response to your comments below, publication notice is part of the plan to fill in gaps that cannot be achieved via direct notice. If you do not consent to any indirect notice, do you have an alternative means of reaching a due process threshold your client finds acceptable, given your concerns about direct notice?</span>

**<u>Ensuring class members receive notice</u>**

Plaintiff contends there are 68,918 telephone numbers that were dialed over the class period, and Plaintiff says the Mojo data "indicate[s] possible names and physical addresses for approximately half" of the numbers, and "email addresses associated with approximately 10,000 of the numbers." Doc. No. 131 at ECF p. 6. Plaintiff also states that Mr. Azari "will run reverse lookups on the phone numbers . . . to identify email and physical mailing addresses for the Class Members." *Id*.

You have informed us that TransUnion will perform the "reverse lookups" and that it is your understanding that TU will be looking for the names, physical addresses and email address for the called parties, as of the date of dial, and currently. You have also stated it is plaintiff's intention to "send email notice to every email address" in the Mojo calling records, as well as every email returned by TransUnion, regardless of whether it is confirmed to be associated with a class member.   We see numerous problems with this "buckshot" approach to notice.

The proposed notice plan does give the Court any way to determine whether at least 70 percent of **class members** have been notified.  The Court has made clear that only the residential telephone subscriber for each number, or person(s) within the subscriber's "zone of interest" at the time of the allegedly violative calls, can be class members.  Plaintiff's plan does not attempt to identify those persons and, therefore, there is no way to confirm whether more than 70 percent will be given notice under the plan.

The plan does not even attempt to define who would fall within a subscriber's "zone of interest," let alone explain how the plan is reasonably designed to provide notice to those persons.

The proposed plan to indiscriminately send notice to every email address shown in the Mojo call records, or returned by TransUnion, will necessarily result in notice being sent to huge swaths of persons who are not class members.  To our knowledge, neither Mojo nor TransUnion has made any representation that the names associated with the phone numbers are names of "residential telephone subscribers" or persons within their "zone of interest."  Thus, the notice plan will do nothing to ensure that notice is being sent to class members.  As a result, we do not believe the plan as presently proposed would satisfy Rule 23(c)(2)(B).


First, as noted above, we see no issue with the potential for sending notice to non-class members.

Second, publication notice will also be issued, and thus to the extent the person impacted by the violation does not receive direct notice, publication notice serves as a backstop.

More importantly, however, your argument about how to identify and count all the people in the zone of interest seems to be an academic argument made to elicit an admission that the "zone of interest argument" is wrong or that the class cannot be maintained for some reason. We understand your client is frustrated by how many courts have ruled on the "zone of interest" issue and is interested in continually re-litigating it. But this is a meet and confer process that is taking place outside of the context of the merits of this litigation, and we are not going to get bogged down in technicalities and hypothetical scenarios over the possibility that a couple members of a family plan swapped phone numbers one day.

To the extent there's some scenario where Bob Smith's name comes up as associated with the number but his daughter used the phone on the date the call was received, we trust that the household can communicate with one another, and where they can't, we have added the notice via publication.  Claims administrators rarely know with certainty the precise number of class members. In this case we know that there are roughly 69,000 phone numbers, a combination of direct and publication notice will be provided to many more people than that to ensure that most class members are informed using the same tools claims administrators routinely use.

Indeed, we have reviewed other TCPA notice plans and consulted with the claims administrators about their practice, and are convinced that this reverse lookup process provides for the best notice practicable under the circumstances. See, e.g., *Larson v. Harman-Mgmt. Corp.,* No. 116CV00219DADSKO, 2019 WL 7038399, at *11 (E.D. Cal. Dec. 20, 2019) (approving settlement notice where "settlement administrator [proposed] to review the A&W Text Club's messaging records and then 'perform a reverse lookup of class members' current or last-known address information, and [ ] then cross-reference this information with the United States Postal Services' change of address database to confirm its accuracy.'"); *Cabiness v. Educ. Fin. Sols., LLC,* No. 16-CV-01109-JST, 2018 WL 3108991, at *5 (N.D. Cal. June 25, 2018) (approving settlement class notice where the "Settlement Administrator will use Defendant's call records and 'a reverse lookup process through Lexis Nexis to attempt to obtain the name and address associated with each cellular telephone number' that was dialed during the relevant period.").

That said, to the extent you are concerned, we can certainly agree that any direct or postcard notice sent can include the phrase "and household" after the person's name, which should encompass users on a family plan.  And of course, if you have an alternative suggestion that is more practicable under the circumstances, please send it to us for our consideration.

**Email vs. Mail Notice**

Plaintiff proposes sending notice by email in the first instance, and states that "[i]f the receiving email server cannot deliver the message, a 'bounce code' will be returned along with the unique message identifier."  Doc. No. 132 at ECF p. 7.  In those cases, Plaintiff proposes "at least two additional attempts will be made to deliver the Notice by email."  The motion states that if those emails bounce back or Mr. Azari is "unable to identify an email address through a reverse lookup process," he will mail a postcard.

If email is to be used as part of the notice plan, we believe the class administrator can and should confirm whether the email was, in fact, clicked on and opened by the recipient.  You pointed out that the "Mailbox Rule" works on the presumption that when mail is sent via the United States Postal Service, and it is not returned to the sender, it is presumed the mail was received.  Email, however, is different.  Unlike regular mail, it is possible to determine whether an email was clicked on and opened.  It is our position that if the only notice attempted is an email, and we know that email was never clicked on and opened and therefore could not have been read, this is not notice at all.  It is certainly not the "the best notice that is practicable under the circumstances" within the meaning of Rule 23(c)(2)(B).

Thus, if email is to be used as part of the notice plan, we believe that in each instance where the email was not **opened**, Mr. Azari should mail a post card as outlined in Plaintiff's motion.  Once again, as discussed above, to the extent Plaintiff proposes simply mailing postcards to every address returned for every number, we do not believe the plan complies with the rule.

We are concerned for the reasons already stated that your request would result in email notice being held to a standard that regular mail is not. We see no reason to conclude that a person who elects not to review legal notices received via email will read them if sent to their house, and thus, this seems like an unnecessary step.

Would you prefer that we provide no email notice at all and simply send postcard notice to everyone? In that case, will Intero pay for postcards for whom we have email addresses? Or alternatively, will Intero pay for postcards to those who do not open their email?

If not, please send us some case law that supports your position that email notice  must be done in conjunction with read receipts and supplemental postcard notices for it to comport with Rule 23 for our consideration.

Finally, if there is text you wish to propose, such as a subject line, to ensure the email avoids spam filters and is read by the recipients, please propose it for our consideration.

## Website

We do not oppose establishing a "dedicated website with an easy-to-remember domain name," as Plaintiff proposes.  Doc. No. 132 at ECF p. 8.  We do object, however, to the two domain names you proposed (www.InteroCallsLawsuit.com and www.InteroDoNotCallClass.com).  Both names wrongly imply that Defendant made the calls at issue, when it is undisputed that Intero does not make these calls.  They also improperly suggest that Defendant is liable for the call attempts made by the dozens of real estate agents

at issue, another point that Defendant vehemently disputes.   We propose:
www.InteroClassAction.com.

We disagree with the conclusions you have drawn about the URLs, but we can agree to what you have proposed.


**Banner Advertisement**

We do not see how placing a banner on Defendant's website will assist in notifying class members.  According to Plaintiff, class members are persons who did not want to receive calls from Defendant's independent contractor sales associates.  Under that logic, it is highly unlikely class members would ever visit Defendant's website.  This proposal seems punitive and is an apparent attempt to harm Defendant's business reputation.  As a result, we do not agree to it.

We do not agree that this is punitive, and it was not intended to be so. Nonetheless, if we are able to reach agreement on the other items this is something we can agree to dispense with.

**Transparency**

We again reiterate that both Defendant and, when necessary, the Court, should have access to every piece of data or document provided to, or returned by the class administrator, as well as all data and information provided to, and received back from, TransUnion.  We believe this transparency is essential, because it is the Court's obligation to ensure that the notice plan comports with due process.  Similarly, Defendant must be able to raise concerns about the way the notice process is being handled and, if they cannot be resolved, bring them to the Court's attention.  As a result, we ask again that Plaintiff commit to providing Defendant with all data and documents that he ultimately provides to Mr. Azari and TransUnion, and any data or documents returned by them.

Thank you.

While we do not intend to withhold important information, we are unaware of any case in which the defendant has been permitted to intervene in the notice process to the degree that you are proposing.  Your request encompasses things like privileged communications with class members, as well as routine correspondence between us and our vendor over billing matters, website design, and general supervision of tasks. To comply, we would have to either copy you on these communications (and instruct the claims administrator to do the same for internal work), or gather and produce these documents on a rolling basis as well  as log class member communications. This is an unacceptable and unreasonable demand.

As we have previously told you, we have been designated as adequate class counsel, and we implicit in that is the court's view that we as class counsel can and will take all appropriate steps to provide notice to protect the class members' due process rights.  Moreover, as class counsel, we have to be mindful that the class, who already experienced one privacy violation from Intero, may not wish to have their lawyers turn over their current contact information to Intero.

On the other hand, while Intero has a due process interest in ensuring notice is adequately provided, that is the purpose of the meet and confer on notice and related motion practice. Meanwhile, as class counsel, we have a duty to the class to be mindful of the fact that Intero also has a competing interest in suppressing claims and opt-out rates, and preventing class members from speaking to counsel.  We are further concerned that the notice process is being used to mine for information that Intero will try to use to revisit settled debates over the zone of interest and ascertainability. Intero's abuse of this information could be used to the detriment of the class in that it delays resolution and drives up attorney costs.

Thus, we cannot allow Intero to participate in the day to day management of claims administration. And to the extent Intero is primarily seeking the information returned from Transunion after the reverse look up, it is not clear what legitimate interest Intero has in the current addresses of class members. While we will consider some summary reporting in the form of declarations by the claims administrator, Intero should specify what information it needs, when, and why and we will consider it in good faith. If there is something particular about the complete reverse look up results that Intero needs, please explain what that is and why, for example, a declaration that states, e.g., the number of addresses located, postcards sent, etc, would not be sufficient, and we will consider your request.

Thanks again for your comments. Despite our points of disagreement, we remain committed to trying to reach an agreeable class notice plan. Let me know if there is a time this week you would like to discuss anything in here.

Tomio B. Narita
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, California  94104
Direct line (415) 283.1010
Mobile (415) 519.6093
Main Line (415) 283.1000
Fax (415) 352.2625
email:  tnarita@snllp.com
www.snllp.com
www.fdcpadefense.blogspot.com

Exhibit 5

To: [Class Member email address]
From: Intero Real Estate ~~Calls~~ Class Action Notice Administrator
Subject: Notice of Class Action

_____

**A Court has directed that this Notice be mailed to you. You are not being sued.**
*This Notice may affect your legal rights. Please read it carefully.*

**Records obtained in a pending class action lawsuit titled *Chinitz v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF (N.D. Cal.), indicate that you may have received phone calls promoting goods or services of Intero Real Estate Services at a telephone number registered on the National Do Not Call Registry. As a result, you may be a member of the class in the case.**

**What is the lawsuit about?** The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant")~~, through its agents,~~ violated the Telephone Consumer Protection Act ("TCPA") because certain of its California sales associates ~~by calling the~~allegedly placed telephone calls to Plaintiff and ~~as many as~~ approximately 69,000 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. Generally, t~~T~~he TCPA prohibits persons from placing more than one telephone call within a 12-month span to a protected person when the telephone number is on the National Do Not Call Registry.  The TCPA authorizes~~entitles~~ ~~consumers~~ protected persons who prove they received ~~illegal~~ calls that violate the statute to recover money damages and get a court order stopping the calls. Intero maintains that it does not make telephone calls to solicit real estate business.  Intero denies that it did anything wrong and denies that it is liable for the alleged calls at issue in this lawsuit. **The Court has not decided who is right.** A trial is scheduled to begin on November~~April~~ 15, 2021.

**You received this notice because call records indicate you may be a Class Member.** The Court has ruled that this lawsuit is going forward as a class action. This means that the named Plaintiff in the case will act as the Class Representative, trying to get money damages and court ordered changes to Intero's ~~telemarketing~~ alleged practices for everyone who is a Class Member.

**You are a Class Member if:** your telephone number was on the National Do Not Call Registry for at least 31 days, and you received more than one ~~telemarketing~~ call within a 12-month period promoting Intero's goods or services on your non-business telephone phone number after September 13, 2014~~s~~ that was placed through Mojo Dialing Solutions, LLC ("Mojo") and appears in one of 35 Mojo account files identified by the Court, ~~from a specific list of real estate agents promoting Intero's goods or services after September 13, 2014~~. Only calls ~~from certain~~reflected in certain ~~agents using the~~ Mojo calling records ~~service~~ are part of this case. You may have received other calls from ~~other~~ Intero sales associates ~~agents~~ that are NOT currently covered by this case. **By inputting your phone number(s) into the inquiry form on the Case Website, you can find out whether you are a Class Member.**  Intero has reserved the right to challenge your membership in the Class at a later date.

**What are your options?** If you are a Class Member, you must choose whether to stay in the Class. If you stay in the Class, and money or benefits are obtained for the Class, you will be notified about ~~how you can~~ what you must do to share in any benefits for which you ~~are~~ may be eligible. You will be bound by all orders and judgments of the Court, whether favorable or not, and you won't be able to sue ~~the Defendants~~Intero for the calls and claims at issue in this case. If you want to stay in the Class, **YOU DO NOT HAVE TO DO ANYTHING NOW.**

To exclude yourself from the Class~~lawsuit~~, you must send a letter asking to be excluded or visit [website]. Instructions

for making this request can be found here at [website] or by calling toll-free XXX-XXX-XXXX. You must

mail your exclusion request postmarked by **[DATE]** or make your request at [website] by that same date. If you exclude yourself, you cannot get any money or benefits from this lawsuit, but you will not be bound by any orders or judgments in this case. If you do not request exclusion, you may (but do not have to) enter an appearance in the Court through your own counsel.

**More information** is available at [WEB ADDRESS] or by calling toll-free XXX-XXX-XXXX. The Court has appointed the law firms of **Tycko & Zavareei LLP** and **Reese LLP** as Class Counsel, the lawyers representing the Class.

**Neither Intero personnel nor Intero agents are authorized to discuss this case with you. Please do not call Intero about this case.**

Exhibit 6

Legal Notice                                                 Legal Notice

**What is the lawsuit about?** —The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant"), ~~through its agents,~~ violated the Telephone Consumer Protection Act ("TCPA") because certain of its California sales associates allegedly placed telephone calls to ~~by calling the~~ Plaintiff and ~~as many as~~ approximately 69,000 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. Generally, ~~t~~The TCPA prohibits persons from placing more than one telephone call within a 12-month span to protected persons if the number was registered ~~on~~ the National Do Not Call Registry. The TCPA ~~entitles~~ authorizes ~~consumers~~ protected persons who prove they received ~~illegal~~ calls that violate the statute to receive money and a court order to stop calls. Intero contends that it does not make telephone calls to solicit real estate business. Intero denies that it did anything wrong and denies that it is liable for the alleged calls at issue in this lawsuit. **The Court has not decided who is right.** A trial is scheduled to begin on ~~April~~ November 15, 2021.

**You received this notice because** ~~call records indicate~~ you may be a Class Member. The Court has ruled that this lawsuit can go forward as a class action. This means that the named Plaintiff (Ronald Chinitz) will act as the Class Representative, trying to get money damages and court ordered changes to Intero's ~~telemarketing~~ alleged practices for everyone who is a Class Member. **You are a Class Member if:** your telephone number was on the National Do Not Call Registry for at least 31 days, and you received more than ~~marketing~~ one call promoting Intero's goods or services ~~s~~ on your non-business telephone number after September 13, 2014 that was ~~placed through Mojo Dialing Solutions, LLC ("Mojo"), by a specific list of real estate agents promoting Intero's services after September 13, 2014 and~~ appears in the 35 Mojo account files identified by the Court. **By inputting your phone number into the website identified below, you can find out whether you are a Class Member.** Intero has reserved the right to challenge your membership.

**What are your options?** If you are a Class Member, you must choose whether to stay in the Class. If you stay in the Class, and money or benefits are obtained for the Class, you will be notified about ~~how you can~~ what you must do to share in any benefits for which you ~~are~~ may be eligible. You will be bound by all orders and judgments of the Court, whether favorable or not, and you won't be able to sue the Defendant for the calls and claims at issue in this case. If you want to stay in the Class, **YOU DO NOT HAVE TO DO ANYTHING NOW.**

To exclude yourself from the Class ~~lawsuit, you must send a letter asking to be excluded according to instructions provided at~~ please visit the website for instructions or call the toll-free number below. You must mail your exclusion request postmarked by **[DATE].** If you exclude yourself, you cannot get any money or benefits from this lawsuit, but you will not be bound by any orders or judgments in the case. If you do not request exclusion, you may (but do not have to) enter an appearance in the Court through your own counsel. The Court has appointed ~~two firms as Class Counsel, the lawyers for the Class—~~ **Tycko & Zavareei** LLP and **Reese LLP** as Class counsel. **Neither Intero personnel nor Intero agents are authorized to discuss this case with you. Please do not call Intero about the case.** For more information, visit or call:

[web address]   •   [toll-free number]

Chinitz v. Intero Real Estate Services
Class Action Administrator
PO Box XXXX
Portland, OR 97208-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO. 2882

**Court-Ordered Legal
Notice**
*This Notice may affect your
legal rights.*
*Please read it carefully.*

**Records obtained in this
lawsuit show that you may
have received calls promoting
<u>goods or services of</u> Intero
Real Estate Services at a
telephone number on the
National Do Not Call
Registry. As a result, you may
be a member of a pending
class action lawsuit.**

<u>Important Notice about a
Class Action Lawsuit</u>



**John Q.
Public 123
Locust St.
Anytown, OH 00000-0000**

Exhibit 7

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If your telephone number was on the National Do Not Call Registry and you received telephone calls promoting goods or services of Intero Real Estate Services, a pending class action lawsuit may affect your rights.

*A court authorized this notice. This is not a solicitation.*

- The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant"), through its agents, violated the Telephone Consumer Protection Act ("TCPA") because certain of its California sales associates allegedly placed telephone calls to by calling the Plaintiff and as many asapproximately 69,000 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. Generally, tThe TCPA prohibits persons from placing more than one telephone call within a 12-month span to protected persons who registered their telephone number on the National Do Not Call Registry.  The TCPA entitles consumers whoentitles protected persons to prove they received illegal calls that violated the statute to recover money damages and get a court order stopping the calls. Intero contends that it does not make telephone calls to solicit real estate business.  Intero denies all allegations of wrongdoing, including specifically that they violated the TCPA.  To the extent any calls at issue in this lawsuit are found to have violated the TCPA, Intero denies that it is liable for those calls.

- The current lawsuit affects those in the United States who received more than one call within a 12-month period at any time since September 13, 2014, made by or on behalf of Intero or one of its California sales associates to their non-business telephone numbers that (1) were on the National Do Not Call Registry ("NDNCR") for at least 31 days prior to the Intero calls, and (2) appear on a list of around 69,000 numbers called by certain agents sales associates through the Mojo Dialing Solutions, LLC, calling platform. Those included are "Class Members," defined more fully in the answer to Question 11, below.

- This notice is being provided to you in advance of a trial. Intero denies all allegations of wrongdoing, and no judge or jury has concluded that Intero did anything wrong. For this reason, there is no money available now, and there is no guarantee there ever will be. If you are a Class Member, however, you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit. Await the outcome. Give up the right to sue separately.** |
| | If you are a Class Member and do nothing, you may be entitled to money and/or benefits that may come from a trial or a settlement of the lawsuit. But you will never be able to sue Intero separately over the legal claims in this lawsuit and will be bound by any judgment. |

| | |
|---|---|
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it if any are ultimately awarded. Keep the right to sue separately.** |
| | If you ask to be excluded from the lawsuit and money or benefits are later awarded, you won't be eligible to share in that money or those benefits. But you will keep any rights to sue Intero separately over the legal claims in this lawsuit. |

- Your options are explained in this notice. To ask to be excluded, you must act before **[DATE]**.

- To prevail in the lawsuit, the Plaintiff must prove the claims against Intero at a trial scheduled to begin on ~~April~~ November 15, 2021. If you do not ask to be excluded and money or benefits are obtained from Intero, you will be notified about ~~how to receive your~~what you must do to share in any money or benefits for which you are eligible, if any.

<div style="background-color:gray;color:white;text-align:center;font-weight:bold">WHAT THIS NOTICE CONTAINS</div>

**BASIC INFORMATION** ......................................................................................... **PAGE 3**
   1.  Why was this notice issued?
   2.  What is a class action?
   3.  Is there any money available now?

**WHAT THE LAWSUIT IS ABOUT** ....................................................................... **PAGE 3**
   4.  What is this lawsuit about?
   5.  What is the Plaintiff asking for?
   6.  What does the Defendant say?
   7.  Has the Court decided who is right?

**WHO IS IN THE CLASS** ......................................................................................... **PAGE 4**
   8.  How do I know if I am part of this Class?
   9.  I'm still not sure if I am included in the Class.

**YOUR RIGHTS AND OPTIONS** ............................................................................ **PAGE 5**
   10.  What happens if I do nothing at all?
   11.  What happens if I exclude myself?
   12.  How do I request to be excluded?

**THE LAWYERS REPRESENTING THE CLASS** ................................................... **PAGE 5**
   13.  Do I have a lawyer in this case?
   14.  How will the Class Counsel be paid?
   15.  May I get my own lawyer?

**A TRIAL** ................................................................................................................ **PAGE 6**
   16.  How and when will the Court decide who is right?
   17.  Do I have to come to the trial?
   18.  Will I get money after the trial?

**GETTING MORE INFORMATION** ......................................................................... **PAGE 6**
   19.  Where can I get more information?

## BASIC INFORMATION

| 1. Why was this notice issued? |
| --- |

A Court has authorized this Notice to let you know that the Court has established (or "certified") a class action lawsuit that may affect you. You have legal rights and options that you may exercise, as explained in this Notice.

Judge Labson Freeman of the United States District Court for the Northern District of California (the "Court"), is currently overseeing the case. The case is known as *Chinitz v. Intero Real Estate Services,* Case No. 5:18-cv-05623-BLF (N.D. Cal.). The person who sued is called the Plaintiff. The company the Plaintiff is suing, Intero, is called the Defendant.

| 2. What is a class action? |
| --- |

In a class action, a person called the "Class Representative" (in this case, Ronald Chinitz) sues on behalf of a group (or groups) of people who have similar claims. Together, the Representative and others with similar claims are all "Class Members" and are all part of the same "Class." One Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

The Court decided that certain~~the~~ claims in this lawsuit can proceed as a class action. More information about why the Court is allowing this claim to proceed as a class action is in the Court's Order Granting Plaintiff's Motion for Class Certification, which you may view at [WEB ADDRESS].

| 3. Is there any money available now? |
| --- |

No money or benefits are available now because the Court has not decided whether Intero did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits will ever be obtained. If money or benefits become available, Class Members may have to take other steps, such as submitting a claim form or provide other evidence, in order to ~~get their~~determine whether they are eligible to recover any money or benefits ~~shares~~. If so, you will be notified of any additional steps you must take. You can stay informed of the progress of this case by visiting the website [WEB ADDRESS] or by calling [TOLL FREE NUMBER].

## WHAT THE LAWSUIT IS ABOUT

| 4. What is this lawsuit about? |
| --- |

In the Class Action Complaint (available at the website), Plaintiff claims that he and others received multiple telemarketing sales calls made by or on behalf of Intero's California sales associates promoting Intero's services, despite their telephone numbers being on the National Do Not Call Registry.

The lawsuit claims that, because of these calls, Intero violated the Federal Telephone Consumer Protection Action, 47 U.S.C. § 227 ("TCPA"). Generally speaking, t~~T~~he TCPA prohibits unwanted telemarketing calls to protected persons ~~people~~ placed to phone numbers registered ~~on~~ the National Do Not Call Registry and provides for monetary damages for each call made in violation of the statute.

| 5. What is the Plaintiff asking for? |
| --- |

The Plaintiff is asking the Court to award each Class Member monetary damages of $500 per violative telemarketing call received regarding Intero after September 13, 2014. If Plaintiff is able to show that Intero "willfully" violated the TCPA and is liable for its agents' calls, he will ask for up to $1,500 in monetary damages for each violative telemarketing call. Plaintiff is also asking the Court to enter an order prohibiting Intero from violating the TCPA in the future.

More information about the lawsuit is in the Class Action Complaint, which you may view at [WEB ADDRESS].

## 6. What does the Defendant say?

Intero has denied all of the Plaintiff's allegations and maintains it did nothing wrong and/or illegal and is not obligated to pay any money to any Class Members.

More information about what Intero says is in Intero's Answer and Defenses to Plaintiff's Class Action Complaint, which you may view at [WEB ADDRESS].

## 7. Has the Court decided who is right?

No. The Court has not decided whether the Plaintiff or the Defendant is right. By certifying the Classes and issuing this Notice, the Court is not suggesting that the Plaintiff will win or lose this case. Unless the case settles, Plaintiff must prove the Class's claims at a trial or through legal motions to recover money.

# WHO IS IN THE CLASS

## 8. How do I know if I am part of this Class?

The Court has decided that everyone who fits the following description is a Class Member:

> All persons in the United States who: (a) received more than one call made on behalf of Intero by, or on behalf of, one of Intero's California sales associates; (b) promoting Intero's goods or services; (c) that was placed through the dialing platform provided by Mojo Dialing Solutions, Inc., the calling records for which appear in one of 35 account files, identified in Appendix A; (d) in a 12-month period; (e) on their non-business telephone lines; (f) whose telephone number(s) were on the NDNCR for at least 31 days; (g) at any time since September 13, 2014.~~All persons in the United States who: (a) received more than one call made on behalf of Intero by, or on behalf of, one of Intero's California sales associates; (b) promoting Intero's goods or services; (c) that was placed through the dialing platform provided by Mojo Dialing Solutions, Inc., the calling records for which appear in one of 35 account files; (d) in a 12-month period; (e) on their non-business telephone lines; (f) whose telephone number(s) were on the NDNCR for at least 31 days; (g) at any time since September 13, 2014.~~

**You are a Class Member if**: you received more than one call within a 12-month period at any time after September 13, 2014, made by or on behalf of Intero to your non-business telephone number that (1) was on the National Do Not Call Registry ("NDNCR") for at least 31 days prior to the ~~Intero~~ calls, and (2) appears on a list of 69,000 telephone numbers called by or on behalf of certain Intero ~~agents~~ sale associates through the Mojo Dialing Solutions, Inc. ("Mojo")~~,~~ calling platform.

If you were identified based upon your telephone number as it appeared in ~~Intero's~~ the Mojo call records, you likely have received an email or postcard in the mail notifying you of this class action. If you did not receive an email or postcard in the mail, you may still be part of the Class if your telephone number appears in the Mojo call records.

You can check whether you and your telephone number(s) are part of the Class by inputting your phone number(s) on the Case Website at [WEB ADDRESS]. Intero has reserved the right to challenge your class membership at a later date.

**Note: Only calls made by certain Intero agents using the Mojo dialing service are included in this case.** You may have been called by other Intero agents or by Intero ~~agents~~ sales associates who did not use Mojo to call you; those calls are not presently part of this class action. If you have questions, please contact Class Counsel using the Case Website contact form or at 1-xxx-xxx-xxxx.

## 9. I'm still not sure if I am included in the Class.

If you are still not sure if you are included in the Class, you can email the Class Action Administrator at [NOTICE ADMIN EMAIL] or call [TOLL FREE NUMBER].

You can also receive free help by calling the lawyers in this case at 1-xxx-xxx-xxxx or by inputting your contact information in the inquiry form available at the Case Website at [WEB ADDRESS].

**Intero personnel, Intero agents, and Intero counsel are NOT authorized to discuss this case with you. Please do NOT call Intero about this case. Please direct all inquiries to Class Counsel.**

# YOUR RIGHTS AND OPTIONS

If you are a Class Member, you must decide whether to stay in the Class or whether to exclude yourself before a possible trial. You have to decide this no later than **[DATE]**.

## 10. What happens if I do nothing at all?

If you are a Class Member and do nothing, you will stay in the Class. If you stay in, you will be legally bound by all the decisions that the Court makes. If you stay in the Class and the Plaintiff obtains money or benefits, either as a result of trial or settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Regardless of the outcome of the lawsuit, however, if you do nothing, and thereby remain in the Class, you will never be able to sue (or continue to sue) Intero about the same legal claims that are the subject of this case.

## 11. What happens if I exclude myself?

If you exclude yourself from the Class—sometimes called "opting out" of the Class—you won't get any money or benefits from this lawsuit if any are awarded or obtained as a result of the trial, legal motions, or any settlement (that may or may not be reached) between Intero and the Plaintiff. However, you will be able to separately start your own lawsuit against, or continue to separately sue, Intero for the calls at issue in this case. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you already have started or wish to start your own lawsuit against Intero for the same types of calls made during the same time period and want to continue with it, you need to ask to be excluded from the Class. If you start your own lawsuit against Intero after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims.

## 12. How do I request to be excluded?

To exclude yourself from the Class, you must send a letter with the following information:
- Your name and address;
- The phone number(s) that you received Intero calls at;
- A statement that you wish to be excluded from the Class in *Chinitz v. Intero Real Estate Services*, Case No. 5:18-cv-05623-BLF (N.D. Cal.); and
- Your signature.

You may also visit [website] and follow the instructions on the website to exclude yourself. You must mail your exclusion request postmarked by **[DATE]**, to:

<div align="center">

Chinitz v. Intero Real Estate Exclusions
P.O. Box XXXX
Portland, OR 97208-XXXX

</div>

## THE LAWYERS REPRESENTING THE CLASS

### 13. Do I have a lawyer in this case?

Yes. The Court appointed the law firms of Tycko & Zavareei LLP and Reese LLP to represent you and all Class Members in this case. They are called "Class Counsel." They are experienced in handling similar class action cases.

You do not need to hire your own lawyer because Class Counsel is working on your behalf. You do not have to pay Class Counsel out of your own pocket.

You may seek the advice and guidance of your own lawyer, if you wish, at your own expense.

You can contact Class Counsel by filling out a contact form on the Case Website at [WEB ADDRESS] or by calling 1-xxx-xxx-xxxx.

### 14. How will the Class Counsel be paid?

If Class Counsel obtains money or benefits for the Class, they may ask the Court for attorneys' fees and expenses. You will not have to pay these fees and expenses out of your own pocket. If the Court grants Class Counsel's request, the fees and expenses would generally be deducted from any money obtained for the Class or paid separately by Intero.

### 15. May I get my own lawyer?

If you are in the Class, you do not need to hire your own lawyer because Class Counsel is working on your behalf. But if you want your own lawyer, you are entitled to retain one at your own expense.

## A TRIAL

### 16. How and when will the Court decide who is right?

If the case is not decided through legal motions or settled, Class Counsel will have to prove Plaintiff's claims at a trial scheduled to begin on ~~November~~April 15, 2021. During the trial, the judge and/or jury will hear evidence in order to determine whether the Plaintiff or the Defendant is right about the claims in the lawsuit. There is no guarantee that the Plaintiff will win or obtain any money or benefits for the Class.

### 17. Do I have to come to the trial?

You do not need to attend the trial. Class Counsel will present the case for Plaintiff and the Class, and Intero will present its defenses. You and/or your own lawyer are welcome to attend at your own expense. If you are interested in attending, please check the website or call the toll-free number and ask to be kept informed of the trial schedule.

### 18. Will I get money after the trial?

If the Plaintiff obtains money or benefits for the Class as a result of trial or settlement, you will be notified about how to submit a claim for a portion of the benefits. We do not know how long this will take. Information will be posted on the website [WEB ADDRESS] as it becomes available. You can access the website whether you stay in the lawsuit or exclude yourself.

## GETTING MORE INFORMATION

**19. Where can I get more information?**

The Case Website at [WEB ADDRESS] contains several court documents that provide additional information about this case, including the Court's Order Granting Plaintiff's Motion for Class Certification, the Class Action Complaint filed by the Plaintiff, and Intero's Answer and Defenses to Plaintiff's Class Action Complaint. This website will be updated with the most current information about the lawsuit as it becomes available.

At the website, you may insert your contact information and make an inquiry to Class Counsel.

You may also call toll free at [TOLL FREE NUMBER] or write to Chinitz v. Intero Class Action Administrator, PO Box XXXX, Portland, OR 97208-XXXX.

You may call Class Counsel at 1-xxx-xxx-xxxx, if you have any questions. Before doing so, however, please read this full Notice carefully.

**Intero personnel, Intero agents, and Intero counsel are NOT authorized to discuss this case with you. Please do NOT call Intero about this case. Please direct all inquiries to Class Counsel.**