Sabita J. Soneji (State Bar No. 224262)
ssoneji@tzlegal.com
V Chai Oliver Prentice (State Bar No. 309807)
vprentice@tzlegal.com
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
REESE LLP
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Hassan A. Zavareei (State Bar No. 181547)
hzavareei@tzlegal.com
Kristen G. Simplicio (State Bar No. 263291)
ksimplicio@tzlegal.com
Mark A. Clifford (admitted *pro hac vice*)
mclifford@tzlegal.com
TYCKO & ZAVAREEI LLP
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiff Ronald Chinitz and the Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| RONALD CHINITZ, *individually, and on behalf of a class of similarly situated persons*, <br><br> Plaintiff, <br><br> v. <br><br> INTERO REAL ESTATE SERVICES, <br><br> Defendant. | Case No. 5:18-cv-05623-BLF <br><br> **PLAINTIFF RONALD CHINITZ'S REPLY IN SUPPORT OF MOTION FOR APPROVAL OF CLASS NOTICE PLAN FOR RULE 23(b)(3) NATIONAL DNC CLASS** <br><br> Date: November 19, 2020 <br> Time: 9:00 AM <br> Place: Courtroom 3, 5th Floor <br> Judge: Honorable Beth Labson Freeman <br><br> Complaint Filed: September 13, 2018 <br> Trial Date: April 5, 2021 |

# TABLE OF CONTENTS

I.    Introduction ................................................................................................................ 1

II.   Argument ..................................................................................................................... 2

    A.    The Notice Administrator's testimony is appropriately considered as part of this motion. ................................................................................................ 2

    B.    Intero concedes indirect notice is appropriate here, rendering its piecemeal attacks on direct notice irrelevant. ........................................... 3

    C.    The best notice practicable is to direct notice to people associated with the numbers Intero agents improperly called. ............................... 5

    D.    The Reverse-Lookup process is a standard tool used by claims administrators and the best notice practicable under the circumstances. ........................ 7

    E.    Due process and "best practicable" notice do not require any confirmation of receipt. ..................................................................... 11

    F.    Intero is improperly attempting to use the notice process to reopen discovery. .......................................................................................... 12

    G.    The Court should reject many of Intero's revisions to the text of the notice. ............................................................................................ 14

III.  Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor,*

    521 U.S. 591 (1997) ........................................................................................................ 12

*Briseno v. ConAgra Foods, Inc.,*

    844 F.3d 1121 (9th Cir. 2017) ...................................................................................... 6, 7

*Brown v. 22nd Dist. Agric. Ass'n,*

    No. 15-CV-2578-DHB, 2016 WL 7242092 (S.D. Cal. Dec. 13, 2016) ............................ 14

*Edwards v. Nat'l Milk Producers Fed'n,*

    No. 11-cv-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ............................ 4

*Eisen v. Carlisle & Jacquelin,*

    417 U.S. 156 (1974) ........................................................................................................ 12

*Fitzhenry-Russell v. Coca-Cola Co.,*

    No. 5:17-CV-00603-EJD, 2019 WL 6111378 (N.D. Cal. June 13, 2019) ........................ 14

*Fleshman v. Volkswagen, AG,*

    139 S. Ct. 2645, 204 L. Ed. 2d 300 (2019) .................................................................... 14

*Gergetz v. Telenav, Inc.,*

    No. 16-cv-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ............................ 3

*Hashw v. Dep't Stores Nat'l Bank,*

    182 F. Supp. 3d 935 (D. Minn. 2016) ............................................................................ 4

*In re Agent Orange Prod. Liab. Litig. MDL No. 381,*

    818 F.2d 145 (2d Cir. 1987) .......................................................................................... 11

*In re Domestic Airline Travel Antitrust Litig.,*

    322 F. Supp. 3d 64 (D.D.C. 2018) ................................................................................ 12

*In re Merrill Lynch Tyco Research Sec. Litig.,*

1   249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................................. 4

2   *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

3   895 F.3d 597 (9th Cir. 2018) ................................................................................... 14

4   *Juris v. Inamed Corp.*,

5   685 F.3d 1294 (11th Cir. 2012) .............................................................................. 12

6   *Keim v. ADF Midatlantic, LLC*,

7   No. 12-80577-CIV, 2019 WL 8262656 (S.D. Fla. Feb. 1, 2019) ............................. 7

8   *Knapper v. Cox Commc'ns, Inc.*,

9   329 F.R.D. 238 (D. Ariz. 2019) ............................................................................ 6, 8

10  *Larson v. Harman-Mgmt. Corp.*,

11  No. 116CV00219DADSKO, 2019 WL 7038399 (E.D. Cal. Dec. 20, 2019) ............. 8

12  *Macarz v. Transworld Sys.*, Inc.,

13  201 F.R.D. 54 (D. Conn. 2001) .............................................................................. 10

14  *Makaeff v. Trump Univ., LLC*,

15  No. 10-CV-0940-GPC-WVG, 2015 WL 5638192 (S.D. Cal. Sept. 21, 2015) ......... 15

16  *Mohamed v. Off Lease Only, Inc.*,

17  No. 15-CV-23352-CIV, 2018 WL 398326 (S.D. Fla. Jan. 12, 2018) ..................... 10

18  *Silber v. Mabon*,

19  18 F.3d 1449 (9th Cir. 1994) .................................................................................. 12

20  *Stuart v. State Farm Fire & Cas. Co.*,

21  332 F.R.D. 293 (W.D. Ark. 2019) ..................................................................... 14, 15

22  *Thomas v. Baca*,

23  No. CV 04-08448 DDP SHX, 2012 WL 994090 (C.D. Cal. Mar. 22, 2012) ......... 10

24  *Yeoman v. Ikea U.S. W., Inc.*,

25  No. 11CV701 WQH BGS, 2013 WL 5944245 (S.D. Cal. Nov. 5, 2013) ............... 10

**Rules**

FED. R. CIV. P. 23(c)(2)(B) ................................................................................................................ 1, 4

## I.      Introduction

In the opening brief in support of this Rule 23(c)(2) motion, Plaintiff Ronald Chinitz and Class Counsel showed that Mr. Chinitz's proposed class notice plan fully satisfies Federal Rule of Civil Procedure 23(c)(2), including the requirement that notice be "the best notice that is practicable under the circumstances." Indeed, Mr. Chinitz's notice plan is more than sufficient under Rule 23(c)(2), as it uses a combination of robust direct and indirect notice, which will be disseminated by a notice administrator experienced in using tools such as reverse-lookups and online advertising to ensure a reach of at least 70 percent of the Class, in accordance with the benchmark most courts use.

Intero's position is not that there is a better, more practicable notice plan, but rather that the notice plan offered is not perfect and therefore should be rejected entirely. But the standard for class notice is not perfection. Rather, all that is required is that the notice be "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). And to ensure class notice comports with this standard, since filing this motion two months ago, Class Counsel have endeavored to meet and confer with Intero to try to address its concerns and avoid a contested motion. Mr. Chinitz sought Intero's input, giving it two extensions of the deadline for its opposition, and responded to extensive lists of Intero's questions and concerns, but to no avail. There, as it does here, Intero raised hypothetical arguments about how notice gets delivered to everyone that might have standing to bring a claim, demanding that notice take into account hypothetical scenarios such as the possibility a babysitter answered the unwanted call, but then taking the conflicting position that direct notice must also be given only to those people who are eligible to participate in recovery. Of course, it is not practicable to account for every hypothetical, nor tailor notice precisely to the person who answered the telephone. Instead, what is practicable is the solution proposed here: direct notice to the households of everyone that can be identified using reverse lookup and the data the parties already have, and publication notice to capture the rest.

Intero's other arguments do not disturb Mr. Chinitz's showing that the notice plan offered is

the best practicable. Instead, Intero nitpicks around the edge of the plan, raising minor disputes over things like whether email read receipts should be used and introducing questionable testimony to challenge the use of reverse lookups. But to the extent any one method is imperfect, that is addressed through the robust indirect notice plan – a plan that Intero does not challenge for its sufficiency.

By refusing to engage with the notice plan as a whole, it appears that Intero is attempting a third bite at the apple on class certification. Having lost both its motion for reconsideration and its 23(f) petition, Intero is no doubt running out of options to avoid a merits determination on class liability and damages. Thus, Intero's opposition does not help identify the best way to deliver notice to the class but, instead, seeks to avoid the necessary step of providing best practicable notice of class certification. And as a backup plan, Intero has sought to use class notice as a fishing expedition to obtain additional discovery after the deadline to do so. For example, it has demanded it be given the results of the reverse lookup (and, if its request is granted, the email read receipts), and despite offering to provide this data on the condition it be used for notice and claims administration only, Intero seeks production without any such restriction, revealing its intend to introduce this information at summary judgment and trial, and perhaps in the form of a new, unauthorized expert report. Intero's efforts to use the class notice process as a way to litigate the merits should be rejected.

Finally, Mr. Chinitz understood this Court's standing order permitting 25 pages for motions under Rule 23 to apply to this Rule 23(c)(2) motion. That said, if this Court deems the motion to be one subject to the Court's 10-10-5 rule, Mr. Chinitz respectfully requests leave to submit this long brief. The issues of class notice and due process warrant a full briefing of the issues, and to ensure notice is delivered timely, a more fulsome discussion now may avoid the need for supplemental briefing later.

## II.    Argument

### A.    The Notice Administrator's Testimony Is Appropriately Part of This Motion.

To administer class notice, Class Counsel retained Epiq Class Action & Claims Solutions, Inc. ("Notice Administrator"). The notice plan they proposed was detailed in the Declaration of Cameron

Azari, the director of the business unit at the company that handles notice administration. ECF No. 131-1 ("Azari Decl."). Intero argues key portions of this declaration must be stricken because Mr. Chinitz did not disclose Mr. Azari's identity before the January 17, 2020, deadline to disclose experts.

Intero's argument is wrong, however, because the deadline on the scheduling order only required Mr. Chinitz to disclose the experts that he intends to "use **at trial** to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2) (emphasis added). Mr. Azari will not be introduced at trial; his role here is for purposes of administering class notice, not testifying to a jury as to any elements of the claims. And Intero cites no case requiring that vendors retained for the sole purpose of notice administration are "experts" within the meaning of Rule 26. In any event, Mr. Azari is exceptionally qualified, with over 20 years of experience in the field and service as a notice expert in many cases, and the Notice Administrator employing Mr. Azari has administered notice in 450 lawsuits, including 40 multidistrict litigations. Azari Decl. ¶¶ 4-8.

Intero also argues in an undeveloped and conclusory fashion that paragraphs 10 and 11 of Mr. Azari's declaration contain hearsay and lack foundation, and that Mr. Azari is not competent to testify as to the information therein. In those paragraphs, Mr. Azari testifies he "understands" there are 69,000 numbers called that are likely residential given the nature of Intero's business operations and that Class Counsel has some data on these documents. Azari Decl. ¶¶ 10-11. These facts are well-established; Intero is in possession of documentary evidence that supports these facts; and Intero does not argue that anything contained in Mr. Azari's declaration is incorrect.

### B. Intero Concedes Indirect Notice Is Appropriate Here, Rendering Its Piecemeal Attacks on Direct Notice Irrelevant.

To ensure a notice "reach" that comports with due process, most courts use a 70% benchmark. *See, e.g.*, *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, at *4 (N.D. Cal. Sept. 27, 2018) (finding notice plan administered by Mr. Azari that was estimated to reach 70 percent of class to comport with due process); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL

3623734, at *4 (N.D. Cal. June 26, 2017) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."). Here, the Notice Administrator designed a multi-faceted plan that includes different forms of direct and indirect notice to reach a minimum of 70 percent of the Class. Intero raises no concern with Mr. Chinitz's use of indirect notice via online advertising and a media plan, Azari Decl. ¶¶ 26-31, to ensure a broad reach, conceding this part of the plan is appropriate. (Mr. Chinitz notes that Intero objects to one piece of the online notice plan – the publication of notice on Intero's website. Based on conversations with Intero and the Notice Administrator, Mr. Chinitz agrees such notice likely would not meaningfully increase reach to class members and will withdraw that part of the proposal.)

Instead of acknowledging the indirect notice plan, Intero challenges notice by pointing out potential minor problems with direct notice, arguing that because some components of that half of the plan are not perfect, the entire plan must fail. But in determining whether to approve a notice plan, the standard is not perfection but, rather, whether the proposal is "the best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B); *see also In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 946 (D. Minn. 2016) (same). Here, because of the multi-faceted nature of the plan, any arguable shortcoming with one of the direct notice components is resolved by the other aspects of direct notice, as well as the plan for indirect notice.

As set forth in the opening brief, there are 68,918 numbers that received calls in violation of the TCPA and form the Class. For many of those numbers, Mr. Chinitz is able to provide the Notice Administrator additional information, including names, addresses, and/or email addresses. Azari Decl. ¶¶ 11. To send direct notice, the Notice Administrator will use TransUnion to perform a reverse lookup on these numbers to identify the most likely current mailing addresses and where available, email

addresses. *Id.* at ¶ 15. Emails will be sent to those people for whom an email address can be identified, and postcard notice will be sent to anyone whose email is returned or cannot be located. *Id.* at ¶¶ 15-16. Where multiple names, addresses, or email addresses are located for a given number, the Notice Administrator will err on the side of caution and send notice to extra names as appropriate. Supplemental Declaration of Cameron Azari ("Supp. Azari Decl."), ¶ 4. Indirect notice via a media plan and online advertising (banner ads, social media placement, and sponsored search), Azari Decl. ¶ 13, will fill in gaps to facilitate the delivery of notice to those whose information may not have been found or to address the off chance someone overlooked an email.

While Intero centers its attacks on direct notice, Mr. Chinitz does not assert that direct notice will guarantee delivery to every member of the Class. Rather, Mr. Chinitz asserts that indirect notice cures any purported problems with any one piece of the direct notice plan. As Intero offers no reason why this is not actually the case, all of Intero's attacks on direct notice should be rejected.

**C.    The Best Notice Practicable Is Direct Notice to People Associated with the Numbers Intero Agents Improperly Called.**

The direct notice component is reasonable and simple: direct notice will be sent to people associated with the telephone numbers to which Intero agents placed the violative calls. Intero over-complicates the issue, claiming the notice plan fails to account for the need to give notice to "residential telephone subscribers" and all people in the "zone of interest." Intero misstates the facts and law.

Intero argued at class certification that only residential telephone subscribers who placed numbers on the National Do Not Call Registry ("NDNCR") have standing to sue under the TCPA and may be properly be included in a class, an argument rejected by this Court because the TCPA provides protections to people in a broader zone of interest. ECF No. 126 at 25; ECF No. 138 at 7. In other words, a TCPA class may be certified without evidence that every call at issue was placed to a person who is both the subscriber and the person who placed the number on the NDNCR. Rather, a user of a residential line, such as a person on a family cell phone plan, has been injured under the TCPA if a

call is placed to them, even if that user was not also the same person who placed the number on the NDNCR.

Intero now argues that for any given call at issue in this case, because subscribers, users, and a limitless number of hypothetical visitors to the home might have standing to bring a lawsuit against it for that one call, the Notice Plan must set forth how all of these people will be notified. But there is no requirement that every class member be identified before delivering class notice; instead, under Ninth Circuit law, the determination of who is entitled to recover is handled at the claims administration stage. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (holding that concerns about people falsely claiming to be in the class are appropriately handled during claims administration, "after a liability determination has already been made").

The simple fact is that Intero called 68,918 likely residential telephone numbers that form the "Class List," and the Notice Plan is designed to reach the people associated with these numbers at the time the calls were made. Notice will be addressed to the "household" to communicate an intent to share the information, and publication notice will be robust. Supp. Azari Decl. ¶ 5; Azari Decl. ¶¶ 26-31. While it might be that in some instances a subscriber receives the notice when another user received the call, common sense suggests that subscribers and the people whom they allow to use their phone communicate to one another and are most often people in the same household or family. *Cf. Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019) ("[S]ubscribers of a group calling plan can, or easily could, generally identify the names and addresses of the users on their own group calling plan" and are in fact in the "best position possible to identify the phone's 'user,' if it is not the subscriber."). Where the reverse lookup generates multiple names and addresses that are likely associated with the number, direct notice will be delivered to both, ensuring notice to a broader range of potential victims, and the person entitled to recovery can be determined during claims administration. *Cf. Briseno*, 844 F.3d at 1132. And indirect notice will be administered. The direct and indirect parts of the plan work together to be the most practical under the circumstances

Intero cites *Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2019 WL 8262656 (S.D. Fla. Feb. 1, 2019), in support of its claim that a TCPA notice plan must identify non-subscribers. But there, the court required the plaintiff to submit a revised notice plan because the court had held in its order certifying the class, that to satisfy an administrative feasibility requirement, the plaintiff would need to "ask the subscriber of the group calling plan to provide the name and address of the non-subscribing user, if any, of the telephone number in question." *Id.* at *3. *Keim* is inapposite because there is no similar administrative feasibility requirement here in the Ninth Circuit. *See generally Briseno*, 844 F.3d 1121. Moreover, in *Keim*, there was no discussion of any indirect notice nor does the record reflect that the plaintiffs proposed to undertake a broader approach to direct notice, as Mr. Chinitz does here.

**D.    The Reverse-Lookup Process Is a Standard Tool Used by Notice and Claims Administrators and the Best Notice Practicable Under the Circumstances.**

Intero next takes issue with the reverse-lookup process, arguing that it "will not work," Opp. at 6, but it bases its argument on rhetorical questions about the use of reverse lookup data and the Mojo contact records, irrelevant speculation about testimony in Anya Verkhovskaya's expert report (which is not before this Court on this motion), and incomplete testimony from an individual who has purported to test the reverse-look up process. The Court should reject Intero's arguments; as set out in Plaintiff's opening brief, the reverse-lookup process is a standard tool used by notice and claims administrators and supports a Notice Plan that will provide the best notice practicable under the circumstances.

Intero notes that the list of phone numbers is derived from data from third-party Mojo Dialing Solutions, LLC ("Mojo"); those lists include names associated with the numbers, as well as some contact information. In her expert report, Ms. Verkhovskaya – herself a notice and claims administrator – testified that she did not doubt the accuracy of the names and that the reverse lookup process was generally reliable. Pointing to that testimony, Intero contends there will be limitless uncertainty and confusion caused if the Notice Administrator conducts a reverse-lookup and identifies different names and addresses. Intero's position is unnecessarily alarmist.

As discussed in the opening brief, if any reverse lookups return contact information different from the Mojo contact records, notice will be provided to the individuals and addresses identified through the reverse lookup process. *See* Mot. at 4; Supp. Azari Decl. ¶ 4. If the process reveals two different names and addresses for a given number and both appear to be reliable, notice will be sent to both. Supp. Azari Decl. ¶ 4. Names and physical addresses in the Mojo records only serve an auxiliary purpose – either to help confirm the identity of a class member if the contact name in the Mojo data matches a name found in the reverse lookup process, or to send individual notice in the event that no contact information can be found in the reverse lookup process. Additionally, if a Mojo contact record includes any email addresses, email notice will be provided to emails in the Mojo contact records in addition to emails or physical addresses identified through the reverse lookup process. Mot. at 5 n.2. Azari Decl. ¶ 16; Supp. Azari Decl. ¶ 4. In short, Mr. Chinitz will rely on the results of the reverse lookup in the first instance, and only utilize Mojo contact data as a secondary tool.

Intero sets out a strawman argument based on hypothetical discrepancies between reverse lookup results and the Mojo contact data. That some, or even many, names identified through a reverse lookup process may not match the names in Mojo contact records does not cast doubt on the sufficiency of the notice because the Notice Administrator will provide notice according to the industry standard, *i.e.*, to the individuals and addresses returned from the reverse lookup process. Indeed, courts routinely approve notice plans that include a reverse-lookup component. *See, e.g.*, *Larson v. Harman-Mgmt. Corp.*, No. 116CV00219DADSKO, 2019 WL 7038399, at *11 (E.D. Cal. Dec. 20, 2019) (approving settlement notice where "settlement administrator [proposed] to review the A&W Text Club's messaging records and then 'perform a reverse lookup of class members' current or last-known address information, and [ ] then cross-reference this information with the United States Postal Services' change of address database to confirm its accuracy.'"); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2018 WL 3108991, at *5 (N.D. Cal. June 25, 2018) (similar); *see also Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019) (recognizing reverse lookup process as "the industry standard"

1    and "commonly used in TCPA cases").

2          Furthermore, the alleged differences between the Mojo contact data and reverse lookup data

3    are based on questionable evidence. In particular, Intero introduces a declaration from someone who

4    conducted a reverse lookup on a purportedly "random sample" of 385 of the 68,918 numbers, arguing

5    that only 29.3 percent of the names were substantially similar to the Mojo call records. Opp. at 7.

6    Intero's vendor's description in the supporting declaration gives reason to doubt the methodology. For

7    example, she states that if the reverse lookup returned a surname that matched with the name on the

8    Mojo record, but the first names differed, such results were not considered to be "substantially similar."

9    ECF No. 142-1, Declaration of Jennifer Smith ("Smith Decl."), ¶ 16. It is reasonable to conclude that

10   a phone number associated with Robert Johnson in 2018 and Jane Johnson in 2020 belongs to the

11   Johnson family, and Plaintiff's proposed notice to Robert (or Jane) Johnson and Household is the best

12   practicable way of providing notice to the class member. While there may be some limitations to the

13   reverse-lookup databases, Intero provides no basis to reject this industry-standard method for notice

14   in TCPA class actions.

15         Intero's vendor's declaration offers no evidence suggesting that reverse-lookup is not

16   practicable in this instance. Because the declaration includes none of the data or results obtained from

17   the reverse-lookup process, Class Counsel requested that Intero provide additional data. Declaration

18   of Hassan Zavareei ("Zavareei Decl."), ¶ 4, Ex. A. A week later, and only a few days before this brief

19   was due, Intero responded by imposing the nonsensical condition that such information would only be

20   made available if Mr. Chinitz ran a similar sample and produced the results to it. *Id.* Thus, Mr. Chinitz

21   does not know on which numbers Intero's vendor ran the reverse-lookup or how she randomly sampled

22   them. And while Intero's vendor anecdotally cites four examples of cases where neither the first name

23   nor the last name matched and three where the Mojo records did not include a name whereas the

24   reverse lookup did, she does not state how many numbers in her sample generated such a result. Smith

25   Decl. ¶¶ 18-19. Mr. Chinitz does not dispute that the reverse lookup process might generate some

results that conflict with the Mojo data, however. That is precisely why he has proposed to give notice to multiple households where they appear, and why he proposes to supplement with publication notice. Accordingly, the Smith Declaration should be stricken, as it lacks foundation and evidentiary support.

Intero next takes issue with Mr. Chinitz's plan to send direct notice to more than one person associated with the telephone number, claiming it is overly broad. But courts allow "slightly over-inclusive notice where the data included the universe of class members." *Mohamed v. Off Lease Only, Inc.*, No. 15-CV-23352-CIV, 2018 WL 398326, at *2 & n.4 (S.D. Fla. Jan. 12, 2018) (citing *Macarz v. Transworld Sys.*, Inc., 201 F.R.D. 54, 61 (D. Conn. 2001)) (approving class notice in TCPA case based on reverse lookups despite defendant's argument that notice was over-inclusive). And the cases Intero cites arguing that overly broad direct notice is improper are inapposite. For example, *Thomas v. Baca*, No. CV 04-08448 DDP SHX, 2012 WL 994090, at *2 (C.D. Cal. Mar. 22, 2012)—a pre-*Briseno* decision on a motion to decertify the class which did not consider any proposed notice plan—underscores that Intero's arguments are not relevant to the "best practicable" notice but are, instead, attempts to reassert class certification arguments already twice rejected by this Court. In that case, the court decertified a damages class where it could not be determined which prisoners had their constitutional rights violated by being forced to sleep on the floor. *Id.* at 2. *Thomas* is unlike this case because there were **no** records documenting which prisoners slept on the floor and thus no records capable of identifying class members, nor the damages each suffered. *Id.* Here, on the other hand, the parties have the Class List identifying the 68,918 telephone numbers called, and Plaintiff has further identified the method for identifying and notifying class members using well-accepted reverse lookup processes (with additional back-stop data in the form of Mojo contact records).

Intero's other cited cases involve situations where the proposed pool for direct notice was many times the size of the actual class and not targeted to actual potential class members. For example, in *Yeoman v. Ikea U.S. W., Inc.*, No. 11CV701 WQH BGS, 2013 WL 5944245 (S.D. Cal. Nov. 5, 2013), the court rejected a proposal to send notice to everyone who provided an email address to the retailer

defendant for any purpose, because the list of emails had "no reasonable relationship" to the class of people whose ZIP codes had been improperly collected. *Id.* at * 6. Similarly, in *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987), the court rejected a plan to send notice to all 2.4 million Vietnam War veterans, when only a small fraction of them had been exposed to Agent Orange and thus had an interest in the litigation. *Id.* at 167-69. These cases stand in stark contrast to the facts here, where notice would be sent to people for whom there is a reasonable basis to believe they were users or subscribers of the 68,918 numbers at the heart of this litigation. Moreover, the risk of confusion regarding class membership here is particularly low, as the notice website will contain a lookup tool to allow those who receive notice to enter their telephone number and view the dates and times of the calls at issue. Azari Decl. ¶ 33.

E.      **Due Process and "Best Practicable" Notice Do Not Require Any Confirmation of Receipt.**

Intero argues that the Notice Administrator must track which emails are not opened using read-receipt technology and follow up on the unopened emails with postcard notice, and that the failure to do so is not the "best notice that is practicable." Intero is wrong.

First, Intero offers no evidence that read-receipt programs are effective measures of who receives actual notice. Instead, it cites only to a blog post providing generic advice to people in sales about how to use read receipts to build better client relationships and increase sales. Opp. at 9 (citing How to Know If Someone Opened Your Email (Updated 2020), www.saleshandy.com/blog/know-someone-opened-your email). The reality is that not every email provider reliably generates receipts and others allow the user to opt-out of providing receipts or view emails in a "preview" mode that would not generate a receipt. Supp. Azari Decl. ¶ 7. Thus, even if a read-receipt program is used, it will not tell the claim administrator who actually read the email. *Id.* Instead of using read-receipts, the Notice Administrator here will use various tools to ensure emails are not directed to a spam folder. *Id.*

More importantly, however, the Ninth Circuit has made clear that the "best practicable" notice

requirement does not require that class members actually view a notice. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (rejecting argument that "notice must actually be received to provide an opportunity to opt out for purposes of due process"); *accord Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("due process does not require that class members actually receive notice"). Accordingly, confirmations of receipt—whether of mailed or emailed notice—are not required, either. Indeed, there is no "read receipt" for postcard notice, and thus, it is not clear why read receipts would be required for other forms of notice.

Intero's citations to *Eisen* and *Windsor* do not support Intero's position. Those two cases simply held that individual notice—as opposed to publication notice only—must be provided to all class members who may be identified with reasonable effort. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974)). The cases did *not* concern the consideration of different possible methods of individual notice, which is the question at issue here.

Moreover, contrary to Intero's arguments, the cost of different forms of individual notice is a valid consideration in determining the best individual notice practicable. *See In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 72 (D.D.C. 2018) (considering the "disproportionately higher cost of providing notification by direct mail as opposed to e-mail" and ordering that individual notice be provided by email only, and supplemented by publication notice). Indeed, as the cost of notice may eventually be deducted from any classwide recovery, it is in the best of interests of the class to provide notice efficiently—ensuring class members' due process is secured without unnecessary hurdles.

**F.    Intero Is Improperly Attempting to Use the Notice Process to Reopen Discovery.**

Fact and expert discovery in this case has long been closed. Nevertheless, Intero has been using this notice process as a backdoor to obtain discovery to which it would not otherwise be entitled and to relitigate settled issues. While Class Counsel has attempted to be cooperative in the interest of reaching agreement on class notice, Intero's opposition makes clear that it seeks this information for improper purposes.

During the parties' meet and confer process, Intero repeatedly requested a variety of information from Class Counsel, including documents and data provided to the Notice Administrator and data retrieved after the reverse lookup process is done. Class Counsel informed Intero that discovery was closed, and that it did not have any legitimate litigation interest in this information. Declaration of Tomio Narita, ECF No. 142-2 ("Narita Decl."), Ex. 2; Zavareei Decl., Ex. A. Intero, however, asserted that it needed this information because the defendant is entitled to monitor the notice process to ensure it comports with due process. Narita Decl., Ex. 3. But implicit in the designation of class counsel is the conclusion that the attorneys so appointed are qualified and able to take appropriate steps to provide sufficient notice. Moreover, Class Counsel must be mindful that those class members who have already experienced one privacy violation from Intero may not wish for their lawyers to turn over their current contact information to that same entity, and that Intero may have an interest in preventing class members from speaking to counsel, suppressing claims and opt-out rates, and delaying justice. Accordingly, while Class Counsel disagrees that Intero has a right to insert itself in the notice process beyond opposing it on the papers here, Class Counsel compromised and agreed to provide to Intero the requested information, including the reverse lookup input and output files, for the sole purpose of notice and claims administration, *i.e.*, its stated purpose for waiting that information. In other words, Intero is not to use the information at summary judgment, *Daubert* proceedings, or trial, nor may it use it for commercial purposes.

Intero argues in its opposition that it should be entitled to the reverse lookup input and output files, omitting to tell the Court that Class Counsel offered to provide it nearly two weeks before it filed its motion. In a subsequent meet and confer, Intero clarified to counsel that what it seeks is not simply the information but the ability to use it without restriction. *See* Zavareei Decl. Ex. B. Indeed, Intero candidly states in its Opposition that the information must be produced because without it, it is "unnecessarily prejudiced in preparing its defenses." Opp. at 10. But because Class Counsel already agreed to allow Intero to use this information for purposes of claims administration, it appears that

Intero seeks to use this information in connection with the merits of this case. Intero's position is curious given that fact and expert discovery have long been closed and Intero itself has resisted previous efforts to reopen them and strenuously taken the position that Mr. Chinitz may not provide any new expert reports in this litigation. *See, e.g.*, ECF No. 107. Accordingly, Mr. Chinitz requests that this Court order that the reverse lookup data may only be used for notice and claims administration purposes, or alternatively, permit additional discovery and expert reports from both sides.

### G. The Court Should Reject Intero's Proposed Revisions to the Opt-Out Procedure Described in the Notices.

Finally, Intero proposes some redlines to the proposed texts of the notice and argues that class members should be able to exclude themselves from the case online. Mr. Chinitz does not oppose Intero's proposed edits to the notice. With respect to the process to opt-out of the case, requiring class members to submit opt-out notices by mail is standard practice and satisfies due process. *See, e.g.*, *Stuart v. State Farm Fire & Cas. Co.*, 332 F.R.D. 293, 300 (W.D. Ark. 2019) (mail-in opt-out procedure "provides necessary due process to class members and an additional email opt-out component is unnecessary"); *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2019 WL 6111378, at *5 (N.D. Cal. June 13, 2019) (requiring class settlement exclusion requests to be postmarked or personally delivered by opt-out deadline); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-CV-2578-DHB, 2016 WL 7242092, at *2 (S.D. Cal. Dec. 13, 2016) (approving settlement notice requiring written opt-outs be submitted by mail). The Ninth Circuit has similarly affirmed the denial of a class member's motion to opt out of a settlement where the class member visited the settlement website but failed to follow instructions in the long-form settlement notice, which "'clearly provide[d]' that to opt out, class members had to *mail* in their notices of exclusion." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*, 139 S. Ct. 2645, 204 L. Ed. 2d 300 (2019).

Moreover, any method for opting out must "protect[] against unauthorized opt-out notices." FED. R. CIV. P. 23(c)(2) advisory committee's note to 2018 amendment. Plaintiff's proposed mail-in notice provides such protection, including by requiring that the class member sign the written request— a requirement to which Intero has not objected. *See* Long Form Notice at p. 6. Intero's vague proposal of a website opt-out mechanism, on the other hand, does not outline any "method of determining whether an opt-out request via [the website] was indeed sent by the class member." *Stuart*, 332 F.R.D. at 300. The "absence of any proposed means by which the third-party administrator can verify that an opt-out [via website] was sent by a class member . . . further weighs against modifying the proposed Class Notice Plan to include opt-out requests via [the website]." *Id.* at 301. Further, Intero's proposed amendments to the postcard notice description of opt-out procedures removes clarity and relies entirely on recipients navigating to the settlement website. See ECF No. 142-2 at 37.

While the opt-out procedure described in the notice is already sufficient, Plaintiff would be amenable to adding an Exclusion Request Form to the Settlement Website, which class members wishing to opt out may print, fill out, sign, and send by mail. *See Makaeff v. Trump Univ., LLC*, No. 10-CV-0940-GPC-WVG, 2015 WL 5638192, at *5 (S.D. Cal. Sept. 21, 2015) (approving notice that explains opt-out procedure of mailing written request with name, address, and signature to notice administrator, and provides option of downloading exclusion request form from the settlement website).

## III.    Conclusion

This Court should grant this motion to approve class notice, and appoint Epiq as the Notice Administrator. As set forth in the above and in Plaintiff's opening papers, the proposed notice plan is the best notice practicable under the circumstances, and the use of direct and indirect notice is designed to reach at least 70 percent of the likely class members and will comport with due process.

Date: October 29, 2020                                   Respectfully submitted,

                                                                          _/s/ Sabita J. Soneji_
                                                                          Sabita J. Soneji (State Bar No. 224262)
                                                                          ssoneji@tzlegal.com

V Chai Oliver Prentice (State Bar No. 309807)
vprentice@tzlegal.com
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Hassan A. Zavareei (State Bar No. 181547)
hzavareei@tzlegal.com
Kristen G. Simplicio (State Bar No. 263291)
ksimplicio@tzlegal.com
Mark A. Clifford (admitted *pro hac vice*)
mclifford@tzlegal.com
TYCKO & ZAVAREEI LLP
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
REESE LLP
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiff and the Class*