UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD CHINITZ,<br><br>  Plaintiff,<br><br>  v.<br><br>INTERO REAL ESTATE SERVICES,<br><br>  Defendant. | Case No. 18-cv-05623-BLF<br><br>**ORDER APPROVING IN PART PLAINTIFF'S MOTION FOR APPROVAL OF CLASS NOTICE PLAN**<br><br>[Re: ECF 131] |

Before the Court is Plaintiff Ronald Chinitz's motion for approval of class notice plan. *See* Mot., ECF 131. Defendant Intero Real Estate Services ("Intero") opposes many elements of this plan, *see* Opp'n, ECF 142, and Chinitz proposed several compromises, *see* Reply, ECF 144. Generally speaking, the Court finds the notice plan the best notice practicable under the circumstances, with the combination of direct and indirect notice plans appearing reasonably calculated to reach at least 70% of class members. For the reasons discussed below, the Court will approve in part Chinitz's proposed notice plan.

**I.    BACKGROUND**

On July 22, 2020, this Court granted Chinitz's motion for class certification. *See* Order, ECF 126. The Order certified two classes: A National Do Not Call ("DNC") Class for injunctive relief under Rule 23(b)(2) and for damages under Rule 23(b)(3), and an Internal DNC Class under Rule 23(b)(2). *Id.* at 26-27. Intero filed a motion for reconsideration of this decision on August 5, 2020, and the Court denied Intero's motion on September 23, 2020. *See* Order, ECF 138. Intero's Rule 23(f) petition to the Ninth Circuit for review of this Court's class certification order was denied on October 19, 2020. *See* Order, ECF 143.

This class notice plan concerns the National DNC class. *See* Mot. The plan calls for 1)

individual notice via email or United States Postal Service first class mail; 2) a media plan which will serve as indirect notice; and 3) a case website and toll-free information line. Mot. 3. Chinitz has retained Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a class action administrator, to oversee the notice process. *Id.* 2. Epiq has served in this role in dozens of class action litigations, including *Coffeng v. Volkswagen Group of America, Inc.*, No. 17-cv-01825-JD (N.D. Cal. June 10, 2020). Mot. 2; Decl. of Cameron Azari ("Azari Decl.") ¶¶ 5-7, ECF 131-1. Intero disagrees with the following components of the notice plan: A) The Azari declaration submitted in support of the motion; B) Chinitz's plan for direct notice, including the "reverse lookup" method and email notice procedure; C) the disclosure and use of the data underlying the reverse lookup process; D) the banner advertisement Chinitz proposes placing on Intero's website as part of its indirect notice plan; and E) the language in the notice documents. *See* Opp'n. In Chinitz's words, "Intero's position is not that there is a better, more practicable notice plan, but rather that the notice plan offered is not perfect and therefore should be rejected entirely," as Intero attempts "a third bite at the apple on class certification." Reply 1-2.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(c)(2)(B), for any class certified under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2019 WL 1512265, at *2 (N.D. Cal. Apr. 8, 2019). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member

2

so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *Schneider*, 2019 WL 1512265, at *2. "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982). Individual notice must be sent to class members "whose names and addresses may be ascertained through reasonable effort." *Schneider*, 2019 WL 1512265, at *2 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Schneider*, 2019 WL 1512265, at *2 (internal citation omitted). The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable. Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. District courts have "broad power and discretion vested in them by [Rule 23]" in determining the parameters of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

III. DISCUSSION

The Court will address each of Intero's objections to the notice plan.

A. The Azari Declaration

Intero objects to the Azari declaration as an untimely expert opinion. Opp'n 4. Chinitz argues that the Rule 26 expert disclosure deadline only pertains to experts Chinitz intends to "use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2); Reply 3. Chinitz confirmed that he will not be using Azari at trial and Azari's sole role in this case is administering class notice. Reply 3. The Court agrees with Chinitz that Intero's

3

1  objection is unfounded since Rule 26 and the case schedule apply to trial and not to notice. The
2  Court OVERRULES Intero's objection.

3        Intero also specifically objects to paragraphs 6, 8, 12, 14, and 36-40 of the Azari
4  Declaration because they contain "improper legal conclusions." Opp'n 4. The Court
5  OVERRULES this objection. Azari, through his personal, firsthand knowledge, establishes his
6  credentials in the class notice field in paragraphs 6 and 8. Based on this foundation, it is
7  permissible for him to base his opinion on facts or data in the case that the he has been made
8  aware of or personally observed. Fed. R. Evid. 703. Azari offers his opinion on the proposed
9  notice plan in paragraphs 12, 14, and 36-40. The Court finds nothing improper with these
10 paragraphs.

11       Finally, Intero specifically objects to paragraphs 10 and 11 because the testimony is based
12 on hearsay, lacks foundation, and, according to Intero, Azari is not competent to testify to the
13 matters contained therein. Opp'n 4. The Court is satisfied that Azari is competent. He is the
14 director of legal notice for Hilsoft Notifications ("Hilsoft"), a business unit of Epiq. Azari Decl. ¶
15 2. Hilsoft has experience in over 450 cases, including more than 40 multi-district litigations. *Id.* ¶
16 4. Azari himself has extensive experience as a notice expert. Id. ¶¶ 5,6. Azari may base his opinion
17 on acts or data in the case that he has been made aware of or personally observed. Fed. R. Evid.
18 703. A class notice expert would reasonably rely on the kinds of facts or data used by Azari in
19 forming his opinion on the subject, and those facts or data need not be admissible for the opinion
20 to be admitted. *Id.* Intero's objections to paragraphs 10 and 11 are OVERRULED.

21     **B. Direct Notice Plan**

22       Chinitz proposes a robust direct notice plan. Mot. 3-5. Chinitz's plan begins with email
23 notice for each class member for whom an email address is available, including emails found after
24 running a reverse lookup process using available telephone-number data for class members. If
25 email notice cannot be used, there will be postcard notice for each class member for whom the
26 email notice is returned or bounces back as undeliverable and for each class member for whom
27 Chinitz cannot identify an email address. Mot. 3. Intero objects to several aspects of the direct
28 notice plan without proposing any alternate or better solutions. Opp'n 5-9. The Court finds all of

them to be merely speculative or unfounded.

First, Intero objects to TransUnion running a reverse lookup on the bases that this method is not reasonably calculated to notify class members and could potentially notify people who are not qualified to be class members. Opp'n 5-6. Intero submits a declaration from Jennifer Smith, a consultant who supports Intero's position that the reverse lookup process, as it will be used by Chinitz, will not provide notice to enough class members. *See* Decl. of Jennifer Smith ("Smith Decl."), ECF 142-1. Chinitz asks the Court to strike this declaration for lacking foundation and evidentiary support. Reply 10. While the Court DENIES this request, the Court finds that the reverse lookup process has been recognized by other courts as a legitimate way to provide notice to class members in other Telephone Consumer Protection Act ("TCPA") cases. Suppl. Decl. of Cameron Azari ("Azari Suppl. Decl.") ¶¶ 4,6, ECF 144-2; *See, e.g.*, *Knapper v. Cox Comm'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019) (recognizing the reverse lookup process is the industry standard and is commonly used in TCPA cases); *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *4 (N.D. Cal. Sept. 27, 2018) (finding notice plan administered by Azari compatible with due process).

Intero also objects to the reverse lookup process in general, arguing both that it will not identify a large enough percentage of class members and that it will result in a "shotgun blast approach" that is impermissibly overbroad. Opp'n 5-8. The Court finds this argument speculative and not related to the applicable legal standard. Notice does not have to be perfect—it must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As stated previously, the reverse lookup process has been recognized in this Circuit as the industry standard for TCPA cases. *Knapper*, 329 F.R.D. at 245. Additionally, any issue about identifying who is entitled to recover is handled at the claims administration stage of the case. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) ("[t]he due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward.") (internal citation omitted).

5

The cases Intero cites to support its proposition that the notice plan must be rejected because it is overly broad are not analogous to the case at hand. *Yeoman v. Ikea U.S. W., Inc.*, No. 11cv701 WQH (BGS), 2013 WL 5944245, at *4-*5 (S.D. Cal. Nov. 5, 2013) (rejecting proposal for email notice to all Ikea's customers for whom Ikea has email information, including approximately 1 million addresses obtained before the class period); *Thomas v. Baca*, No. CV 04-08448 DDP SHX, 2012 WL 994090, at *2 (C.D. Cal. Mar. 22, 2012) (decertifying class because no records existed to identify up to two million potential class members); *In re "Agent Orange" Product Liab. Litig.*, 818 F.2d 145, 169 (2d Cir.1987) (rejecting argument that individual mail notice should have been provided to all 2.4 million Vietnam Veterans, when far fewer than that number were exposed to Agent Orange and thus notice would have been considerably overbroad).

In those cases, courts found no way to link individuals who would potentially receive notice and the individuals who are members of the class. For instance, in *Yeoman*, the court found "no link between individuals who may have provided their email addresses at some point between February 10, 2010 and February 28, 2011, and individuals who are members of the class." *Yeoman*, 2013 WL 5944245, at *6. Here, no such problem exists – the email addresses that will receive notice are linked to phone numbers allegedly called by Intero during the relevant class period. And courts have found that, should the subscriber of a group calling plan who receives notice differ from the person that received the call at issue, "subscribers are typically in the best position possible to identify the phone's 'user,' if it is not the subscriber." *Knapper*, 329 F.R.D. at 245.

Finally, Intero asks the Court to require that Chinitz track which emails are never opened and subsequently mail a postcard to those individuals. Opp'n 8-9. Chinitz opposes this additional requirement on the basis that this holds email notice to a higher standard than mail notice, and the Ninth Circuit has made it clear that the "best practicable" notice requirement does not require that class members actually view a notice, *see Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Reply 11-12. The Court agrees with Chinitz's reading of *Silber*, where the Ninth Circuit drew a distinction between the traditional standard for class notice, "best practicable," and "actually received" notice, the standard the Ninth Circuit rejected. *Silber*, 18 F.3d at 1454. The Court will

not require Chinitz to track whether the emails are actually opened.

Accordingly, the Court approves of Chinitz's direct notice plan.

### C. Use of Reverse Lookup Data

Intero asks the Court to require Chinitz to provide Intero with the data it will supply to TransUnion in order to run the reverse lookup, as well as the results returned. Opp'n 9-10. Intero insists it needs this data to support its fundamental due process rights to know the names of the persons asserting a claim against the company. Opp'n 10; *Briseno*, 844 F.3d at 1131-32. Chinitz responds that he has agreed to provide Intero the requested information—and provided it two weeks before Intero filed its opposition motion asking the Court for this data—and requests that the Court order Intero to only use the reverse lookup and results data for notice and claims administration purposes. Reply 13-14. The Court agrees with Intero that it has a right to the data for the claims administration process, but not for any other purpose. Accordingly, the Court ORDERS Intero to only use the reverse lookup and results data for claims administration purposes and not any other purpose, including but not limited to summary judgment, *Daubert* proceedings, trial, or any other motions unrelated to claims administration.

### D. Indirect Notice

Intero largely does not object to Chinitz's indirect notice process, which Chinitz asserts is an essential part of the notice plan and capable of resolving any argued shortcomings with the direct notice plan. Reply 4. The one aspect of the indirect notice plan that Intero objects to is placing a banner advertisement to publicize the case on Intero's website. Opp'n 9. Chinitz has agreed to withdraw this part of the proposal. Reply 4. Accordingly, the Court will STRIKE the proposed banner from the indirect notice plan.

### E. Notice Forms Language

Intero proposes redline edits to Chinitz's notice forms. *See* Opp'n 10, Ex. 5-7, Notice Forms 34-47, ECF 142-2. Chinitz has agreed to all of Intero's proposed redlines. Reply 14. Chinitz has also agreed to Intero's request to add an exclusion request form to the settlement website, allowing potential class members to print the opt-out form from the website and mail it as directed. Reply 14. However, Chinitz does not agree to allow electronic submission of the opt-out

form. *Id.* The Court agrees with Chinitz that submission of opt-outs by mail is standard and complies with due process. *See Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2019 WL 6111378, at *5 (N.D. Cal. June 13, 2019) (requiring class settlement exclusion requests to be postmarked or personally delivered by opt-out deadline); *Stuart v. State Farm Fire & Cas. Co.*, 332 F.R.D. 293, 300 (W.D. Ark. 2019) (rejecting email opt-out proposal and holding mail-in opt-out procedure provides necessary due process to class members). Accordingly, the Court ORDERS Chinitz to use the notice forms as edited by Intero and additionally include information about the exclusion request form in the short- and long-form notices. Opt-out forms must be returned by mail, not electronically.

### F. Conclusion

The Court finds Chinitz's notice plan, as modified above, as the best notice practicable under the circumstances, with the combination of direct and indirect notice plans appearing reasonably calculated to reach at least 70% of class members.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Intero's objections to the Azari Declaration are OVERRULED;
2. Chinitz's objection to the Smith Declaration is OVERRULED;
3. The Court approves the form and substance of the following documents attached to the Declaration of Tomio B. Narita, filed October 15, 2020, Dkt. No. 142-2: (1) Ex. 5, Email Notice; (2) Ex. 6, Postcard Notice; (3) Ex. 7., Long Form Notice. Chinitz shall add information regarding the exclusion request form on the settlement website to the notices and delete the language on the last page of Ex. 5 that allows exclusion requests to be submitted online;
4. The Court approves the retention of Epiq Class Action & Claims Solutions, Inc. as Notice Administrator in this class action;
5. The Court approves Chinitz's direct notice plan as detailed in its motion and modified above.
6. The Court approves Chinitz's indirect notice plan and media plan as detailed in its motion

and modified above;

7. Intero shall to only use the reverse lookup and results data provided by Chinitz for claims administration purposes and not any other purpose, including but not limited to summary judgment, *Daubert* proceedings, trial, or any other motions unrelated to claims administration;

8. Email and Postcard Notice shall be sent 30 days from the date of this Order;

9. The last day for opt-outs shall be 90 days from the date of this Order; and

10. A list of opt-outs shall be filed with the Court 104 days from the date of this Order

Dated: December 1, 2020

_____
BETH LABSON FREEMAN
United States District Judge