TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
R. TRAVIS CAMPBELL (SBN 271580)
tcampbell@snllp.com
MARGARET T. CARDASIS (SBN 322167)
mcardasis@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000

Attorneys for Defendant
Intero Real Estate Services

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CHINITZ, *individually, and on behalf of a class of similarly situated persons*, <br><br> Plaintiff, <br><br> vs. <br><br> INTERO REAL ESTATE SERVICES, <br><br> Defendant. | CASE NO. 5:18-cv-05623-BLF <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date: March 25, 2021 <br> Time: 9:00 a.m. <br> Courtroom: 3, 5th Floor <br><br> The Honorable Beth Labson Freeman |

CHINITZ V. INTERO REAL ESTATE SERVICES (CASE NO. 5:18-cv-05623-BLF)
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO PLAINTIFF AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that Defendant Intero Real Estate Services ("Intero") hereby moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in favor of Intero on all claims asserted in the Complaint.

The motion is made on the grounds that there is no genuine dispute as to any material fact bearing on the claims asserted in the Complaint, and Intero is therefore entitled to judgment as a matter of law.

This motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion filed herewith, the declaration of Tomio B. Narita filed herewith, the declaration of John A. Thompson filed herewith, the declaration of Heather Wang filed herewith, the supplemental declaration of Davis Mangold filed herewith, all of the other papers on file in this action, and such other and further evidence or argument as the Court may allow.

DATED: January 21, 2021                    SIMMONDS & NARITA LLP
                                           TOMIO B. NARITA
                                           R. TRAVIS CAMPBELL
                                           MARGARET T. CARDASIS


                                           By:    /s/Tomio B. Narita
                                                  Tomio B. Narita
                                                  Attorneys for Defendant
                                                  Intero Real Estate Services

CHINITZ V. INTERO REAL ESTATE SERVICES (CASE NO. 5:18-cv-05623-BLF)
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                            i

**TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................................1

II. RELEVANT BACKGROUND.............................................................................2

    A.  Intero Does Not Employ Real Estate Salespersons And Does Not Make
    Telephone Calls To Solicit Real Estate Business ...............................................2

    B.  Allegations Of The Complaint ..........................................................................3

    C.  Facts Related To Plaintiff...................................................................................4

    D.  Plaintiff's Motion For Class Certification .........................................................4

III. ARGUMENT ........................................................................................................5

    A.  Legal Standard Governing Summary Judgment..................................................5

    B.  The TCPA And The National Do Not Call Registry ..........................................6

    C.  Summary Judgment Should Be Entered For Intero, Because It Did Not
    Make Any Of The Calls Reflected In The Mojo Account Files .........................8

    D.  Plaintiff Cannot Avoid Summary Judgment By Relying On Theories He
    Did Not Plead In His Complaint.........................................................................9

    E.  Even If The Court Considers The New Vicarious Liability Theory,
    Summary Judgment Should Be Entered For Intero ..........................................11

        1.  There Is No Evidence That Any Calls Reflected In The Mojo Account
        Files Were Initiated By Salespersons Affiliated With Intero ................11

        2.  There Is No Evidence That The Calls Reflected In The Mojo Account
        Files Were Telephone Solicitations, Or That They Were Made For
        Telemarketing Purposes........................................................................12

        3.  Intero Is Not Vicariously Liable For Any Calls Reflected In The Mojo
        Files Because There Is No Evidence That The Persons Who Initiated
        The Calls Acted With Apparent Authority On Behalf Of Intero...........13

        4.  There Is No Evidence That Any Calls Reflected In The Mojo Account
        Files Were Placed To Residential Telephone Numbers, Or Received
        By Residential Telephone Subscribers Who Registered Their
        Numbers And Then Received Unwanted Calls ...................................17

---

F.    Summary Judgment Should Be Entered For Intero On The Request For Injunctive Relief Made On Behalf Of Both Classes .........................................22

1.    The Complaint Does Not Pray For Injunctive Relief On Behalf Of The Internal DNC Class Or NDNCR Class ..........................................22

2.    Plaintiff Has Not Established That Any Residential Telephone Subscriber On Intero's Internal Do Not Call List Requested Not To Be Called, And Was Then Called Again ..............................................22

G.    Summary Judgment Should Be Entered For Intero On The UCL Claims .........24

IV. CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

*Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*
2019 U.S. Dist. LEXIS 220708 (N.D. Cal. Dec. 19, 2019) ......................................................15

*Ammons v. Diversified Adjustment Serv.,*
2019 U.S. Dist. LEXIS 175842 (C.D. Cal. Oct. 9, 2019) .........................................................10

*Bank v. Independence Energy Group LLC,*
12-CV-1369 (JG)(VMS), 2015 WL 4488070 (E.D. N.Y. July 23, 2015)............................. 8, 19

*Celotex Corporation v. Catrett,*
477 U.S. 317 (1986)...................................................................................................................6

*Cervantes v. Zimmerman*,
2020 U.S. Dist. LEXIS 177651 (S.D. Cal. Sept. 28, 2020) ......................................................10

*Chinitz v. NRT West, Inc.*,
No. 5:18-cv-06100-NC (N.D. Cal. Feb. 20, 2019) ..................................................................25

*Coleman v. Quaker Oats Company.,*
232 F.3d 1271 (9th Cir. 2000) ...............................................................................................1, 9

*Federal Election Commission v. Toledano,*
317 F.3d 939 (9th Cir. 2002) .....................................................................................................6

*Friedman v. Torchmark Corporation.,*
12-CV-2837-IEG (BGS), 2013 U.S. District LEXIS 54020 (S.D. Cal. Apr. 16, 2013)............12

*Henderson v. United Student Aid Funds, Incorporated.,*
918 F.3d 1068 (9th Cir. 2019) .................................................................................................14

*Hirsch v. USHealth Advisors, LLC*,
2020 U.S. Dist. LEXIS 228936 (N.D. Tex. Dec. 7, 2020)........................................................17

*Jackmon v. Fritz, Number*
16-07178 BLF (R*)*, 2018 U.S. District LEXIS 151692 (N.D. Cal. Sept. 4, 2018)....................10

*Johnson v. Baca,*
CV 13-04496 MMM (AJWx*)*, 2014 U.S. District LEXIS 204280 (C.D. Cal. Oct. 9, 2014).....10

*Jones v. All Am. Auto Prot., Inc.*,
2015 U.S. Dist. LEXIS 158652 (D. Nev. Nov. 24, 2015).........................................................16

*Jones v. Royal Admin. Servs.,*
887 F.3d 443 (9th Cir. 2018) ................................................................................................7, 14

*Kristensen v. Credit Payment Servs., Incorporated.,*
879 F.3d 1010 (9th Cir. 2018) ...................................................................................... 14

*Lee v. LoanDepot.com, LLC,*
Number 14-CV-01084-EFM, 2016 U.S. District LEXIS 110100 (D. Kan. Aug. 17, 2016)........ 8

*Makaron v. GE Sec. Manufacturing.,*
CV-14-1274-GW (AGRx), 2015 U.S. District LEXIS 75240 (C.D. Cal. May 18, 2015)......... 16

*Matsushita Elec. Indus. Company v. Zenith Radio Corporation.,*
475 U.S. 574 (1986) ........................................................................................................ 6

*Mejia v. Time Warner Cable, Incorporated.,*
15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 U.S. District LEXIS 120445 (S.D.N.Y Aug. 1,
2017) ............................................................................................................................... 13

*Mims v. Arrow Fin. Servs., LLC,*
565 U.S. 368 (2012) ........................................................................................................ 6

*Morin v. Ray Klein, Inc.,*
2015 U.S. District LEXIS 145462 (D. Or. Oct. 25, 2015) ..................................... 10, 11

*Murphy v. DCI Biologicals Orlando,*
2013 U.S. District LEXIS 181732 (M.D. Fla. Dec. 31, 2013) .................................... 12

*NLRB v. District Council of Iron Workers of Cal. and Vicinity,*
124 F.3d 1094 (9th Cir. 1997) ...................................................................................... 15

*Navajo Nation v. U.S. Forest Service.,*
535 F.3d 1058 (9th Cir. 2008) ................................................................................... 1, 9

*Nolan v. Transcend Servs., Inc.,*
2012 U.S. Dist. LEXIS 703 (D. Or. Jan. 4, 2012) ...................................................... 22

*In re Oracle Corporation Sec. Litigation.,*
627 F.3d 376 (9th Cir. 2010) ..................................................................................... 6, 13

*Pickern v. Pier 1 Imps. (U.S.), Inc.,*
457 F.3d 963 (9th Cir. 2006) .......................................................................................... 9

*Renick v. Dun and Bradstreet Receivable Management Servs.,*
290 F.3d 1055 (9th Cir. 2002) ...................................................................................... 24

*SEIU, Local 721 v. Cty. Of Riverside,*
EDCV 09-00561-VAP (JTLx), 2011 U.S. District LEXIS 46008 (C.D. Cal. Apr. 27, 2011)... 22

*Shelton v. Target Advance LLC,*
18-2070, 2019 U.S. District LEXIS 64713 (E.D. Pa. Apr. 16, 2019)........................................8

*State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell,*
138 F.3d 772 (9th Cir. 1998) .....................................................................................................6

*Stevens-Bratton v. Truegreen, Incorporated.,*
437 F.Supp.3d 648, 659 (W.D. Tenn. 2020) ...........................................................................19

*Thomas v. Taco Bell Corp.,*
582 Fed. Appx. 678 (9th Cir. 2014)........................................................................................15

*Van Patten v. Vertical Fitness Grp., LLC,*
847 F.3d 1037 (9th Cir. 2017) .................................................................................................25

*United States v. Bonds,*
608 F.3d 495 (9th Cir. 2010) ...................................................................................................14

*United States v. Laredal Manufacturing Corporation.,*
73 F.3d 852 (9th Cir. 1995) .....................................................................................................23

*Wasco Products, Incorporated v. Southwall Technologies, Incorporated.,*
435 F.3d 989 (9th Cir. 2006) ......................................................................................... 9, 10, 11

## STATE CASES

*Ingels v. Westwood One Broadcasting Servs., Incorporated.,*
129 Cal.App.4th 1050 (2005) ..................................................................................................24

*Kwikset Corporation v. Superior Court,*
51 Cal.4th 310 (2011) ..............................................................................................................25

## FEDERAL STATUTES

47 U.S.C. § 227, *et seq* ....................................................................................................*passim*

47 C.F.R. § 64.1200 *et seq* ..............................................................................................*passim*

47 C.F.R. § 64.1100(h)......................................................................................................... 7, 17

Fed. R. Civ. P. 56(a).....................................................................................................................5

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ...............................................................................................24

**ADDITIONAL REFERENCES**

Restatement (Third) of Agency (2006) ............................................................................. 14, 15

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
23 F.C.C. Red. 9779 (June 17, 2008) ..................................................................................... 8

## I.    <u>INTRODUCTION</u>

Plaintiff Ronald Chinitz ("Plaintiff") alleges in his Complaint that Defendant Intero Real Estate Services ("Intero") made calls to him and class members that violated regulations enacted under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.  Plaintiff never developed any evidence to support his allegations that Intero made improper calls, however, and summary judgment should therefore be entered for Intero.

Because there is no evidence to support the allegations in his Complaint, Intero anticipates Plaintiff will attempt to avoid summary judgment by arguing that Intero is vicariously liable for certain calls allegedly made by certain third-party real estate salespersons and other unidentified persons.  The Court should refuse to consider this unpled theory.

The Ninth Circuit has repeatedly held that a plaintiff cannot oppose summary judgment by relying on theories not included in the complaint.  *See, e.g., Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008).  This is because "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).  Here, based on the allegations in the Complaint, Intero adduced evidence during discovery that it did not make the allegedly violative calls.  Plaintiff never sought to amend his Complaint to allege that Intero was vicariously liable for calls made by others.  Plaintiff cannot avoid summary judgment by relying on this unpled theory, which he did not raise until after the close of fact discovery.

Even if the Court considered this unpled theory, summary judgment should be entered for Intero on all claims for numerous separate and independent reasons, as discussed herein.

/ / /

## II.    RELEVANT BACKGROUND

### A.    Intero Does Not Employ Real Estate Salespersons And Does Not Make Telephone Calls To Solicit Real Estate Business

Intero is a California real estate company founded in 2002 and is a licensed broker with the California Department of Real Estate ("DRE").  Declaration of John Thompson in Support of Defendant's Motion for Summary Judgment ("Thompson Decl."), ¶ 2; Declaration of Tomio B. Narita in Support of Defendant's Motion for Summary Judgment ("Narita Decl."), ¶ 6 at Ex. E [Thompson Depo., pp. 38:11-39:3].  Intero does not employ real estate salespersons, nor does Intero place telephone calls to solicit real estate business.  Thompson Decl., ¶ 3; Narita Decl., Ex. E [Thompson Depo., p. 201:3-11].  Rather, Intero works with independent real estate salespersons who are licensed by the State of California through the DRE.  Thompson Decl., ¶ 4; Narita Decl., Ex. E [Thompson Depo., pp. 146:7-21, 201:3-11, Ex. 6].

Pursuant to their independent contractor agreements with Intero, all salespersons agree they will become familiar with, and will comply with, all applicable federal, state, and local laws and regulations.  Thompson Decl., ¶ 4; Narita Decl., Ex E [Thompson Depo., p. 201:3-11, Ex. 6, Sections 4.4, 4.5].  This includes compliance with the Telephone Consumer Protection Act and all requirements relating to the FTC's "Do Not Call" registry.  *Id.*  After signing an independent contractor agreement, salespersons must also review and sign Intero's Broker/Agent Policy Manual. Thompson Decl., ¶ 4; *see also* Narita Decl., Ex. E [Thompson Depo., pp. 140:1-13, 201:3-11].  The 2017 version of the manual specifically advised salespersons that "all calls to residences are subjected to compliance requirements of the Federal 'Do Not Call' laws." Thompson Decl., ¶ 4 at Ex. A (IN 0019); *see also* Narita Decl., Ex. E [Thompson Depo., pp. 140:1-13, 201:3-11].  The 2018 and 2019 versions of the manual contain additional advisories and instructions, including instructions for accessing lists of phone numbers on the National Do-

Not-Call Registry ("NDNCR") and on Intero's internal Do Not Call List ("internal DNC List"). Thompson Decl., ¶ 4 at Ex. B (IN 0128) & Ex. C (IN 0151-IN 0152); Narita Decl., Ex. E [Thompson Depo., pp. 161:7-162:7, 165:11-166:23].

Intero does not dictate to salespersons how to market their real estate services. Thompson Decl., ¶ 5. It does not tell them whether or how they should attempt to call their potential clients, or what they should say if they do call. *Id.* Salespersons are free to decide how they solicit business, as long as it is lawful. *Id.*, ¶ 6; *see also* Narita Decl., Ex. E [Thompson Depo., p. 209:12-23].

Intero has maintained an internal DNC List since at least early 2018. *See* Narita Decl., ¶ 3 at Ex. B [Wang Depo., pp. 85:12-88:19, 91:6-8]; Declaration of Heather Wang in Support of Defendant's Motion for Summary Judgment ("Wang Decl."), ¶¶ 2-3 at Exs. 1 & 2. Intero also maintains a list of phone numbers on the NDNCR. Narita Decl., Ex. B [Wang Depo., pp. 116:23-117:5] & Ex. E [Thompson Depo., pp. 163:3-22, 165:11-166:23]. Both lists are accessible to all salespersons through Intero's intranet system. Narita Decl., Ex. B [Wang Depo., p. 87:8-18] & Ex. E [Thompson Depo., pp. 163:3-22, 166:10-167:2]. Intero's legal department updates the internal DNC List whenever a complaint about an unwanted call is received. *Id.*, Ex. B [Wang Depo., pp. 79:18-80:4, 85:12-25, 87:23-88:14].

### B.     Allegations Of The Complaint

The Complaint challenges allegedly "illegal actions of Intero in making unlawful calls to his residential telephone lines." *See* Doc. No. 1, ¶ 1. It alleges Intero made telemarking calls to Plaintiff and class members in violation of regulations enacted under the TCPA and Section 17200 of the California Business and Professions Code ("UCL"). *Id.*, ¶¶ 1, 7, 15, 18, 31, 33, 36, 42-46, 55(a)-(c), 58-62, 71, 84, 95, 103-105, 111-112.

The Complaint does **not** allege that any calls were made by third parties, nor does it assert that Intero is vicariously liability for calls initiated by others.  Indeed, the National Do Not Call Registry Class and National Internal Do Not Call Class are limited to "[a]ll persons in the United States who received more than one call **made by Defendant** in a 12-month period on their residential landline."  *Id*., ¶ 55(a)-(b) (emphasis added).

### C.    Facts Related To Plaintiff

Plaintiff has a "landline" telephone number ending in 1899, and he has also maintained an "internet" telephone line with a number ending in 6193.  Narita Decl., ¶ 4 at Ex. C [Chinitz Depo., pp. 9:20-10:5, 10:11-18, 11:21-23].  He is a self-described "landlord" whose sole source of income for past two decades has been the rent he receives from his tenants.  *Id*. [Chinitz Depo. pp. 19:17-20:20, 27:17-22].  For example, in 2019, he had six renters who paid him $4,842.00 per month.  *Id*. [Chinitz Depo. pp. 28:17-21, 29:15-22].  Chinitz used both the 1899 and 6193 numbers in connection with conducting his rental property business.  *Id*. [Chinitz Depo. pp. 30:13-31:13, 31:24-32:13, 35:22-36:6, 36:17-37:25, 47:19-48:19].

### D.    Plaintiff's Motion For Class Certification

On January 17, 2020, after the close of fact discovery, Plaintiff filed a Motion for Class Certification which sought to certify four classes that were vastly different than those identified in the Complaint.  *Compare* Doc. No. 1, ¶ 55 a-d *with* Doc. No. 70 at ECF pp. 18:25-19:20.  As relevant here, the new National Do Not Call Registry Class and the National Internal Do Not Call Class were no longer limited to calls "made by Defendant" and, instead were expanded to include calls "made on behalf of Intero by, or on behalf of, one of Intero's California sales associates."  Doc. No. 70 at ECF pp. 18:26-19:13.

The motion did not identify which persons should be considered one of Intero's

"California sales associates." *See* Doc. No. 70, 70-1 through 70-11, 72. Nevertheless, Plaintiff argued for the first time that Intero was vicariously liable for calls allegedly made by these unidentified persons. *See* Doc. No. 70 at ECF pp. 18:6-13, 21:3-17, 24:17-26:18.

In his Reply, Plaintiff changed gears yet again, and requested the Court certify a newly-defined National Do Not Call Registry class ("NDNCR Class") comprised of persons 1) who received calls "made on behalf of Intero by, or on behalf of, one of Intero's California sales associates," 2) that were placed through a third-party vendor, Mojo Dialing Solutions, Inc. ("Mojo"), and 3) that appear in one of 35 call record files produced by Mojo. *See* Doc. No. 117, 117-1 ("Appendix A"). Plaintiff also requested, again for the first time, that the Court certify an Internal Do Not Call Class ("Internal DNC Class") that would pursue injunctive relief only, rather than damages.

On June 22, 2020, the Court certified the NDNCR Class, using the definition that first appeared in the Plaintiff's Reply in support of his motion, and it also certified an injunction-only Internal DNC Class. Doc. No. 126 at ECF pp. 26-28. Plaintiff claims the "35 account files" from Mojo in Appendix A to the Court's Order ("Mojo Account Files" or "Files") reflect calls made by 49 separate California Intero salespersons. Doc. No. 117 at ECF p. 6:4-8, Doc. No. 117-1, Doc. No. 117-2, ¶¶ 24-25.

## III. **ARGUMENT**

### A. **Legal Standard Governing Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to

support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Plaintiff "must present competent evidence that creates a genuine issue of material fact." *Federal Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002); *see also In re Oracle*, 627 F.3d at 387 (non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial."). The materiality of a fact is determined by the underlying substantive law. *See State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782 (9th Cir. 1998). "This burden is not a light one." *In re Oracle*, 627 F.3d at 387. Plaintiff must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence." *In re Oracle*, 627 F.3d at 385.

**B. The TCPA And The National Do Not Call Registry**

When it passed the TCPA, Congress sought to protect "residential telephone subscribers" from having their privacy invaded by unwanted telephone solicitations. *See, e.g., Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373-74 (2012) ("The [TCPA] also directs the FCC to prescribe regulations to protect the privacy of **residential telephone subscribers**, possibly through the creation of a national 'do not call' system.") (emphasis added). Congress authorized the FCC to establish a national database of telephone numbers of "residential telephone subscribers" who had affirmatively objected to receiving telephone solicitations. *See* 47 U.S.C. § 227(c)(3).

The TCPA strictly limits a private right of action to persons who can prove three things: 1) that they "received more than one telephone call within any 12-month period", 2) that each

such call was made "by or on behalf of the same entity," and 3) that each such call was made "in violation of the regulations prescribed under this subsection . . . ." *Id.*. § 227(c)(5).

The regulations are narrow.  They prohibit telemarketing calls or telephone solicitations only if received by a "**residential telephone subscriber**," and only if the calls are initiated **after** the subscriber has taken affirmative steps to prevent them, either by registering their telephone number on the NDNCR, or by making a request to a specific telemarketer.  *See* 47 C.F.R. § 64.1200(c)(2) (no telephone solicitations to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations . . ."); § 64.1200(d)(3) (no calls "for telemarketing purposes to a residential telephone subscriber" where the calling party has "receive[d] a request from a residential telephone subscriber not to receive calls from that person or entity. . ."").  As the Ninth Circuit has observed, "[t]he regulations implementing the TCPA prohibit, among other things, a person or entity from initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."  *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018) (internal quotation marks omitted, emphasis added).

The term "subscriber" is defined in the regulations as the party "responsible for payment of the telephone bill," an adult "authorized by such party" to make changes to or charges on the account, or a person who is "contractually or otherwise lawfully authorized" to represent the person responsible for the bill.  47 C.F.R. § 64.1100(h).

Despite its stated purpose, the NDNCR contains more than just residential telephone numbers.  As Plaintiff's expert explained, "it permits businesses to register."  Doc. No. 72, ¶¶ 56, 64.  The TCPA, however, does **not** prohibit calls to business numbers, even if they are the

NDNCR.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Red. 9779, 9785 (June 17, 2008).

A phone number used for a home-based business, such as Plaintiff's telephone numbers, may not qualify as a "residential telephone number" entitled to protection.  *See, e.g., Bank v. Independence Energy Group LLC,* No. 12-CV-1369 (JG)(VMS), 2015 WL 4488070, at **2-4 (E.D. N.Y. July 23, 2015) (granting summary judgment for defendant; telephone line was not "residential" where named plaintiff used it on in pleadings, correspondence and registrations relating to his law practice); *Shelton v. Target Advance LLC*, 18-2070, 2019 U.S. Dist. LEXIS 64713, at *14 (E.D. Pa. Apr. 16, 2019) (plaintiff lacked standing to pursue claims under § 227(c)(3)(F) where he held his cell phone out to the world as a business phone number).  The FCC has said a case-by-case review is required to determine if a call to a "home-based business" is entitled to protection.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 F.C.C. Rcd. 3788, 3793 (2005); *see also Lee v. LoanDepot.com, LLC*, No. 14-CV-01084-EFM, 2016 U.S. Dist. LEXIS 110100, at *18 (D. Kan. Aug. 17, 2016) (summary judgment for defendant where plaintiff failed to provide evidence that his cellular number was used for residential purposes).

### C. Summary Judgment Should Be Entered For Intero, Because It Did Not Make Any Of The Calls Reflected In The Mojo Account Files

The claims in the Complaint are based entirely on the theory that Intero initiated improper telemarketing phone calls to Plaintiff and class members.  *See* Doc. No. 1, ¶¶ 1, 7, 15, 18, 31, 33, 36, 42-46, 55(a)-(c), 58-62, 71, 84, 95, 103-105, 111-112.  Discovery has shown that Intero did not make the calls, however, and therefore summary judgment is proper.

None of the telephone calls identified in the Mojo Account Files were initiated by Intero.  *See* Thompson Decl., ¶ 3; Doc. No. 9, ¶¶ 1, 7, 15, 33, 42-46, 51-52, 58-62, 71-76, 86, 95, 103-05,

111-112; Narita Decl., ¶ 2 at Ex. A (Responses to Interrogatories 7 and 10).  Without evidence that Intero "initiate[d]" any of the alleged "telephone solicitation[s]" to him or to class members, he cannot meet his burden, and summary judgment must be granted for Intero.  *See* 47 C.F.R. §§ 64.1200(c)(2), 64.1200(d)(3); 47 U.S.C. § 227(c)(5).

### D.  Plaintiff Cannot Avoid Summary Judgment By Relying On Theories He Did Not Plead In His Complaint

Plaintiff is expected to argue that Intero should be held vicariously liable for calls allegedly made by salespersons and reflected in a specific set of the Mojo Account Files that Plaintiff identified for the first time in his Reply in support of his class certification motion.  *See* Doc. No. 117, No. 117-1. But he cannot avoid summary judgment by relying on a theory he did not plead in his Complaint.  It would be incredibly prejudicial to Intero if Plaintiff is allowed to pursue a vicarious liability theory that he sprung on Intero long after discovery had closed.  The Court should refuse to consider this unpled theory.

The Ninth Circuit has repeatedly held that a plaintiff cannot oppose summary judgment by relying on theories not included in the complaint.  *See, e.g., Navajo Nation*, 535 F.3d at 1080 (if a complaint "does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (courts do not consider allegations that "appear for the first time in [] response" to summary judgment); *Coleman*, 232 F.3d at 1292 ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming district court's refusal to consider new theory not disclosed until after discovery closed).  Put simply,

CHINITZ V. INTERO REAL ESTATE SERVICES (CASE NO. 5:18-cv-05623-BLF)
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                                              9

"summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco*, 435 F.3d at 992.

Given this binding precedent, district courts in this Circuit routinely refuse to consider unpled theories raised by plaintiffs on summary judgment. *See, e.g., Ammons v. Diversified Adjustment Serv.,* No. 2:18-cv-06489-ODW (MAAx), 2019 U.S. Dist. LEXIS 175842, at *8-10 (C.D. Cal. Oct. 9, 2019) (refusing to consider unpled theories raised by TCPA plaintiff); *Cervantes v. Zimmerman*, No. 17-cv-01230-BAS-AHG, 2020 U.S. Dist. LEXIS 177651, at *70-73 (S.D. Cal. Sept. 28, 2020) (refusing to consider unpled theory on summary judgment); *Jackmon v. Fritz*, No. 16-07178 BLF (R), 2018 U.S. Dist. LEXIS 151692, at *19-20 (N.D. Cal. Sept. 4, 2018) (same); *Morin v. Ray Klein, Inc.*, No. 6:14-cv-984-MC, 2015 U.S. Dist. LEXIS 145462, at *7 (D. Or. Oct. 25, 2015) (same; plaintiff could not "shift the goal posts" in response to summary judgment motion by arguing theory not alleged in the complaint); *Johnson v. Baca*, No. CV 13-04496 MMM (AJWx), 2014 U.S. Dist. LEXIS 204280, at *20-33 (C.D. Cal. Oct. 9, 2014) (same; plaintiff could not assert claims based on government's direct violations because did not plead direct liability complaint).

Plaintiff did not allege that Intero was vicariously liable for calls allegedly initiated by third parties, nor did his Complaint identify any purported "agents" who initiated telemarketing calls to class members. He never sought leave to amend his Complaint, despite being advised early and often that Intero did not and does not make the telemarketing calls. *See* Doc. No. 9, ¶¶ 1, 7, 15, 33, 42-46, 51-52, 58-62, 71-76, 86, 95, 103-05, 111-112; Narita Decl., Ex. A (Responses to Interrogatories 7 and 10).

It would be unduly prejudicial if the Court were to allow Plaintiff to raise his belated vicarious liability theory, because Intero has been deprived of the ability to develop discovery

and expert testimony needed to defend itself.  Plaintiff cannot now "shift the goal posts" or "flesh out his inadequate pleadings" by opposing summary judgment on an unpled vicarious liability theory.  *See Morin*, 2015 U.S. Dist. LEXIS 145462 at *7; *Wasco*, 435 F.3d at 992.

### E.  Even If The Court Considers The New Vicarious Liability Theory, Summary Judgment Should Be Entered For Intero

#### 1.    There Is No Evidence That Any Calls Reflected In The Mojo Account Files Were Initiated By Salespersons Affiliated With Intero

The Mojo Account Files are not admissible, and their contents should not be considered in connection with this motion.  Regardless, the Files do not establish who actually initiated the calls.  Plaintiff has no evidence establishing who initiated the calls, nor any evidence establishing that Intero should be responsible for the conduct of the unidentified calling parties.  Accordingly, summary judgment should be entered for Intero.

Mojo does not know who initiated any of the calls reflected in the Files.  *See* Supplemental Declaration of Davis Mangold, ¶ 9.  The "Agent Name" column in the Files merely reflects the name of the Mojo customer who set up and maintains the account.  *Id.*  Mojo does not know if the customer who originally set up the account made the calls or if they allowed others to make calls through their account.  *Id.*

Plaintiff did not reveal his vicarious liability theory until long after discovery closed, and neither he nor Intero took discovery to establish the identity of any of the persons who initiated

---

the calls reflected in the Files.[1]  Intero cannot be held vicariously liable for calls without evidence of who **actually initiated** the calls, and evidence showing why Intero should be held responsible for the calling party's conduct.  Summary judgment should be entered for Intero.

> **2.** **There Is No Evidence That The Calls Reflected In The Mojo Account Files Were Telephone Solicitations, Or That They Were Made For Telemarketing Purposes**

Because he waited until long after discovery closed before revealing his vicarious liability theory, Plaintiff is also unable to show that any salesperson initiated "telephone solicitations" or that the calls were initiated for "telemarketing purposes" as prohibited by the TCPA's regulations.  Plaintiff simply has no evidence regarding the content of any of the calls reflected in the Mojo Account Files.

No call attempt will qualify as a "telephone solicitation" without evidence that the purpose of the call was to encourage "the purchase" of property, goods, or services.  *See* 47 CFR § 64.1200(f)(14) ("The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services….").  If, for example, a call attempt was made to encourage a homeowner to sell their property, or for some other reason unrelated to a purchase, then it would not be actionable. *See, e.g., Murphy v. DCI Biologicals Orlando*, No. 6:12-cv-1459-Orl-36KRS, 2013 U.S. Dist. LEXIS 181732, at *34 (M.D. Fla. Dec. 31, 2013) (message asking plaintiff to sell his

---

[1] Plaintiff did take the deposition of Mr. Nicoli, but Plaintiff's counsel did not introduce any of the Mojo Account Files as exhibits during the deposition, nor did counsel ask Mr. Nicoli whether he made any of the calls reflected in those records.

blood to defendant was not a "telephone solicitation"); *Friedman v. Torchmark Corp.*, 12-CV-2837-IEG (BGS), 2013 U.S. Dist. LEXIS 54020, *11 (S.D. Cal. Apr. 16, 2013) (messages not "telephone solicitations" where they invited plaintiff to attend a recruiting webinar to learn about selling defendant's products). Here, Plaintiff has no evidence of what was said by any of the salespersons on any of the call attempts, and thus no evidence that the calling parties were engaged in "telephone solicitations."

Similarly, there is no evidence that any "telemarketing" calls were made, as required by the internal do not call regulations. *See* 47 C.F.R. §§ 64.1200(d), 64.1200(f)(12); *Mejia v. Time Warner Cable, Inc.*, No. 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 U.S. Dist. LEXIS 120445, at **31-32 (S.D.N.Y Aug. 1, 2017) (summary judgment for defendant where plaintiffs failed to provide evidence that calls were made for telemarketing purposes). The utter lack of any evidence is fatal to Plaintiff's claims. *See In re Oracle*, 627 F.3d at 387 ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").

### 3. Intero Is Not Vicariously Liable For Any Calls Reflected In The Mojo Files Because There Is No Evidence That The Persons Who Initiated The Calls Acted With Apparent Authority On Behalf Of Intero

There is no evidence that Intero is vicariously liable for the calls in the Mojo Account Files under an "apparent authority" theory.[2] Accordingly, even if the Court considers this unpled theory, summary judgment should be entered for Intero.

---

[2] Although Plaintiff argued in his class certification motion that Intero could be held vicariously liable under ratification, apparent authority, and *respondeat superior* theories (*see* Doc. No. 70 at

Although the statute limits liability to the "person or entity" who "initiate[s]" the "telephone solicitation," 47 C.F.R. § 64.1200(c)(2), the Ninth Circuit has affirmed "the existence of vicarious liability for those who maintain an agency relationship with the caller." *Jones v. Royal Admin. Servs.,* 887 F.3d 443, 449-50 (9th Cir. 2018). "[A] defendant is vicariously liable for violations of the TCPA where common law principals of agency would impose it." *Id.* The analysis is governed by federal law. *See, e.g., id.*; *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) ("The FCC relies on the Restatement (Third) of Agency as the federal common law of agency. . . .We defer to this construction of the TCPA, as well as the FCC's reliance on the Restatement."); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019) ("the FCC clarified that a court should determine whether a defendant is vicariously liable for the TCPA violations of a third-party caller by using federal common law agency principles.").

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "In determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient.'" *Jones,* 887 F.3d at 450 (quoting *United States v. Bonds,* 608 F.3d 495, 505 (9th Cir. 2010)).

ECF pp. 25:7-26:8), the Court found that only his apparent authority theory could be decided on a class-wide basis. *See* Doc. No. 126 at ECF pp. 22:19-24:6.

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal **and that belief is traceable to the principal's manifestations**." Restatement (Third) of Agency § 2.03 (emphasis added).  The Ninth Circuit has held that "[a]pparent authority arises from **the principal's manifestations to a third party** that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997) (emphasis added); *see also Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) (affirming dismissal of TCPA claims: "Thomas has not shown that she reasonably relied, much less to her detriment, on any apparent authority with which Taco Bell Corp. allegedly cloaked the [calling parties]"); *Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-cv-07311-VC, 2019 U.S. Dist. LEXIS 220708, at *2 (N.D. Cal. Dec. 19, 2019) (Apparent authority "exists when the principal's own actions lead the plaintiff to reasonably believe that the agent has authority to perform certain acts for the principal.").

Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it." *Dist. Council of Iron Workers*, 124 F.3d at 1099. Rather, it "must be established by proof of something said or done by the [alleged principal] on which [the third party] reasonably relied." *Id.*

When it certified the classes, the Court found that determining whether salespersons had apparent authority to place the calls on behalf of Intero would turn on "how a reasonable person would perceive the calls" and observed this would depend on:

whether a reasonable person would believe that [the] sales associate who made the call, or [the] sales associate who caused the calls to be placed, had authority to act on behalf

[of Intero].  Because the inquiry is limited to **how a reasonable person would perceive the calls at issue**, there is no need to determine how individual class members perceived the calls.

Doc. No. 126 at ECF pp. 23:27-24:3 (emphasis added).

Plaintiff has no evidence of any "manifestations" made by Intero to called parties that would reasonably lead the called parties to believe that the salespersons were acting with apparent authority on Intero's behalf.  Nor can Plaintiff demonstrate what a "reasonable person would believe" when they were called, or how "a reasonable person would perceive the calls" because Plaintiff developed **no evidence** of what was said by any of the callers during any of the calls reflected in the Mojo Account Files.  *See, e.g., Makaron v. GE Sec. Mfg.*, CV-14-1274-GW (AGRx), 2015 U.S. Dist. LEXIS 75240, at *22 (C.D. Cal. May 18, 2015) (summary judgment for defendant on TCPA claims under apparent authority theory; "Plaintiffs have provided no evidence as to the actual contents of any of the purported calls that they received [from defendant's alleged agents], *i.e.*, what exactly was said or what representations were made"); *Jones v. All Am. Auto Prot., Inc.*, 3:14-CV-00199-LRH-WGC, 2015 U.S. Dist. LEXIS 158652, at **11-13 (D. Nev. Nov. 24, 2015) (same; "Plaintiffs have provided no evidence as to the actual contents of any of the purported calls that they received, i.e. what exactly was said or what representations were made").  With no evidence of what was said on the calls, there is no way to determine whether a "reasonable person" would have "perceive[d]" that any of the salespersons had authority to act on behalf of Intero, or whether that belief was traceable to a "manifestation" by Intero.  *Id.*

//

//

**4.    There Is No Evidence That Any Calls Reflected In The Mojo Account Files Were Placed To Residential Telephone Numbers, Or Received By Residential Telephone Subscribers Who Registered Their Numbers And Then Received Unwanted Calls**

Summary judgment should be granted as to the NDNCR Class, because there is no evidence that any of the calls reflected in the Mojo Account Files were placed to residential telephone numbers, or that the calls were received by "residential telephone subscribers" who had registered the numbers and then received subsequent unwanted calls.  The NDNCR Class is limited to all "persons" who:

(a) received more than one call made on behalf of Intero by, or on behalf of, one of Intero's California sales associates; (b) promoting Intero's goods or services; (c) that was placed through the dialing platform provided by Mojo Dialing Solutions, Inc., the calling records for which appear in one of 35 account files, identified in Appendix A; (d) in a 12-month period; (e) on their non-business telephone lines; (f) whose telephone number(s) were on the NDNCR for at least 31 days; (g) at any time since September 13, 2014.

Doc. No. 126 at ECF p. 27:1-7.

As discussed above, Plaintiff must present admissible evidence that the calls to the class were made in violation of 47 C.F.R. § 64.1200(c)(2).  *See* 47 U.S.C. § 227(c)(5); *see also Hirsch v. USHealth Advisors, LLC*, No. 4:18-cv-00245-P, 2020 U.S. Dist. LEXIS 228936, at *24-27 (N.D. Tex. Dec. 7, 2020) (collecting cases).  The regulation only restricts calls to "**residential telephone subscriber[s] who ha[ve] registered [their] telephone number[s]**" on the NDNCR. 47 C.F.R. § 64.1200(c)(2) (emphasis added); *see also id*. § 64.1100(h) (defining "subscriber"). Plaintiff has no admissible evidence on this essential element and, therefore, summary judgment should be entered for Intero.

Intero anticipates Plaintiff will rely on the testimony of his expert, Ms. Verkhovskaya, but her testimony is not sufficient to create a triable issue of fact on this claim.  She admitted she was **not** expressing any opinion on whether any of the telephone numbers in the Mojo Account Files were "residential" telephone numbers.  *See* Narita Decl., ¶ 7 at Ex. F [AV Depo. pp. 131:8-132:16] ("I never testified that I thought they were all residential numbers … I did not issue such opinion.").  In fact, the data LexisNexis returned to her – which was not produced until after the close of fact discovery in a file labeled "VERKHOVS000013 LN_Output_NDNCR_Output_-_Corp..csv" – only identified **six** instances where LexisNexis had sufficient information to characterize a number from the Mojo Account Files as a "residential" line.  *See* Doc. No. 101-9, ¶¶ 18-20 & Ex. K.  For the other 198,478 numbers, LexisNexis could **not** identify them as "residential" and therefore returned a value of "MLR."  *Id*.; *see also* Doc. No. 101-3, ¶ 11.

Although Ms. Verkhovskaya sought to portray "MLR" as a value used by LexisNexis when it believed the number was "most likely residential," LexisNexis refutes this and states that the "MLR" designation appears to have been specially requested by Ms. Verkhovskaya's group.  Doc. No. 101-3, ¶ 11.  Ultimately, when pressed at her deposition, Ms. Verkhovskaya backpedaled and emphasized "I do not have a formal opinion that I'm issuing, other than those telephone numbers were not business telephone numbers."  *See* Narita Decl., Ex. F [AV Depo. pp. 129:7-133:3].

LexisNexis was not asked to determine if any of the telephone numbers in the Mojo Account Files were cellular numbers that were being used primarily for business purposes at the time they were allegedly called.  *Id*. [AV Depo. pp. 125:21-127:21].  Plaintiff's expert was not retained to investigate this, so she had no opinion on this issue.  *Id*.  This is not a surprise, given that LexisNexis testified that it had "very little" information relating to whether mobile telephone

numbers were being used for business, government, or residential purposes.  *See* Doc. No. 101-3, ¶ 7.

The difference between a "residential" telephone line and one that was described as a "non-business" line in Ms. Verkhovskaya's report is more than just semantics.  LexisNexis does not maintain a comprehensive database of information on all telephone numbers, has little information on cellular telephone numbers, and it was simply unable to reach a conclusion on whether a number was "business" or "government" or "residential" for all but six of the numbers from the Mojo Account Files that Ms. Verkhovskaya supplied to it.  *See* Doc. No. 101-3, ¶¶ 3-11, Ex. B; Doc. No. 101-9, ¶¶ 18-20 & Ex. K.

Unless LexisNexis affirmatively concluded that a number was "residential," there is no reasonable basis for Ms. Verkhovskaya to opine that it was "most likely" that the called party used the line for residential purposes.   Her speculation that the purpose for making the calls was to sell residential real estate, even if true, is not evidence regarding whether the telephone lines of the called parties were used for "residential" purposes.  *See, e.g., Stevens-Bratton v. Truegreen, Inc*., 437 F.Supp.3d 648, 659 (W.D. Tenn. 2020) (rejecting argument that cellular telephone should be considered a "residential" line because defendant called in an effort to sell residential lawn services, because this would "turn the relevant inquiry on its head by shifting the analysis from the consumer's use of the telephone to the caller's purpose in making the call."); *Bank*, 2015 WL 4488070 at *2 (granting summary judgment for defendant, despite fact that call was made to promote the sale of retail electricity).  Indeed, Intero's experts identified numerous instances where numbers that Ms. Verkhovskaya had deemed "non-business" numbers were, in fact, associated with businesses.  *See* Doc. No. 101-9, ¶¶ 14-17, Exs. C-J.  Because there were only six numbers flagged as "residential" by LexisNexis, there is no triable issue of fact as to

whether the remaining telephone numbers were "residential" and summary judgment should be granted for Intero as to those numbers.

Moreover, Ms. Verkhovskaya did not attempt to determine who actually received the calls, much less that the call recipients were "residential telephone subscribers." *See* Doc. No. 72, ¶¶ 83-105; Narita Decl., Ex. F [AV Depo. pp. 144:5-145:6] (discussing "User and/or Subscriber Name/Address Identification If Needed" section of her report; Q: "This section of your report refers to a methodology that you say you could use if you were asked to do it in the future, correct?  A. That is correct.  Q: But to be clear, you've not actually performed any of this analysis in this case, correct?  A: Correct.").  Ms. Verkhovskaya also conceded she had **no method** to identify **who** registered the number on the NDNCR, or whether that same person received a subsequent unwanted call.  *See* Narita Decl., Ex. F [AV Depo. 107:2-108:15, 112:11-113:6].  Indeed, she was not aware of any method for making this determination, had not been asked to formulate an opinion on it, and admittedly "did not give it much thought."  *Id.* [AV Depo., pp. 112:11-113:6].  Ms. Verkhovskaya also candidly conceded that the methods identified in her report were "absolutely not" designed to identify the "subscribers" of cellular telephones.  *Id.* [AV Depo., pp. 146:12-147:2].

There is no data in the record that can be used to determine if the person who registered a telephone number on the NDNCR was the same person who received the subsequent unwanted calls reflected in the Mojo Account Files.  *See* 47 C.F.R. § 64.1200(c)(2).  Mojo does **not** attempt to determine if the contact names contained in its data files are residential telephone subscribers, and Mojo does not know if the persons listed in its contact records were in fact the persons who had registered the telephone numbers on the NDNCR.  *See* Supplemental Mangold Decl., ¶ 5.  Likewise, the data file returned to Ms. Verkhovskaya by her data provider, Contact

Center Compliance ("CCC") (which was first produced to Intero after the close of fact discovery in a file labeled as "VERKHOVS000006 detailed.csv") did **not** list the name of any person who registered any of the telephone numbers on the NDNCR.

Even if it were possible for Plaintiff to identify each subscriber who registered the telephone numbers in the Mojo Account Files (it is not), Plaintiff has no evidence to establish that those registrants were the persons who received the subsequent unwanted calls.  The CCC data provided to Ms. Verkhovskaya does **not** reflect the date when any number was first was listed on the registry, and does **not** reflect dates on which it may have fallen off.  *See* Doc. No. 101-7, ¶¶ 2-6.  Rather, the CCC data was simply a "snapshot" of the numbers on the NDNCR as of a single date.  *See* Doc. No. 101-9, ¶¶ 26-27; Doc. No. 101-10, ¶ 41.

For this reason, as Intero's expert explained, it is not possible to determine if the person who originally registered a cellular number on the NDNCR is the same person who received a subsequent call.  *See* Doc. No. 101-10, ¶¶ 32-38, 52, 87, 112-113.  This issue is crucial, because so many households do not use traditional "landlines" and because cellular telephone numbers are frequently reassigned to new subscribers.  *Id.*, ¶¶ 80-89, 119.

Given the complete lack of evidence that calls in the Mojo Account Files were placed to "residential" telephone numbers, and absence of evidence that the person who registered the number on the NDNCR was the "residential telephone subscriber" who received subsequent unwanted calls, summary judgment for Intero is proper as to the NDNCR class.

//

//

//

//

**F. Summary Judgment Should Be Entered For Intero On The Request For Injunctive Relief Made On Behalf Of Both Classes**

**1.    The Complaint Does Not Pray For Injunctive Relief On Behalf Of The Internal DNC Class Or NDNCR Class**

Summary judgment should be entered for Intero regarding the Internal DNC Class claims, and the injunctive relief request on behalf of the NDNCR Class, because Plaintiff's Complaint does not pray for injunctive relief on behalf of either class. *See* Doc. No. 1, Prayer for Relief at ¶¶ 1-7. Rather, the injunction requested in the Prayer is limited to "prohibiting Defendant from using artificial or prerecorded messages to make calls without recipients' prior express consent." *Id*., ¶ 4. For the same reasons discussed above, *see supra*, III.D., Plaintiff cannot seek an injunction on behalf of himself or the two remaining classes when he did not seek that relief in his Complaint. *See also Nolan v. Transcend Servs., Inc.,* No. 3:10-cv-01571-HU, 2012 U.S. Dist. LEXIS 703, at \*\*35-37 (D. Or. Jan. 4, 2012) (refusing to consider request for relief on summary judgment not included in the prayer to the complaint); *SEIU, Local 721 v. Cty. Of Riverside*, EDCV 09-00561-VAP (JTLx), 2011 U.S. Dist. LEXIS 46008, at \*2-6, 41 (C.D. Cal. Apr. 27, 2011) (same).

**2.    Plaintiff Has Not Established That Any Residential Telephone Subscriber On Intero's Internal Do Not Call List Requested Not To Be Called, And Was Then Called Again**

In its Order granting certification, the Court certified the following Internal DNC Class as requested by Plaintiff:

All persons in the United States who: (a) **were on an internal list of persons who asked Intero not to call them ("Internal DNC List")**, (b) received more than one call made on behalf of Intero by, or on behalf of, one of Intero's California sales associates;

(c) promoting Intero's goods or services; (d) in a 12-month period; (e) on their non-business telephone line; (f) at any time since September 14, 2014.

Doc. No. 126 at ECF p. 27:8-13 (emphasis added).

Summary judgment should be entered for Intero, because there is no evidence that any "residential telephone subscriber," other than Plaintiff, was placed "on an internal list of persons who asked Intero not to call them" and was then called again.

"A district court cannot issue an injunction unless there exists some cognizable danger of recurrent violation." *United States v. Laredal Mfg. Corp.*, 73 F.3d 852, (9th Cir. 1995) (internal quotations and citations omitted). "The determination that such danger exists must be based on appropriate findings supported by the record." *Id.*

The regulation governing the internal do not call list claim prohibits any "person or entity" from "initiat[ing]" telemarking calls to "residential telephone subscriber[s]" unless the "person or entity" maintains a list of persons who request not to be called. 47 C.F.R. § 64.1200(d). Here, Plaintiff offers no evidence of whether any California salespersons did, or did not, maintain their own internal do-not-call lists.

Intero has maintained an internal DNC List since 2018, consisting of persons who asked not to be called by salespersons. *See* Narita Decl., Ex. B [Wang Depo. 86:14-87:18]; Wang Decl., ¶¶ 2-3, Exs. 1-2. Plaintiff conceded that Intero maintains the list, and the list was produced to him in discovery. *See* Doc. No. 70 at ECF p. 22:1-13; Narita Decl., ¶ 5 at Ex. D. Intero's Corporate Counsel testified about how it was maintained. *See* Narita Decl., Ex. B [Wang Depo., pp. 79:18-80:4, 85:12-88:19, 91:6-8]. Plaintiff, however, never developed any evidence that any person on the list (other than him) received another call after making a request not to be called. His own expert conceded that she had **not** attempted to determine whether any

called person had made a request not to be called, and then received another unwanted call. *Id.*, Ex. F [AV Depo. pp. 161:5-19, 165:8-166:2]; *see also* Doc. No. 101-9, ¶¶ 31-34.  Nor does Plaintiff have evidence that any such person was a "residential telephone subscriber" as required by the regulation.  47 C.F.R. § 64.1200(d).  Plaintiff cannot pursue injunctive relief on behalf of a certified class when there is no evidence that any improper calls were placed to class members.

**G.  Summary Judgment Should Be Entered For Intero On The UCL Claims**

The UCL claims fail for two reasons.  First, because they are premised on the theory that Intero violated the TCPA, they fail for the reasons stated above.  Second, Plaintiff and the classes lack standing to maintain UCL claims, because they did not "los[e] money or property" as a result of any alleged act or omission by Intero.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200.  Plaintiff has neither alleged nor produced evidence sufficient to show that Intero engaged in "unfair" or "fraudulent" business acts or practices, nor did Intero violate the TCPA (*see supra*, III.A-III.F).  Because the UCL claims are premised on the failed TCPA claims, they too fail as a matter of law.  *See Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1058-59 (9th Cir. 2002) (UCL claim fails "because [it] hinges on [plaintiff's] rejected federal claim"); *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal.App.4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law.") (citation omitted).

Plaintiff and the classes also lack standing to maintain a UCL claim, because there is no evidence they "lost money or property" as a result of any act or omission by Intero.  Plaintiff and the classes must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e.,

caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322-323 (2011).

The Ninth Circuit has held that a plaintiff's receipt of unwanted text messages is insufficient to create UCL standing.  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048-49 (9th Cir. 2017).  Indeed, in a case nearly identical to this one, this Court dismissed a UCL claim filed by Plaintiff when he did not dispute that he lacked UCL standing.  *See Chinitz v. NRT West, Inc.*, No. 5:18-cv-06100-NC (N.D. Cal. Feb. 20, 2019).  Because the undisputed evidence establishes that Plaintiff and the classes did not suffer economic injury, summary judgment should be entered for Intero.

## IV.    **CONCLUSION**

For the reasons discussed herein, Intero respectfully requests that the Court issue an Order granting summary judgment in favor of Intero on all claims.

DATED: January 21, 2021                          SIMMONDS & NARITA LLP
                                                 TOMIO B. NARITA
                                                 R. TRAVIS CAMPBELL
                                                 MARGARET T. CARDASIS


                                                 By:    /s/ Tomio B. Narita
                                                        Tomio B. Narita
                                                        Attorneys for Defendant
                                                        Intero Real Estate Services