TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
R. TRAVIS CAMPBELL (SBN 271580)
tcampbell@snllp.com
MARGARET T. CARDASIS (SBN 322167)
mcardasis@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000

Attorneys for Defendant
Intero Real Estate Services

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CHINITZ, *individually, and on behalf of a class of similarly situated persons*, <br><br> Plaintiff, <br><br> vs. <br><br> INTERO REAL ESTATE SERVICES, <br><br> Defendant. | CASE NO. 5:18-cv-05623-BLF <br><br> **DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date: March 25, 2021 <br> Time: 9:00 a.m. <br> Courtroom: 3, 5th Floor <br><br> The Honorable Beth Labson Freeman |

## **TABLE OF CONTENTS**

I.    ARGUMENT ............................................................................................................. 1

   A.  The Court Should Not Consider Plaintiff's Unpled Theory ................................. 1

   B.  Plaintiff Offers No Admissible Evidence Showing Who Initiated The
       Mojo Calls........................................................................................................ 4

   C.  There Is No Evidence That Calls Reflected In The Mojo Account Files Were
       "Telephone Solicitations" Or Initiated For "Telemarketing Purposes"................. 6

   D.  There Is No Evidence Of Calls Initiated To Residential Telephone Numbers, Or
       Were Received By Residential Telephone Subscribers
       ........................................................................................................................ 8

   E.  There Is No Evidence That Intero Is Vicariously Liable For The Calls
       Reflected In The Mojo Account Files Under An Apparent Authority Theory.... 11

   F.  There Is No Evidence That Internal DNC Class Members Will Receive Unwanted
       Calls In The Future ........................................................................................ 13

   G.  The Soneji Declaration Contains Inadmissible Evidence.................................. 14

II.   CONCLUSION....................................................................................................... 15

**TABLE OF AUTHORITIES**

**Federal Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*
2017 WL 1806583 (N.D. Cal. May 5, 2017) ..................................................................9

*Alvarez v. Hill*
518 F.3d 1152 (9th Cir. 2008) .......................................................................................3

*Braver v. Northstar Alarm Servs., LLC*
329 F.R.D. 320 (W.D. Okla. 2018)................................................................................9

*Brignac v. Celadon Trucking Servs*
2012 U.S. Dist. 6810 (W.D. La. Jan. 19, 2012)..........................................................6

*Briseno v. ConAgra Foods, Inc.*
844 F.3d 1121 (9th Cir. 2017) ................................................................................... 11

*Canary v. Youngevity Int'l, Inc., No. 5:18-cv-03261-EJD,*
2019 U.S. Dist. LEXIS 46429 (N.D. Cal. Mar. 20, 2019) ........................................ 2

*Chesbro v. Best Buy Stores, L.P.,*
705 F.3d 913 (9th Cir. 2012) ..................................................................................... 7

*Iglesia Ni Cristo v. Cayabyab, 18-cv-00561-BLF,*
2020 U.S. Dist. LEXIS 57430 (N.D. Cal. Mar. 21, 2020) ............................... 14, 15

*In re Oracle Corp. Sec. Litig.,*
627 F.3d 376 (9th Cir. 2010) .............................................................................. 6, 14

*Johnson v. Comodo Group, Inc*
2020 WL 525898 (D. N.J. Jan. 31, 2020) ...................................................................9

*Jones v. All Am. Auto Prot., Inc.:14-CV-00199-LRH-WGC,*
2015 U.S. Dist. LEXIS 158652 (D. Nev. Nov. 24, 2015) ....................................... 12

*Krakauer v. Dish Network*
311 F.R.D. 384 (M.D.N.C. 2015) ................................................................................9

*Levitt v. Yelp! Inc.*
765 F.3d 1123 (9th Cir. 2014) ......................................................................................3

*Makaron v. GE Sec. Mfg., CV-14-1274-GW(AGRx),*
2015 U.S. Dist. LEXIS 75240 (C.D. Cal. May 18, 2015) ...................................... 12

*Navajo Nation v. U.S. Forest Serv.,*
535 F.3d 1058 (9th Cir. 2008) ............................................................................... 2, 3

*Pac. Coast Fed'n of Fisherman's Ass'ns v. Glaser*
945 F.3d 1076 (9th Cir. 2019) ......................................................................................3

*Pascal v. Agentra, LLC*, No. 19-CV-02418-DNR,
2019 U.S. Dist. LEXIS 179359 (N.D. Cal. Oct. 16, 2019) ...................................................... 1

*Pickern v. Pier 1 Imps. (U.S.), Inc.,*
457 F.3d 963 (9th Cir. 2006) ................................................................................................ 2, 3

*Shamblin v. Obama for Am.*
2015 WL 1909765 (M.D. Fla. Apr. 27, 2015) ............................................................................9

*Simmons v. Charter Communs., Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016) ...................................................................................... 2

*United States v. Laredal Mfg. Corp.*,
73 F.3d 852 (9th Cir. 1995) ................................................................................................... 13

*Wakefield v. ViSalus, Inc*
2019 WL 3945243 (D. Or. Aug. 21, 2019)................................................................................10

*Wasco Products, Inc. v. Southwall Technologies, Inc.*,
435 F.3d 989 (9th Cir. 2006) ............................................................................................... 1, 2

**Rules**

47 C.F.R. § 64.1200 .......................................................................................................... 13, 14

Fed. R. Evid. 802 ..................................................................................................................... 15

Fed. R. Evid. 901 ..................................................................................................................... 15

*Rules and Regulations Implementing the Telephone Consumer Act of 1991*,
70 Fed. Reg. 19,330, 19331 (2005) ......................................................................................... 7

## I.    ARGUMENT

### A.  The Court Should Not Consider Plaintiff's Unpled Theory

In his Opposition, Plaintiff argues that Intero is vicariously liable under an apparent authority theory for a specific set of calls (Appendix A to the Court's Class Certification Order ("Mojo Account Files" or "Appendix A")) initiated through a specific third-party vendor (Mojo Dialing Solutions, LLC ("Mojo")) by a specific set of persons (Doc. No. 160-1, ¶ 21).  The Complaint contains none of these allegations, however, and courts do not consider allegations and theories that "appear for the first time in [] response" to a summary judgment motion. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

The Complaint asserted claims against Intero for calls **Intero** allegedly initiated to class members.  *See* Doc. No. 1, ¶¶ 1, 7, 18, 31, 33, 36, 42-46, 71, 84, and 112.  The National Do-Not-Call Registry ("NDNCR") and Internal Do-Not-Call ("Internal DNC") classes were limited to persons who received calls "**made by Defendant**" (*id*., ¶ 55(a)-(b) (emphasis added)), and Plaintiff did **not** list vicarious liability as one of the 19 alleged common questions (*id*., ¶ 58(a)-(s)).  Thus, the class claims are indisputably based on a direct liability theory.  *See Pascal v. Agentra, LLC*, No. 19-CV-02418-DNR, 2019 U.S. Dist. LEXIS 179359, at *6 (N.D. Cal. Oct. 16, 2019) (discussing "direct" versus "vicarious" liability under the TCPA).

Ignoring this, Plaintiff says that "the Complaint specifically stated that Plaintiffs seek to hold Intero responsible for calls made by Intero agents on its behalf."  Doc. No. 160 at ECF p. 10:8-10.  Not so.  He cites to paragraphs that relate to calls **Plaintiff** allegedly received from or on behalf of Keith Vong (*see* Doc. No. 1, ¶¶ 16, 19, 21-25, 36, 41), but they say nothing about calls made to the classes, or about vicarious liability.  Other paragraphs confirm Plaintiff was alleging Intero made the calls.  *See id*., ¶¶ 18, 71, 111.  The handful of paragraphs that simply

parrot the "on behalf of" language of the regulation (*see id*., ¶¶ 53, 58m, 76, 87, 96), are legal conclusions that are not entitled to the assumption of truth. *See Canary v. Youngevity Int'l, Inc., No. 5:18-cv-03261-EJD*, 2019 U.S. Dist. LEXIS 46429, at *7, 15 (N.D. Cal. Mar. 20, 2019) (allegations that calls were made "on behalf of" defendant was legal conclusion).

The Complaint does not allege that a reasonable person would have believed that the salespersons who allegedly placed the calls reflected in the Mojo Account Files had authority to do so on behalf of Intero, or that any "manifestation" by Intero was "traceable" to any such belief. The Complaint does not mention Mojo, nor does it identify any of the 49 salespersons Plaintiff now claims made the calls. Thus, the Complaint does not contain "the necessary factual allegations" required "to state a claim" under a vicarious liability theory. *See, e.g., Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Wasco Products, Inc.*, 435 F.3d at 992 ("[T]he necessary factual averments are required with respect to each material element of the underlying legal theory."). Vague allegations are not enough. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) ("complaint gave the [defendants] no notice of the specific factual allegations presented for the first time" in opposition to summary judgment); *see also Simmons v. Charter Communs., Inc.,* 222 F. Supp. 3d 121, 132 (D. Conn. 2016) ("fact that there is some language in the complaint that could be construed as advocating a theory of vicarious liability" not enough).

The Rule 26(f) report, filed on February 14, 2019, also does not help Plaintiff. It does not mention Mojo, any of the salespersons who allegedly used Mojo to place calls to the classes, or that Plaintiff was seeking to hold Intero liable for those calls under an apparent authority theory. Intero acknowledged a vicarious liability issue in the report as it related to Plaintiff's **individual** claims, based on calls he allegedly received from Mr. Vong.

Regardless, the Ninth Circuit has made clear that the theory must be pled in the Complaint. *See, e.g., Navajo Nation*, 535 F.3d at 1080 ("our precedents make clear that where, as here, **the complaint** does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court" (emphasis added)); *Pickern*, 457 F.3d at 968-69 (providing expert report to defendant bearing on unpled theory not sufficient). Intero could not have known about an apparent authority theory based upon calls reflected in the Mojo Account Files, because Plaintiff did not produce those records to Intero until January 10, 2020, **after** the close of discovery, and did not assert the theory until much later. *See* Doc. No. 160-1, ¶ 8; Doc. No. 70 at ECF pp. 18:6-13, 21:3-17, 24:17-26:18; Doc. No. 117 at ECF p. 6:4-8; Doc. No. 117-1; Doc. No. 117-2, ¶¶ 24-25.

The cases Plaintiff cites are inapposite. Unlike here, the complaint in *Alvarez v. Hill* "contained factual allegations establishing a plausible entitlement to relief" under the statute, so plaintiff was not barred from raising a claim simply because a citation to the statute was not included. 518 F.3d 1152, 1157-58 (9th Cir. 2008). The amended complaint in *Pac. Coast Fed'n of Fisherman's Ass'ns v. Glaser* also contained "the necessary factual allegations to state a claim" under the theory plaintiffs raised on summary judgment, and, unlike here, the defendants' conceded they were on notice of the theory. 945 F.3d 1076, 1086 (9th Cir. 2019) (quotations omitted). The decision in *Levitt v. Yelp! Inc.* supports Intero, as it confirms the complaint must give the defendant "fair notice" of the claims, and must also contain "factual allegations that," if taken as true, "plausibly suggest an entitlement to relief." 765 F.3d 1123, 1135 (9th Cir. 2014).

The discovery Plaintiff cites (*see* Doc. No. 160 at ECF p. 11:9-10) does not mention vicarious liability, apparent authority, Mojo, or any of the 49 persons who allegedly initiated calls to class members. The materials show that Intero was attempting to refute the "direct

liability" theory alleged in the Complaint by proving the company employees and personnel did **not** initiate the calls, and that any allegedly improper calls were initiated by third party independent contractors. The Court should refuse to consider Plaintiff's unpled theory.

### B.  Plaintiff Offers No Admissible Evidence Showing Who Initiated The Mojo Calls

When it certified the classes, the Court found that Plaintiff had satisfied the requirements of Rule 23.  It did not decide the merits of **who** initiated the alleged calls in the Mojo Account Files.  Plaintiff cannot rely on the Court's class certification order as a substitute for submitting admissible evidence on summary judgment regarding who initiated the calls to class members.

Plaintiff has not even attempted to meet his burden, because he has not put the records listed in Appendix A (which allegedly identify the callers) into the record.  He cites to a subpoena to Mojo and his counsel's testimony to support his assertion that "the Mojo Call Records reflect calls made from the accounts of California-based Intero agents" (Doc. No. 160 at ECF p. 13:6-16), but the subpoena does not say who made the calls, nor is his counsel's testimony admissible on this point (*see, infra*, I.G).  He quotes the first half of a sentence from Mojo's CEO's testimony, but ignores the rest of the sentence, which states that Mojo "has no way of knowing whether those customers [who setup and maintained the accounts] allowed others to use their accounts to place the calls or attempted calls."  Doc. No. 159-3, ¶ 3.  Without the call records themselves, the testimony of Plaintiff's counsel describing the information "appearing" or "reflect[ed]" in those records (Doc. No. 160 at ECF pp. 13:17-14:19) is inadmissible and should not be considered.  *See, infra*, I.G.

Intero's interrogatory responses (Doc. No. 160-1 at Ex. F) identified all "current and former" salespersons "from September 13, 2014 to the present," and listed all salespersons and brokers who were affiliated with Intero at **any point during that time period**.  The list is not

evidence of whether any person was affiliated with Intero when the calls were initiated.  For example, Intero correctly listed Amir Shahkarami, a former salesperson, in its interrogatory response, but all his alleged calls were initiated after Mr. Shahkarami was affiliated with a different brokerage.  *See* Declaration of Margaret T. Cardasis in Support of Defendant's Motion for Summary Judgment, ¶ 14, Ex. 4 ("Cardasis Decl.").

Purported screenshots from Intero's website in 2020 (Doc. No. 160-1 at Ex. K), and from the DRE's website from October 2019 and January 2020 (*id.* at Ex. H and I) are not admissible.  *See, infra*, I.G.  They are also not evidence of who initiated the calls reflected in the Mojo Account Files, which were purportedly placed to class members in the 2014-2019 period.  Exhibit J contains the certified license histories for Vito Lippolis, Myrtha Moll, Ngan Nguyen, and Veeral Shah, who Plaintiff contends initiated the calls in files MOJO-Intero 0000323.csv, MOJO-Intero 0000327.csv, MOJO-Intero 0000320.csv, and MOJO-Intero 0000295.csv, respectively.  But Mojo does not know if the persons who set up those accounts actually initiated the calls reflected therein, and Plaintiff never took any discovery on this point.  *See* Doc. No. 159 at ECF pp. 19:14-20:3.  Moreover, these license histories say nothing about who initiated the calls in the other 31 files.[1]

---

[1] Plaintiff concedes he has no evidence of who initiated any of the calls in the "Intero Team" (MOJO-Intero 0000372.csv) and "MOJO $" (MOJO-Intero 0000304.csv) files.  *See* Doc. No. 160 at ECF p. 13:17-22; Doc. No. 160-1, ¶ 21.  Thus, at a bare minimum, summary judgment should be entered for Intero as to any calls reflected in these files.  Plaintiff also

In short, contrary to Plaintiff's contention, he has not shown that the Mojo Account Files "reflect [] calls, [] made by Intero agents," or that the calls came "from accounts established by Intero agents." Doc. No. 160 at ECF p. 14:10-11. He could not make this showing without putting the Mojo Account Files into the record, and he did not attempt to do so.

The decision in *Brignac v. Celadon Trucking Servs.* to allow properly authenticated cell phone records at trial in a personal injury case is not applicable here. *See* No. 2:10 CV 373, 2012 U.S. Dist. 6810, at *2-4 (W.D. La. Jan. 19, 2012). Plaintiff has not offered phone records of salespersons who allegedly called class members. The other cases Plaintiff cites (Doc. No. 160 at ECF p. 14) did not involve phone calls, or what evidence is needed to create an issue of fact as to who made them.

Intero is not engaging in "speculation" about who initiated the calls as Plaintiff asserts; it is pointing to the absence of evidence on an essential element of the classes' claims, on which Plaintiff bears the burden of proof. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."). Summary judgment for Intero is proper.

### C. There Is No Evidence That Calls Reflected In The Mojo Account Files Were "Telephone Solicitations" Or Initiated For "Telemarketing Purposes"

Plaintiff has not met his burden of showing that the calls reflected in the Mojo Account Files were "telephone solicitations" and were initiated for "telemarketing purposes." The Ninth

---

misrepresents the parties' meet and confer effort concerning "franchise agents." *See* Doc. No. 160 at ECF p. 13, n. 4.

Circuit case he relies upon – *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) – controls here, and compels a ruling for Intero. *Chesbro* held the plaintiff must prove the calls were made for a "prohibited advertising purpose" using evidence of the contents of the "calls at issue." *See Chesbro*, 705 F.3d at 918 (analyzing "undisputed script" of call). But Plaintiff submits nothing regarding the contents of any of the calls reflected in the Mojo Account Files. No call recordings, no call scripts, no testimony from any person who initiated the calls, nor any person who heard them. He has not met his burden under *Chesbro*.

The 2005 FCC Order Plaintiff cites cuts strongly against him, because it states that a call by a real estate salesperson who represents a potential buyer, if initiated to a party who advertised their property for sale, would **not** constitute a telephone solicitation, "so long as the purpose of the call is to discuss a potential sale of the property to the represented buyer." *Rules and Regulations Implementing the Telephone Consumer Act of 1991*, 70 Fed. Reg. 19,330, 19331 (2005) ("The callers, in such circumstances, are not encouraging the called party to purchase, rent or invest in property, as contemplated by the definition of 'telephone solicitation.' They are instead calling in response to an offer to purchase something from the called party."). Thus, if the Court credits Plaintiff's argument that the Mojo platform was used to contact potential home **sellers** with expired listings on behalf of potential home buyers, this would not be advertising.

None of the evidence Plaintiff cites creates a triable issue of fact as to whether the "calls at issue" were made for "a prohibited advertising purpose." A purported screenshot from Mojo's website from the year 2020 (Doc. No. 160-1, Ex. D) is not evidence of the purpose of calls made by 49 different persons between 2014 and 2019. *See* Doc. No. 160 at ECF p. 15:15-16. Nor does the testimony of a single salesperson, confirming he paid to use Mojo's platform, prove anything about the purpose of calls at issue. *Id*. at ECF p. 15:16-18.

There is no evidence of the "nature of the telephone numbers" that were allegedly "uploaded" to Mojo, let alone evidence that any numbers reflected in the Mojo Account Files were for "residential homeowners," as Plaintiff contends. *Id*. at ECF p. 15:18-20. Similarly, the testimony from Intero's expert and the purported letter from an attorney representing a non-party do not say anything about Mojo, the Mojo Account Files, or the nature of any of the phone calls allegedly initiated by any of the 49 salespersons. *Id*. at ECF pp. 15:20-16:6.

Indeed, the lone salesperson relied on by Plaintiff who mentioned Mojo testified that "[a]s far as [he] know[s]" Mojo will dial "whatever number you put in," and that he did not use the service for "expired listings." Doc. No. 160-1 at ECF pp. 380:11-20, 383:13-15. Regardless, even if Plaintiff had evidence of the "nature" of the alleged phone numbers "uploaded" to Mojo by the 49 salespersons (he does not), this says nothing about the contents of any call that was initiated or whether any call was a telephone solicitation or made for telemarketing purposes.

Plaintiff points to snippets from unauthenticated "training" videos, but only two even mention Mojo. *See* Doc. No. 160 at ECF p. 16:7-20. The video excerpts are not evidence of the content of any call, or evidence that any of the 49 salespersons who allegedly made the calls to class members used Mojo as described in the two video clips.

### D. There Is No Evidence Of Calls Initiated To Residential Numbers, Or Received By Residential Telephone Subscribers

Plaintiff claims he has "adduced evidence that the calls to the NDNCR Class were made to residential telephone numbers" (Doc. No. 160 at ECF p. 17:16-20), but he relies solely on the report of his expert, Ms. Verkhovskaya. Her report is not evidence on this point, because: 1) she admittedly was **not** expressing an opinion on whether any of the numbers in the Mojo Account Files were "residential" telephone numbers; 2) the file returned to her by her data provider, LexisNexis, identified only **six** instances where LexisNexis had enough data to characterize a

telephone number as "residential," and 3) she never asked LexisNexis to determine if any of the numbers were cellular telephone numbers used primarily for business purposes at the time of the alleged calls. *See* Doc. No. 159 at ECF pp. 26:1-27:10.

Plaintiff cites decisions that have relied on his expert's opinions on class certification, but those rulings do not help him create an issue of fact on summary judgment. The *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.* court refused to strike her report, because her "use of Lexis Nexis data to remove business numbers from her output list relates to the weight of her opinion, not exclusion." *See* No. 15-CV-6314-YGR, 2017 WL 1806583, at *8 (N.D. Cal. May 5, 2017). Here, however, even if this Court considers her report, it does not create an issue of fact that any numbers (except the six flagged by LexisNexis) from the Mojo Account Files were "residential" telephone lines. The court in *Krakauer v. Dish Network* rejected the defendant's argument that because Ms. Verkhovskaya had done a poor job of removing business numbers, there would be "hundreds" of individual inquiries precluding class certification. *See* 311 F.R.D. 384, 396 (M.D.N.C. 2015). Here, by contrast, if the LexisNexis data she relied upon is considered, it suggests at best there were just six "residential" telephone numbers called.

Neither the *Johnson v. Comodo Group, Inc.* nor the *Shamblin v. Obama for Am.* courts were asked to decide if her report was sufficient to create a triable issue of fact on whether "residential" telephone numbers had been called. *See* No. 16-cv-04469-SDWLDW, 2020 WL 525898, at *9-10 (D. N.J. Jan. 31, 2020); No. 8:13-cv-02428, 2015 WL 1909765, at *2-3 (M.D. Fla. Apr. 27, 2015). *Braver v. Northstar Alarm Servs., LLC* did **not** involve a report by Ms. Verkhovskaya, nor did the court rule on what type of evidence could create a triable issue of fact on whether numbers had been used for "residential" purposes. 329 F.R.D. 320, 329 (W.D. Okla. 2018). Likewise, in *Wakefield v. ViSalus, Inc.*, the court denied a motion to decertify a class

filed by defendant after a three-day jury trial resulted in a verdict for plaintiff, but did not address what type of evidence is needed to withstand summary judgment.  No. 3:15-CV-1857-SI, 2019 WL 3945243, at *1 (D. Or. Aug. 21, 2019).

Plaintiff argues it is "simply common sense" that numbers "on homeowner lead generation lists" are residential telephone numbers, but he offers no **evidence** that numbers in the Mojo Account Files were derived from such lists.  For example, common sense would **not** dictate that William Harrigan or David Fissel, real estate agents who hold themselves out as handling **commercial** transactions, would be using Mojo to call residential telephone numbers. *See* Cardasis Decl., ¶¶ 11, 13.  The CEO of Mojo did **not** say the numbers came from "homeowner lead generation lists" and he confirmed that Mojo does **not** attempt to determine if any of the numbers are associated with residential telephone subscribers. Doc. No. 159-3, ¶¶ 4-6.

Intero demonstrated there is no evidence that the calls reflected in the Mojo Account Files were received by "residential telephone subscribers" who had registered the numbers and then received subsequent unwanted calls.  *See* Doc. No. 159, ECF pp. 28:3-29:11.  Plaintiff claims the Court has "twice rejected" this argument (*see* Doc. No. 160, ECF pp. 18:22-19:11), but he ignores the record.  The Court certified the classes, because Plaintiff claimed he could "prove Intero dialed residential numbers on a class-wide basis" (*see* Doc. No. 126 at ECF p. 24:26-28), but the Court did **not** rule that Ms. Verkhovskaya's report was sufficient to create a triable issue of fact on this point.  Later, the Court ruled "it is not necessary **at this stage**" to isolate "residential telephone subscribers" and it pointed out that persons "within the zone of interests" of the TCPA might also have valid claims, but the Court did **not** rule that Ms. Verkhovskaya's report was sufficient, for purposes of summary judgment, to create a triable issue of fact on these points.  *See* Doc. No. 138 at ECF p. 7:4-7 (emphasis added).

Regardless, Plaintiff cites no evidence that any person who received a call reflected in the Mojo Account files falls within that undefined "zone." He ignores the import of his expert's admission that she was not asked to determine if the call recipients were "residential telephone subscribers," or if the persons who registered their telephone numbers later received unwanted calls. *See* Doc. No. 159 at ECF p. 28:3-19. In addition, LexisNexis confirmed that Ms. Verkhovskaya never requested and was not provided data indicating whether residential telephone subscribers were called. *See* Supplemental Declaration of Craig L. Davis Re Documents and Information Produced by LexisNexis In Response to Subpoenas, ¶¶ 12-13.

Citing to *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), a case that did not involve the TCPA or a summary judgment motion, Plaintiff claims that Intero "will be able to challenge class membership and eligibility for damages at trial." But this argument, and the holding in *Briseno*, are irrelevant to whether Plaintiff has provided evidence sufficient to withstand summary judgment. He has not.

**E. There Is No Evidence That Intero Is Vicariously Liable For The Calls Reflected In The Mojo Account Files Under An Apparent Authority Theory**

The class claims are based entirely on calls reflected in the files listed in Appendix A, which Plaintiff claims were initiated by certain real estate salespersons during a set time frame (September 14, 2014 through December 18, 2019). *See* Doc. No. 161 at ECF pp. 7:10-26, 11:24-13:8. Plaintiff offers no evidence Intero is vicariously liable for these calls under an apparent authority theory. *See* Doc. No. 126 at ECF pp. 23:27-24:3.

Plaintiff's description of calls **he** received is not evidence of what was said on calls to class members. In fact, none of the "three to five" conversations he testified having with "Intero agents" were with the same persons he claims initiated calls to class members. *Compare* Cardasis Decl. ¶ 48, Ex. 6 [Chintz Depo., pp. 169:10-171:1, 201:7-202:24, 208:3-9, 209:14-

210:6, 234:22-236:5, 244:1-8 (conversations with Michael Orlando, Ameer Tantawy, a "call center representative" on behalf of Keith Vong, and Keith Vong )] *with* Doc. No. 160-1, ¶ 21 (listing persons who purportedly initiated the calls in the Mojo Account Files).

Purported screenshots from Intero's website allegedly taken in 2020 and 2021 (Doc. No. 160-1 at Ex. A & B) say nothing about the content of any phone call made to class members, and are not evidence of how a "reasonable person would perceive" calls allegedly received between 2014 and 2019. For example, although Eddie Oberoi allegedly initiated calls reflected in MOJO-Intero 0000260.csv, Mr. Oberoi's website lists his own broker license number, **not** Intero's. *See* Cardasis Decl., ¶ 49, Ex. 7. Similarly, Dominic Gluhaich allegedly initiated calls reflected in MOJO-Intero 0000294.csv, but his current webpage shows he is affiliated with Compass, not Intero. *Id*., ¶ 20, Ex. 5. A single independent contractor agreement signed in 2002 (*id*. at Ex. W (IN 0041, 0048)) is not evidence of what was said on any phone calls, let alone calls initiated over a decade later. Nor does Intero's 2018 Broker/Agent Policy manual (*id*. at Ex. X) say anything about how the calls reflected in Appendix A would be perceived.

Intero did not argue, as Plaintiff claims, that there must be evidence of what was said on **every call.** Doc. No. 160 at ECF p. 21:10-12. But where, as here, Plaintiff has "provided no evidence as to the actual contents of **any** of the purported calls that [class members] received, *i.e*., what exactly was said or what representations were made. . ." he has failed to provide evidence "that would lead a listener to reasonably believe that the caller was acting on behalf of [Intero]." *Makaron v. GE Sec. Mfg*., CV-14-1274-GW (AGRx), 2015 U.S. Dist. LEXIS 75240, at *22 (C.D. Cal. May 18, 2015) (emphasis added); *Jones v. All Am. Auto Prot., Inc*., 3:14-CV-00199-LRH-WGC, 2015 U.S. Dist. LEXIS 158652, at *12 (D. Nev. Nov. 24, 2015) (emphasis added).

Without evidence of the contents of the calls, the Court cannot reach the issue of whether the reasonable person's belief that the salespersons had authority to initiate the calls is based on a "manifestation" that was "traceable" to Intero.  *See* Doc. No. 161 at ECF p. 15:15-27.  Even if the Court considered Intero's purported "manifestations," Plaintiff does not explain how any of them would lead a reasonable person to believe that the persons who allegedly initiated the calls in Appendix A had authority to make the calls.  *Id*. at p. 18:16-25.  Instead, he points to the same evidence cited and arguments made in his Motion (*see* Doc. No. 160 at ECF p. 20:3-23), which Intero has already explained do not work (*see* Doc. No. 161 at ECF pp. 16:1-18:26).[2]

### F.  No Evidence That Internal DNC Class Members Will Receive Unwanted Calls In The Future

Plaintiff concedes he must provide evidence sufficient to "prove that Intero **continues** to make unwanted in calls in violation of 47 C.F.R. § 64.1200(d), such that entry of injunctive relief on behalf of the Internal DNC Class is warranted."  *See* Doc. No. 160 at ECF p. 23:1-3 (emphasis added).  He notes this Court previously ruled that "the issue is not whether absent class members suffered past harm but rather whether they may be impacted by **Defendant's alleged practice of violating the TCPA going forward**."  *See* Doc. No. 138 at ECF p. 9:4-6.

Plaintiff, however, has not provided any evidence that Intero (or any salespersons) **continues** to make calls in violation of section 64.1200(d) to any person in the Internal DNC Class (including Plaintiff).  Plaintiff says he received six calls within a 12-month period (*see* Doc. No. 160, ECF p. 23:12-14), but they were received between October 5, 2015 and February 8, 2018, long before this litigation was filed.  *See* Doc. No. 72, ¶¶ 79, 110; Cardasis Decl., ¶ 50.

---

[2] Plaintiff's "incorporated state law" theory also fails.  *See* Doc. No. 161 at ECF p. 19.

Plaintiff cannot show "there exists some cognizable danger of recurrent violation" to support injunctive relief for the class by pointing to alleged calls made to a single person that stopped over three years ago. *See United States v. Laredal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995) (no injunction without "some cognizable danger of recurrent violation.").

Plaintiff also faults Intero because it "failed, and continues to fail" to provide sufficient training of its "personnel" who engage in telemarketing, consistent with section 64.1200(d)(2). *See* Doc. No. 160 at ECF pp. 23:21-25:1. But he ignores the fact that there is no evidence that Intero "personnel" engage in telemarketing, and thus Intero has no obligation to conduct any training under section 64.1200(d)(2). *See* Doc. No. 161 at ECF p. 28:1-14.

**G.  The Soneji Declaration Contains Inadmissible Evidence**

Many of the documents attached to Plaintiff's counsel's declaration (Doc. No. 160-1), and much of the testimony she provides, are not admissible and should not be considered. *See In re Oracle,* 627 F.3d at 385. "The Ninth Circuit 'has repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment.'" *Iglesia Ni Cristo v. Cayabyab*, 18-cv-00561-BLF, 2020 U.S. Dist. LEXIS 57430, *10 (N.D. Cal. Mar. 21, 2020). Exhibits A, B, D, G, and K are not properly authenticated, because counsel says they are "screenshots that an attorney at my law office took . . ." on various dates, but offers no testimony from the person who actually took the screenshots, nor any evidence explaining the circumstances of how they were obtained. *See* Doc. No. 160-1, ¶¶ 4, 5, 7, 17, 20. There is no testimony from the person who retrieved the webpages attached as Exhibit H or I, or any other authenticating evidence. The testimony of counsel concerning Exhibit C, an alleged "excerpt" of "Intero's Interactive Business Plan" (*id*., ¶ 6), says nothing about where Plaintiff obtained this admittedly incomplete document.

Paragraphs 8 through 13 are testimony about documents not before the Court, based on conversations and emails (also not before the Court) with counsel for Mojo. These paragraphs should be disregarded. *See* Fed. R. Evid. 802 (unexcepted hearsay is not admissible).

Exhibit E is unauthenticated hearsay admittedly compiled from documents not before the Court and offered for its truth (*see* Fed. R. Evid. 802) with no testimony from the unidentified person who actually created it. *See Iglesia*, 2020 U.S. Dist. LEXIS 57430, *13 (a party may not authenticate evidence simply by producing it in discovery). The document is also not accurate. *See* Cardasis Decl., ¶¶ 4, 22. The "Intero Agents Identified in File" column in paragraph 21 of the Soneji Declaration relies entirely on Exhibit E (or other documents not before the Court) and is therefore inadmissible for the same reasons. Exhibit M is more hearsay, this time in the form of a letter purportedly sent to Plaintiff's counsel by counsel for a non-party (*id.*, ¶ 25), which Plaintiff seeks to rely on for the truth of the statements made therein. Counsel's testimony that Exhibit W is a "true and correct copy of Intero Real Estate Services Inc.'s Independent Contractor Agreement," lacks personal knowledge and the document is unauthenticated. *Id.*, ¶ 36; *see* Fed. R. Evid. 901.

## II.    CONCLUSION

The Court should grant summary judgment for Intero on all claims.


DATED: March 4, 2021                    SIMMONDS & NARITA LLP
                                        TOMIO B. NARITA
                                        R. TRAVIS CAMPBELL
                                        MARGARET T. CARDASIS


                                        By:    /s/ Tomio B. Narita
                                              Tomio B. Narita
                                              Attorneys for Defendant
                                              Intero Real Estate Services