```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                      SAN JOSE DIVISION

 4
      CHINITZ,                          )   CV--18-5623-BLF
 5                                      )
                       PLAINTIFF,       )   SAN JOSE, CALIFORNIA
 6                                      )
                  VS.                   )   MARCH 25, 2021
 7                                      )
      INTERO REAL ESTATE SERVICES,      )   PAGES 1-51
 8                                      )
                       DEFENDANT.       )
 9                                      )
      _____   )
10
                      TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE BETH LABSON FREEMAN
                    UNITED STATES DISTRICT JUDGE
12
                     A P P E A R A N C E S
13

14      FOR THE PLAINTIFF:      BY:  HASSAN ALI ZAVAREEI
                                TYCKO & ZAVAREEI LLP
15                              1828 L STREET, N.W., SUITE 1000
                                WASHINGTON, DC 20036
16

17

18      FOR THE DEFENDANT:      BY:  TOMIO BUCK NARITA
                                     MARGARET CARDASIS
19                                   TRAVIS CAMPBELL
                                SIMMONDS & NARITA LLP
20                              44 MONTGOMERY STREET, SUITE 3010
                                SAN FRANCISCO, CA 94104
21

22

23      OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                      CERTIFICATE NUMBER 13185
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1            SAN JOSE, CALIFORNIA              MARCH 25, 2021

 2                       P R O C E E D I N G S

 3       (COURT CONVENED AT 11:38 A.M.)

 4            THE CLERK:  CALLING CASE 18-5623.  CHINITZ VERSUS

 5       INTERO REAL ESTATE SERVICES.

 6            COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES,

 7       STARTING WITH COUNSEL FOR THE PLAINTIFF.

 8            MR. ZAVAREEI:  GOOD MORNING, YOUR HONOR.

 9            HASSAN ZAVAREEI ON BEHALF OF PLAINTIFF RON CHINITZ AND THE

10       CERTIFIED CLASSES.

11            THE COURT:  GOOD MORNING.

12            MR. NARITA:  YOUR HONOR, TOMIO NARITA FOR THE

13       DEFENDANT, INTERO REAL ESTATE SERVICES.  I WILL BE ARGUING

14       TODAY.

15            MR. CAMPBELL:  GOOD MORNING, YOUR HONOR.

16            TRAVIS CAMPBELL ALSO ON BEHALF OF THE DEFENDANT.

17            MS. CARDASIS:  GOOD MORNING, YOUR HONOR.

18            MARGARET CARDASIS ALSO ON BEHALF OF THE DEFENDANT.

19            THE COURT:  GOOD MORNING.

20            ALL RIGHT.  I KNOW IT'S BEEN A LONG MORNING, OBVIOUSLY

21       IT'S BEEN A LONG MORNING FOR ME TOO, AND I'M SORRY THAT IT'S

22       TAKEN SO LONG.

23            I HAVE THE SEPARATE SUMMARY JUDGEMENT MOTIONS FROM EACH

24       SIDE, AND AS I WAS MINDING BY OWN BUSINESS READING YOUR BRIEFS,

25       SOMETHING BLEW UP THAT I CERTAINLY WASN'T EXPECTING.
```

1          AND IT LOOKS AS THOUGH, MR. ZAVAREEI, THAT WE MAY NOT HAVE

2     A LEAD PLAINTIFF.  I DON'T KNOW WHETHER THAT'S GOING TO SHORT

3     CIRCUIT EVERYTHING OR NOT.  I DON'T KNOW WHETHER YOU WANT TO

4     COMMENT ON THAT BEFORE WE GO INTO THE SUMMARY JUDGEMENT

5     MOTIONS.  CERTAINLY MR. CHINITZ'S TESTIMONY IS HIS TESTIMONY.

6     HE WOULD CONTINUE TO BE A CLASS MEMBER EVEN IF HE'S NOT LEAD

7     PLAINTIFF.

8          MR. ZAVAREEI:  YES, YOUR HONOR.  THANK YOU.

9          THIS HAS NEVER HAPPENED TO ME BEFORE, I CAN SAY, AT LEAST

10    AT THIS STAGE OF THE CASE.  AND SO WE STRUGGLED, WE WANTED TO

11    MAKE SURE THAT WE DID THIS RIGHT.  I THINK THAT WHAT WE DID IS

12    THE PROPER PROCEDURE, AND WE DO THINK THAT THE COURT SHOULD

13    MOVE FORWARD WITH SUMMARY JUDGEMENT.

14         THE ISSUE IS NOW SUMMARY JUDGEMENT WITH RESPECT TO THE

15    CLASS.  AND SO AS YOU SAID, IF MR. CHINITZ IS A MEMBER OF THE

16    CLASS, HIS TESTIMONY CAN SIMPLY BE TREATED AS A MEMBER OF THE

17    CLASS.  BUT I THINK TODAY, I WILL BE BASING MOST OF MY

18    ARGUMENTS ON THINGS THAT HAVE NOTHING TO DO WITH MR. CHINITZ'S

19    TESTIMONY, SO IT WOULD BE MY REQUEST THAT WE MOVE FORWARD.

20         THE COURT:  ALL RIGHT.

21         MR. NARITA, JUST AT THAT HIGH LEVEL, ANY COMMENTS?

22         MR. NARITA:  NO, YOUR HONOR.  WE ARE PREPARED TO MOVE

23    FORWARD.

24         OBVIOUSLY WE READ WHAT WAS FILED LAST NIGHT AND WE ARE

25    MOST CERTAINLY GOING TO WANT A CHANCE TO RESPOND TO THAT.

1          THE COURT:  OF COURSE.

2          MR. NARITA:  AND WE MIGHT WANT TO TALK TO THE COURT

3   ABOUT SCHEDULING A RESPONSE SINCE THE RESPONSE IS DUE SO

4   QUICKLY, BUT WE WILL BE RESPONDING.

5          THE COURT:  RIGHT.

6          I MEAN, THE DEVELOPMENT IS BRAND-NEW, AND IF SOMETHING

7   EMERGES, IF YOU COULD SEND ME A STIPULATION WITH SOME

8   SCHEDULING OF BRIEFING, THAT'S FINE.

9          IF IT GETS MORE COMPLICATED AND YOU WOULD LIKE A CASE

10  MANAGEMENT CONFERENCE, WOULD YOU PLEASE -- YOU'VE HEARD ME SAY

11  THIS -- JUST FILE A JOINT STATEMENT AND LET ME KNOW WHAT THE

12  ISSUE IS, AND WE WILL HAVE A CASE MANAGEMENT CONFERENCE RIGHT

13  AWAY.

14         BUT WE CAN NOW MOVE ON FROM THAT, I JUST WASN'T GOING TO

15  LET IT GO AS IF I DIDN'T KNOW THAT THIS WAS HAPPENING.  I'VE

16  NEVER SEEN IT HAPPEN, BUT MR. ZAVAREEI, YOU CERTAINLY SEE MORE

17  CASES THAN I DO, OR I THINK YOU DO, MAYBE NOT.

18         ALL RIGHT.  SO LET'S GET TO THE TASK AT HAND.

19         SO LET ME JUST, AT A HIGH LEVEL, TELL YOU THAT,

20  MR. NARITA, I ACTUALLY THINK THAT ON THE ISSUES THAT YOU RAISE

21  IN YOUR MOTION, THAT THE PLAINTIFF HAS AT LEAST SHOWN THAT

22  THERE ARE DISPUTED ISSUES OF FACT ON ALL OF THE ISSUES.

23         I WILL SAY THAT ON THE PLAINTIFF'S MOTION, I'M INCLINED TO

24  DENY THAT MOTION AS WELL.  BUT MR. ZAVAREEI HAS NARROWED THE

25  SCOPE OF THE VICARIOUS LIABILITY ISSUE FOR SUMMARY JUDGEMENT IN

1    A WAY THAT MAY HAVE A PATH TO SUMMARY JUDGEMENT.

2        THAT DOESN'T SPELL LIABILITY, BECAUSE WHAT I UNDERSTAND

3    HE'S DONE IS TO SAY THAT STATEMENTS MADE BY WHAT HE CALLS

4    CORPORATE AGENTS OR SALESPERSONS, ARE THE RESPONSIBILITY

5    THROUGH VICARIOUS LIABILITY OF INTERO, BUT TRIAL WOULD STILL

6    HAVE TO PROVE WHETHER ANY OF THOSE STATEMENTS WERE UNLAWFUL,

7    ANY OF THOSE PHONE CALLS.

8        SO THERE'S NO -- IT ISN'T, IN AND OF ITSELF, A RULING OF

9    LIABILITY, BUT IT IS -- WOULD RELIEVE FROM THE JURY THE

10   OBLIGATION OF MAKING THE DETERMINATION OF WHETHER THERE WERE

11   THE SUFFICIENT MANIFESTATIONS OF CONTROL AND AUTHORITY OVER THE

12   AGENT.  SO I SEE IT AS VERY NARROW.

13       AND ON THE ISSUE OF THE DO NOT CALL LIST, THE INTERNAL DO

14   NOT CALL LIST, THAT'S AN INTERESTING ISSUE.  I THINK THAT

15   MR. ZAVAREEI IS CORRECT THAT THE BURDEN OF PROOF ON COMPLIANCE

16   WITH THE REGULATION FALLS TO THE DEFENDANT AND THAT THE

17   DEFENDANT NEEDS TO ESTABLISH COMPLIANCE WITH ALL SIX OF THE

18   ISSUES, OR HOW MANY YOU WANT TO CATEGORIZE THEM AS.

19       THE QUESTION IS, DID MR. NARITA PUT FORTH ENOUGH EVIDENCE

20   THAT WOULD, ON EACH OF THOSE ISSUES, THAT IT WOULD AT LEAST

21   MAKE IT A DISPUTED ISSUE OF FACT.  AND I'M CONCERNED THAT

22   THERE'S NOTHING IN THE RECORD FOR YEARS PRIOR TO 2018.  AND SO

23   IT KIND OF BEGS THE QUESTION OF, SHOULD I GRANT SUMMARY

24   JUDGEMENT FOR CERTAIN YEARS AND NOT OTHERS.  AND SO I HAVE SOME

25   PROBLEM WITH THAT.

1      I KNOW OVERLAYING ALL OF THIS, THAT INTERO ARGUES THAT IT

2   WAS NOT ON NOTICE THAT VICARIOUS LIABILITY WAS A THEORY OF

3   LIABILITY.  I ACTUALLY DISAGREE WITH THAT.  I THINK THE

4   COMPLAINT, ALTHOUGH NOT A MODEL OF CLARITY ON THIS POINT, HAS

5   ENOUGH.

6      BUT I REALLY FIND COMPELLING THE INITIAL CASE MANAGEMENT

7   CONFERENCE STATEMENT FROM FEBRUARY OF 2019 WHERE INTERO

8   ACKNOWLEDGED THE VICARIOUS LIABILITY THEORY.  IN THAT PAPER, SO

9   CLEARLY, INTERO UNDERSTOOD THE COMPLAINT OR OTHER DISCUSSIONS

10  WITH COUNSEL TO INCLUDE VICARIOUS LIABILITY.  SO I'M INCLINED

11  TO DENY THE -- CERTAINLY DENY THE DEFENDANT'S MOTION ON THAT

12  GROUND AND TO NOT LET THAT ISSUE GET IN THE WAY OF THE

13  PLAINTIFF'S MOTION.

14     I'M NOT SURE I'M GOING TO GRANT SUMMARY JUDGEMENT TO

15  PLAINTIFF, I JUST THINK THAT ON THESE TWO ISSUES, I ACTUALLY

16  THINK MR. ZAVAREEI, YOU'VE REALLY CRAFTED THE REQUEST TO BE A

17  REALISTIC ISSUES FOR SUMMARY JUDGEMENT, AND I APPRECIATE THAT.

18  WHETHER YOU MAKE IT OVER THE HURDLE IS ANOTHER MATTER, BUT YOU

19  HAVEN'T SHOT FOR THE MOON, WHICH HURTS YOUR CREDIBILITY, SO I

20  WANT TO COMMENT ON THAT.

21     SO I ACTUALLY THINK I WANT TO START WITH PLAINTIFF.  BUT

22  YOU ARE GOING TO BE ARGUING BOTH SIDES.  THIS SHOULD HAVE BEEN

23  CROSS MOTIONS.  THE AMOUNT OF BRIEFING WAS UNNECESSARY

24  CONSIDERING YOU BRIEFED THE SAME ISSUES, BUT THERE WE HAVE IT,

25  I'M NOT GOING TO DO TWO SEPARATE ARGUMENTS THOUGH, BECAUSE THAT

1    WOULD BE AS REPETITIVE AS MY READING WAS.

2         SO LET ME START WITH PLAINTIFF.

3              MR. ZAVAREEI:  THANK YOU, YOUR HONOR.

4         AND WHAT I WILL DO IS I WILL START WITH OUR MOTION.  AND

5    AS YOU SAY, THERE IS SOME OVERLAP THERE, SO WE WILL INCORPORATE

6    SOME OF THAT, THEN I WILL ADDRESS THE DEFENDANT'S MOTION.

7         FIRST, YOUR HONOR, WITH RESPECT TO VICARIOUS LIABILITY, SO

8    THE MOTION INCORPORATES TWO THINGS, VICARIOUS LIABILITY, AND AS

9    YOU MENTIONED, THE QUESTION OF THE INTERNAL DO NOT CALL LIST.

10        WITH RESPECT TO VICARIOUS LIABILITY, WE HAVE TWO THEORIES.

11   THE FIRST IS THE APPARENT AUTHORITY THEORY, AND THE SECOND

12   THEORY OF VICARIOUS LIABILITY IS BASED ON THE CALIFORNIA

13   BUSINESS AND PROFESSIONS CODE STATUTE THAT SPECIFICALLY

14   PROVIDES THAT REAL ESTATE AGENTS ACT ON BEHALF OF THEIR BROKERS

15   AND THE BROKERS ARE LIABLE FOR THEIR CONDUCT.

16        THE BRIEFING STARTS WITH APPARENT AUTHORITY, BUT WHAT I

17   WILL DO, YOUR HONOR, IS I'M GOING TO TAKE THE STATUTE FIRST, IF

18   I MAY.  BECAUSE THE MORE I STUDIED THIS AND THOUGHT ABOUT THIS

19   AFTER THE BRIEFING, I THINK THE PATH HERE IS PRETTY CLEAR.

20        THE STATUTE, AS YOUR HONOR IS AWARE, IS CALIFORNIA

21   BUSINESS AND PROFESSION CODE SECTION 10010.5.  AND IT'S VERY

22   SHORT.  IT READS, "THE LEGISLATURE FINDS AND DECLARES THAT

23   CONSISTENT WITH THE EXISTING STATUTORY AND COMMON LAW, A

24   RESPONSIBLE BROKER IS LIABLE FOR THE ACTIONS OR NEGLIGENCE OF A

25   SALESPERSON OR BROKER, ASSOCIATE RETAINED BY THE RESPONSIBLE

1    BROKER, TO PERFORM ACTS FOR WHICH A LICENSE IS REQUIRED UNDER

2    THIS DIVISION."

3         SO THEN THE QUESTION THAT'S RAISED, YOUR HONOR, IS

4    WHETHER -- WHAT LAW APPLIES FOR VICARIOUS LIABILITY AND IS THIS

5    PART OF THE LAW THAT THE COURT SHOULD EXAMINE.

6         AND I THINK AS BOTH PARTIES AGREED AND WE CITED TO A

7    NUMBER OF AUTHORITIES, WHAT WE ARE LOOKING AT IS FEDERAL COMMON

8    LAW.  AND IN THE NINTH CIRCUIT, FEDERAL COMMON LAW LOOKS TO THE

9    RESTATEMENT.

10        AND YOUR HONOR, THE REASON WHY I THINK THAT THE ANSWER TO

11   THIS QUESTION IS QUITE SIMPLE, HAVING STUDIED THIS MORE, IS

12   THAT IF YOU LOOK TO THE RESTATEMENT, THIRD OF AGENCY,

13   SECTION 101.1, WHICH IS ENTITLED "AGENCY DEFINED," SO THIS IS

14   JUST THE VERY DEFINITION OF AGENCY.

15        IN THE COMMENT THERE ARE TWO THINGS THAT I THINK THAT BARE

16   ON THIS QUESTION.  THE FIRST IS A QUOTE WHICH SAYS "MANY OF THE

17   LEGAL CONSEQUENCES OF AGENCY ALSO APPLY IN SITUATIONS THAT

18   RESEMBLE AGENCY IN FORM, BUT IN WHICH THE PARTIES' CONSENT IS

19   SUBJECT TO CONSTRAINTS IMPOSED BY LAW OR BY LEGAL OR REGULATORY

20   INSTITUTIONS."  AND THERE'S DISCUSSIONS THAT FOLLOW THERE ABOUT

21   MARITIME LAW AND DURABLE POWER OF ATTORNEY.

22        NOW WE KNOW THAT WITH RESPECT TO AT LEAST THE LATTER, THAT

23   THE ISSUES OF DURABLE POWER OF ATTORNEY ARE STATE LAW ISSUES.

24   AND SO THERE CAN BE NO QUESTION THAT THE RESTATEMENT INTENDED

25   AND IS CLEARLY STATING THAT IF THERE ARE CONSTRAINTS IN LAW, ON

1    DEFINING AGENCY, THAT THOSE CREATE LEGAL CONSEQUENCES THAT THEN

2    HAVE AN IMPACT ON FEDERAL COMMON LAW.

3         FURTHER IN THAT SAME COMMENT, YOUR HONOR, THE RESTATEMENT

4    STATES, "LIKEWISE, THE LEGAL CONSEQUENCES RESEMBLE THOSE OF

5    COMMON LAW AGENCY, WHEN AN AGENT'S POWERS ARE SPECIFIED BY

6    OPERATION OF LAW, NOT BY THE PARTIES, A STATUTORY DESIGNATION

7    OF THE SECRETARY OF STATE, AS AGENT TO RECEIVE SERVICE OF

8    PROCESS, IS NOT A CONSENSUAL CHOICE OF AGENT ON THE PART OF THE

9    PRINCIPLE OR SPECIFICATION OF THE AGENT'S POWERS, BUT FOLLOWS A

10   CHOICE TO CARRY ON ACTIVITY IN A PARTICULAR STATE."

11        AND AGAIN, THAT'S AN ISSUE, THE DESIGNATION OF SECRETARY

12   OF STATE, IS AN AGENT TO RECERT, THAT IS A STATE ISSUE, THAT'S

13   AN ISSUE THAT IS DETERMINED STATE BY STATE.

14        AND SO AGAIN, WHAT WE HAVE HERE IS A RESTATEMENT

15   IMPLICITLY REFERRING TO STATE LAWS AND STATING THAT EVEN IF THE

16   PARTIES DON'T HAVE AN EXPLICIT AGREEMENT TO BE -- THAT THE

17   DESIGNEE IS AN AGENT, EVEN ABSENT THAT AGREEMENT, THAT

18   OPERATION OF LAW CAN CREATE THAT.

19        AND SO WHAT WE HAVE HERE IS A VERY CLEAR CALIFORNIA LAW,

20   AND IT APPLIES TO OUR CLASS BECAUSE OUR CLASS, AS CERTIFIED BY

21   THE COURT, ONLY INCLUDES CALIFORNIA REAL ESTATE AGENTS, AND SO

22   YOUR HONOR, I THINK ON THIS BASIS ALONE, THIS SIMPLE QUESTION

23   OF LAW APPLIES ACROSS THE BOARD TO THE CLASS, THAT ALL OF THE

24   REAL ESTATE AGENTS WHO WORKED FOR INTERO ARE DEEMED TO BE

25   AGENTS OF INTERO FOR PURPOSES OF VICARIOUS LIABILITY.

1        THE COURT:  I DON'T THINK YOU CITED ANY CASE THAT

2   ACTUALLY APPLIES STATE LAW UNDER THE RESTATEMENT, DID YOU?

3        MR. ZAVAREEI:  NO.  AND NONE OF US COULD FIND ANY,

4   YOUR HONOR, UNFORTUNATELY.

5        AND I'M NOT AWARE OF ANY EITHER WAY, BUT I DO THINK THE

6   RESTATEMENT IS PRETTY CLEAR ON THAT.

7        THE COURT:  OKAY.

8        MR. ZAVAREEI:  AND YOUR HONOR, IF YOUR HONOR THINKS

9   THAT THAT IS NOT SUFFICIENT, THEN WE HAVE THE QUESTION OF

10  APPARENT AUTHORITY.

11       AND WITH RESPECT TO APPARENT AUTHORITY, WHAT YOU ARE

12  LOOKING AT IS THE QUESTION OF WHETHER THE PARTY THAT YOU ARE

13  SEEKING TO HOLD LIABLE HAS DONE SOMETHING, HAS PRESENTED ITSELF

14  IN A WAY TO THE PUBLIC THAT THOSE WHO ARE ENGAGING WITH THE

15  PURPORTED AGENT CAN REASONABLY BELIEVE THAT THAT PERSON IS

16  ACTING ON BEHALF OF THE DEFENDANT IN THIS CASE.

17       AND I THINK, YOUR HONOR, THE SEMINAL CASE IS THE C.A.R.

18  TRANSP. BROKERAGE CASE FROM 2000 FROM THE NINTH CIRCUIT.  AND I

19  THINK THAT CASE IS VERY IMPORTANT FOR TWO REASONS.

20       FIRST, BECAUSE IT WAS A GRANT OF SUMMARY JUDGEMENT ON THIS

21  ISSUE, SO IT'S PROCEDURALLY ON ALL FOURS WITH WHERE WE ARE.

22       AND SECONDLY, BECAUSE IT RAISES SPECIFIC QUESTIONS AND

23  ISSUES AND FACTORS THAT ARE ALSO AT PLAY HERE IN THIS CASE.

24  SPECIFICALLY, THE NINTH CIRCUIT LOOKED AT EVIDENCE OF THE

25  PRINCIPAL TRANSACTING BUSINESS SOLELY THROUGH THE AGENTS.  THE

1       PRINCIPAL, KNOWING THE AGENT HOLDS HIMSELF OUT AS CLOTHED WITH

2       CERTAIN AUTHORITY BUT REMAINING SILENT ABOUT THAT.  THE

3       PRINCIPLE'S REPRESENTATIONS TO THE PUBLIC, AND THEN FINALLY,

4       CUSTOMS AND USAGES OF THE PARTICULAR TRADE IN QUESTION.

5            AND YOUR HONOR, IN OUR BRIEFS, AND I WON'T BELABOR ALL OF

6       THESE POINTS, BUT I THINK THAT WE WALK THROUGH ALL OF THOSE AND

7       WE SHOW THE EVIDENCE, THE UNDISPUTED EVIDENCE, ON EACH OF THOSE

8       POINTS.

9            LET ME START WITH TITLES.  WE CITED TO EXHIBITS A, B, C, H

10      AND I, WHICH ARE WEBSITES AND CALIFORNIA DEPARTMENT OF REAL

11      ESTATE LISTINGS THAT SHOW THAT THE BROKERS HERE, THAT ALL OF

12      THE REAL ESTATE AGENTS THAT ARE HIRED THAT ARE CONTRACTING WITH

13      INTERO ARE IDENTIFIED AS SALES ASSOCIATES, AGENTS, PERSONS AND

14      BROKER AGENTS.

15           SEPARATE ISSUE, YOUR HONOR, IS LISTINGS.  AGAIN, THE

16      RESTATEMENT STATES "A PRINCIPAL MAY MAKE A MANIFESTATION OF AN

17      AGENT'S AUTHORITY BY DIRECTING THAT THE AGENT'S NAME AND

18      AFFILIATION WITH THE PRINCIPAL BE INCLUDED IN A LISTING OF

19      REPRESENTATIVES."

20           MR. TAGNOLI TESTIFIED THAT ALL AGENTS WERE LISTED ON

21      INTERO'S WEBSITE, AND OF COURSE WE ALSO HAVE THE CALIFORNIA

22      DEPARTMENT OF REAL ESTATE LISTINGS THAT INCLUDE ALL OF INTERO'S

23      AGENTS.  SO THAT'S THE SECOND FACTOR.

24           THEN, YOUR HONOR, WE HAVE PERMISSION.  AND HERE,

25      SPECIFICALLY THERE ARE CONTRACTS WHICH WE PUT BEFORE THE COURT.

1    THEY ARE INDEPENDENT CONTRACTOR CONTRACTS THAT EXPLICITLY STATE

2    ALL LISTINGS OF PROPERTY AND ALL AGREEMENTS, ACTS OR ACTIONS

3    FOR PERFORMANCE OF LICENSED ADVERTISEMENTS WHICH ARE TAKEN OR

4    PERFORMED IN CONNECTION WITH THIS AGREEMENT, SHALL BE TAKEN AND

5    PERFORMED IN THE NAME OF BROKER.  AND THAT'S A FORM AGREEMENT,

6    THE BROKER IS REFERRING TO INTERO.  AND I BELIEVE THAT'S

7    EXHIBITS G AND M, YOUR HONOR.

8         AND THEN, YOUR HONOR, IN EXHIBIT P TO OUR MOTION, THE

9    30(B)(6) WITNESS FOR INTERO TESTIFIED THAT ALL OF THE AGENTS

10   ARE REQUIRED TO SIGN A CONTRACT OR AGREEMENT SIMILAR TO THIS

11   ONE THAT HAS THIS LANGUAGE.

12        ANOTHER FACTOR, YOUR HONOR, IS ACQUIESCENCE.  AND THE

13   QUESTION THERE IS WHETHER OR NOT INTERO ACQUIESCED IN THE

14   AGENT'S REPRESENTATIONS.

15        AND AGAIN HERE, YOUR HONOR, WE HAVE TESTIMONY FROM

16   MR. THOMPSON, THE 30(B)(6) WITNESS, WHEN HE WAS ASKED "INTERO

17   IS AWARE THAT INTERO AGENTS USED DIAL-IN SERVICES, INCLUDING

18   MOJO?"  AND THE ANSWER WAS "YES."

19        AND WITH RESPECT TO -- ON THE OTHER HAND, THERE'S NO

20   EVIDENCE TO THE CONTRARY.  THERE'S ALSO TRAINING EVIDENCE WHICH

21   WE, AT YOUR HONOR'S REQUEST, SUBMITTED WITH THE COURT THIS

22   MORNING OR LATE LAST NIGHT, I BELIEVE.  AND I DO NOT KNOW IF

23   YOU'VE GOTTEN OUR COURTESY COPY, BUT I BELIEVE THEY ARE ON THE

24   WAY, YOUR HONOR.

25             THE COURT:  I SAW IT ON THE RECORD ON THE DOCKET, SO

1    THANK YOU FOR DOING THAT.

2              MR. ZAVAREEI:  IT WAS ACTUALLY HELPFUL FOR ME, AND I

3    APOLOGIZE FOR NOT HAVING DONE THAT IN THE FIRST INSTANCE,

4    YOUR HONOR.

5              THE COURT:  AS YOU CAN IMAGINE, I DON'T WATCH VIDEOS,

6    THEY TAKE A LONG TIME TO WATCH.

7              MR. ZAVAREEI:  YEAH, ABSOLUTELY, AND I DO UNDERSTAND.

8         AND ONE OF THE THINGS THAT WE SEE IN THOSE TRANSCRIPTS,

9    YOUR HONOR, IS LANGUAGE LIKE THIS.  THIS IS FROM ONE OF THE

10   TRAINERS.  "YEAH, THERE IS A DO NOT CALL LIST.  GUESS WHO I

11   CALL FIRST?  PEOPLE ON THE DO NOT CALL LIST.  ISN'T THIS

12   GREAT."  THAT'S IN EXHIBIT 10, PAGE 3 OF 6 FROM DOCK ID 179-10.

13        ANOTHER FROM DOMINIC NICOLI, WHO IS SUPPOSEDLY THE MASTER

14   TRAINER.  "I LOVE THE DO NOT CALL LIST BECAUSE IT KEEPS OTHER

15   PEOPLE FROM CALLING, OKAY."

16        THIS IS -- THESE ARE JUST A COUPLE OF EXAMPLES, THIS

17   PERVADES THE TRAINING.  SO AGAIN, THIS IS FURTHER EVIDENCE

18   THAT'S UNREBUTTED OF ACQUIESCENCE.

19        THEN YOUR HONOR, THE LAST THING THAT GOES TO THIS QUESTION

20   OF MANIFESTATION, IS INDUSTRY CUSTOM AND USAGE.  AND AGAIN,

21   THAT WAS SOMETHING THAT WAS CITED SPECIFICALLY IN THE C.A.R.

22   TRANSP. BROKERAGE CASE.

23        AND HERE, THE INDUSTRY CUSTOM AND USAGE IS A NUMBER OF

24   THINGS.  IN CALIFORNIA, ONLY REALLY ESTATE AGENTS CAN SELL REAL

25   ESTATE.  REAL ESTATE AGENTS HAVE TO HAVE THEIR LICENSES

1    ASSOCIATED WITH A BROKER.  SO THE BROKER HERE BEING INTERO.  SO

2    THEY CAN'T SELL REAL ESTATE FOR ANYONE ELSE, THEY ARE REQUIRED

3    TO HANG THEIR LICENSE WITH THE BROKER AND DO ONLY WORK FOR

4    THEM.  BROKERS AREN'T ALLOWED TO PAY AGENTS UNLESS THEIR

5    LICENSE IS REGISTERED WITH THE BROKER.

6        THEN HERE IN THIS CASE, YOUR HONOR, ALL OF THE AGENTS WERE

7    LICENSED WITH INTERO.

8        AND THEN FINALLY, THERE'S THE CALIFORNIA STATUTE BUSINESS

9    AND PROFESSION CODE 10010.5 WHICH SHOULD ALSO BE CONSIDERED

10   WHEN YOU LOOK AT INDUSTRY CUSTOM.  SO THAT'S THE FIRST PIECE,

11   APPARENT AUTHORITY.  WHICH IS THE MANIFESTATIONS.

12       AND THE SECOND PIECE, AND YOUR HONOR ADDRESSED THIS IN

13   YOUR CLASS CERTIFICATION MOTIONS, IS WHETHER IT'S UNDISPUTED

14   THAT CLASS MEMBERS WOULD HAVE REASONABLY BELIEVED INTERO AGENTS

15   WERE CALLING AS AGENTS OF INTERO.

16       THE PRINCIPAL ARGUMENT THAT WE HEAR FROM THE DEFENDANTS ON

17   THAT POINT IS YOU CAN'T RULE IN OUR FAVOR ON THIS, FROM INTERO

18   I SHOULD SAY, YOU CAN'T RULE IN OUR FAVOR ON THIS, YOUR HONOR,

19   BECAUSE WE DON'T HAVE EVIDENCE OF WHAT WAS IN EVERY PHONE CALL.

20       FIRST, THAT'S NOT QUESTION.  THERE'S NO AUTHORITY HOLDING

21   THAT YOU NEED TO HAVE THE CONTENTS OF EVERY PHONE CALL.  WHAT

22   YOU NEED IS EVIDENCE OF -- SUFFICIENT EVIDENCE TO SHOW WHAT A

23   REASONABLE PERSON WOULD BELIEVE UNDER THE CIRCUMSTANCES.

24       AND IN PARTICULAR AGAIN, C.A.R. TRANSPORT LOOKED AT THIS

25   REASONABLE UNDERSTANDING QUESTION AND FOUND THAT BUSINESS

1     CUSTOM GOES TO THAT ISSUE.

2          AND SO WHAT IS OUR EVIDENCE THAT GOES TO IN ADDITION TO

3     INDUSTRY CUSTOM?  WELL, THERE'S ALSO EVIDENCE FROM THESE

4     TRAINING VIDEOS.

5          YOUR HONOR, AGAIN, IN THE TRAINING VIDEOS, AND I'M GOING

6     TO GIVE YOU CITATIONS TO THESE BECAUSE THEY ARE NEWLY

7     IDENTIFIED.  DOCUMENT ID 179-10, PAGE 3 OF 6, THIS IS A VIDEO

8     OF TRAINER ALBERT GARIBALDI.  HE SAYS, "BUT WHEN I CALL, I'M

9     DELIVERING A LOT OF ENERGY AND ENTHUSIASM ON THE CALL.  HEY,

10    IT'S ALBERT GARIBALDI, INTERO REAL ESTATE."

11         SO THAT'S ONE TRAINER SAYING AS SOON AS HE CALLS, HE

12    IDENTIFIES HIMSELF AS BEING WITH INTERO REAL ESTATE.

13         THE SECOND TRAINER, DOMINIC NICOLI, AND THIS IS AT DOCK ID

14    179-6, PAGE 8 OF 9, "I USED SCRIPT THAT'S REAL SIMPLE, YOU

15    KNOW, MR. AND MRS. SELLER, THIS IS DOMINIC NICOLI WITH INTERO

16    REAL ESTATE."

17         AND YOUR HONOR, AGAIN HERE, THE COURT SHOULD USE SIMPLE

18    COMMON SENSE.  THERE'S NO REASON FOR THE COURT TO DISCARD

19    COMMON SENSE WHEN RULING ON ISSUES LIKE THIS, PARTICULARLY WHEN

20    THERE'S AN ABSENCE OF EVIDENCE TO THE CONTRARY, THAT NOBODY IS

21    GOING TO CALL UP AND ASK SOMEBODY TO BE THEIR REAL ESTATE AGENT

22    TO SELL THEIR HOME FOR THEM WITHOUT IDENTIFYING THEMSELVES AS A

23    REAL ESTATE AGENT FROM A PARTICULAR COMPANY.  IT SIMPLY MAKES

24    NO SENSE.

25         AND SO TO SUGGEST OTHERWISE WITHOUT PROOF, IS NOT

1    SUFFICIENT TO OVERCOME THE EVIDENCE OF THE INDUSTRY CUSTOM, AND

2    THE EVIDENCE FROM THE TRAINING VIDEOS.

3         SO THERE, YOUR HONOR, I THINK IN A NUTSHELL, IS THE

4    ARGUMENT THAT WE HAVE FOR GRANTING SUMMARY JUDGEMENT WITH

5    RESPECT TO VICARIOUS LIABILITY.  BEFORE I MOVE ON TO THE DO NOT

6    CALL, I WILL PAUSE TO SEE IF YOU HAVE ANY QUESTIONS.

7              THE COURT:  I DO NOT.  GO AHEAD.

8              MR. ZAVAREEI:  OKAY.  THANK YOU, YOUR HONOR.

9         SO YOUR HONOR, WITH RESPECT TO THE INTERNAL DO NOT CALL

10   LIST, I THINK THIS ONE IS PRETTY SIMPLE, AND I THINK THAT

11   INTERO HAS TRIED TO CONFUSE THE ISSUE BY PUTTING IN EVIDENCE OF

12   A LIST AND A COUPLE OF POLICIES FROM 2017 AND 2018.

13        BUT THE PROBLEM IS, YOUR HONOR, THAT'S NOT WHAT IS

14   REQUIRED UNDER THE STATUTE.  WHAT IS REQUIRED UNDER THE STATUTE

15   IS A WRITTEN POLICY AND TRAINING.  THE ONLY POLICY THAT THEY

16   BROUGHT FORWARD IS, IT SAYS, GO TO THE BRANCH FOR TRAINING.

17   AND THEN THERE'S TESTIMONY THAT THERE WAS NO SUCH TRAINING.

18        AND THEN IN 2018 AND 2019, THE DOCUMENT SAYS THAT THEY

19   WILL MAINTAIN A LIST.  BUT IT DOESN'T SAY -- THERE IS STILL NO

20   POLICY FOR HOW THAT LIST WILL BE MAINTAINED.

21        SO AGAIN, THERE'S NO EVIDENCE THAT THERE'S A WRITTEN

22   POLICY FOR THE MAINTENANCE OF A LIST.  THERE'S JUST SOME

23   STATEMENTS SAYING THAT THERE'S TRAINING AND THAT THEY WILL

24   MAINTAIN A LIST, BUT THERE'S NO WRITTEN POLICY TO THAT EFFECT.

25        AND THEN AGAIN WITH RESPECT TO TRAINING, WE HAVE A SWORN

1    INTERROGATORY RESPONSE SAYING THAT THERE WAS NO SUCH TRAINING.

2    AND THE ONLY TRAINING WE ARE AWARE OF, THE ONLY TRAINING IN THE

3    RECORD HERE, YOUR HONOR, IS ENCOURAGING AGENTS TO VIOLATE THE

4    TCPA AND SAYING THAT IT'S NO BIG DEAL AND THAT THESE ARE THE

5    BEST TARGETS.

6          THE LAST QUESTION, AND THIS GOES TO AN ISSUE THAT'S RAISED

7    IN INTERO'S SUMMARY JUDGEMENT MOTION, WHICH IS WHETHER THE

8    CALLS WERE MADE FOR TELEMARKETING PURPOSES.  AND YOUR HONOR,

9    THAT QUESTION IS ANSWERED BY THE -- A RULING FROM THE TCPA IN

10   2006, I BELIEVE, AT 70 FR 19330-1.  AND I'M QUOTING, "WE

11   CLARIFY THAT A TELEPHONE SOLICITATION WOULD INCLUDE CALLS BY

12   REAL ESTATE AGENTS TO PROPERTY OWNERS FOR THE PURPOSES OF

13   OFFERING SERVICES TO THE OWNER, WHETHER THE PROPERTY LISTING

14   HAS LAPSED OR NOT."

15         AND THE EVIDENCE HERE IS UNDISPUTED THAT THE WHOLE PURPOSE

16   OF THIS, THE MOJO SYSTEM WAS DESIGNED TO CALL PEOPLE WHO ARE

17   THINKING OF SELLING THEIR HOMES AND TO TRY AND BECOME THEIR

18   LISTING AGENTS.

19         THERE IS SOME LANGUAGE IN THE SAME DECISION THAT SAYS

20   WELL, THIS DOESN'T INCLUDE BUYER'S AGENTS WHO ARE CALLING

21   PEOPLE WHO ARE TRYING TO SELL THEIR HOMES.  YOU ARE ALLOWED TO

22   DO THAT.

23            THE COURT:  SELLERS AGENT.  YOU MEANT SELLERS.

24            MR. ZAVAREEI:  NO, YOUR HONOR.  I BELIEVE IT IS

25   BUYER'S AGENT.

```
 1            THE COURT:  BUYERS ARE NOT TRYING TO SELL THEIR

 2     HOMES, THAT'S WHY IT CONFUSED ME, I'M SORRY.

 3            MR. ZAVAREEI:  RIGHT.  EXACTLY.

 4        SO LET'S SAY YOU HAVE AN AGENT WHO REPRESENTS YOU AND SAYS

 5     JUDGE, I'M GOING TO START FINDING ANYBODY WHO IS SELLING THEIR

 6     HOME AND SEE IF THEY WILL SELL IT TO YOU BECAUSE YOU ARE BUYING

 7     A HOME.

 8            THE COURT:  I SEE.

 9            MR. ZAVAREEI:  SO THEY ARE ALLOWED TO CALL PEOPLE WHO

10     ARE SELLING THEIR HOMES EVEN IF THEY ARE ON THE DO NOT CALL

11     LIST.

12        IF YOUR COURTROOM DEPUTY HAS HER HOME LISTED ON THE DO NOT

13     CALL LIST BUT IS ALSO SELLING HER HOME -- HAS HER NUMBER LISTED

14     ON THE DO NOT CALL LIST AND IS ALSO SELLING HER HOME, IT IS NOT

15     CONSIDERED TELEMARKETING IF THE -- IF YOUR AGENT WHO IS YOUR

16     BUYER'S AGENT, BECAUSE YOU'RE THE BUYER, CALLS THAT SELLER.

17        BUT WHAT WE HAVE HERE IS EVIDENCE OF THE EXACT OPPOSITE.

18     ALL OF THE TRAINING TALKS ABOUT WHO ARE THE TARGETS.  THE

19     TARGETS ARE FSBO'S, FOR SALE BY OWNER, THEY'RE LAPSED SALES,

20     AND SO -- AND THAT WAS WHAT HAPPENED IN THE CASE OF

21     MR. CHINITZ.  AND THE TESTIMONY FROM MR. NICOLI VERIFIES THAT

22     MOST OF THE CALLS HERE -- I'M SORRY, NOT THE TESTIMONY, THE

23     VIDEO -- THE TRAINING VIDEOS, IF YOU HAVE A CHANCE TO LOOK AT

24     THOSE, YOUR HONOR, WILL SHOW THAT THIS IS ALL GEARED TOWARDS

25     FOR SALE BY OWNER AND LAST EXPIRED LISTINGS.
```

1        SO THAT IS CLEARLY CAPTURED WITHIN THE PENUMBRA OF

2   TELEMARKETING UNDER THE FCC'S RULING AND NOT PART OF THIS

3   EXCEPTION THAT INTERO HAS LATCHED ON TO SAY THAT NO, NO, THAT'S

4   NOT TELEMARKETING.

5        AND THEN THE OTHER EVIDENCE THIS WAS TELEMARKETING WAS

6   MOJO'S WEBSITE WHICH SAYS IT'S A LEAD SYSTEM FOR SELLING REAL

7   ESTATE, FOR TARGETING LEADS.  THERE'S THE BUSINESS PLAN WHICH

8   DESCRIBES LEAD GENERATION AS PROSPECTING.  THERE'S MR. NICOLI'S

9   TESTIMONY THAT HE USES THE LIST TO GENERATE REAL ESTATE

10  BUSINESS.  AND AGAIN, THE VIDEO TRAININGS, AS I MENTIONED

11  BEFORE.

12       SO YOUR HONOR, THAT CONCLUDES MY ARGUMENT WITH RESPECT TO

13  WHY WE THINK YOU SHOULD GRANT SUMMARY JUDGEMENT IN OUR FAVOR

14  WITH RESPECT TO THE INTERNAL DO NOT CALL LIST.

15       AND IT WOULD BE MY UNDERSTANDING THAT WHAT WOULD HAPPEN

16  NEXT, IF YOU WERE TO RULE IN OUR FAVOR, WOULD BE THAT THERE

17  WOULD BE AN OPPORTUNITY FOR BOTH SIDES TO PRESENT BRIEFING AND

18  ARGUMENT ON WHAT THE APPROPRIATE INJUNCTION WOULD BE IN THIS

19  CASE.

20            THE COURT:  WELL, CERTAINLY AN INJUNCTION IS A BENCH

21   TRIAL, I DON'T KNOW WHETHER IT WOULD REQUIRE FURTHER EVIDENCE

22   OR JUST -- YES, THAT'S CORRECT.  FOR ANY INJUNCTION, WE DON'T

23   NEED A JURY THERE.

24       OKAY.  SHOULD I TURN TO MR. NARITA NOW?

25            MR. ZAVAREEI:  THAT WOULD BE FINE WITH ME,

1    YOUR HONOR, AS LONG AS I HAVE AN OPPORTUNITY TO RESPOND TO HIS

2    SUMMARY JUDGEMENT.  THAT'S FINE.

3            THE COURT:  YES.

4        MR. NARITA, GOOD MORNING.

5            MR. NARITA:  GOOD MORNING, YOUR HONOR.

6        IT'S BEEN A LONG MORNING FOR EVERYBODY, BUT LUCKILY I HAD

7    A CHANCE TO CANCEL MY ORDER FOR A TESLA AFTER HEARING YOUR

8    CALENDAR THIS MORNING, SO I MADE GOOD USE OF MY TIME.

9        LET ME START IN REVERSE ORDER OF WHAT I PLAN TO, BECAUSE I

10   WANT TO PICK UP ON A COMMENT YOUR HONOR MADE ABOUT THE

11   PLAINTIFF'S MOTION AND THE INTERNAL DO NOT CALL CLASS.

12       SO IF YOU WILL RECALL, WHEN THE CLASS WAS CERTIFIED, THE

13   PLAINTIFF CHANGED THE APPROACH, RIGHT.  SO THE PLAINTIFF IS NOT

14   SEEKING DAMAGES.  IT'S NOT LOOKING BACK TO SEE WHAT HAPPENED IN

15   TIME OR HOW MANY -- HE'S NOT TRYING TO COUNT UP HOW MANY CALLS

16   WERE MADE AND RECOVER ON BEHALF OF THE CLASS.  THE PLAINTIFF IS

17   JUST SEEKING AN INJUNCTION, A FORWARD LOOKING INJUNCTION.

18       AND THE KEY ARGUMENT REALLY, WE'VE MADE A LOT OF THEM, I

19   WON'T RESTATE OUR ENTIRE PAPERS, THEY ARE EXTENSIVE AND WE HAVE

20   EVIDENTIARY OBJECTIONS, I'M NOT GOING TO GO OVER THOSE BECAUSE

21   THOSE WOULD REALLY JUST I WOULD REPEAT OUR PAPERS ON EVERYTHING

22   THAT MR. ZAVAREEI JUST STATED.

23           THE COURT:  RIGHT.

24       AND JUST ON THE EVIDENTIARY OBJECTIONS, I'M PROBABLY GOING

25   TO THROW OUT EVERY PIECE OF NEW EVIDENCE IN THE REPLIES, BUT I

1    WILL ALLOW THE AUTHENTICATION OF THE SCREEN SHOTS, BECAUSE I

2    SEE NO PREJUDICE TO THAT.  AND THE STANDARD IS NOT QUITE AS

3    STRICT AS MR. NARITA SUGGESTS, IT HAS TO BE ADMISSIBLE AT

4    TRIAL.  AND SO THAT I WILL ALLOW.  THAT'S JUST A VERY LITTLE

5    BIT, BUT I'M DONE WITH EVIDENCE ONCE I GET TO THE REPLY BRIEFS.

6    BUT POX ON BOTH YOUR HOUSES, BECAUSE YOU BOTH DID IT.

7            MR. NARITA:  POX TAKEN, YOUR HONOR.  THANK YOU.

8        BUT AGAIN, THE INTERNAL DO NOT CALL CLASS IS ONLY SEEKING

9    INJUNCTIVE PERSPECTIVE RELIEF.

10            THE COURT:  BUT MR. NARITA, FIRST I HAVE TO FIND

11   LIABILITY.  AND THEN IT SEEMS TO ME THAT WHAT YOU ARE REALLY

12   ARGUING IS THAT THERE SHOULD BE NO INJUNCTION, BUT I'M NOT

13   DECIDING THAT RIGHT NOW.

14        SO IT COULD BE THAT IF I WERE TO GRANT SUMMARY JUDGEMENT

15   FOR THE PLAINTIFF, BUT AT THE HEARING ON INJUNCTION, THAT I

16   FIND THAT THERE'S NO THREAT OF FUTURE HARM, AND THEREFORE NO

17   INJUNCTION ISSUES.

18            MR. NARITA:  OKAY.  THAT'S OUR MAIN POINT, IS THE

19   ONLY CLAIM THAT'S BEING PURSUED IS AN INJUNCTIVE RELIEF CLAIM,

20   HOW CAN YOU GET SUMMARY JUDGEMENT WHEN --

21            THE COURT:  IT'S ONLY SUMMARY JUDGEMENT OF LIABILITY,

22   IT'S NOT SUMMARY JUDGEMENT OF A REMEDY.

23        SO -- AND IT'S RARE TO SEEK SUMMARY JUDGEMENT ON THE

24   REMEDY ITSELF.  SO YOU KNOW, THIS IS THE KIND OF THING THAT IF

25   I WERE TO FIND THAT YOU HAVE NOT GIVEN ME ANY EVIDENCE ON SOME

1    OF THE ESSENTIAL ELEMENTS OF YOUR AFFIRMATIVE DEFENSE ON THE

2    INTERNAL DO NOT CALL LIST, THEN AT AN INJUNCTION, YOU MIGHT

3    WANT A DAY OF A BENCH TRIAL TO SHOW WHAT THE CURRENT PRACTICES

4    ARE, AND THEREFORE INJUNCTIVE RELIEF IS NOT REQUIRED OR EVEN

5    AUTHORIZED.

6         SO IF THAT ASSISTS YOUR CLIENT IN EVALUATING THIS, OR YOUR

7    ARGUMENT, I THINK YOU WOULD BE CORRECT THAT I'M NOT DECIDING AN

8    INJUNCTION WILL ISSUE, ONLY THAT THERE'S LIABILITY THAT WOULD

9    ALLOW THE ARGUMENT FOR AN INJUNCTION.

10         MR. NARITA:  OKAY.

11         AND SO WITH THAT, I WON'T GO INTO THE ARGUMENTS ABOUT HOW,

12    WHICH I THINK WE MADE IN THE PAPERS, ABOUT HOW THERE'S NO

13    EVIDENCE OF ANY COGNIZABLE DANGER OF A RECURRING VIOLATION

14    HERE.

15         THE COURT:  OKAY.

16         SO LET ME JUST ASK ON THIS DO NOT CALL LIST ISSUE, I SAID

17    IN MY OPENING COMMENTS THAT I BELIEVE THIS IS AN AFFIRMATIVE

18    DEFENSE ON WHICH YOUR CLIENT BEARS THE BURDEN OF PROOF, A

19    SATISFACTION OF THE REGULATION; YOU DON'T DISAGREE WITH THAT,

20    DO YOU?

21         MR. NARITA:  WELL, I UNDERSTAND THAT THERE IS AN

22    AFFIRMATIVE DEFENSE, YES, YOUR HONOR, BUT I DON'T AGREE WITH

23    THE WAY THAT IT'S BEEN PRESENTED, ACTUALLY.  THE PLAINTIFF

24    BEARS THE BURDEN TO -- THERE ARE ELEMENTS OF THE CLAIM THAT

25    HE --

1       THE COURT:  WELL, BUT PLAINTIFF HAS COME FORWARD WITH

2   EVIDENCE THAT THERE WAS NO DO NOT CALL LIST UNTIL 2017, AND

3   THAT EVEN INTO 2018 THAT WHAT WAS DONE WAS NOT IN COMPLIANCE

4   WITH THE REGULATIONS.  I THINK PLAINTIFF HAS COME FORWARD AND

5   MET ITS BURDEN.

6       WHAT HAPPENS WHERE THE DEFENDANT BEARS THE BURDEN OF PROOF

7   AT SUMMARY JUDGEMENT IS THAT THE MOVING PARTY HAS LESS OF A

8   BURDEN, AND SO THE BURDEN SHIFTS TO YOU TO GIVE ME EVIDENCE

9   UNDER EACH OF THE ESSENTIAL ELEMENTS, AND SO THAT'S HOW I'M

10  LOOKING AT THIS.  BUT I DO THINK THAT PLAINTIFF HAS COME FORTH

11  WITH ENOUGH EVIDENCE TO PUT THE ONUS ON INTERO.

12       MR. NARITA:  AND SO MAYBE THIS IS A GOOD WAY TO LEAD

13  INTO THIS, SO THERE'S AN OVERLAP BETWEEN THE CLAIMS, THE

14  INTERNAL DO NOT CALL CLAIM AND THE NATIONAL DO NOT CALL CLAIM,

15  AND I THINK THERE'S BEEN A FAILURE OF PROOF BY PLAINTIFF AS TO,

16  ON HIS PART, THAT RUNS THROUGH BOTH.

17       AND THAT IS, UNLESS THERE IS EVIDENCE THAT TELEPHONE

18  SOLICITATIONS ARE MADE, THESE ARE TELEMARKETING PLANS, AND

19  EVIDENCE, YOUR HONOR, THAT A REASONABLE PERSON WHO PERCEIVED

20  THE CALLS THAT WERE MADE WOULD UNDERSTAND THE CALLING PARTIES

21  HAD AUTHORITY TO ACT FOR INTERO.

22       THEN BOTH OF THE CLAIMS FAIL.  AND HE -- AND THE PLAINTIFF

23  HASN'T MET HIS BURDEN ON EITHER ONE OF THOSE.

24       THE COURT:  I GUESS, HERE'S THE COMMON SENSE PART

25  THAT COMES IN.  SO I ACTUALLY THINK MR. ZAVAREEI IS CORRECT,

1    AND OF COURSE THE NINTH CIRCUIT HAS DEALT WITH THIS AS WELL.

2    MOST PEOPLE HAVE EXPERIENCE WITH REAL ESTATE AGENTS, AND COMMON

3    SENSE TELLS ME THAT WHEN A PERSON CALLS, THEY TELL YOU WHO THEY

4    ARE ASSOCIATED WITH.

5         IF I GOT A CALL OR IF YOU GOT A CALL FROM JOHN SMITH,

6    HELLO, I'M JOHN SMITH, I WOULD LIKE TO SELL YOUR HOUSE FOR YOU,

7    THAT WOULD BE BAZAAR IN CALIFORNIA, I DON'T KNOW IF IT HAPPENS

8    IN OTHER STATES, BUT I'M JOHN SMITH FROM INTERO.  IT'S LIKE OH,

9    INTERO, THEY ARE A WELL REGARDED REAL ESTATE FIRM AND I KNOW

10   WHO YOU ARE.  I MAY NOT WANT TO USE YOUR SERVICES, BUT I KNOW

11   WHO YOU ARE, YOU AREN'T JUST SOME PERSON WHO DRESSES UP IN A

12   UNIFORM AND PRETENDS TO BE SOMEBODY.

13        SO COMMON SENSE TELLS ME, AND IT'S CONFIRMED BY THE

14   CONTRACTS, IT'S CONFIRMED BY THE TRAINING, IT'S CONFIRMED BY

15   MR. CHINITZ'S DEPOSITION THAT THESE PEOPLE, AND MR. NICOLI, OR

16   ONE OF THE OTHERS SAYING THIS IS MY SCRIPT, HELLO I'M SO-AND-SO

17   I'M FROM INTERO.

18        SO I DON'T SEE THAT -- I DON'T THINK YOU HAVE ANY

19   EVIDENCE.  YOU HAVE NO EVIDENCE THAT ANY ONE OF YOUR SALES

20   PERSONS EVER CALLED AND DID NOT IDENTIFY THEMSELVES AS COMING

21   FROM INTERO.  I DON'T HAVE ONE.

22             MR. NARITA:  WELL, THANK YOU, YOUR HONOR.  THAT LEADS

23   DIRECTLY INTO MY NEXT POINT.

24             THE COURT:  OKAY.

25             MR. NARITA:  AND THERE'S A REASON WHY THERE'S NO

1    EVIDENCE IN THE RECORD ABOUT WHAT WAS SAID TO ANY CLASS MEMBER.

2        NOW YOU OF COURSE REMEMBER, THE PLAINTIFF CHANGED HIS

3    THEORY OF THIS CASE WITH HIS REPLY BRIEF ON CLASS

4    CERTIFICATION.  AND THE COURT'S ORDER ON CLASS CERTIFICATION IS

5    VERY SPECIFIC, IT IDENTIFIES A SPECIFIC SET OF CALLING RECORDS

6    THAT WERE PRODUCED BY A NON PARTY.

7        SO THOSE CALLING RECORDS, THEY ARE LISTED BY THE NAME TO

8    THE EXCEL FILES.  AND IN YOUR HONOR'S WORD, THOSE ARE THE CALL

9    ATTEMPTS THAT WE ARE TALKING ABOUT, RIGHT, AND SO THERE NEEDS

10   TO BE SOME EVIDENCE ABOUT THOSE CALLING TEXTS IN THIS CASE.

11       AND THAT'S THE PLAINTIFF'S BURDEN.  AND I CAN TELL YOU

12   EXACTLY WHY THE PLAINTIFF CAN'T MEET IT, YOUR HONOR, BECAUSE

13   THE PLAINTIFF DIDN'T EVEN GET THOSE CALLING RECORDS UNTIL AFTER

14   DISCOVERY CLOSED, PRETTY LONG AFTER DISCOVERY CLOSED, AND THEN

15   THE PLAINTIFF TURNED THEM OVER TO US.

16       SO THEY HAVE NEVER BEEN OFFERED TO ANYBODY.  MOJO HAS NOT

17   TESTIFIED IN THIS CASE, ANYTHING ABOUT THOSE CALL RECORDS.

18   NONE OF THE AGENTS WHO ARE SALES PERSONS WHO SUPPOSEDLY

19   INITIATED THE CALLS HAS EVER BEEN SHOWN ONE OF THOSE

20   SPREADSHEETS.  THERE'S NO EVIDENCE ABOUT WHAT THOSE TELEPHONE

21   CALLS SAID, RIGHT, THOSE ARE THE ONES THAT ARE AT ISSUE IN THIS

22   CASE.  THERE'S NO SCRIPT RELAYING TO THE MOJO CALL.  THERE'S NO

23   CALL RECORDINGS, THERE'S NOTHING, YOUR HONOR.

24           THE COURT:  BUT I THINK THAT WOULD BE RESERVED FOR

25    TRIAL UNDER THE PLAINTIFF'S MOTION, THAT -- AND IT MAY BE THAT

1       MR. ZAVAREEI IS UNABLE TO MEET HIS BURDEN BEFORE A JURY.

2           SO ON ISSUES THAT I SEND TO TRIAL, OBVIOUSLY I'M NOT

3       SAYING WHETHER THEY ARE STRONG OR WEAK, A LOT OF WEAK ISSUES GO

4       TO TRIAL.  AND THE APPARENT AUTHORITY ARGUMENT IS ONLY A STEP

5       TO LIABILITY.

6           WHAT YOU ARE SAYING HERE IS, I'M NOT BLEEDING THIS INTO

7       THE NATIONAL DO NOT CALL LIST.  I DON'T ACTUALLY THINK THAT

8       THAT'S BEFORE ME.  BUT YOU'VE RAISED IT, BUT I THINK THERE ARE

9       AT LEAST DISPUTED ISSUES, AND I THINK MR. CHINITZ'S OWN

10      DEPOSITION IS ENOUGH TO DISPUTE IT, THAT HE GOT A CALL, MANY

11      TIMES AFTER HE WAS ON THE LIST, AFTER HE HAD ASKED TO BE ON THE

12      LIST.  WE DON'T KNOW IF THERE WAS A LIST, AND IT WAS

13      TELEMARKETING, AND HE WAS ASKED BY THIS PERSON IF HE WANTED TO

14      LIST HIS HOUSE WITH INTERO OR WITH THE AGENT, I WOULD HAVE TO

15      GO BACK TO HIS DEPOSITION.

16          SO WHY ISN'T THAT ENOUGH?  YOU ARE SAYING THAT THE CALLS

17      MR. CHINITZ GOT WERE NOT MOJO GENERATED?

18          MR. NARITA:  CORRECT.  THAT'S ACTUALLY CORRECT,

19      YOUR HONOR.

20          THE CALLS THAT HE TESTIFIED ABOUT IN HIS DEPOSITION, WE

21      HAVE PUT IN THE RECORD, THEY ARE NOT THE CALLS THAT EVERYBODY

22      GOT AFTER DISCOVERY CLOSED.  HE COULDN'T HAVE TESTIFIED ABOUT

23      THEM BECAUSE WE DIDN'T HAVE THEM.  AND SO THIS IS PART OF

24      PLAINTIFF'S BURDEN, YOUR HONOR, ON BOTH CLAIMS, THE CLAIM WE

25      MOVED ON THE NATIONAL DO NOT CALL CLAIM AND THE INTERNAL.

1    BECAUSE IT HAS TO BE A TELEPHONE SOLICITATION.  IT HAS TO BE

2    TELEPHONE -- TELEMARKETING.  AND IN ORDER FOR THAT TO HAPPEN,

3    WE NEED TO KNOW SOMETHING ABOUT WHAT WAS SAID ON THESE MOJO

4    CALLS.

5             THE COURT:  WHY ARE YOU TELLING ME THAT MR. CHINITZ'S

6    CALLS WERE NOT MOJO, HELP ME OUT ON THAT?

7             MR. NARITA:  BECAUSE WE KNOW WHAT HE TESTIFIED ABOUT

8    AT HIS DEPOSITION.  HE TALKED ABOUT THE AGENTS THAT HE TALKED

9    TO.  AND IF YOU THEN LOOK AT THE MOJO FILES, IT'S NOT THEM.

10       WE -- IT'S IN THE RECORD, I CAN POINT YOU TO IT IF YOU

11   WOULD GIVE ME A MOMENT, BUT WE HAVE ACTUALLY POINTED OUT THAT

12   THOSE CALLS ARE NOT MOJO CALLS.

13            THE COURT:  SO IF THAT WAS IN YOUR REPLY EVIDENCE IN

14   MS. CARDASIS'S SUPPLEMENTAL DECLARATION, THAT WAS LIKE BLOWING

15   UP THE PAGE LIMITS BY ANOTHER 80 PAGES WHERE SHE LAYS THINGS

16   OUT, IT WAS A LOT OF WORK, BUT SHE LAYS THINGS OUT PARALLEL.

17   THAT'S NOT BEFORE ME.  I AM GRANTING THE OBJECTION TO STRIKE

18   THAT.

19            MR. NARITA:  WELL, IF IT NEEDS TO BE IN THE

20   DECLARATION THAT'S BEEN SUBMITTED EITHER IN SUPPORT OF OUR

21   MOTION OR IN OPPOSITION TO THEIR MOTION, WHICH IS WHERE I THINK

22   IT IS, THAT WILL BE CONSIDERED, RIGHT, IT'S REBUTTAL EVIDENCE.

23       AND THAT'S WHERE I BELIEVE WE WILL FIND IT, ALTHOUGH AS

24   YOU KNOW, IT'S A LARGE RECORD, I WOULD HAVE TO GO BACK AND PIN

25   IT DOWN.

1      SO THERE'S JUST A COMPLETE ABSENCE OF ANY EVIDENCE ABOUT

2   THESE MOJO CALLS.  AND IT'S NOT SURPRISING, YOUR HONOR, BECAUSE

3   NOBODY HAD THE CALLS.  YOU KNOW, NOBODY HAD THE LIST UNTIL

4   AFTER DISCOVERY CLOSED.

5           THE COURT:  AND WHEN YOU SAY THE CALLS, THE CALLS ARE

6   NOT RECORDED?

7           MR. NARITA:  CORRECT.

8           THE COURT:  SO WHAT YOU HAVE ON THE MOJO LIST IS A

9   LIST OF, AND I KNOW THERE'S SOME DISPUTE ON IT, BUT THE SALES

10  PERSONS WHO CONNECTED WITH MOJO TO HAVE THESE CALL LISTS

11  GENERATED FOR THEM.

12      AND, I MEAN, I KNOW YOU DISPUTE WHO ACTUALLY MADE THE CALL

13  ITSELF, BUT I'M GOING TO PUT THAT ASIDE FOR NOW.  SO YOU ARE

14  SAYING THAT THE AGENT THAT MR. CHINITZ IDENTIFIES AS HAVING

15  CALLED HIM IS NOT A MOJO AGENT.

16          MR. NARITA:  I'M SAYING THAT THE TESTIMONY HE GAVE IN

17  HIS DEPOSITION ABOUT WHAT HE REMEMBERS BEING SAID HAS NOT BEEN

18  TIED TO THE MOJO FILES THAT WERE PRODUCED AFTER THE CLOSE OF

19  DISCOVERY.

20          THE COURT:  WELL, I WILL GO BACK TO MR. ZAVAREEI ON

21  THAT ONE SO THAT HE CAN TIE THAT ONE UP FOR ME.

22      LET'S MOVE ON.  THANK YOU.  THAT'S AN IMPORTANT POINT.

23          MR. NARITA:  AND SO, YOU KNOW, I THINK YOUR HONOR, TO

24  BE FAIR, IT'S NOT FAIR TO POINT TO THE DEFENDANT AND SAY, YOU

25  HAVEN'T GIVEN ME ANY EVIDENCE THAT ANY OF THESE PHONE CALLS

1    WERE NOT TO ADVERTISING, WHEN IN FACT IT'S THE PLAINTIFF'S

2    BURDEN TO COME FORWARD WITH ANY EVIDENCE ABOUT WHAT WAS SAID IN

3    THESE MOJO CALLS.  AND THAT'S FOR TWO REASONS.

4         NUMBER ONE, TO MAKE SURE THAT THEY WERE DESIGNED TO INDUCE

5    A PURCHASE BY THE CALL PARTY -- BY THE CALLED PARTY, RIGHT.

6    BUT NUMBER TWO, YOUR HONOR SAID AND MR. ZAVAREEI ACKNOWLEDGED

7    IN HIS COMMENTS, WE CAN'T GET PAST SUMMARY JUDGEMENT HERE

8    UNLESS WE KNOW WHAT A REASONABLE PERSON WOULD PERCEIVE WHEN

9    THEY RECEIVED THE CALL, RIGHT.  WHAT WOULD A REASONABLE PERSON

10   PERCEIVE.

11        NOW THERE'S NO EVIDENCE BEFORE THE COURT ABOUT WHAT ANY OF

12   THOSE PHONE CALLS -- WHAT WAS SAID IN ANY OF THE PHONE CALLS.

13   NO SCRIPT RELATING TO THE MOJO CALLS, NO POLICY AND PROCEDURE,

14   NOT A SINGLE RECORDING, NOTHING.  SO IT'S COMPLETE GUESS WORK

15   ABOUT WHAT WE SAID ON ANY OF THEM.

16        YOU COULD CREATE A GIANT LIST, THEY SAY THERE'S 350,000

17   CALLS IN THERE, YOU COULD JUST SELECT ANY ONE OF THOSE 350,000

18   AND SAY OKAY, I'M GOING TO ASSESS THIS CALL TO SEE WHAT A

19   REASONABLE PERSON WOULD THINK ABOUT IT.

20        THE COURT:  WELL, CERTAINLY A SCRIPT IS GOLDEN, AND

21   THAT DOESN'T EXIST HERE, I UNDERSTAND THAT.  AND SO WHEN

22   MR. ZAVAREEI IS OPPOSING YOUR MOTION, HE JUST NEEDS TO GIVE ME

23   EVIDENCE FROM WHICH A REASONABLE INFERENCE CAN BE DRAWN IN

24   ORDER TO DEFEAT IT.

25        YOU ARE ALSO SUGGESTING THAT ON HIS MOTION ON BOTH ISSUES,

1    ON VICARIOUS LIABILITY AND ON THE INTERNAL DO NOT CALL LIST,

2    THAT IT IS FUNDAMENTAL TO HIS ISSUE THAT WE CONFIRM THAT THESE

3    WERE TELEMARKETING CALLS.  IS THAT ACCURATE?

4          MR. NARITA:  ABSOLUTELY CORRECT.

5      NOT ONLY THAT THEY ARE TELEMARKETING CALLS, BUT THERE HAS

6    TO BE AN ASSESSMENT BY THE TRIER OF FACT.  AT THIS POINT, IT'S

7    YOU ON SUMMARY JUDGEMENT, HOW WOULD A REASONABLE PERSON

8    PERCEIVE THESE CALLS.  AND WITHOUT A SCINTILLA OF EVIDENCE

9    ABOUT WHAT WAS SAID IN ANY ONE OF THESE MOJO CALLS, I WOULD

10   SUBMIT THERE'S NOTHING FOR YOU TO --

11         THE COURT:  IS MR. NICOLI ON THE MOJO LIST?

12         MR. NARITA:  HE IS -- HIS NAME APPEARS IN THOSE

13   FILES.

14         THE COURT:  BECAUSE MR. NICOLI GIVES IN HIS TRAINING,

15   AS MR. ZAVAREEI JUST QUOTED ON THE RECORD HERE TODAY, THAT HE

16   TALKED ABOUT HIS PERSONAL SCRIPT.  AND IN HIS PERSONAL SCRIPT

17   HE SAID, I'M HERE FROM INTERO.  SO WOULDN'T THAT BE ENOUGH

18   EVIDENCE?

19         MR. NARITA:  I DON'T THINK SO, YOUR HONOR, NOT FOR --

20   I MEAN, THERE'S -- THIS IS AGAIN, A SPECIFIC SET OF CALLS DONE

21   THROUGH MOJO.

22         THE COURT:  BUT YOU TOLD ME THAT HE WAS ON THE MOJO

23   LIST, AND IN HIS TRAININGS WHICH WERE SANCTIONED BY INTERO,

24   HE'S TALKING ABOUT WHAT HIS SCRIPT IS.

25      AND SO I THINK THAT'S PRETTY CLEAR EVIDENCE THAT THAT'S

1    WHAT MR. NICOLI DOES EVERY TIME.  AND IT'S THE KIND OF THING

2    THAT IF YOU DO IT ONCE, YOU DO IT ALL THE TIME.  THAT YOU SAY,

3    I'M MR. NICOLI FROM INTERO.  THAT'S NOT SOMETHING YOU CHANGE

4    UP.

5         MR. NARITA:  I WOULD JUST SUBMIT, YOUR HONOR, THAT

6    THAT IS FAR TOO BIG OF AN EVIDENTIARY GAP TO JUMP BECAUSE THE

7    MOJO DIALING PLATFORM IS A SPECIFIC PLATFORM, A SPECIFIC SET OF

8    CALLS, AND SOME OFFHAND REMARK THAT HE MAKES DURING A TRAINING

9    SESSION THAT HE'S GIVING, THEY CALL IT TRAINING SESSION,

10   WHATEVER, HE'S BEING VIDEOED, THAT DOESN'T CONNECT UP IN THIS

11   CASE WITH THIS CLASS AND THESE CALLS.

12        THE COURT:  AND SO YOU ARE SUGGESTING THAT A JURY IS

13   GOING TO HAVE TO DECIDE WHETHER IT'S A TELEMARKETING CALL AS A

14   THRESHOLD ISSUE?

15        MR. NARITA:  LIKE CHESBRO, THE NINTH CIRCUIT CASE

16   THAT THEY RELY ON, AND IN THAT CASE THE NINTH CIRCUIT SAYS HEY,

17   WE GOT TO FIGURE OUT IF THIS IS ADVERTISING OR NOT.  AND THERE

18   WAS AN UNDISPUTED SCRIPT OF ALL THE PRERECORDED CALLS, AND

19   THAT'S THE ONLY WAY THAT THE COURT COULD DO THAT ANALYSIS BY

20   LOOKING AT IT.

21        WHAT ARE WE GOING TO LOOK AT ABOUT WHAT WAS SAID IN THE

22   CALLS?  NOTHING, WE HAVE INFERENCE UPON INFERENCE FROM VIDEO

23   SNIPPETS AND SO FORTH.

24        SO THAT'S -- IF THAT'S NOT A BIG ENOUGH PROBLEM, THE OTHER

25   PROBLEM IS THAT THE PLAINTIFF HAS TO HAVE EVIDENCE, NOT JUST

1    ABOUT WHO WAS THE CALLING PARTY AND WHAT WAS SAID, THAT'S WHAT

2    WE HAVE BEEN TALKING ABOUT SO FAR, THERE NEEDS TO BE EVIDENCE,

3    YOUR HONOR, ABOUT THE TYPE OF TELEPHONE LINE AND HOW THAT

4    TELEPHONE LINE WAS USED BY THE CALLED PARTY, BY THE CALLED

5    PARTY.

6            THE COURT:  I DON'T REMEMBER YOU BRIEFING THAT ISSUE.

7    GO OVER THAT AGAIN.

8            MR. NARITA:  CERTAINLY.

9        SO THESE HAVE TO BE RESIDENTIAL TELEPHONE LINES.

10           THE COURT:  OH, RESIDENTIAL.  SORRY, SORRY.  YES, YOU

11   BRIEFED THAT.  WE HAVE BEEN THROUGH THAT MANY TIMES.

12           MR. NARITA:  SURE.

13       AND SO A RESIDENTIAL TELEPHONE LINE, THAT CAN TURN ON HOW

14   THE CALLED PARTY USED THEIR TELEPHONE LINE BEFORE THE PHONE

15   EVER RANG, BEFORE THESE MOJO CALLS THAT THEY SAY WERE MADE EVER

16   HAPPENED, BECAUSE THAT IS THE NATURE OF WHETHER IT'S

17   RESIDENTIAL OR NOT.

18       AND SO THERE'S NO EVIDENCE IN THE RECORD AS TO WHEN THESE

19   LINES WERE USED FOR RESIDENTIAL PURPOSES.  WITH THE POSSIBLE

20   EXCEPTION, YOUR HONOR, THE POSSIBLE EXCEPTION OF SIX OF THEM,

21   BECAUSE WE KNOW HOW THEIR EXPERT DOES THIS, RIGHT, THEY HAVE

22   CITED ALL THESE OTHER CASES WHERE HER METHODOLOGY HAS BEEN

23   ACCEPTED BY COURTS, AND THAT'S FINE.  BUT GUESS WHAT --

24           THE COURT:  IT SEEMS TO ME, THOUGH, THAT I CAN STILL

25    CONSIDER, EVEN IF I AGREE WITH YOU ON THIS VIEW OF THE EVIDENCE

1    AND ABSENCE OF EVIDENCE, ON THE FIRST ISSUE THAT PLAINTIFF PUTS

2    FORTH ON THIS HIGH LEVEL DETERMINATION THAT INTERO IS

3    VICARIOUSLY LIABLE FOR THE UNLAWFUL CALLS MADE BY ITS SALES

4    PEOPLE, THAT THEN PLAINTIFF WOULD STILL HAVE TO COME TO COURT

5    TO PROVE THAT IT WAS A RESIDENTIAL LINE, THAT IT WAS

6    TELEMARKETING AND THAT IT WAS -- AND THE OTHER ELEMENTS TO

7    ESTABLISH LIABILITY, THAT I COULD AT LEAST GRANT SUMMARY

8    JUDGEMENT AT THAT HIGH LEVEL, WHICH I THINK IS ALL HE'S ASKING.

9        ON THE INTERNAL DO NOT CALL LIST, I ACTUALLY THINK THAT I

10   CAN -- AGAIN, COULD I -- AND MAYBE MR. ZAVAREEI HAS TO ANSWER

11   THIS, GRANT SUMMARY JUDGEMENT AT A HIGHER LEVEL THAT INTERO DID

12   NOT MAINTAIN AN INTERNAL DO NOT CALL LIST AND DOES NOT HAVE

13   EVIDENCE TO SUPPORT THE AFFIRMATIVE DEFENSE, BUT PLAINTIFF

14   WOULD STILL HAVE TO PROVE THESE THRESHOLD ISSUES OF A

15   RESIDENTIAL LINE AND TELEMARKETING.

16       MR. NARITA:  WELL, YOUR HONOR, YOU ARE SPEAKING ABOUT

17   THE PLAINTIFF'S MOTION, THAT'S FINE.  BUT REMEMBER WE MOVED ON

18   BOTH CLAIMS.

19       THE COURT:  WELL, BUT -- YES, YOU DID.  BUT I

20   ACTUALLY SEE THAT EVEN IF I AGREE WITH YOU THAT PLAINTIFF

21   DOESN'T HAVE ENOUGH EVIDENCE IN ITS AFFIRMATIVE MOTION, WHEN

22   YOU SAY THERE ARE INFERENCES UPON INFERENCES, THE INFERENCES GO

23   TO THE NON MOVING PARTY ON YOUR MOTION.

24       AND SO I ACTUALLY HAVE -- I DON'T HAVE ANY TROUBLE FINDING

25   THAT THERE IS AT LEAST A DISPUTED ISSUE OF FACT ON THESE ISSUES

1    IN TERMS OF DENYING YOUR MOTION.

2              MR. NARITA:  MAY I BE HEARD ON THAT?

3              THE COURT:  YES, ABSOLUTELY.

4              MR. NARITA:  I WAS JUST GETTING THERE ON THE EXPERT.

5          SO THE EXPERT HAS BEEN IN A LOT OF CASES, AND

6    CONGRATULATIONS, BUT SHE HAS A METHODOLOGY AND THE METHODOLOGY

7    IS TIED TO DATA, AND SHE TOLD US ABOUT THAT, RIGHT.

8          SO NUMBER ONE, SHE TOLD US SHE WASN'T EXPRESSING WHETHER

9    ANY OF THESE NUMBERS WERE RESIDENTIAL TELEPHONE LINES.  SHE

10   TESTIFIED TO THAT.

11             NUMBER TWO, SHE TOLD US WHO HER DATA SOURCE WAS, IT'S

12   LEXIS NEXIS, RIGHT.  AND SO SHE SENDS THE NUMBERS, THE

13   TELEPHONE NUMBERS TO LEXIS NEXIS, AND THEY PUSH BACK DATA, AND

14   THEY SAY IF THEY HAVE ENOUGH DATA FOR THEM TO INFER THAT THE

15   TELEPHONE LINES WERE BEING USED FOR RESIDENTIAL PURPOSES BEFORE

16   THE CALLS CAME IN, RIGHT.  AND SO LEXIS NEXIS SAID YES TO SIX

17   OF THEM AND SAID, WE DON'T KNOW AS TO EVERYBODY ELSE.  THAT'S

18   WHAT'S IN THE RECORD, YOUR HONOR.

19             NOW, SO SHE HAS TO FILL AN ENORMOUS EVIDENTIARY GAP,

20   RIGHT.  SHE'S ONLY GOT SIX.  SO HOW DOES SHE TRY TO DO THAT?

21   IN TWO WAYS.  ONE, SHE SAYS WELL, I INFER THAT THESE ARE

22   RESIDENTIAL TELEPHONE LINES USED FOR RESIDENTIAL PURPOSES,

23   BECAUSE IT'S MY UNDERSTANDING THAT ALL THESE CALLS WERE CALLED

24   FROM LISTS OF HOMEOWNERS, RESIDENTIAL HOMEOWNERS.  AND SO GIVEN

25   THAT, IT'S A REASONABLE INFERENCE THAT THEY WERE USED FOR

1    RESIDENTIAL PURPOSES, THE TELEPHONE LINES.

2         WELL, THAT'S JUST NOT TRUE, THAT'S AN INCORRECT ASSUMPTION

3    ON HER PART, AND MOJO TALKED THROUGH THAT.  MOJO'S CEO CAME IN

4    AND SUBMITTED A DECLARATION THAT SAID, WE HAVE NO IDEA WHERE

5    THESE TELEPHONE NUMBERS COME FROM, AND IN FACT, WE DON'T

6    WARRANT THAT THEY COME FROM ANY SOURCE, AND BY THE WAY, A LOT

7    OF THESE NUMBERS ARE JUST UPLOADED BY OUR USERS, WE DON'T KNOW

8    WHERE THEY COME FROM.  SO SHE'S INCORRECT TO MAKE THAT

9    ASSUMPTION.

10        HERE'S HER SECOND ASSUMPTION, YOUR HONOR.  WELL, I'M GOING

11   TO INFER THAT THE TELEPHONE LINES WERE RESIDENTIAL TELEPHONE

12   LINES, BECAUSE THE REASON WHY THESE SALESPERSONS WERE CALLING

13   WAS TO SELL RESIDENTIAL REAL ESTATE.  SO I INFERRED THAT THEY

14   WERE CALLING RESPONSIBLE LINES.

15        WELL, THAT'S WRONG AS A MATTER OF FACT AND LAW, RIGHT.  AS

16   A MATTER OF FACT, THERE'S NO EVIDENCE ABOUT WHY THEY WERE

17   CALLED.  BUT AS WELL AS A MATTER OF LAW, BECAUSE THE REASON

18   THAT YOU PLACE A CALL DOESN'T CHANGE THE NATURE OF THE

19   TELEPHONE LINE.  YOUR HONOR, IF YOU AND I GET ON THE PHONE TO

20   GOOGLE'S HEADQUARTERS RIGHT NOW AND TRY AND SELL THEM A HOUSE,

21   IT DOESN'T MAKE THEIR NUMBER A RESIDENTIAL TELEPHONE LINE.  SO

22   NO MATTER HOW MANY TIMES WE TRY AND SELL THEM REAL ESTATE --

23             THE COURT:  I THINK YOU ARE AT A LEVEL OF CLARITY

24    THAT'S NOT REQUIRED HERE.

25             MR. NARITA:  BUT YOUR HONOR, THERE HAS TO BE SOME

1    EVIDENCE, SOME INFERENCE.

2         AND YES, HER REPORTS HAVE BEEN ACCEPTED ON A CLASS

3    CERTIFICATION PURPOSE IN A LOT OF CASES, BUT WE ARE IN RULE 56

4    NOW, AND YOU HAVE TO LOOK AT WHETHER IF YOU ACCEPT HER REPORT

5    AS TRUE, BECAUSE THAT'S THE ONLY EVIDENCE THEY HAVE, IS IT

6    BASED ON REASONABLE FACTUAL PREDICATES?  AND IT'S NOT.  IT'S

7    NOT.

8         THE COURT:  OKAY.  I NEED YOU TO WRAP UP YOUR END OF

9    THE ARGUMENT SO WE CAN FINISH UP TODAY.

10         MR. NARITA:  THE LAST THING IS THE SUBSCRIBERS.

11         THE SAME THING HAS TO BE SHOWN ABOUT RECIPIENTS OF THE

12    CALLS THAT THEY WERE --

13         THE COURT:  WELL, I THINK WE WENT THROUGH THIS AT

14    CLASS CERT ON THIS ISSUE OF WHETHER SOMEONE IS WITHIN THE ZONE

15    OF INTEREST, THE SUBSCRIBER AND THE PEOPLE USING THEIR PHONES.

16         MR. NARITA:  CORRECT.

17         THERE WAS A REFERENCE TO THAT, YOUR HONOR.  BUT THE

18    REGULATIONS TELL US WHO THE SUBSCRIBER IS, RIGHT.  A SUBSCRIBER

19    IS THE PERSON WHO PAYS THE TELEPHONE BILL OR SOMEONE WHO IS

20    AUTHORIZED TO MAKE CHANGES ON THE ACCOUNT OR MAKE CHANGES TO

21    THE ACCOUNT.

22         NOW THERE'S NO EVIDENCE WHATSOEVER IN THIS RECORD ABOUT

23    THE SUBSCRIBERS, AND THEIR EXPERT EXPRESSLY TESTIFIED THAT IN

24    HER REPORT, AND WHEN I ASKED HER AT HER DEPOSITION THAT SHE HAD

25    NOT DONE THAT WORK, THAT SHE HAD NOT PERFORMED THAT

1    METHODOLOGY, THAT SHE WASN'T LOOKING FOR SUBSCRIBERS.  WE CITED

2    THAT TESTIMONY TO YOU, AND IT HAS NOT BEEN DISPUTED.

3         SO IF YOU DON'T -- IF THERE'S NO EVIDENCE OF SUBSCRIBERS

4    THERE'S, NO EVIDENCE ABOUT TELEPHONE BILLS, THERE'S NO

5    METHODOLOGY FOR EVEN APPROACHING IT, THEN YOU DON'T KNOW WHO

6    THE SUBSCRIBERS ARE, YOU CAN'T FIND SOMEBODY IN THE ZONE.

7    THERE'S NO ZONE TO WORK WITH.

8         SO THAT IS -- A PLAIN LANGUAGE OF THE STATUTE SAYS THAT IS

9    THEIR BURDEN.  THERE ARE METHODOLOGIES APPARENTLY FOR TRYING TO

10   DO THIS AND SHE EXPRESSLY SAID SHE DIDN'T, AND THAT'S WHAT WE

11   HAVE.

12        SO YES, THE CLASS IS CERTIFIED, BUT NOW WHERE IS THE

13   EVIDENCE?  LOOK AT WHAT SHE TESTIFIED TO.  SHE SAID SHE DIDN'T

14   DO IT.  SHE DIDN'T DO IT.

15             THE COURT:  ALL RIGHT.

16        MR. ZAVAREEI, I WANT TO GIVE YOU FIVE MINUTES TO WRAP IT

17   UP.

18             MR. ZAVAREEI:  THANK YOU, YOUR HONOR.

19        LET ME JUST QUICKLY ADDRESS SOME FACTUAL ISSUES THAT CAME

20   UP.

21        FIRST OF ALL, MR. CHINITZ WAS -- HIS NUMBER, ACCORDING TO

22   ANALYSIS DONE BY OUR EXPERT, WAS ON THE LOGS THAT ARE AMONG THE

23   LOGS IDENTIFIED AS PART OF THE CLASS.  THOSE LOGS WERE PRODUCED

24   AFTER THE CLOSE OF DISCOVERY BASED UPON A RULING FROM JUDGE

25   CUMMINGS ON A MOTION TO COMPEL, AND SO THAT'S WHY WE RECEIVED

1       THEM AFTER THE CLOSE OF DISCOVERY.

2            WITH RESPECT TO MS. VERKHOVSKAYA'S EXPERT TESTIMONY AND

3       WHETHER THESE NUMBERS ARE RESIDENTIAL OR NOT, I THINK THAT

4       ISSUE HAS BEEN DECIDED BY THIS COURT AT LEAST TWICE, BUT I WILL

5       SAY I JUST DO WANT TO MAKE AT LEAST ONE CORRECTION.

6            HER TESTIMONY WAS NOT JUST OH, I THINK SO, THERE'S ONLY

7       SIX NUMBERS AND SO I'M ASSUMING THAT THE REST OF ALL

8       RESIDENTIAL.  WHAT IT'S BASED ON, YOUR HONOR, IS THE FACT THAT

9       IT'S HER EXPERIENCE THAT IF THEY ARE BUSINESS LINES, THAT THEY

10      ARE FLAGGED AS SUCH, AND THE FACT THAT THEY WERE NOT FLAGGED,

11      TO HER, INDICATES THAT THEY WERE RESIDENTIAL AS WELL AS THE

12      SOURCE OF THE DOCUMENTS.

13           A LOT OF THE FACTUAL ISSUES THAT MR. TOMIO RAISED ARE

14      FACTUAL ISSUES, BUT THEY GO TO HIS MOTION, THEY DON'T GO TO OUR

15      MOTION.  LIKE THIS QUESTION OF WHETHER THE CALLS WERE MADE BY

16      AGENTS AFFILIATED WITH INTERO AND WHICH REAL ESTATE AGENT IS

17      ASSOCIATED WITH WHICH LIST.  WE HAVE ENOUGH FACTS TO OVERCOME

18      ON THAT ISSUE, YOUR HONOR.  THE CALL LOGS THEMSELVES WERE

19      PRODUCED IN RESPONSE TO A SUBPOENA ASKING FOR ANY REAL ESTATE

20      AGENT OR CALL LOGS FOR ANY REALLY ESTATE AGENT WORKING WITH OR

21      FOR INTERO.  THAT'S ONE BIT OF EVIDENCE.

22           THE AFFILIATION OF EVERY AGENT IS, IN FACT, CONFIRMED BY

23      INTERROGATORY RESPONSES, AND INTERO'S WEBSITE, THE DEPARTMENT

24      OF REAL ESTATE RECORDS THAT WE HAVE PUT INTO THE RECORD.

25           AND SO THERE'S LOTS OF EVIDENCE THAT CREATES A QUESTION OF

1    FACT FOR THE JURY ON THIS.

2              THE COURT:  I AGREE WITH YOU.

3         LET ME TURN TO YOUR MOTION, BECAUSE MR. NARITA ARGUES

4    FORCEFULLY THAT ABSENT YOUR EVIDENCE, THAT THE CALLS WERE

5    TELEMARKETING, AND THAT THEY WERE MADE TO RESIDENTIAL LINES,

6    THOSE ARE THRESHOLD ISSUES EVEN FOR DETERMINING YOUR HIGH LEVEL

7    VICARIOUS LIABILITY ISSUE AND LIABILITY FOR THE INTERNAL DO NOT

8    CALL LIST.  SO CAN YOU RESPOND TO THAT?

9              MR. ZAVAREEI:  SURE.

10        YOUR HONOR, THE ONLY EVIDENCE IN THE RECORD IS THAT THOSE

11   CALLS WERE TELEMARKETING CALLS.  THAT EVIDENCE INCLUDES THE

12   FACT THAT -- FIRST, OF ALL IT STARTS AS A MATTER OF LAW WITH

13   THE FCC'S RULING THAT TELEPHONE CALLS BY REAL ESTATE AGENTS ARE

14   TELEMARKETING, EXCEPT FOR THIS VERY NARROW EXCEPTION THAT WE

15   TALKED ABOUT.

16        THEN THERE'S ALL OF THE TRAINING VIDEOS THAT TALK ABOUT

17   WHY THEY ARE CALLING AND WHO THEY ARE CALLING.  THERE'S THE

18   NATURE OF THE LOGS THEMSELVES, THE PURPOSE OF THE LOGS.

19        SO THE EVIDENCE IS -- ON THE OTHER HAND, THERE'S ZERO

20   EVIDENCE FROM INTERO AS TO WHAT THE PURPOSE OF THE CALL WAS.

21   THERE'S ZERO EVIDENCE FROM INTERO THAT THESE WERE NOT

22   RESIDENTIAL LINES.

23        SO YOUR HONOR, WE THINK THAT, AND AGAIN, COMMON SENSE

24   DOESN'T GO OUT THE DOOR.  MR. TOMIO CITED THE CHESBRO CASE

25   WHICH SAYS YOU HAVE TO APPROACH THE PROBLEM WITH A MEASURE OF

1    COMMON SENSE.  AND COMMON SENSE IS SUFFICIENT, TOGETHER WITH

2    THE RULING FROM THE FCC, AND THE EVIDENCE IN THE TRAINING

3    MATERIALS AND THE SUBPOENAS AND EVERYTHING ELSE SHOWING THAT

4    THE WHOLE PURPOSE OF THIS SCHEME WAS -- AND THE TESTIMONY,

5    DON'T FORGET THE TESTIMONY, YOUR HONOR, OF THE REAL ESTATE

6    AGENTS, THE WHOLE POINT OF THIS IS TO CALL PEOPLE TO TRY AND

7    GET THEIR LISTINGS, THAT'S THE WHOLE POINT.

8              THE COURT:  OKAY.

9              MR. ZAVAREEI:  AND THERE'S NOTHING TO COUNTER THAT.

10             THE COURT:  ALL RIGHT.

11         AND DO YOU AGREE WITH ME THAT THE ISSUE OF AN INJUNCTION

12    AND WHETHER PROSPECTIVE RELIEF IS CALLED FOR, IS FOR ANOTHER

13    DAY?

14             MR. ZAVAREEI:  ABSOLUTELY.

15             THE COURT:  OKAY.  ALL RIGHT.

16         ALL RIGHT.  WE ARE GOING TO WRAP THIS UP, IT'S BEEN AN

17     HOUR AND YOU'VE REALLY DONE A NICE JOB ON THIS.

18         SO I -- I REMAIN CONFIDENT THAT I WILL BE DENYING THE

19    DEFENSE MOTION.

20         ON THE PLAINTIFF'S MOTION, I'M GOING TO REALLY THINK HARD

21    ABOUT THAT.  AND WE UNDERSTAND THAT EVEN IF I WERE TO GRANT THE

22    SECOND ISSUE ON THE INTERNAL DO NOT CALL LIST, I AM NOT FINDING

23    THAT INJUNCTION IS APPROPRIATE BECAUSE I NEED A WHOLE DIFFERENT

24    KIND OF EVIDENCE ABOUT WHETHER THERE IS PROSPECTIVE HARM, AND

25    CIRCUMSTANCES HAVE CHANGED SINCE THE LAWSUIT WAS FILED WITH NEW

1    POLICIES IN PLACE, AND SO I JUST WANT TO MAKE IT CLEAR THAT I

2    AM MAKING THAT BIG SEPARATION.

3         AND ON THE FIRST ISSUE THAT THE PLAINTIFF PUTS FORTH ON

4    THE VICARIOUS LIABILITY, NO ULTIMATE FINDING OF LIABILITY FLOWS

5    FROM THAT DIRECTLY AND SOLELY.  IT IS ONLY A THRESHOLD ISSUE.

6         AND ALL OF THESE OTHER ISSUES WOULD REMAIN FOR THE JURY TO

7    DETERMINE, WHICH MAY EVEN -- I MEAN, I THINK THAT THE JURY

8    WOULD REMAIN OBLIGATED TO DETERMINE WHETHER THESE WERE

9    RESIDENTIAL NUMBERS AND WHETHER THIS WAS TELEMARKETING.

10        AND SO EVEN IF PLAINTIFF WINS, IT'S REALLY -- IT'S A SMALL

11   ASK, IN MY VIEW, ALTHOUGH IT MAY BE A CRITICAL DETERMINATION

12   FOR THE PARTIES TO UNDERSTAND HOW YOU WANT TO PROCEED NEXT IN

13   THE CASE.

14        SO -- BUT I'M NOT MAKING THAT MY RULING, I WANT TO BE

15   REALLY CLEAR THAT ON THE PLAINTIFF'S AFFIRMATIVE MOTION,

16   MR. NARITA HAS BROUGHT UP MANY IMPORTANT ISSUES AND HE'S -- AND

17   THE WORK ON BOTH SIDES OF VERY THOROUGH, I REALLY APPRECIATE

18   THAT.

19        SO WE ARE GOING TO HAVE TO DEAL WITH THIS OTHER ISSUE WITH

20   HAVING A LEAD PLAINTIFF AND YOU WILL BE BACK TO ME ON THAT.

21        WHAT'S YOUR SITUATION WITH SETTLEMENT?  HAVE YOU WORKED

22   WITH A MAGISTRATE JUDGE OR ARE YOU WORKING WITH A PRIVATE

23   MEDIATOR?

24             MR. ZAVAREEI:  YOUR HONOR, I PROPOSED SEVERAL

25    MEDIATORS TO MR. TOMIO A COUPLE OF TIMES AND HAVE NOT HEARD

```
 1        BACK YET, BUT I UNDERSTAND THAT --

 2              THE COURT:  I NEVER REQUIRED YOU TO HIRE A MEDIATOR,

 3        BUT YOU'VE NEVER HIRED ONE.

 4              MR. ZAVAREEI:  NOT FOR THIS MATTER, NO, YOUR HONOR.

 5              THE COURT:  OKAY.

 6              MR. NARITA:  WE DID HAVE AN EARLY MEDIATION WITH

 7        JUDGE JAMES, YOUR HONOR, AND THE CASE DID NOT RESULT IN A

 8        SOLUTION.

 9              MR. ZAVAREEI:  THAT'S RIGHT.  I APOLOGIZE.

10              THE COURT:  OKAY.

11         AND YOUR TRIAL DATE IS NOVEMBER; IS THAT RIGHT?

12              MR. ZAVAREEI:  YES, YOUR HONOR.

13              THE COURT:  ALL RIGHT.

14         I WOULD LIKE TO REFER THIS CASE TO A MAGISTRATE JUDGE FOR

15        A MANDATORY SETTLEMENT.  I NEVER MANDATE THAT YOUR CLIENTS

16        SPEND MONEY ON A PRIVATE MEDIATOR, SO IF YOU ACTUALLY PREFER TO

17        GO BACK TO JUDGE JAMES THROUGH JAMS, I WOULDN'T STAND IN YOUR

18        WAY, BUT I'M SENSITIVE TO HOW VERY EXPENSIVE THAT IS.

19              SO LET ME TELL YOU THAT, AND YOU CAN'T WAIT UNTIL I DECIDE

20        THE SUMMARY JUDGEMENT ISSUE, WE'VE HAD A LONG DISCUSSION HERE

21        TODAY, I'M GOING TO MAKE A REFERRAL.  I CAN REFER IT TO THE

22        JUDGE WHO IS ALREADY ASSIGNED TO THIS CASE, AND IS THAT JUDGE

23        COUSINS, IS THAT WHAT YOU SAID.

24              MR. ZAVAREEI:  YES, YOUR HONOR.

25              THE COURT:  ALL RIGHT.  THAT WOULD BE MY DEFAULT.
```

1          IF THE PARTIES WANT TO JOINTLY SUGGEST A MAGISTRATE JUDGE

2     ANYWHERE IN OUR DISTRICT, THAT CAN BE IN SAN FRANCISCO OR

3     OAKLAND AS WELL, I WILL HONOR YOUR JOINT REQUEST AND REFER IT

4     TO THAT JUDGE.

5          I KNOW YOU NEED CLIENT CONSULTATION ON THAT, AND IN FACT

6     IT'S CRITICAL BECAUSE THEY ARE THE ONES MAKING THE DECISION ON

7     SETTLEMENT AND NOT YOU.

8          SO I WOULD LIKE TO ASK YOU TO MEET AND CONFER ON THE ISSUE

9     OF JOINTLY SELECTING A MAGISTRATE JUDGE AND I WOULD LIKE YOU TO

10    GET BACK TO ME BY THE END OF THE DAY ON MARCH 31ST, THAT'S

11    WEDNESDAY NEXT WEEK, AND ALL YOU NEED TO SAY IN YOUR JOINT

12    STATEMENT IS THE PARTIES HAVE BEEN UNABLE TO AGREE ON A

13    MAGISTRATE JUDGE OR THE PARTIES HAVE AGREED ON X MAGISTRATE

14    JUDGE.  THAT'S ALL I NEED.

15         SO IF YOU WOULD DO THAT, I WOULD APPRECIATE IT AND I WILL

16    MAKE THE REFERRAL NEXT WEEK.  IF YOU HAVE ANY REASON TO BELIEVE

17    THAT JUDGE COUSINS IS NOT THE RIGHT ONE BECAUSE OF CONTENTIOUS

18    DISCOVERY DISPUTES, THERE HAVE BEEN A FEW, I WOULD ASSIGN IT TO

19    ONE OF THE OTHER MAGISTRATE JUDGES HERE IN SAN JOSE,

20    JUDGE VAN KEULEN OR JUDGE DEMARCHI.

21         SO I JUST WANT YOU TO KNOW THAT.  IF YOU DON'T TELL ME

22    THAT JUDGE COUSINS WOULD BE INAPPROPRIATE, THAT'S HOW WE DO IT,

23    WE SEND IT TO THE JUDGE WHO KNOWS THE CASE.  BUT I KNOW THERE

24    HAVE BEEN SOME ISSUES ON DISCOVERY, AND SOMETIMES THAT GETS IN

25    THE WAY OF AN EFFECTIVE SETTLEMENT DISCUSSION.

1          MR. NARITA:  AND YOUR HONOR, JUST TO PICK UP ON AN

2     ISSUE WE TALKED ABOUT EARLIER, TO MY KNOWLEDGE, THE COURT HAS

3     NOT SET A HEARING DATE ON THE MOTION THAT WAS FILED, I THINK

4     LAST NIGHT, BY CLASS COUNSEL.

5          THE COURT:  WELL, I'M SETTING THESE MOTIONS IN AUGUST

6     RIGHT NOW.  I'M SETTING NEW MOTIONS IN AUGUST.  I WANTED TO

7     WAIT TO SEE WHAT YOUR OPPOSITION WAS BEFORE I DECIDED.

8          MR. NARITA:  YEAH.

9          AND WE WOULD DEFINITELY NEED, WE CAN TALK TO THE

10     PLAINTIFF'S COUNSEL FIRST BUT WE WOULD NEED SOME TIME.  WE WILL

11     DEFINITELY BE FILING A RESPONSE TO THAT MOTION.

12          THE COURT:  SO YOU WOULD NORMALLY HAVE 14 DAYS TO

13     FILE A RESPONSE.  THAT WASN'T AN ADMIN MOTION, WAS IT,

14     MR. ZAVAREEI?

15          MR. ZAVAREEI:  IT WAS NOT, YOUR HONOR.

16          THE COURT:  ALL RIGHT.

17          SO YOU HAVE 14 DAYS FROM THE FILING.  I SAW THERE WAS NO

18     HEARING DATE, AND I WAS GOING TO WAIT TO DETERMINE THE NATURE

19     OF YOUR OPPOSITION IF THERE WAS ANY.  AND WITH A SETTLEMENT

20     CONFERENCE WITH A MAGISTRATE JUDGE, THEY ARE MONTHS AWAY.

21     WITHOUT A NAMED PLAINTIFF, YOU CAN'T GO TO A SETTLEMENT

22     CONFERENCE.

23          MR. NARITA:  RIGHT.

24          THE COURT:  SO YOU ALL GET THAT.

25          SO I DON'T KNOW WHETHER MR. ZAVAREEI HAS SOMEBODY LINED UP

1    OR IF HE'S REALLY -- WHETHER THAT'S COMPLICATED, THAT'S

2    ATTORNEY-CLIENT, I'M NOT GOING TO ASK YOU TO RESPOND TO THAT.

3    I THINK YOU SAID YOU WERE ASKING FOR, I DON'T KNOW WHETHER IT

4    WAS SEVEN DAYS FROM FILING YOUR MOTION TO PROPOSE SOMEONE OR

5    SEVEN DAYS FROM SOMETHING ELSE.

6           MR. ZAVAREEI:  SEVEN DAYS FROM YOUR RULING,

7    YOUR HONOR.

8           THE COURT:  FROM MY RULING, NO, YOU BETTER GET GOING.

9           MR. ZAVAREEI:  OH, WE ARE.  THAT'S WHY WE ONLY ASK

10   FOR SEVEN DAYS.

11          THE COURT:  NOT FROM MY RULING, BECAUSE I DON'T KNOW

12   WHEN I'M GOING TO HAVE A HEARING.

13      SO GIVE ME A DATE.  I WANT TO HAVE A DATE, YOU WILL HAVE A

14   PROPOSED PLAINTIFF.  I'M NOT GRANTING YOU LEAVE TO AMEND

15   WITHOUT PROOF YOU CAN AMEND.  YOU ARE SUPPOSED TO GIVE ME THE

16   AMENDED COMPLAINT WHEN YOU ASK FOR LEAVE TO AMEND.  I THOUGHT I

17   WAS GETTING IT WITHIN THE NEXT SEVEN DAYS.

18          MR. ZAVAREEI:  YOUR HONOR, IT WILL BE WITHIN TWO

19   WEEKS FROM TODAY.

20          THE COURT:  THAT'S REASONABLE.

21      ALL RIGHT.  SO I WILL HAVE THE IDENTIFICATION OF THE

22   PROPOSED NAMED PLAINTIFF BY APRIL 8TH.  OKAY.

23          MR. ZAVAREEI:  THANK YOU, YOUR HONOR.

24      AND YOUR HONOR, I THINK IT IS IMPORTANT FOR ME TO BRING TO

25   YOUR ATTENTION, I KNOW THIS IS MORE ON THE MATTER OF A CASE

1    MANAGEMENT RATHER THAN PART OF THIS HEARING, BUT IT IS

2    IMPORTANT.  AN UPDATE, AND MR. TOMIO WILL HAVE AN OPPORTUNITY

3    TO RESPOND IN HIS OPPOSITION, BUT WE DID, LATE LAST NIGHT, AT

4    LIKE MIDNIGHT, WE DID RECEIVE A TERM SHEET FROM INTERO'S CEO

5    SENT TO MR. CHINITZ AND COPYING US.

6         SO WE DO HAVE SOME CONCERN THAT THEY ARE STILL NEGOTIATING

7    AND THEY MAY TRY AND SUBMIT SOMETHING TO THE COURT, AND I JUST

8    WANT TO MAKE IT CLEAR THAT NONE OF THAT IS WITH OUR BLESSING

9    AND THAT WE WOULD BE OPPOSED TO ANY KIND OF --

10        THE COURT:  WELL, YOU KNOW, I GUESS WE WILL CROSS --

11   MR. CHINITZ, IT APPEARS HE CAN'T CONTINUE TO REPRESENT THE

12   CLASS AND IS NOT EVEN TRYING TO.  HE HAS NO AUTHORITY TO BROKER

13   A CLASS SETTLEMENT.

14        AND SO MR. NARITA, I PRESUME -- YOU DON'T HAVE TO TELL ME

15   WHAT YOU ARE TELLING YOUR CLIENTS, BUT PRESUMABLY THAT YOU ARE

16   AWARE OF THAT AND YOU HAVE HAD THE NECESSARY DISCUSSIONS.

17        MR. NARITA:  YOUR HONOR, YEAH.  OBVIOUSLY I CAN'T

18   REVEAL ANYTHING I TALK TO MY CLIENTS ABOUT, I DO KNOW THAT

19   THERE'S NO PROHIBITION ON PARTIES TALKING TO EACH OTHER

20   CORRECTLY ABOUT RESOLUTION, AND THAT'S WHAT I UNDERSTAND HAS

21   BEEN HAPPENING.

22        BUT IT'S A VERY FLUID SITUATION, AND I THINK THE MOTION

23   THAT WAS FILED LAST NIGHT WAS VERY TROUBLING IN MANY RESPECTS

24   AND NEEDS TO BE RESPONDED TO.

25        AND IF WE ARE NOT GOING TO HAVE ANY IDEA OF WHETHER

1    THERE'S GOING TO BE A NEW PLAINTIFF UNTIL APRIL, I FORGOT THE

2    DATE YOU JUST SAID.

3              THE COURT:  THE 8TH.

4              MR. NARITA:  THEN I THINK WE NEED -- WE WOULD LIKE

5    TIME TO RESPOND BEYOND THAT WHETHER OR NOT THIS ENTIRE CASE

6    SCHEDULE SHOULD BE CHANGED.

7              THE COURT:  SO IF I CHANGE THE CASE SCHEDULE, I'M

8    SETTING AT THE END OF 2023, I WANT YOU TO UNDERSTAND THAT.

9    THAT'S WHAT I'M SETTING AT.

10             MR. NARITA:  I THINK THAT WOULD BE HIGHLY PREJUDICIAL

11   TO THE DEFENDANT, AND I MEAN, THERE'S LOTS OF CASE LAW ON THIS,

12   AS YOUR HONOR KNOWS.

13             THE COURT:  I'M NOT SAYING THAT I WOULDN'T GRANT YOUR

14   MOTION, I'M JUST TELLING YOU WHAT MY SCHEDULE IS.

15        I HAVE A BACKLOG NOW, WE ARE NOW THE 13TH MONTH OF NO

16   TRIALS, AND FOR THE NEXT YEAR I'M GOING TO BE IN CRIMINAL

17   TRIALS.  ALL BY 2021 TRIALS ARE GOING TO GET BACKED UP, MY

18   CIVIL.

19        I HAVE TWO YEARS OF BACKLOGGED READY-TO-GO THROUGH FINAL

20   PRETRIAL CONFERENCE CIVIL CASES.  SO GIVING YOU A DATE IN 2023

21   MAY BE WISHFUL THINKING, BUT I'M NOT SETTING IT ANY EARLIER.

22   IT'S NOT THE CATTLE CALL OF SUPERIOR COURT WHERE YOU ARE ONE OF

23   TWENTY CASES, WE DON'T DO IT THAT WAY.

24        I'M NOT SAYING YOU DON'T HAVE GOOD CAUSE FOR IT, BUT MAYBE

25   IF YOU GOT A TERMS SHEET, AND MAYBE THIS IS THE BEGINNING OF A

1      DISCUSSION OF SETTLING THIS WHOLE CASE, AND EITHER GETTING A

2      MEDIATOR THAT YOU PAY FOR IMMEDIATELY, I'M NOT REQUIRING THAT,

3      OR WAITING WHAT WILL BE TWO TO THREE MONTHS FOR A MAGISTRATE

4      JUDGE TO BE AVAILABLE.  IT'S THAT LONG A TIMELINE.

5          THE ONES I HAVE BEEN TALKING TO LATELY ARE TELLING ME THAT

6      IT'S -- JUNE, JULY, AUGUST IS WHEN THEY HAVE OPENINGS NOW.

7          MAYBE THE IRON IS HOT RIGHT NOW AND YOU OUGHT TO EITHER GO

8      BACK TO JUDGE JAMES OR FIND SOMEBODY ELSE AND MAKE THIS HAPPEN.

9      YOU KNOW, THIS CASE IS A MESS RIGHT NOW, AND THIS MIGHT BE

10     REALLY THE BEST TIME EVER TO RESOLVE IT FOR THE BENEFIT OF

11     EVERYBODY.

12         I AM SORRY THAT THIS IS A TERRIBLE TURN OF EVENTS, BUT

13     MR. CHINITZ, I GUESS HE CAN GET PICKED OFF AND SETTLE HIS OWN

14     CLAIM, BUT HE HAS NO AUTHORITY TO SETTLE FOR THE CLASS.

15             MR. NARITA:  AND YOUR HONOR, AND I HEAR YOUR HONOR,

16     AND IT IS A MESS, I THINK WE CALL IT A HOT MESS.  IT'S VERY

17     MESSY.

18         JUST TO CLARIFY THOUGH, CAN THE DEFENSE HAVE AT LEAST TWO

19     WEEKS BEYOND THE DATE WHERE WE HEAR WHO THIS PROPOSED NEW

20     PLAINTIFF WOULD BE, TO RESPOND TO A VERY, VERY SIGNIFICANT

21     MOTION THAT WE WILL HAVE ABSOLUTELY BE OPPOSING?

22         I MEAN, IF --

23             THE COURT:  ALL I DID WAS GIVE LEAVE TO AMEND.  THE

24     COMPLAINT IT SAYS NOTHING ABOUT THE TRIAL SCHEDULE.

25             MR. NARITA:  IT DOESN'T SAY ANYTHING ABOUT THE TRIAL

1    SCHEDULE, BUT IT SAYS A LOT OF THINGS ABOUT RULE 16 AND OTHER

2    THINGS THAT WOULD HAVE TO CHANGE.

3            THE COURT:  WELL, I WILL GIVE YOU ONE WEEK AFTER THE

4    IDENTIFICATION OF THE NAMED PLAINTIFF.

5            MR. NARITA:  WE APPRECIATE THAT.

6            THE COURT:  ALL RIGHT.  AND THEN I GUESS THERE WILL

7    BE A REPLY.  YOU UNDERSTAND THESE ARE TEN-PAGE BRIEFS.

8            MR. ZAVAREEI:  YES.

9            THE COURT:  OKAY.

10       AND SO I WILL ALLOW THE REPLY, THE RESPONSE RATHER, TO

11   PLAINTIFF'S MOTION FOR LEAVE TO AMEND, TO BE FILED NO LATER

12   THAN APRIL 15TH, AND THE REPLY WILL BE DUE A WEEK AFTER THAT.

13       THEN I WILL DECIDE WHETHER THERE'S A HEARING ON WHEN I CAN

14   HAVE IT.  I'M GOING TO BE IN TRIAL, NONSTOP CRIMINAL CASES ALL

15   OF APRIL AND ALL OF MAY.  AND SO IT JUST IS --

16           MR. ZAVAREEI:  YOUR HONOR, JUST TO BE CLEAR, THE

17   PROPOSAL, OUR PROPOSAL, AND I UNDERSTAND IT DOESN'T WORK

18   BECAUSE OF YOUR AVAILABILITY FOR HEARING, BUT THE IDEA THAT WE

19   HAD WAS THAT IF YOU THOUGHT THAT IT WAS APPROPRIATE THAT WE

20   NEEDED A NEW CLASS REP, WE COULD DO THAT QUICKLY AND MAKE THAT

21   PERSON AVAILABLE FOR MR. NARITA TO TAKE THAT PERSON'S

22   DEPOSITION QUICKLY AND THEN ANOTHER BRIEFING ON, SHORT

23   BRIEFING, I THINK WE PROPOSED FIVE PAGES EACH ON TYPICALITY AND

24   ADEQUACY.

25           SO I'M NOT SURE WHAT WE NEED TO PROVIDE -- I MEAN, WE

1    AGREED THAT WE WOULD FIND AND RETAIN A CLASS REPRESENTATIVE IN

2    TWO WEEKS, BUT IT'S NOT CLEAR TO ME WHAT YOU WISH US TO PROVIDE

3    TO THE COURT AND TO OPPOSING COUNSEL BEFORE HE FILES HIS

4    OPPOSITION.

5              THE COURT:  I DIDN'T ASK FOR ANYTHING.  YOU ARE IN

6    CHARGE OF THIS RIGHT NOW, NOT ME, BECAUSE IT'S YOUR MOTION.

7    AND I READ IT, BUT I CAN'T DRAW ANY CONCLUSIONS UNTIL I SEE ALL

8    THE PAPERS.  I NEED TO SEE AN OPPOSITION BEFORE I EVEN REALLY

9    KNOW WHAT THE ISSUES ARE.

10        AND I THINK MR. NARITA MAKES A REASONABLE REQUEST TO HAVE

11   THE IDENTITY OF A CLASS REPRESENTATIVE BEFORE HE RESPONDS.  SO

12   I THINK THAT'S REASONABLE.

13        AND I WILL GIVE YOU A REPLY.  AND I IMAGINE THERE WILL BE

14   SOME KIND OF HEARING, BUT I HAVE TO TELL YOU, AS I SAID, I'M

15   SETTING THINGS IN AUGUST.  AND IT SOUNDS LIKE THIS HAS TO BE

16   SET SOONER, SO I'M GOING TO WAIT AND SEE WHAT THE MOTIONS TELL

17   ME BEFORE I SET IT.  YOU MIGHT NOT GET MUCH NOTICE AND IT MIGHT

18   NOT BE AT AN HOUR YOU WANT.

19        ALL RIGHT.  I NEED TO CALL THIS TO AN END.  SO THANK YOU

20   ALL.  THIS WAS WELL DONE AND I APPRECIATE ALL THE HARD WORK.

21        (THE PROCEEDINGS WERE CONCLUDED AT 12:52 P.M.)

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9   REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10  THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11  FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12  CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14  CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16  SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17  HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18  TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24  _____

25  SUMMER A. FISHER, CSR, CRR
    CERTIFICATE NUMBER 13185          DATED: 4/2/21