**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RONALD CHINITZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTERO REAL ESTATE SERVICES,<br><br>　　　　Defendant. | Case No. 18-cv-05623-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 157 and 159] |

This is a class action brought by Plaintiff Ronald Chinitz[1] against Defendant Intero Real Estate Services for allegedly making unlawful calls to residential telephone lines in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. *See* Compl., ECF 1. Before the Court are two motions for summary judgment, one from Plaintiff, *see* Pl.'s Mot., ECF 157, and one from Defendant, *see* Def.'s Mot., ECF 159. For the reasons stated below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART, and Defendant's motion is GRANTED IN PART and DENIED IN PART.

**I.　BACKGROUND**

Defendant is a real state services company that facilitates the sale of real estate throughout the San Francisco Bay Area. Decl. of Sabita J. Soneji ("Soneji Decl."), Ex. A, About Intero, at 1, ECF 157-1; Decl. of John Thompson ("Thompson Decl."), ¶ 2, ECF 159-2. Under California law,

---

[1] Plaintiff's counsel has a pending motion to replace Mr. Chinitz as class representative. *See* Mot. to Substitute, ECF 178. This pending motion has no effect on the Court's rulings on the summary judgment motions.

real estate salespersons and brokers must be licensed, Cal. Bus. & Prof. Code § 10130, and Defendant is "duly licensed as a real estate Broker by the State of California." Soneji Decl., Ex. G, Independent Contractor Agreement, at IN 0041 ¶ 1, ECF 157-1. California law regulates the operation of real estate brokerages and their affiliated sales associates—for example, any person in California wanting to "engage in the business of, act in the capacity of, advertise as, or assume to act as a real estate broker or a real estate salesperson" must obtain and maintain a real estate salesperson's or broker's license. Cal. Bus. & Prof. Code §§ 10130, 10137. California law requires that sales associates' real estate licenses be registered or affiliated with only one responsible broker at a time. *See, e.g.*, Cal. Bus. & Prof. Code § 10137, Cal. Code Regs. tit. 10, § 2752(5), (6). Salespersons and broker associates working on behalf of a licensed broker must enter into a written employment or retention agreement, and the parties must inform the California Department of Real Estate ("DRE") within five days of entering into any such agreement. Cal. Code Regs. tit. 10, §§ 2726, 2752; *see also* Cal. Bus. & Prof. Code § 10161.8. Intero works with sales associates who are licensed through the DRE. Thompson Decl. ¶ 4. Intero assigns all its corporate sales associates (those not working for a franchise office)[2] the title of "Agent" or "Sales Associate" and publicly advertises them as such, including on its website. *See, e.g.*, Ex. A, About Intero, at 1; *see also* Ex. B Excerpt of Agent List, ECF 157-1; Ex Q, Dep. of Thomas Tognoli ("Tognoli Dep.") 61:1-15, ECF 157-1.

Pursuant to their employment agreements with Defendant, all sales associates agree that they will know and comply with all applicable federal, state, and local laws and regulations that apply to their sales practices. Thompson Decl. ¶ 4. This includes compliance with the TCPA and all requirements relating to the Federal Trade Commission ("FTC") Do Not Call registry. *Id.*; Thompson Decl., Ex. A, 2017 Intero Policy Manual, at IN 0019, ECF 159-2. California law requires that brokers like Defendant exercise reasonable supervision over their "performance of acts for which a real estate license is required" and holds brokers like Defendant responsible for its affiliated sales associates' real estate activities. Cal. Bus. Prof. Code § 10159.2. Additionally,

---

[2] None of the parties' arguments for these motions extend to agents or sales associates working for franchise offices.

"consistent with existing statutory and common law, a responsible broker is liable for the actions or negligence of a salesperson or broker associate retained by the responsible broker to perform acts for which a license is required under this division." Cal. Bus. & Prof. Code § 10010.5.

Plaintiff has presented evidence that his landline telephone number (831-420-1899) received six calls from or on behalf of Intero within a 12-month period. Verkhovskaya Rep. ¶¶ 79, 110, ECF No. 72. Plaintiff has presented evidence that the calls were from a sales associate associated with Defendant asking if he was interested in relisting his house for sale. Soneji Decl., Ex. Z, Decl. of Ronald Chinitz ("Chinitz Decl.") ¶ 7, ECF 157-1; Soneji Decl., Ex. X, Dep. of Ronald Chinitz ("Pl.'s Chinitz Dep.") 169:5–171:1, ECF 157-1. The parties dispute whether Plaintiff's telephone numbers, including his landline are "personal, non-business residential numbers." Ex. X, Pl.'s Chinitz Dep. 120:2–11; Decl. of Tomio Narita ("Narita Decl."), Ex. C, Dep. of Ronald Chinitz ("Def.'s Chinitz Dep.") 30:13-31:13, 31:24-32:13, 35:22-36:6, 36:17-37:25, ECF 159-4. Plaintiff has testified that he found the calls from Intero's sales agents "intrusive, obnoxious, harassing and unwanted and to invade my privacy," and he testified that he repeatedly asked the callers not to call him back, but they kept calling. Ex. Z, Chinitz Decl. ¶¶ 11–12.

Plaintiff filed this complaint on September 13, 2018. *See* Compl. Defendant filed its answer on November 7, 2018. *See* Answer, ECF 9. On July 22, 2020, this Court granted Plaintiff's motion for class certification, certifying two classes: A National Do Not Call ("DNC") Class for injunctive relief under Rule 23(b)(2) and for damages under Rule 23(b)(3), and an Internal DNC Class under Rule 23(b)(2) for injunctive relief. *See* Class Cert. Order, ECF 126. On September 23, 2020, the Court denied Defendant's motion for reconsideration. *See* Order Den. Recons., ECF 138. Defendant's Rule 23(f) petition to the Ninth Circuit for review of this Court's class certification order was denied on October 19, 2020. *See* Order of USCA, ECF 143.

## II.     LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P.

56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary judgment. *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *First Pac. Networks*, 891 F. Supp. at 514 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

4

*Corp.*, 475 U.S. 574, 587 (1986)).

**III.     DISCUSSION**

The Court first addresses the parties' evidentiary objections and requests for judicial notice before considering Plaintiff's motion, followed by the one filed by Defendant.

    **A.     Evidentiary Objections**

Both parties have objected to the opposing side's inclusion of new evidence with the reply brief. *See* Pl.'s Obj, ECF 170; Def.'s Obj., ECF 169. "New evidence submitted as part of a reply is improper." *Morris v. Guetta*, No. LA CV12-00684 JAK, 2013 WL 440127, at *8 (C.D. Cal. Feb. 4, 2013). Accordingly, both parties' objections are SUSTAINED, and the Court will not consider the declarations and exhibits attached to either reply brief.

Defendant further objects to the following evidence offered by Plaintiff in support of his motion for summary judgment: paragraphs 9-24 of the Soneji Declaration, on the basis that the testimony is hearsay, lacks foundation, and lacks personal knowledge; Exhibits A, B, C, D, F, H, and L to the Soneji Declaration, on the basis that they are not properly authenticated; and Video Exhibits 1 through 14, on the basis that they are not properly authenticated and lack foundation. *See* Def's Opp'n 22-25, ECF 161.

Defendant additionally objects to the following evidence offered by Plaintiff in his opposition to Defendant's motion for summary judgment: paragraphs 8-13 and 21 of the Declaration of Sabita J. Soneji in support of Plaintiff's opposition, on the basis that they are hearsay; Exhibits A, B, C, D, G, H, I, K, and W to the declaration, on the basis that they are not properly authenticated; and Exhibits E and M, on the basis that they are hearsay. Def's Reply 14-15, ECF 165.

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)). At this stage, the focus is on the admissibility of the contents of the evidence, not its form. *Fraser*, 342 F.3d at 1036; *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir.

2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.") "Accordingly, district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial, following *Fraser*." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018) (citations omitted). Accordingly, the Court OVERRULES Defendant's evidentiary objections on the basis that the evidence could be presented in an admissible form at trial.

### B. Request for Judicial Notice

Plaintiff requests the Court take judicial notice of several documents. *See* Req. for Judicial Notice, ECF 158. First, Plaintiff requests judicial notice of several documents attached to the Soneji Declaration from the California DRE: Exhibit H, Defendant's corporate license, list of trade names and branches, and a list of Defendant's broker-associates as of October 28, 2019; Exhibit L, a list of sales associates affiliated with Defendant as of January 24, 2020; and Exhibit N, real estate license of Dominic Elmo Nicoli. *See* Req. for Judicial Notice. Plaintiff also asks the Court to judicially notice Exhibit D, content from the DRE website. *See id.* Finally, Plaintiff asks the Court to take judicial notice of documents from Defendant's publicly available website: Exhibit A, About Intero; Exhibit B, Excerpt of Agent List; and Exhibit C; Website Guide. *See id.* Defendant objects to these requests on the basis that it violates this Court's Standing Order, as this request contains additional arguments that exceeds the Court's 25-page limit for a summary judgment motion. Def.'s Opp'n 25. The Court does not consider Plaintiff's arguments offered in this request for judicial notice but does note that Plaintiff properly incorporated his arguments into his reply brief, which complies with the Court's Standing Order and page limits. *See* Pl.'s Reply 14-15, ECF 164.

Courts may take judicial notice of matters either that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Specifically, a court may take judicial notice: (1) of matters of public record, (2) that the market was aware of

6

1    information contained in news articles, and (3) publicly accessible websites whose accuracy and
2    authenticity is not subject to dispute." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 827
3    (N.D. Cal. 2019) (internal citations and quotation marks omitted). Accordingly, the Court takes
4    judicial notice of Exhibit H, L, and N since DRE materials are matters of public record. The Court
5    takes judicial notice of Exhibit D since the DRE website is publicly accessible, and its accuracy is
6    not in dispute. The Court takes judicial notice of Exhibits A, B, and C from Defendant's website
7    for the same reason.

### C. Plaintiff's Motion

Plaintiff seeks summary judgment on two discrete issues. First, Plaintiff seeks summary judgment on the issue of whether Defendant is vicariously liable for any calls deemed to be in violation of the TCPA that were made by or on behalf of sales associates and agents affiliated with its corporate-owned real estate offices. Pl.'s Mot. 10-17. The issue of liability—whether the sales associates were affiliated with Defendant at the time the calls were made and whether the calls in question actually violated the TCPA—is reserved for the jury. *Id.* 1. Second, Plaintiff seeks summary judgment in favor of the Internal DNC Class and a finding that Defendant violated 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(d), which prohibit entities from engaging in telemarking unless they adopt a do not call policy that meets every enumerated minimum standard set forth in the statute. Pl's Mot. 18-24. The issue of the scope of the injunctive relief would be reserved for trial. *Id.* 1. Defendant opposes summary judgment on both discrete issues. *See* Def.'s Opp'n. The Court considers each issue in turn.

#### i. Vicarious Liability

Plaintiff argues that Defendant is vicariously liable for calls made by its corporate sales associates and agents. Mot. 10-17. Plaintiff has two different theories for finding vicarious liability: one based on apparent authority and another based on California laws that Plaintiff argues are incorporated into federal common law by the Restatement. *Id.* At the March 25, 2021 hearing for these motions, Plaintiff's counsel admitted there was no case law to support this latter theory.

Defendant argues that Plaintiff cannot proceed under a vicarious liability theory because it

7

was not plead in the complaint, Def.'s Opp'n 4-5, but the Court disagrees. The complaint pleads a TCPA violation on the basis of calls "made by or on behalf of Defendant," Compl. ¶ 76, which is sufficient to give Defendant notice of the theory. And Defendant demonstrated at the beginning of the case that it understood Plaintiff was asserting a vicarious liability theory: in the parties' Rule 26(f) case management statement, filed on February 14, 2019, Defendant wrote, "The principal legal issue in this case is whether Intero can be held vicariously liable for phone calls allegedly made by salespersons (independent contractors) that allegedly violated the TCPA." Joint Case Mgmt. Statement 5, ECF 21. Defendant's argument now that this is a new theory is disingenuous at best.

Defendant further argues that Plaintiff lacks evidence demonstrating Defendant's liability for these alleged calls, Def.'s Opp'n 5-12, but this mischaracterizes Plaintiff's motion. Plaintiff is only seeking summary judgment on the narrow issue of whether Defendant "is vicariously liable for any calls deemed to be in violation of the TCPA that were made by or on behalf of agents affiliated with its corporate-owned real estate offices." Mot. 1. The issues of whether the agents who placed the calls where agents of Defendant at the times the calls were made and whether the calls in question violated the TCPA—the issues Defendant argues in its opposition brief—are not subject to this motion and are explicitly reserved for trial by Plaintiff. Mot. 1, Pl.'s Reply 3-4 n.3.

The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority. The Ninth Circuit has adopted the Federal Communications Commission (FCC) construction of the TCPA that holds "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call," and actions under the TCPA "incorporate federal common law agency principles of vicarious liability." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (alteration in original) (internal quotations and citations omitted). The Ninth Circuit "relies on the Restatement (Third) of Agency as the federal common law of agency" for these actions. *Id.*

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) Of Agency § 2.03 cmt. c (Am. L. Inst. 2006);

8

"The definition thus applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority." *Id.* § 2.03 cmt. a. Apparent authority ensures, "[a] principal may not choose to act through agents whom it has clothed with the trappings of authority and then determine at a later time whether the consequences of their acts offer an advantage." *Id.* § 2.03 cmt. c.

Plaintiff presents several pieces of evidence to prove a manifestation on Defendant's part that would lead a reasonable person to believe the sales associates were acting under its authority. For example, Defendant listed the names of its agents on its website. Ex. B, Excerpt of Agent List; Soneji Decl., Ex. C, Website Guide, ECF 157-1. Defendant also submitted the names of its associates to the California DRE. Soneji Decl., Ex. H, DRE list of associates, ECF 157-1. As a matter of law, these manifestations, which are traceable to Defendant, the principal, are sufficient to create apparent authority. *See* Restatement § 2.03 cmt. c.

Additionally, the principal's manifestations that give rise to apparent authority may consist of "directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts ... under circumstances which create in him a reputation of authority. ..." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017) (alteration in original) (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969)). Here, Plaintiff has presented evidence that Defendant gave its sales associates permission to solicit real estate clients on Defendant's behalf and using its name. Soneji Decl., Ex. G, Independent Contractor Agreement, at IN 0042 ¶ 4; Ex. J, 2018 Intero Policy Manual, at IN 0120, 0127, ECF 157-1. Defendant's training materials instructed its associates to identify themselves as being associated with Defendant when making sales calls. Ex. 10, Passion Punch Training Clips 2:11-14, ECF 179-10 ("But when I call, I'm delivering a lot of energy and enthusiasm on the phone. Hey, it's Albert Garibaldi, Intero Real Estate, how are you?"); see also Soneji Decl., Ex. Q, Tognoli Dep. 154:3-155:7 (encouraging sales associates and brokers to promote their association with Defendant). Accordingly, the Court finds that these manifestations made by Defendant established that its sales associates had apparent authority to act on its behalf.

Defendant argues that Plaintiff has not offered any evidence that a "reasonable person

9

would believe that any of the sales associates who allegedly made the calls had authority to do so on behalf of Intero. Def.'s Opp'n 7-8. The Court disagrees. The Court also disagrees with Defendant that this is a subjective standard, *see* Def.'s Opp'n 7-8, as apparent authority uses an objective, "reasonable person" standard. *United States v. Chavez*, 673 F. App'x 754, 756 (9th Cir. 2016); *see also Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (finding "reasonable person" standard is an objective one), *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (Because the inquiry is limited to how a reasonable person would perceive the text message at issue, there is no need to determine how individual class members perceived the text message or the successive web pages they may have visited. Agency can be resolved on a class-wide basis.").

The Court also disagrees with Defendant's argument that Plaintiff has no evidence of any manifestation by Defendant that would lead any class member to reasonably believe that these sales associates had the authority to make these calls on behalf of Defendant. See Def.'s Opp'n 9-12. As stated above, the Court finds Plaintiff has offered several pieces of evidence that would lead a reasonable person to believe the sales associate had apparent authority. *See, e.g.*, Ex. 10, Passion Punch Training Clips 2:12-13 ("Hey, it's Albert Garibaldi, Intero Real Estate, how are you?"). The amount of evidence presented by Plaintiff distinguishes this case from *McDermet v. DirecTV, LLC*, cited by Defendants. No. CV 19-11322-FDS, 2021 WL 217336, at *10 (D. Mass. Jan. 21, 2021). That court found that "[t]he fact that the authorized retailers could use defendants' trademarks is not sufficient to establish apparent authority," *id.*, but Plaintiff here has presented evidence that goes beyond just using Defendant's name. *See, e.g.*, Ex. B, Excerpt of Agent List; Ex. C, Website Guide; Ex. G, Independent Contractor Agreement.

Defendant's arguments in opposition to Plaintiff's apparent authority theory are all based on an alleged lack of evidence, arguments the Court has found contrary to the record before it. Defendant does not present any evidence of its own to show a genuine issue of material fact. Therefore, the Court GRANTS summary judgment for Plaintiff and finds that, as a matter of law, Defendant is vicariously liable under apparent authority for calls made by its corporate agents and sales associates. The issues of whether particular agents and sales associates were agents of

Defendant at the time the calls were made and whether the calls violated the TCPA will be decided at trial.

### ii. Defendant's Do Not Call Policy

Plaintiff also seeks summary judgment on the issue of whether Defendant is liable for violations of the TCPA's requirements that it maintain an internal do-not call-list that meets every enumerated minimum standard set forth in 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d). Pl.'s Mot. 18-24.

"The TCPA affords a private right of action to any 'person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of' relevant regulations." *Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2019 WL 3555110, at *1 (N.D. Cal. Aug. 5, 2019) (citing 47 U.S.C. § 227(c)(5)). One such regulation is 47 C.F.R. § 64.1200(d), which states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). The regulation then enumerates six minimum standards that the instituted procedures must meet. *Id.* They include maintaining a written policy for maintaining a do-not-call list, *id.* § 64.1200(d)(1), and training of personnel engaged in telemarketing: "Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list." *Id.* § 64.1200(d)(2).

"[I]mplementation of adequate procedures is an affirmative defense." *Izor*, 2019 WL 3555110, at *2 (citing 47 U.S.C. § 227(c)(5) ("It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection.")).

Plaintiff argues there is no evidence that Defendant had a written policy for maintaining a do-not-call list—a separate requirement from maintaining the list itself—as required by 47 C.F.R. § 64.1200(d)(1). Pl.'s Mot. 20-22. Plaintiff also argues that the evidence shows that Defendant did not train its telemarketers as required by 47 C.F.R. § 64.1200(d)(2). Pl.'s Mot. 22-23; Soneji

11

Decl., Ex. O, Interrogatories Response at 3, ECF 157-1 ("Defendant states that to the best of its knowledge, its legal department has not conducted any branch training sessions relating to the "Do Not Call" list, as referenced on page IN 0019 of the Broker/Agency Policy Manual"); Soneji Decl., Ex. P, Dep. of John Thompson 133:21-134:4, ECF 157-1 (stating no training was held outside of the legal department, either).

Defendant argues that these calls were not made for telemarketing purposes and that Plaintiff has presented no evidence that these calls were made to residential telephone subscribers, which are both required to trigger a violation of 47 C.F.R. § 64.1200(d). Def.'s Opp'n 18-20. The regulation defines telemarketing as the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). The Ninth Circuit has approached deciding what constitutes telemarketing "with a measure of common sense." *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913, 918 (9th Cir. 2012). Plaintiff cites an FCC decision clarifying the TCPA rules and regulations that states, "a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 70 Fed. Reg. 19330-01, 19331 (April 13, 2005). Plaintiff also has presented evidence from Defendant's training videos demonstrate these calls were telemarketing calls. *See, e.g.*, Ex. 2, Jason Traina Training Clips 2:6-3:7, ECF 179; Ex. 13, Dominic Nicoli Phone Prospecting Training 3 Clips 2:15-3:4, ECF 179. Defendant argues that under *Chesbro*, a court cannot decide as a matter of law that a call is a telemarketing call without any evidence as to what was said on the call. Def.'s Opp'n 19 (citing *Chesbro*, 705 F.3d at 916 (analyzing undisputed script)).

As to the issue of whether these calls were received by residential telephone subscribers, Defendant cites Plaintiff's deposition as evidence that his number is not a residential number covered by the TCPA since he is a landlord and uses both of his phone numbers to run his business. Def.'s Chinitz Dep. 19:17-20:20, 30:13-31:13, 31:24-32:13, 35:22-36:6, 36:17-37:25. Plaintiff argues that his line is residential, even if it is possibly used to communicate with the

renters of the single rental property he maintains on his residential lot. Pl.'s Reply 10-11; Ex. X, Pl.'s Chinitz Dep. 35:2-24.

The Court finds disputed issues of fact prevent it from ruling Defendant is liable for violations of the TCPA's requirements that it maintain an internal do-not call-list under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) because of the threshold issues of whether telemarketing calls were made to residential telephone subscribers to trigger liability under this statute and regulation. Accordingly, summary judgment is DENIED.

### iii. Conclusion

The Court GRANTS summary judgment for Plaintiff and finds that Defendant is vicariously liable under apparent authority for calls made by its corporate agents and sales associates. The Court DENIES summary judgment on the issue of whether Defendant is liable for violations of the TCPA's requirements that it maintain a proper internal do-not call-list under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d).

### D. Defendant's Motion

Defendant filed its own summary judgment motion, *see* Def.'s Mot. The Court DENIES the motion as to the claims brought under the TCPA and GRANTS the motion as to Plaintiff's claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

### i. TCPA Claims

Defendant's arguments regarding Plaintiff's claims under the TCPA overlap substantially with the issues the Court already addressed when evaluating Plaintiff's motion. Defendant argues that it is not liable for the calls at issue in this case, Def.'s Mot. 8-16, an argument which the Court has already decided in finding that Defendant is vicariously liable for the calls made by its corporate agents and sales associates. The Court finds that Plaintiff has presented evidence that the calls at issue in this case were initiated by Defendant's sales associates, which is sufficient to defeat summary judgment. Decl. of Sabita J. Soneji ("Soneji Opp'n Decl.") ¶¶ 8-14, 21.

Next, Defendant argues that there is no evidence that the calls at issue were telephone solicitations or that they were made for telemarketing purposes. Def.'s Mot. 12-13. As the Court identified above, Plaintiff has presented evidence that the calls were solicitations made for

13

telemarketing purposes. Ex. 2, Jason Traina Training Clips 2:6-3:7; Ex. 13, Dominic Nicoli Phone Prospecting Training 3 Clips 2:15-3:4; Ex. Z, Dep. of Chinitz in Opp'n 169:5-171:1, ECF 160-1.

Defendant argues another point covered in Plaintiff's motion when it claims there is no evidence that any calls were placed to residential telephone subscribers or received by residential telephone subscribers who registered their numbers with the National Do-Not-Call Registry ("NDNCR"). Def's Mot. 17-21. As mentioned above, the Court finds a disputed issue of fact as to whether Plaintiff's number a residential telephone line under the TCPA. Plaintiff also presents deposition testimony from one of Defendant's sales associates that establishes that he calls people who are selling their home on their own, without a realtor. Soneji Opp'n Decl., Ex. Q, Dep. of Dominic Nicoli 94:3-22, 98:17-101:3, ECF 160-1. The Court repeats the common-sense assumption that residential real estate is sold by individuals, not businesses. Additionally, Plaintiff's expert report, which the Court accepted as evidence over the objections of Defendant at both class certification, Class Cert. Order 10-12, and the reconsideration of that decision, Order Den. Recons. 2-5, creates a triable issue of fact as to whether the calls were made to residential lines on the NDNCR. *See* Verkhovskaya Rep. Defendant's arguments about the report go to the weight of the evidence, not its admissibility, and Defendant is welcome to attack the report at trial.

Defendant argues it is entitled to summary judgment on the injunctive relief claims of both classes. Def.'s Mot. 22-24. Defendant argues that the complaint does not "pray for injunctive relief on behalf of either class," a contention that is inaccurate. *See* Compl. ¶¶ 80, 91. Defendant argues there is no evidence that any person on its internal do-not-call list using a non-business line received more than one call from Defendant in a 12-month period. Def.'s Mot. 22-24. However, Plaintiff has identified evidence showing that he was on Defendant's do-not-call list but continued to receive calls in a 12-month period. Ex. Z, Dep. of Chinitz in Opp'n 168:7-171:13; Decl. of Heather Wang, Ex. 1, Intero Do Not Call List, ECF 159-1. Additionally, as the Court previously established, arguments about the minimum standards required for an internal do-not-call list under 47 C.F.R. 64.1200 go to an affirmative defense for which Defendant bears the burden of proof. For this reason, Defendant's arguments that Plaintiff has not presented evidence about Defendant's internal do-not-call list are unavailing. *See* Def.'s Mot. 23-24. Accordingly,

1  Defendant's motion seeking summary judgment on Plaintiff's TCPA claims is DENIED.

### ii. UCL Claim

Finally, Defendant argues that summary judgment is warranted on Plaintiff's UCL claim because Plaintiff and the classes lack standing to bring this claim. Def.'s Mot. 24-25. Plaintiff does not respond to this argument.

Whether a UCL claim is actionable turns first on a plaintiff's standing to bring it. *Huynh v. Quora, Inc.*, No. 5:18-CV-07597-BLF, 2020 WL 7495097, at *17 (N.D. Cal. Dec. 21, 2020) (citing *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (2016)). To establish standing for a UCL claim, a plaintiff must demonstrate that the alleged unfair competition caused him or her to personally lose money or property, i.e., suffer economic injury-in-fact. *In re Yahoo! Inc. Customer Data Sec. Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018); Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322-27 (2011). Economic injury-in-fact can occur where a defendant's wrongful conduct requires the plaintiff to "enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset*, 51 Cal. 4th at 323. Defendant argues that there is no evidence that Plaintiff lost money or property. Def's Mot. 24. Plaintiff does not respond to this argument or present any evidence demonstrating an economic injury-in-fact. For this reason, summary judgment is GRANTED for Defendant on Plaintiff's UCL claim.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Summary Judgment is GRANTED for Plaintiff on the first issue that Defendant is vicariously liable for calls made by its corporate agents and sales associates, with the issue of whether these calls violated the TCPA to be determined at trial;
2. Summary Judgment is DENIED on Plaintiff's second issue whether Defendant is liable for violations of the TCPA's requirements that it maintain an internal do-not call-list that meets every enumerated minimum standard set forth in the under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d);

3. Summary Judgment is DENIED for Defendant on Plaintiff's TCPA claims; and

4. Summary Judgment is GRANTED for Defendant on Plaintiff's UCL claim.

Dated: April 12, 2021

_____
BETH LABSON FREEMAN
United States District Judge