Sabita J. Soneji (State Bar No. 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Hassan A. Zavareei (State Bar No. 181547)
hzavareei@tzlegal.com
Mark Clifford (*pro hac vice*)
mclifford@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Brian A. Glasser (*pro hac vice*)
bglasser@baileyglasser.com
John W. Barrett (*pro hac vice*)
jbarrett@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Charles D. Moore (*pro hac vice*)
cmoore@reesellp.com
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs Ruby Mitchell and Edward J. Kelly and the Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RUBY MITCHELL *and* EDWARD J. KELLY, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>INTERO REAL ESTATE SERVICES,<br><br>Defendant. | Case No. 5:18-cv-05623-BLF<br><br>**PLAINTIFFS RUBY MITCHELL'S AND EDWARD J. KELLY'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: Request Submitted<br>Time: Request Submitted<br>Place: Courtroom 3, 5th Floor<br>Judge: Honorable Beth Labson Freeman |

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on _____ at _____, or as soon thereafter as this matter may be heard, in Courtroom 3, 5th Floor, before the Honorable Beth Labson Freeman, Plaintiffs Ruby Mitchell and Edward J. Kelly (together, "Plaintiffs") respectfully move this Court for preliminary approval of the class action Settlement reached in this case, the terms of which Plaintiffs describe more specifically in the Memorandum of Points and Authorities in support of this motion.

Plaintiffs request that the Court enter the proposed Preliminary Approval Order and:

1. preliminarily approve the Settlement;

2. preliminarily certify the Settlement Class;

3. appoint Ruby Mitchell and Edward J. Kelly as the Class Representatives;

4. appoint Tycko & Zavareei LLP, Reese LLP, and Bailey & Glasser LLP as Settlement Class Counsel;

5. appoint KCC Class Action Services LLC as the Settlement Administrator and direct it to carry out the duties assigned to it in the Settlement Agreement;

6. approve the proposed Notice Plan and direct that Class Notice be distributed to the Settlement Class;

7. approve the Parties' proposed Claim Form and the proposed procedures for submitting Claims, objecting to the Settlement, and requesting exclusion; and

8. schedule a Final Approval Hearing.

Plaintiffs base the motion on the following documents: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings, record, and other filings in the case; the Declaration of Sabita J. Soneji and its accompanying exhibits; the Declaration of Carla A. Peak in Support of Settlement Notice Program; and such other oral and written points, authorities, and evidence as the parties may present at the time of the hearing on the motion. Defendant Intero Real Estate Services does not oppose this motion.

Date: October 29, 2021                     **TYCKO & ZAVAREEI LLP**

By:  _/S/ Sabita J. Soneji_____
Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*

1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
Mark Clifford (*pro hac vice*)
*mclifford@tzlegal.com*
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Charles D. Moore (*pro hac vice*)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

*Counsel for Plaintiffs Ruby Mitchell and Edward J. Kelly
and the Classes*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      Introduction ................................................................................................................ 1

II.     Factual and Procedural Background .......................................................................... 2

III.    The Terms of the Settlement Agreement .................................................................. 5

        A.      The Proposed Settlement Class ...................................................................... 5

        B.      The Benefits to the Settlement Class ............................................................. 5

                1.      Monetary benefits ............................................................................... 5

                2.      Injunctive relief ................................................................................... 7

        C.      Class Member Release ..................................................................................... 8

        D.      Settlement Administrator and Administration Costs ................................... 8

        E.      Proposed Notice Plan ...................................................................................... 8

        F.      Opt-Outs and Objections ............................................................................... 10

        G.      Attorneys' Fees and Costs and Service Awards ........................................... 11

IV.     Legal Standard for Preliminary Approval ................................................................. 11

V.      Argument ..................................................................................................................... 13

        A.      The Settlement Agreement Warrants Preliminary Approval. ...................... 13

                1.      Rule 23(e)(2)(A): The Class Representatives and Class Counsel have
                        adequately represented the proposed Settlement Class. .................. 13

                2.      Rule 23(e)(2)(B): The Settlement was negotiated at arm's length. .... 13

                3.      Rule 23(e)(2)(C): The relief for the Settlement Class is substantial .... 16

                        a.      Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and
                                appeal .................................................................................. 16

                        b.      Rule 23(e)(2)(C)(ii): The proposed method of distributing
                                relief and of processing Claims is and will be effective ...... 17

                        c.      Rule 23(e)(2)(C)(iii): The terms and timing of the proposed
                                award of Attorneys' Fees and Costs are fair and reasonable ... 17

                        d.      Rule 23(e)(2)(C)(iv): There are no supplemental agreements ... 19

4.     Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably relative to each other. .......................................................... 19

5.     Additional Ninth Circuit factors favor approval or are neutral. ..................... 20

a.     The amount offered in Settlement ......................................... 20

b.     The experience and views of Class Counsel ......................................... 21

c.     Government participation and Settlement Class reaction ................. 21

B.     The Court Should Certify the Settlement Class for Settlement Purposes. ................. 21

1.     The narrowed scope of the Settlement Class and claims to be released. .......................................................................................... 21

2.     The Settlement Class satisfies Federal Rule of Civil Procedure 23(a). ........... 22

3.     The Settlement Class satisfies Federal Rule of Civil Procedure 23(b)(3) ......................................................................................... 23

C.     The Court Should Approve the Proposed Class Notice Program. .............................. 24

VI.     Proposed schedule for final approval proceedings .......................................................... 25

VII.     Conclusion ........................................................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Adams v. Inter-Con Sec. Sys., Inc.*
No. 06-cv-05428-MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ................................... 14

4

*Aquilina v. Certain Underwriters at Lloyd's London*
No. 1:18-cv-00496-ACK-KJM, 2021 WL 3611027 (D. Haw. Aug. 13, 2021)......................... 22

5

*Avina v. Marriott Vacations Worldwide Corp.*
No. 18-cv-00685-JVS-JPR, 2019 WL 8163642 (C.D. Cal. Oct. 25, 2019) .............................. 14

6

7

*Briseno v. Henderson*
998 F.3d 1014 (9th Cir. 2021) ................................................................................................ 15

8

*Broomfield v. Craft Brew All., Inc.*
No. 17-cv-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .................................18, 19

9

10

*Campbell v. Facebook, Inc.*
951 F.3d 1106 (9th Cir. 2020) ................................................................................................ 11

11

*Chester v. TJX Companies, Inc.*
No. 5:15-cv-01437-ODW-DTB, 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ...................... 17

12

13

*Churchill Vill., L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ............................................................................................12, 20

14

*Contreras v. Armstrong Flooring, Inc.*
No. 20-cv-03087-PSG-SK, 2021 WL 4352299 (C.D. Cal. July 6, 2021) ............................... 15

15

16

*Dennis v. Kellogg Co.*
No. 09-cv-1786-L-WMC, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ............................... 17

17

*Dunakin v. Quigley*
99 F. Supp. 3d 1297 (W.D. Wash. 2015) ............................................................................... 22

18

19

*Eisen v. Carlisle and Jacquelin*
417 U.S. 156 (1974) ............................................................................................................... 24

20

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011) .................................................................................................. 23

21

22

*Free Range Content, Inc. v. Google, LLC*
No. 14-CV-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ................................ 11

23

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*
No. 05-cv-05437-RBL, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008)............................... 18

24

25

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) .......................................................................................12, 18, 23

26

*Hawkins v. Kroger Co.*
337 F.R.D. 518 (S.D. Cal. 2020) ........................................................................................... 22

27

28

*Hesse v. Sprint Corp.*
598 F.3d 581 (9th Cir. 2010) ............................................................................... 22

*In re Bluetooth Headset Prod. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011) ............................................................................... 15

*In re Hyundai & Kia Fuel Econ. Litig.*
926 F.3d 539 (9th Cir. 2019) ............................................................................... 14

*In re Immune Response Sec. Litig.*
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................... 14

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) ............................................................................... 11

*In re Mercury Interactive Corp. Sec. Litig.*
618 F.3d 988 (9th Cir. 2010) ............................................................................... 19

*In re Online DVD Rental Antitrust Litig.*
779 F.3d 934 (9th Cir. 2015) ............................................................................... 24

*In re Uber FCRA Litig.*
No. 14-cv-05200-EMC, 2017 WL 2806698 (N.D. Cal. June 29, 2017) .................. 21

*Johnson v. Moss Bros. Auto Grp., Inc.*
No. 19-cv-02456-FMO-SP, 2021 WL 4556052 (C.D. Cal. June 25, 2021) ............. 19

*Knutson v. Schwan's Home Serv., Inc.*
No. 3:12-cv-00964-GPC, 2014 WL 3519064 (S.D. Cal. July 14, 2014) .................. 25

*Lane v. Facebook, Inc.*
696 F.3d 811 (9th Cir. 2012) ............................................................................... 25

*Linney v. Cellular Alaska P'ship*
151 F.3d 1234 (9th Cir. 1998) ............................................................................. 20

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*
244 F.3d 1152 (9th Cir. 2001) ............................................................................. 23

*Louie v. Kaiser Found. Health Plan, Inc.*
No. 08-cv-00795-IEG-RBB, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ............. 14

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*
No. 19-cv-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) .................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 16, 21

*Norton v. LVNV Funding, LLC*
No. 18-cv-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) .............. 13, 15

*Odom v. ECA Mktg., Inc.*
No. 20-cv-00851-JGB-SHK, 2021 WL 4803488 (C.D. Cal. May 27, 2021) ........... 20

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ................................................................................... 20

*Paz v. AG Adriano Goldschmeid, Inc.*
    No. 14-cv-01372-DMS-DHB, 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ......................... 16

*Perks v. Activehours, Inc.*
    No. 5:19-cv-05543-BLF, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............... 12, 13, 19, 21

*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ............................................................................................ 24

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000) ................................................................................ 19

*Quiruz v. Specialty Commodities, Inc.*
    No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) .................................. 21

*Rosenburg v. I.B.M.*
    No. 06-cv-00430-PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) .................................. 25

*Sadowska v. Volkswagen Grp. of Am., Inc.*
    No. 11-cv-00665-BRO-AGR, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ....................... 14

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*
    No. 10-cv-01777-AJB-NLS, 2012 WL 3809123 (S.D. Cal. Sept. 4, 2012) ........................... 25

*True Health Chiropractic Inc. v. McKesson Corp.*
    332 F.R.D. 589 (N.D. Cal. 2019) ............................................................................. 23

*Tyson Foods, Inc. v. Bouaphakeo*
    577 U.S. 442 (2016) ............................................................................................ 23

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ................................................................................. 23

*Wong v. Arlo Techs., Inc.*
    No. 5:19-cv-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ....................... passim

**STATUTES**

47 U.S.C. § 227(c)(5)(B).......................................................................................... 20

California Code of Civil Procedure § 1021.5 ................................................................. 18

**RULES**

FED. R. CIV. P. 23 ........................................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

After over three years of litigating this hard-fought case, Plaintiffs[1] are pleased to present to the Court this motion seeking preliminary approval of a proposed class action Settlement of their claims against Intero. The Settlement represents an outstanding result for the proposed Settlement Class as it achieves the two central goals of the litigation. First, under the Settlement Agreement, Intero will pay a Cash Award of $350 to every Settlement Class Member who submits an Approved Claim. These $350 Cash Awards compare favorably to the amounts the Settlement Class Members may have received had the case proceeded to trial, especially given Intero's stated limited ability to pay any judgment. In addition to Cash Awards, Intero will separately pay all costs for providing notice and administering the Settlement and claims process, as well as any Attorneys' Fees and Costs and Service Awards the Court may approve. Second, in addition to monetary relief, the Settlement includes meaningful injunctive relief, in that Intero has agreed to implement policies and procedures that fully comply with 47 C.F.R. § 64.1200(c)(2) and (d), continuing until at least two years after the date the Court grants Final Approval of the Settlement.

This relief was secured through extensive arm's-length negotiations by experienced and informed counsel, including during three settlement conferences with the aid of a Court-appointed settlement judge, Chief United States Magistrate Judge Joseph C. Spero. Although Class Counsel intend to apply to the Court for reasonable Attorneys' Fees and Costs not to exceed $2,775,000, the Parties did not agree to a clear-sailing provision; Intero retains the right to object to the requested Attorneys' Fees and Costs or any part thereof; and any fees or costs the Court declines to award will be distributed to the Settlement Class, not Intero. For these reasons and the others below, the proposed Settlement is fair, reasonable, and adequate, and the Court should preliminarily approve it under Federal Rule of Civil Procedure 23(e), Ninth Circuit case law, and this District's Procedural

---

[1] Unless otherwise indicated, capitalized terms are defined in the Settlement Agreement and Release. *See generally* Stlmt Agmt & Release (filed herewith as Exhibit A to the Declaration of Sabita Soneji ("Soneji Decl.")).

1    Guidance for Class Action Settlements ("Settlement Guidelines").

2         Further, the proposed robust Class Notice program will provide direct Email Notice to all

3    Settlement Class Members, supplemented by direct Postcard Notice and an indirect notice program.

4    Both the Email and Postcard Notice will provide the address of the Settlement Website, which will

5    contain the long form Website Notice as well as other important case documents. The Notice

6    adequately advises Settlement Class Members of the terms of the Settlement and their rights

7    thereunder in simple and straightforward language, in compliance with due process and all other

8    applicable laws and rules. In addition, the Court should certify the proposed Settlement Class because

9    all requirements of Rule 23(a) and (b)(3) are met.

10        Plaintiffs respectfully request that the Court preliminarily approve the Settlement, preliminarily

11   certify the Settlement Class for settlement purposes, appoint Plaintiffs as Settlement Class

12   Representatives, appoint Class Counsel, appoint the Settlement Administrator, direct that Notice be

13   distributed to the Settlement Class, adopt the proposed schedule for Notice, Objections, Opt-Out,

14   and Claims deadlines, and set a Final Approval Hearing. Intero does not oppose this Motion.

15   **II.    Factual and Procedural Background**

16        To challenge Intero's practice of making unwanted telemarketing calls to his telephone lines,

17   on September 13, 2018, former named plaintiff Ronald Chinitz initiated a class action lawsuit alleging

18   Intero violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its

19   implementing regulations, 47 C.F.R. § 64.1200, as well as California's Unfair Competition Law, CAL.

20   BUS. & PROF. CODE § 17200 *et seq.* ("UCL"). Compl., ECF No. 1. Mr. Chinitz alleged he received, *inter*

21   *alia*, unwanted telephone solicitations on behalf of Intero to residential telephone lines he had

22   previously registered on the NDNCR and repeated unwanted telemarketing calls on his residential

23   telephone lines after he had asked Intero and/or its agents not to call him back.

24        Intero answered the Complaint on November 7, 2018, ECF No. 9, and the Parties commenced

25   discovery. Class Counsel served written discovery on Intero and third parties including Mojo Dialing

26   Solutions, LLC ("Mojo"), deposed numerous Intero real estate agents and an Intero corporate

27   representative pursuant to Rule 30(b)(6), and Intero served written discovery requests upon Mr.

28   Chinitz and deposed him. Soneji Decl. ¶¶ 4-6. On January 17, 2020, Mr. Chinitz moved to certify,

among other classes, a National DNC Class and an Internal DNC Class, and the Parties fully briefed the motion, with Mr. Chinitz narrowing the National DNC Class in his reply. On July 22, 2020, the Court certified the National DNC Class and the Internal DNC Class (the latter as to injunctive relief only). Order at 27, ECF No. 126. On September 23, 2020, the Court denied Intero's motion for reconsideration of the order certifying the classes, ECF No. 138, and on October 19, 2020, the Ninth Circuit denied Intero's Rule 23(f) petition, ECF No. 143. On August 21, 2020, Mr. Chinitz sought approval of a class notice plan for the National DNC Class, and the Parties fully briefed the motion. On December 1, 2020, the Court approved in part the proposed class notice plan. ECF No. 151.

On January 21, 2021, Plaintiffs moved for partial summary judgment and Intero moved for summary judgment, and the Parties fully briefed the motions. On March 23, 2021, Plaintiffs filed a motion to amend the scheduling order, amend the Complaint, and substitute the class representative ("Motion to Substitute") because Mr. Chinitz, unbeknownst to Class Counsel, had attempted to negotiate a settlement directly with Intero. *See* ECF No. 178-1. On April 12, 2021, the Court granted in part and denied in part Mr. Chinitz's motion for partial summary judgment, holding that Intero is "vicariously liable for calls made by its corporate sales associates and agents based on apparent authority." Order at 8, ECF No. 191. The Court also denied Intero's summary judgment motion, except as to the UCL claim, which it dismissed. *Id.* at 13-16.

On May 4, 2021, the Court granted the Motion to Substitute and on May 6, 2021, adopted Plaintiffs' proposed schedule for additional discovery and briefing, to conclude as of September 1, 2021, as a result of the substitution of Mr. Chinitz with current named Plaintiffs Ruby Mitchell and Edward J. Kelly. *See* ECF Nos. 210, 213. Also on May 6, 2021, Plaintiffs filed a First Amended Complaint adding allegations specific to Ms. Mitchell and Mr. Kelly. *See* ECF No. 211. Intero moved to dismiss, the Parties fully briefed the motion, and on June 16, 2021, the Court granted in part and denied in part the motion to dismiss, dismissing only the UCL claim. ECF No. 221. On June 30, 2021, Intero filed an amended answer. ECF No. 226.

Before and during the limited discovery period, the Parties conducted additional discovery, including written requests by both Parties and depositions by Intero of both Plaintiffs. Soneji Decl. ¶¶ 9-11. Plaintiffs also deposed a corporate representative of Intero pursuant to Rule 30(b)(6)

regarding the affirmative defenses Intero added to its amended answer. *Id.* ¶ 11. On July 26, 2021, Intero sought leave to file an additional motion for summary judgment, which the Court granted on July 30, 2021. ECF No. 236. On August 6, 2021, Intero moved for summary judgment as to Plaintiffs' individual claims, and the Parties fully briefed the motion by August 31, 2021. On August 11, 2021, Plaintiffs moved for appointment as the class representatives, and the Parties fully briefed the motion by September 1, 2021.

Meanwhile, on April 1, 2021, the Court referred the Parties to Chief United States Magistrate Judge Joseph C. Spero for settlement discussions. ECF No. 186. On April 13, 2021, as a result of Intero's professed limited ability to pay any judgment secured at trial, Chief Magistrate Judge Spero ordered Intero to produce to Plaintiffs, for settlement purposes only, audited profit and loss statements and balance sheets for the preceding three years, along with any applicable insurance policies. ECF Nos. 192 & 193. In advance of the settlement conference, Intero provided to Class Counsel an unaudited income statement, a balance sheet, and unfiled tax returns for the preceding three years, all of which provided information related to Intero's ability to pay for a class-wide settlement and all of which Intero has warranted are accurate. Soneji Decl. ¶ 15; § 9.2.2.[2]

On July 21, 2021, the Parties engaged in a Zoom settlement conference before Chief Magistrate Judge Spero, which Plaintiffs Ruby Mitchell and Edward J. Kelly and representatives of Intero, including CEO Brian Crane, attended. ECF No. 232. The case did not settle, and so on September 9, 2021, the Parties took part in another Zoom settlement conference before Chief Magistrate Judge Spero, which was attended by representatives of Intero, including CEO Brian Crane. ECF No. 261. While the case again did not settle, by the end of the day, the parties had made major progress toward agreement on the terms of the Settlement relief for the Settlement Class. Soneji Decl. ¶ 17. Chief Magistrate Judge Spero scheduled an additional 2.5 hour settlement conference on September 22, 2021, at which the Parties reached agreement in principle on the terms of a settlement of the entire case. *See* ECF Nos. 265 & 267. They then negotiated the precise terms of the Settlement Agreement, which was executed on October 27, 2021, and is now before the Court. Soneji Decl. ¶ 20.

---

[2] Unless otherwise specified, all section (§) references are to sections of the Settlement Agreement.

**III.    The Terms of the Settlement Agreement**

In exchange for a Release that is tailored to the claims and facts alleged and litigation classes certified in this case, Intero has agreed to pay $350 cash to each Settlement Class Member who submits an Approved Claim. §§ 2.34-37, 4.1.1, 10.1-7. The Settlement's key terms are discussed below.

**A.    The Proposed Settlement Class**

Under the Settlement Agreement, Plaintiffs seek, and Intero does not oppose, certification under Rule 23(a) and (b)(3) of the following Settlement Class for Settlement purposes only: "All persons in the United States who: (a) received two or more calls on their residential telephone number (b) that had a duration of more than zero seconds; (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker (as reflected in the records maintained by the California Department of Real Estate ('DRE')); (d) promoting the purchase of Intero's goods or services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the call records for which appear in one of 35 account files, identified in Appendix A to the Court's order granting class certification in the Litigation; (f) within a 12-month period; (g) whose telephone number(s) were on the NDNCR for at least 31 days prior to the calls; and (h) at any time since September 13, 2014." §§ 2.43, 2.44, 3.1, 14.2. The Parties agree the Court should appoint Ruby Mitchell and Edward J. Kelly as the Class Representatives. § 3.3.4(a). Intero has identified 37,962 telephone numbers that received a total of 171,584 calls or call attempts which comprise the potential Settlement Class. §§ 3.1, 4.1, 9.2.1.

**B.    The Benefits to the Settlement Class**

**1.    Monetary benefits**

As stated above, the Settlement Agreement provides for payment of a $350 Cash Award to every Settlement Class Member who submits a timely, valid Approved Claim. §§ 4.1.1, 7.3. With 37,962 potential telephone numbers in the Settlement Class (some of which may have had multiple users), the Settlement Class will receive up to approximately[3] $13,286,700.

---

[3] The total is approximate and may be understated because, in cases where multiple users of the same

1    The Settlement Website will allow Settlement Class Members to submit a Claim. And it will

2    include an option to input their telephone number to determine if they are, in fact, a member of the

3    Settlement Class. § 6.3. The Settlement Administrator (also referred to as the "Class Administrator")

4    shall employ reasonable audit procedures and may request additional information from Claimants as

5    appropriate for verification purposes. § 7.3.

6    In the event that more than one person submits a valid Claim with respect to the same

7    telephone number, the Class Administrator shall send a follow-up Notice to each such person

8    requesting the time period during which they were a user of the telephone number. § 7.3. For any

9    persons who provide the time period during which they were a user of the telephone number to the

10   Class Administrator, the Class Administrator will compare that information with the dates of the calls

11   to the number in the Mojo calling records attached as Appendix A to the Court's Order Granting

12   Class Certification, ECF No. 126. § 7.3. The Class Administrator will pay a Cash Award to each person

13   who provides a date range that includes the dates of the calls reflected in the Mojo calling records for

14   the telephone number. *Id.*

15   The Class Administrator will have 60 Days after the Final Settlement Date in which to process

16   the Claims and remit the appropriate Settlement Relief amounts to Claimants. § 7.5. Cash Awards may

17   be made by checks, each of which will state on its face that it will expire and become null and void

18   unless cashed within 180 Days after the date of issuance, or by other electronic payment options such

19   as electronic deposit, PayPal, or Venmo, subject to the capabilities of the Class Administrator. § 4.1.2.

20   Regarding Settlement Guidelines ¶ 1.g, while it is impossible to state a precise claims rate at

21   this juncture, the Settlement Administrator estimates a claims rate of around 10-20% for this

22   settlement. *See* Decl. Carla A. Peak in Support of Settlement Notice Program ("Peak Decl.") ¶ 19. This

23   estimate is consistent with the experience of Class Counsel, who also believe an estimated claims rate

24   of around 10-20% is likely here. Soneji Decl. ¶ 25. There is no reason to believe that the claims number

25   after trial would be any higher than the claims number that will result from this Settlement, particularly

26

27   telephone number received calls at issue and make claims, the Settlement Administrator may distribute

28   more than one $350 Cash Award per telephone number. § 7.3.

1    in light of the comprehensive Class Notice program provided for under the Settlement.

2              **2.      Injunctive relief**

3         In addition to monetary relief, the Settlement Agreement provides for important injunctive

4    relief. §§ 4.2-3. Intero has agreed to "(i) establish and implement written procedures to comply with

5    the national do-not-call rules and (ii) institute procedures and a written policy for maintaining a

6    company list of persons who request not to be called, which will cover do-not-call requests made to

7    Intero or to any representative or agent of Intero." § 4.2.1. Intero's policy for maintaining a do-not-

8    call list will be "available upon demand." § 4.2.1.2. Intero's policies also "will include a requirement

9    that any Intero representative or agent making a call for telemarketing purposes on behalf of Intero

10   must provide the called party with the name of the individual caller, the name of Intero or the Intero

11   representative or agent on whose behalf the call is being made, and a telephone number or address at

12   which Intero or the Intero representative or agent may be contacted." § 4.2.1.1.

13        Further, Intero "will conduct annual training for all Intero representatives and agents regarding

14   (i) Intero's procedures for compliance with the national do-not-call rules and (ii) the existence of, and

15   how to use, the company do-not-call list." § 4.2.2. And Intero will "maintain and record a list of

16   telephone numbers that Intero and its representatives and agents may not contact because they are on

17   the [NDNCR]," "use a process to prevent telephone solicitations to any telephone number on the

18   [NDNCR]," "employ a version of the [NDNCR] obtained from the administrator of the registry no

19   more than 31 days prior to the date any call is made," and "maintain records documenting the process

20   it has undertaken to comply with" these requirements. § 4.2.3.

21        Finally, Intero will maintain a record of all consumer requests not to receive calls from Intero

22   and its representatives. § 4.2.4. Specifically, "[i]f Intero or any Intero representative or agent receives

23   a request not to receive calls from Intero or any Intero representative or agent, Intero will record the

24   request and place the requester's name, if provided, and telephone number on the company do-not-

25   call list at the time the request is made." § 4.2.4.1. Intero will "honor all do-not-call requests it receives

26   within no more than 30 days from the date of the request," § 4.2.4.2, and "maintain and honor all do-

27   not-call requests it receives for no less than 5 years from the time the request was made," § 4.2.4.3.

28        The Settlement's injunctive relief provisions will remain in effect for at least two years after

1    the date of Final Approval. § 4.3.

2        **C.**    **Class Member Release**

3        In exchange for the benefits conferred by the Settlement, all Settlement Class Members will

4    be deemed to have released the Released Persons from all claims that were or could have been asserted

5    "that relate to or arise out of the calls that were placed through the dialing platform provided by Mojo

6    Dialing Solutions, LLC, the calling records for which appear in one of 35 account files, identified in

7    Appendix A to the Court's Order Granting Class Certification (Docket No. 126)." §§ 2.34-37, 10.1-7.

8    The release is appropriately tailored in that it is co-extensive with the legal and factual claims of the

9    Settlement Class in the Action, for Settlement Class Members who do not opt out.

10       **D.**    **Settlement Administrator and Administration Costs**

11       Subject to Court approval, the Settlement Administrator is KCC Class Action Services LLC

12   ("KCC"), a leading class action administration firm in the United States. §§ 2.41, 5.1; Soneji Decl. ¶

13   23; Peak Decl. ¶¶ 2-6. Before selecting KCC, based on overall cost and value to the Settlement Class,

14   Defendant engaged in a multi-week process of considering bids from five reputable administrators.

15   Soneji Decl. ¶ 22. Notably, each of these administrators provided similar competing bids, and their

16   notice plans overlapped substantially. *Id.* Defense Counsel selected, and Class Counsel agreed to, KCC

17   because they are confident in KCC's experience and expertise in administrating class action

18   settlements. *Id.* ¶ 23. Class Counsel is also confident that KCC's proposed notice and administration

19   plan fully complies with due process, Rule 23(e), relevant case law, and the Settlement Guidelines. *Id.*

20       All Notice and Administration Costs will be paid by Intero separate and apart from any

21   amounts paid to the Settlement Class. *See* §§ 2.30, 5.2, 6.3.2. Currently, the Class Administrator

22   estimates that the costs of notice will be approximately $168,360 to $176,811. Peak Decl. ¶¶ 21-22.

23   The Class Administrator will oversee the provision of Class Notice to, and processing Claims

24   submitted by, Settlement Class Members.

25       **E.**    **Proposed Notice Plan**

26       The Parties' proposed Notice Plan is designed to reach as many Settlement Class Members as

27   possible and is the best notice practicable under the circumstances of this case. Peak Decl. ¶ 24; Soneji

28   Decl. ¶ 25. KCC will distribute notice to Settlement Class Members, and will rely on the "TransUnion

1   Reverse Lookup Data," which is "the reverse lookup data that was returned by TransUnion LLC to

2   Epiq Class Action & Claims Solutions, Inc. ('Epiq') and used by Epiq to provide notice to the National

3   DNC Class on December 31, 2020, as discussed in the Declaration of Cameron R. Azari, Esq. on

4   Implementation of Notice Plan for Rule 23(b)(3) at Docket No. 172." §§ 2.48, 6.1-6.4.

5          The proposed Class Notice program will consist of four components; (1) direct double-sided

6   Postcard Notice, (2) direct Email Notice, (3) Settlement Website Notice, and (4) a toll-free settlement

7   hotline. § 2.28. In addition, the Settlement Administrator will provide indirect notice via internet

8   advertisements. Peak Decl. ¶¶ 12-14. Each is described below:

9          1.   Email Notice: KCC will send Email Notice of the Settlement to the email addresses

10  provided in the TransUnion Reverse Lookup Data no later than 30 days after the Court's Preliminary

11  Approval Order. § 6.1. For any Email Notices that are returned as undeliverable, the Class

12  Administrator will make two more attempts to deliver the Email Notice. § 6.2.2. If Email Notice

13  cannot be completed, the Class Administrator shall mail Postcard Notice. *Id.*; Peak Decl. ¶ 9.

14         2.   Postcard Notice: The Postcard Notice will be a double-sided postcard that includes a

15  tear-off Claim Form with prepaid postage. § 2.28.1. KCC will mail Postcard Notice to any physical

16  mailing addresses provided in the TransUnion Reverse Lookup Data belonging to names without an

17  associated email address, no later than 30 days after the Court's Preliminary Approval Order. § 6.2.

18  KCC will check the mailing list in the TransUnion Reverse Lookup Data against the National Change

19  of Address database ("NCOA") before mailing and may also run skip traces or reverse-lookups to

20  obtain better addresses for Settlement Class Members before mailing. *Id.*; Peak Decl. ¶¶ 9-11.

21         3.   Settlement Website Notice: No later than the Notice Deadline, KCC will establish a

22  Settlement Website, which shall contain the Website Notice, the Settlement Agreement, the Claim

23  Form, and other relevant case filings which may be downloaded. § 6.3. The Settlement Website will

24  allow Settlement Class Members to submit a Claim, including by inputting their telephone number to

25  confirm they are a member of the Settlement Class, whether or not they have a Unique Identification

26  Number (provided to them via Email or Postcard Notice). *Id.*; Peak Decl. ¶¶ 17-19. The Settlement

27  Website's URL will be www.InteroClassActionSettlement.com. § 6.3. The Settlement Website shall

28  remain open and accessible until at least 30 Days after the last day to cash any check mailed to

1   Settlement Class Members. § 6.3.1; Peak Decl. ¶ 15.

2        **4.**   <u>Toll-Free Settlement Hotline</u>: KCC will establish and maintain an automated toll-free

3   telephone line with interactive voice response (IVR) technology for persons in the Settlement Class

4   to call for information regarding the Settlement, which will include instructions for how Settlement

5   Class Members can submit a Claim over the phone. §§ 5.1, 6.4; Peak Decl. ¶ 16. The Parties will

6   mutually approve of scripts used by KCC in connection with the IVR process. § 6.4.

7        **5.**   <u>Indirect Notice</u>: In addition to the Direct Notice program, KCC will provide indirect

8   notice by placing advertisements on the internet, including Facebook, in order to achieve

9   approximately 25,000,000 impressions from adults in the United States. Peak Decl. ¶¶ 12-14.

10       Together, this Class Notice program is reasonably calculated to reach approximately 70-95%

11   of the Settlement Class through direct notice and will thus adequately apprise the Settlement Class

12   Members of this Settlement and their rights under it. Peak Decl. ¶¶ 23-24.

13       **F.**     **Opt-Outs and Objections**

14       The Class Notice will advise Settlement Class Members of their right to opt out of the

15   Settlement or to object to the Settlement, to Class Counsel's application for Attorneys' Fees and Costs,

16   and/or to the requested Service Awards to the Class Representatives. § 6, Exs. 2-4.

17       Settlement Class Members who wish to object must mail a written objection to the Court on

18   or before the Objection Deadline (60 days after the Notice Deadline), providing: (a) the name, address,

19   and telephone number of the Settlement Class Member objecting and, if different, the phone number

20   at which the Settlement Class Member was called by Intero during the Class Period; (b) if represented

21   by counsel, the name, address, and phone number of the counsel; (c) the basis for the objection; and

22   (d) a statement of whether the Settlement Class Member objecting intends to appear at the Final

23   Approval Hearing, either with or without counsel. §§ 2.16.3, 12.2.1. Settlement Class Members who

24   fail to make timely objections in the manner specified shall be foreclosed from making any objections

25   (whether by appeal or otherwise) to the Settlement. § 12.2.2.

26       Settlement Class Members will be able to exclude themselves from the Settlement by

27   submitting to the Class Administrator a written Request for Exclusion on or before the Opt-Out

28   Deadline (60 days after the Notice Deadline), which must: (a) identify the name and address of the

1   potential Settlement Class Member requesting exclusion; (b) provide the phone number at which that

2   potential Settlement Class Member was called by Intero during the Class Period; (c) be personally

3   signed by the potential Settlement Class Member requesting exclusion; and (d) contain a statement

4   that reasonably indicates a desire to be excluded from the Settlement. §§ 2.16.4, 11.1.

5        **G.**       **Attorneys' Fees and Costs and Service Awards**

6        The Settlement Agreement contemplates Class Counsel petitioning the Court for Attorneys'

7   Fees and Costs not to exceed $2,775,000. §§ 2.4, 15.1. Intero will pay the amount of Attorneys' Fees

8   and Costs awarded by the Court within 14 days of Final Approval, unless otherwise agreed. § 15.1.

9   Intero has the right to object to the petition for Attorneys' Fees and Costs or any part thereof, and

10   any portion of the requested Attorneys' Fees and Costs that the Court does not approve will be

11   distributed *pro rata* to Claimants, not returned to Intero. *Id.* Attorneys' Fees and Costs will be awarded

12   in addition to, and will not reduce, the amounts paid to the Settlement Class. *Id.*

13        Class Counsel may also petition the Court for Service Awards of up to $5,000 for each Class

14   Representative to compensate them for their involvement in the Action. § 15.4. Intero takes no

15   position regarding the appropriateness of such an award. *Id.* If the Court approves a Service Award,

16   payment shall be made within 21 days of Final Approval. *Id.* Neither Final Approval nor Intero's

17   payment of $350 Cash Awards for Approved Claims are contingent upon Court approval of the full

18   amount of the requested Attorneys' Fees and Costs or Service Awards. §§ 15.5-6.

19   **IV.**       **Legal Standard for Preliminary Approval**

20        The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

21   complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir.

22   2020); *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *8 (N.D.

23   Cal. Mar. 21, 2019). Whether to approve a class action settlement is committed to the sound discretion

24   of the trial judge. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

25        Rule 23 was amended in 2018 to codify the "preliminary approval" process that is customary

26   in class settlements. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Under

27   amended Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members

28   who would be bound by the proposal if giving notice is justified by the parties' showing that the court

1    will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes
2    of judgment on the proposal." FED. R. CIV. P. 23(e)(1). Amended Rule 23(e)(2) allows the district
3    court to approve a proposal "only after a hearing and only on finding that it is fair, reasonable, and
4    adequate after considering whether: (A) the class representatives and class counsel have adequately
5    represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the
6    class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the
7    effectiveness of any proposed method of distributing relief to the class, including the method of
8    processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including
9    timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the
10   proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2). "[T]he
11   Advisory Committee states that '[c]ourts have generated lists of factors to shed light' on whether a
12   proposed class-action settlement is 'fair, reasonable, and adequate.'" *Wong v. Arlo Techs., Inc.*, No. 5:19-
13   cv-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). The Advisory Committee explained
14   that the enumerated factors added to Rule 23(e)(2) "are not intended to 'displace' any factors currently
15   used by the courts but instead aim to focus . . . on 'the core concerns of procedure and substance that
16   should guide the decision whether to approve the proposal.'" *Id.*

17       Courts in the Ninth Circuit have traditionally used a multi-factor balancing test to analyze
18   whether a given settlement is fair, adequate, and reasonable. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*,
19   361 F.3d 566, 575 (9th Cir. 2004).  That test includes the following factors: "(1) the strength of the
20   plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk
21   of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the
22   extent of discovery completed and the stage of the proceedings; (6) the experience and views of
23   counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to
24   the proposed settlement." *Id.*; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "This
25   list is not exclusive and different factors may predominate in different factual contexts." *Perks v.*
26   *Activehours, Inc.*, No. 5:19-cv-05543-BLF, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021).

27

28

## V.     Argument

### A.     The Settlement Agreement Warrants Preliminary Approval.

The Settlement, which is the result of good-faith, informed, arm's-length negotiation between competent counsel with the aid of an experienced settlement conference judge, satisfies each factor for preliminary approval under Rule 23(e), Ninth Circuit case law, and the Settlement Guidelines.

#### 1.     Rule 23(e)(2)(A): The Class Representatives and Class Counsel have adequately represented the proposed Settlement Class.

The Class Representatives and Class Counsel have adequately represented the Settlement Class. Both Plaintiffs have "actively participated in the prosecution of this case," *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021), and "[t]here are no indications that [Plaintiffs have] failed to adequately represent the interests of the class," *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021). Plaintiffs assisted Class Counsel by reviewing the pleadings, responding to interrogatories, searching for and producing documents, sitting for their depositions, participating in or being available during settlement conferences, and reviewing the Settlement Agreement. The Class Representatives have no conflicts with the other Settlement Class Members and have adequately represented the Settlement Class in the litigation. Soneji Decl. ¶¶ 26-27.

Furthermore, in granting class certification, the Court concluded Class Counsel are adequate. Order at 17, ECF No. 126 ("The Court finds that . . . [plaintiff's] experienced class counsel have no conflict of interest with other class members and there is no basis to conclude that counsel will not vigorously represent the class"). After obtaining class certification, Class Counsel have zealously represented, and will continue to zealously represent, the Settlement Class. *Perks*, 2021 WL 1146038, at *5 ("Initially, when originally certifying the Settlement Class, the Court found that . . . Class Counsel will adequately represent the class, have done so, and are adequate. No contrary evidence has emerged." (citation omitted)); Soneji Decl. ¶¶ 28-29, 32.

#### 2.     Rule 23(e)(2)(B): The Settlement was negotiated at arm's length.

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in analyzing whether to approve a class action settlement. *In re Hyundai & Kia*

1    *Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). The Court should hold the Settlement was

2    negotiated at arm's length for several reasons.

3         **First**, the Parties conducted extensive discovery throughout the course of two discovery

4    periods, and they have vigorously litigated this case to the threshold of trial. Soneji Decl. ¶¶ 6-11.

5    Thus, Plaintiffs and Class Counsel were well apprised of the salient legal and factual issues before

6    reaching the decision to settle the Action. *Id.* ¶ 11; *see also Louie v. Kaiser Found. Health Plan, Inc.*, No.

7    08-cv-00795-IEG-RBB, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive

8    investigation, discovery, and research weighs in favor of preliminary settlement approval.").

9         **Second**, the close involvement of Chief Magistrate Judge Spero, a highly experienced

10   settlement conference judge, throughout the settlement negotiation process underscores the

11   procedural fairness of the Settlement. "The assistance of an experienced mediator in the settlement

12   process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-

13   05428-MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *see also Avina v. Marriott Vacations*

14   *Worldwide Corp.*, No. 18-cv-00685-JVS-JPR, 2019 WL 8163642, at *6 (C.D. Cal. Oct. 25, 2019) ("[T]he

15   involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may

16   bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the

17   class interests."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (voluntary

18   mediation before retired judge in which parties "reached an agreement-in-principle to settle the claims

19   in the litigation" is "highly indicative of fairness"). Before agreeing to terms of the Settlement, the

20   Parties engaged in three intensive settlement conferences with Chief Magistrate Judge Spero. Soneji

21   Decl. ¶¶ 13-20.

22        **Third**, the Parties negotiated a cap on Attorneys' Fees and Costs and Service Awards only

23   after they had agreed on the relief for the Settlement Class. Soneji Decl. ¶ 19. Moreover, the Settlement

24   is not contingent on the award of Attorneys' Fees and Costs or the Service Awards, §§ 15.5-6, which

25   is indicative of a fair and arm's-length settlement process, *see* Fed. R. Civ. P. 23 advisory committee's

26   note; *see also Sadowska v. Volkswagen Grp. of Am., Inc.*, No. 11-cv-00665-BRO-AGR, 2013 WL 9600948,

27   at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreed fees and costs reasonable

28   where "[o]nly after agreeing upon proposed relief for the Class Members, did the Parties discuss

1  attorneys' fees, expenses, and costs").

2  **Finally**, the Settlement includes none of the indicia of collusion identified by the Ninth

3  Circuit, such as whether: (i) plaintiffs' counsel receive a disproportionate distribution of the settlement,

4  (ii) the settlement agreement includes a "clear sailing" provision, or (iii) the agreement contains a

5  reverter clause. *Briseno v. Henderson*, 998 F.3d 1014, 1025-28 (9th Cir. 2021); *In re Bluetooth Headset Prod.*

6  *Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). First, the Settlement Class will receive up to

7  approximately $13,286,700, as well as injunctive relief. *See supra* Part III.B.1. By comparison, Class

8  Counsel may seek Attorneys' Fees and Costs up to $2,775,000. § 15.1. This amount is not

9  disproportionate to the potential Settlement Class recovery. *See Norton v. LVNV Funding, LLC*, No.

10  18-cv-05051-DMR, 2021 WL 3129568, at *9 (N.D. Cal. July 23, 2021) (holding, with respect to claims-

11  made settlement, that counsel will not receive a disproportionate share of the settlement where class

12  would "receive up to $653,143.19, plus interest, in reimbursements and $50,000 more in statutory

13  remedies," defendants relinquished claims to $169,904 in court costs, and class counsel requested

14  $241,426.58 in attorneys' fees). Second, there is no clear sailing agreement; instead, Intero has reserved

15  the right to object to the petition for Attorneys' Fees and Costs or any part thereof, § 15.1, which

16  "does not indicate collusion or inappropriate self-interest." *Contreras v. Armstrong Flooring, Inc.*, No. 20-

17  cv-03087-PSG-SK, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021). And third, unlike in *Briseno*, the

18  Settlement Agreement contains no "'kicker' or 'reverter' clause in which [Intero], not the class

19  members, receives the remaining funds if the court reduces the agreed-upon attorneys' fees." *Briseno*,

20  998 F.3d at 1027. To the contrary, any Attorneys' Fees and Costs that are "requested but not approved

21  by the Court will inure to the benefit of the Settlement Class to be distributed pro rata to Claimants,"

22  and "such amounts will not be returned to Intero." § 15.1. Further, if after distributing the Cash

23  Awards any cash remains from uncashed checks, the Parties will jointly select a *cy pres* recipient, and

24  Plaintiffs will move the Court for the Court's approval to have such residual funds paid to the *cy pres*

25  recipient. § 4.1.3.3. The absence of any indicia of collusion further establishes that the Settlement is

26  not collusive. *Contreras*, 2021 WL 4352299, at *8.

27

28

1    **3.      Rule 23(e)(2)(C): The relief for the Settlement Class is substantial.**

2              **a.      Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal**

3    "In assessing 'the costs, risks, and delay of trial and appeal'" under Rule 23(e)(2)(C)(i), "courts

4    in the Ninth Circuit evaluate [three of the *Churchill* factors:] 'the strength of the plaintiffs' case; the

5    risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class

6    action status throughout the trial.'" *Wong*, 2021 WL 1531171, at *8.

7              ***First***, the Settlement is fair, reasonable, and adequate in light of the strengths and risks of

8    Plaintiffs' case. While confident in the strength of their claims, Plaintiffs and Class Counsel also

9    recognize the risks inherent in litigation of this magnitude. Soneji Decl. ¶¶ 36-38. Should the case

10   proceed in litigation, Plaintiffs could see their claims dismissed or narrowed by motions *in limine*, at

11   trial, or on a subsequent appeal. *Id*. The jury could decline to credit Plaintiffs' evidence, including their

12   expert evidence, and a failure of proof on any element—many of which have been hotly contested

13   throughout the litigation—could doom the claims in whole or in part. *Id*.

14            ***Second***, the risks, expense, complexity, and likely duration of further litigation also support

15   preliminary approval of the Settlement. Soneji Decl. ¶¶ 36-38. In evaluating these factors, the Court

16   should "consider the vagaries of litigation and compare the significance of immediate recovery by way

17   of the compromise to the mere possibility of relief in the future, after protracted and expensive

18   litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "In

19   this respect, '[i]t has been held proper to take the bird in hand instead of a prospective flock in the

20   bush.'" *Id*.

21            If the Court does not approve the Settlement, the Parties would incur the expense and burden

22   of continuing to prepare for trial, finalizing all pretrial filings, and conducting the trial. Soneji Decl. ¶

23   38. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the

24   litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14-cv-01372-DMS-DHB, 2016 WL

25   4427439, at *5 (S.D. Cal. Feb. 29, 2016). Even if Plaintiffs were to succeed on the merits at trial, any

26   recovery would likely be delayed by appeals and the litigation could take years to resolve. Soneji Decl.

27   ¶ 38. Yet there is no guarantee that lengthy pretrial preparation and trial would lead to greater benefits

28   for the Settlement Class Members. *Id.* ¶ 36. Instead, there are multiple points at which the Class's

claims could be narrowed or dismissed, and the jury might ultimately award Class members less than $350 for Intero's alleged violations of the TCPA. *Id.* ¶¶ 36-37. Moreover, Intero's stated inability to pay may impact Class members' recovery after trial. *See* Soneji Decl. ¶ 15; § 9.2.2.

While continued litigation poses serious risks, the Settlement provides immediate substantial benefits to the Settlement Class Members in the form of a $350 Cash Award for each Approved Claim. §§ 4.1.1, 7.3. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L-WMC, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial." *Chester v. TJX Companies, Inc.*, No. 5:15-cv-01437-ODW-DTB, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). "The settlement avoids uncertainty for all parties involved." *Id.*

### b.   Rule 23(e)(2)(C)(ii): The proposed method of distributing relief and of processing Claims is and will be effective.

The proposed method of distributing relief is effective. Settlement Class Members must only submit a Claim Form with basic questions about contact information and the residential telephone number(s) they used during the class period. Stlmt Agmt Ex. 1. All payments to Settlement Class Members will be in the form of a check or electronic payment, whichever option the Settlement Class Member chooses. § 4.1.2; *see also* Settlement Guidelines ¶ 3 (Class Counsel should consider "distributions to class members via direct deposit"). This procedure is Claimant-friendly, efficient, cost-effective, proportional, and reasonable.

### c.   Rule 23(e)(2)(C)(iii): The terms and timing of the proposed award of Attorneys' Fees and Costs are fair and reasonable.

The terms and timing of the proposed award of Attorneys' Fees and Costs are also fair and reasonable. Class Counsel will seek approval of Attorneys' Fees and Costs in an amount not to exceed $2,775,000, and Intero has agreed to pay the amount the Court approves separate and apart from the money made available to the Settlement Class and for payment of Claims and Notice and Administrative Costs. §§ 5.2, 6.3.2, 15.1. Importantly, payment of the $350 Cash Awards to the Settlement Class Members is not contingent upon approval of the requested Attorneys' Fees and Costs, §§ 15.1, 15.5-6, and Intero retains the right to object to the petition for Attorneys' Fees and

1    Costs or any part thereof, § 15.1. Any portion of the requested Attorneys' Fees and Costs that the

2    Court does not approve will be distributed *pro rata* to Claimants and will under no circumstances be

3    returned to Intero. § 15.1.

4         Under Ninth Circuit law, in cases such as this where monetary relief is made on a claims-made

5    basis (no common fund) and there is a fee-shifting statute (here, California Code of Civil Procedure

6    section 1021.5), it is appropriate for the court to analyze an attorneys' fee request and issue an award

7    based on the lodestar method. *Hanlon*, 150 F.3d at 1029 (affirming choice of lodestar method where

8    calculation of value of common fund was uncertain); *Grays Harbor Adventist Christian Sch. v. Carrier*

9    *Corp.*, No. 05-cv-05437-RBL, 2008 WL 1901988, at *1 (W.D. Wash. Apr. 24, 2008) ("Where, as here,

10   Settlement relief will be paid on a claims made basis with no cap to the relief available, consideration

11   of attorneys' fees lends itself more readily to the lodestar method."). The $2,775,000 in Attorneys'

12   Fees and Costs is fair and reasonable based on Class Counsel's litigation costs (including expert costs

13   and the costs of the litigation class notice) and current lodestar, as well as under any other method of

14   review, which may be discussed in a fee application should the Court grant this motion.

15        Class Counsel estimate their current litigation costs are approximately $341,285.81, including

16   expert fees of $146,888.02. Soneji Decl. ¶ 42. After subtracting these litigation costs (which will

17   continue to increase through the settlement approval process) from the $2,775,000 figure, Class

18   Counsel will be seeking an award of attorneys' fees of approximately $2,433,714.19. *Id.* ¶ 43 To date,

19   and not counting future time and effort on settlement administration and approval, Class Counsel's

20   total current lodestar is $3,735,914.60 based on the 5,083.2 total hours expended to date at each firm's

21   customary hourly rates. *Id.* ¶ 44. Thus, the approximately $2,433,714.19 in attorneys' fees that Class

22   Counsel intends to seek reflects a modest multiplier of approximately 0.65 or less on their current

23   lodestar. Soneji Decl. ¶ 45.

24        The amount of the Attorneys' Fees and Costs also passes muster under a percentage cross-

25   check against the "constructive fund" of relief made available to the Settlement Class. *See Broomfield v.*

26   *Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *16 (N.D. Cal. Feb. 5, 2020). Here,

27   the "constructive fund" includes the $13,286,700 in total Cash Awards available to the Settlement

28   Class, the full amount of Notice and Administrative Costs, which KCC estimates will be between

$168,360 and $176,811, and the full amount of the Attorneys' Fees and Costs, $2,775,000, for a total of at least $16,230,060. Thus, the maximum available Attorneys' Fees and Costs are only 17.1% of the total constructive value of the Settlement, which is under the 25% benchmark and well within the range of reasonableness. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

Class Counsel will also seek reasonable and fair Service Awards of no more than $5,000 for both Ruby Mitchell and Edward J. Kelly. This modest payment is for the services undertaken by Plaintiffs, as well as the substantial benefit conferred on the Settlement Class as a result of their efforts, and is therefore reasonable and fair. Soneji Decl. ¶¶ 26-27; *see also Wong*, 2021 WL 1531171, at *12 ("Service awards as high as $5,000 are presumptively reasonable in this judicial district."); *accord Perks*, 2021 WL 1146038, at *8; *Broomfield*, 2020 WL 1972505, at *17.

At least 35 days prior to the deadline by which Settlement Class Members must submit claims, requests for exclusions, or objections, Plaintiffs will file a fee application that will include detailed briefing regarding the facts and law in support of the appropriateness of their request for Attorneys' Fees and Costs and Service Awards. §§ 2.16.2-5. This will afford Settlement Class Members a full opportunity to consider this issue before deciding how to proceed under the Settlement. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010); *see also* Settlement Guidelines ¶ 9.

### d.     Rule 23(e)(2)(C)(iv): There are no supplemental agreements.

The Parties have no agreements other than the Settlement Agreement. Soneji Decl. ¶ 21.

### 4.     Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably relative to each other.

The Court must also consider whether "the [settlement] proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). Here, the allocation of the Settlement is fair and reasonable, as it provides equal relief to all Settlement Class Members. Each Settlement Class Member may make a claim for $350, § 4.1.1, to be reviewed and reasonably audited by the Class Administrator for timeliness and validity, § 7.3. This allocation is consistent with the distribution of funds in other settlements of TCPA cases and treats Settlement Class Members equitably relative to each other. *See, e.g., Johnson v. Moss Bros. Auto Grp., Inc.*, No. 19-cv-02456-FMO-SP, 2021 WL 4556052, at *8 (C.D. Cal. June 25, 2021) (preliminarily approving TCPA class action settlement in which each

1    class member would receive approximately $46, less fees and costs, regardless of the number of calls they

2    they received); *Odom v. ECA Mktg., Inc.*, No. 20-cv-00851-JGB-SHK, 2021 WL 4803488, at *3 (C.D.

3    Cal. May 27, 2021) (preliminarily approving TCPA class action settlement in which each class member

4    would receive approximately $35, regardless of the number of calls they received). The injunctive relief

5    also equally benefits each Settlement Class Member. *See* §§ 4.2-3.

       **5.    Additional Ninth Circuit factors favor approval or are neutral.**

              **a.    The amount offered in Settlement**

8            While it is not among the Rule 23(e) factors, the "relief that the settlement is expected to

9    provide to class members is a central concern," which the Court should consider. *Wong*, 2021 WL

10   1531171, at *9; *see also Churchill Vill., L.L.C.*, 361 F.3d at 575. Here, the $350 recovery for each

11   Settlement Class Member who submits an Approved Claim, with no cap on the amount Intero may

12   have to pay, is an excellent recovery for the Settlement Class, representing a total value of

13   approximately $13,286,700. §§ 4.1, 4.1.1, 7.3; *see supra* Part III.B.1.

14           "Critical to the determination of adequacy is the ratio of 'plaintiffs' expected recovery balanced

15   against the value of the settlement offer.'" *Wong*, 2021 WL 1531171, at *9. However, "[i]t is well-

16   settled law that a cash settlement amounting to only a fraction of the potential recovery will not per

17   se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San

18   Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Here, the Settlement Class received a total of 171,584 calls

19   or call attempts, § 4.1, and, consequently, could have recovered up to $85,792,000 at trial at the

20   statutory rate of up to $500 per call, 47 U.S.C. § 227(c)(5)(B), and up to $257,376,000 if the Court

21   were to find the violations were knowing or willful. While the $13,286,700 total value of the class

22   recovery represents only 15.49% of the total potential recovery at trial, or only 5.16% if the trial

23   recovery were trebled, that percentage discounts the real possibility that the jury could award well less

24   than $500 per call. Moreover, courts have found similar recoveries to be fair and reasonable. *Linney v.

25   Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may

26   only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed

27   settlement is grossly inadequate and should be disapproved."); *Wong*, 2021 WL 1531171, at *9

28   (settlement amount of 2.35% of potential trial damages was adequate); *In re Uber FCRA Litig.*, No. 14-

1  cv-05200-EMC, 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (settlement of "7.5% or less" of

2  total possible liability was adequate).

3        Further, evidence Intero produced in settlement negotiations, which it has warranted is "true

4  and accurate," § 9.2.2, shows it cannot afford to pay a settlement of $85,792,000 or even 25% thereof,

5  Soneji Decl. ¶ 15. That Plaintiffs achieved a substantial monetary recovery for the Settlement Class

6  despite limitations on Intero's ability to pay further supports the fairness, reasonableness, and

7  adequacy of the Settlement. *See Perks*, 2021 WL 1146038, at *5 ("In addition, the relief obtained

8  compares favorably given the potential issues of the ability of Defendant to pay a larger amount.").

9        **b.**    **The experience and views of Class Counsel**

10        Class Counsel's view is that the Settlement is an outstanding recovery for the Settlement Class,

11  and they fully endorse the Settlement as fair, reasonable, and adequate. Soneji Decl. ¶¶ 35-39. Class

12  Counsel are experienced in class action litigation, including TCPA cases, and they have a nuanced

13  understanding of the legal and factual issues involved in this case. *Id.* ¶¶ 26-34. "'Great weight' is

14  accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

15  underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Thus, this *Churchill* factor

16  supports preliminary approval. *Wong*, 2021 WL 1531171, at *9; *Quiruz v. Specialty Commodities, Inc.*, No.

17  17-cv-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020).

18        **c.**    **Government participation and Settlement Class reaction**

19        The government participation and Settlement Class reaction factors are neutral here.

20      **B.**    **The Court Should Certify the Settlement Class for Settlement Purposes.**

21        **1.**    **The narrowed scope of the Settlement Class and claims to be released**

22        ***First***, while the Settlement Class is narrower than the certified National DNC Class, the

23  differences are appropriate. *See* Settlement Guidelines ¶ 1.b. Setting aside non-substantive differences

24  in wording, the proposed Settlement Class is narrower than the National DNC Class in two respects:

25  (i) calls that have a duration of zero seconds have been excluded from the Settlement Class, and (ii)

26  the Settlement Class covers calls by real estate salespersons for whom Intero or Intero Referral

27  Services was the salesperson's responsible broker at the time of the calls, while the National DNC

28  Class covers calls "made on behalf of Intero by, or on behalf of, one of Intero's California sales

associates." *Compare* § 3.1, *with* Order at 27, ECF No. 126. The Parties agreed to this narrowing of the National DNC Class, which resulted in the elimination of approximately 30,000 phone numbers from the National DNC Class. § 3.1; Soneji Decl. ¶¶ 40-41. ECF No. 262. Under the Settlement Agreement, the Parties have agreed file a Stipulation and Proposed Order providing for these modifications of the National DNC Class definition and providing for notice to be sent to those persons associated with the eliminated telephone numbers. § 3.1.

The narrowing of the class definition is appropriate, as Rule 23(c)(1)(C) authorizes the Court to amend the class definition before a decision on the merits; the Parties stipulated to narrow the class; and the Parties will provide notice to those persons whose claims are no longer part of the class. *Cf. Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-cv-00496-ACK-KJM, 2021 WL 3611027, at *8 n.9 (D. Haw. Aug. 13, 2021) (granting preliminary approval where settlement class definition was narrower than that in the pleading); *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 526 (S.D. Cal. 2020).

**Second**, the claims to be released are narrower than the litigation classes' claims only in that Plaintiffs do not seek settlement certification of the Internal DNC Class, precisely because it is a Rule 23(b)(2) class that does not seek monetary relief, and the Settlement provides for injunctive relief that addresses the claims of the Internal DNC Class. §§ 4.2-3. The scope of the Settlement Class release is appropriate because it covers only claims that relate to or arise out of the calls that the Settlement Class Members challenged in the litigation. § 10.1; *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (release of class claims appropriate where claims are "based on the identical factual predicate as that underlying the claims in the settled class action").

## 2. The Settlement Class satisfies Federal Rule of Civil Procedure 23(a).

**Numerosity**. The Settlement Class includes at least 37,962 members. §§ 3.1, 7.3, 9.2.1. Thus, joinder is a logistical impossibility. *See Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) ("Generally, 40 or more members will satisfy the numerosity requirement.").

**Commonality**. In accordance with the Court's order granting class certification, the remaining common questions applicable to the Settlement Class are "whether Intero's California sales associates, or dialing services they engaged, called numbers on the NDNCR" and "whether the telemarketing calls by Intero's California sales associates were intended to encourage the purchase of Intero's

1    services." Order at 14, ECF No. 126.

2        **Typicality**. "Under the 'permissive [typicality] standards' of Rule 23(a)(3), the claims need

3    only be 'reasonably co-extensive with those of absent class members,' rather than 'substantially

4    identical.'" *True Health Chiropractic Inc. v. McKesson Corp.*, 332 F.R.D. 589, 606 (N.D. Cal. 2019) (quoting

5    *Hanlon*, 150 F.3d at 1020). Here, the Court already found typicality "where Plaintiff [Chinitz] and class

6    members all received calls from Intero to their residential phone numbers after they placed their

7    numbers on the NDNCR." Order at 16, ECF No. 126. Plaintiffs Mitchell and Kelly are no differently

8    situated than Mr. Chinitz. *See generally* Mot. Appointment, ECF No. 239; FAC ¶¶ 11-28.

9        **Adequacy**. Finally, Plaintiffs and Class Counsel are adequate. *Ellis v. Costco Wholesale Corp.*, 657

10   F.3d 970, 985 (9th Cir. 2011). As discussed above, Plaintiffs and Class Counsel have no conflicts of

11   interest with the Settlement Class Members and have vigorously represented, and will continue to

12   vigorously represent, the Settlement Class. *See supra* Part V.A.1.

13       3.        **The Settlement Class satisfies Federal Rule of Civil Procedure 23(b)(3).**

14       This Court already found that the National DNC Class satisfied the predominance and

15   superiority requirements of Rule 23(b)(3). *See* Order at 20-26, ECF No. 126. It should do so again for

16   the Settlement Class. Common questions predominate over any questions affecting only individual

17   members, including whether Intero's California sales associates violated the TCPA by using the Mojo

18   platform to call numbers on the NDNCR and whether these calls were intended to encourage the

19   purchase of Intero's services. These questions can be resolved using the same evidence for all

20   Settlement Class Members and are exactly the kind of predominant common issues that make

21   certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). Accordingly,

22   predominance is met. *Id.*; Order at 20-25, ECF No. 126.

23       Superiority is also met. Here, "classwide litigation of common issues will reduce litigation costs

24   and promote greater efficiency," and "no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97

25   F.3d 1227, 1234-35 (9th Cir. 1996). There are tens of thousands of class members with small individual

26   claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Loc. Joint*

27   *Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

28

**C.      The Court Should Approve the Proposed Class Notice Program.**

The Parties' proposed notice plan conforms with the procedural and substantive requirements of Rule 23, which requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* FED. R. CIV. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

The Class Notice is comprised of direct notice in the form of Email Notice and Postcard Notice as well as a Settlement Website, where the Website (Long-Form) Notice and important case documents will be available. A toll-free telephone number will be available to Settlement Class Members with questions. And additional indirect notice will be provided via internet advertisements. The operative notice plan is the best notice practicable and is reasonably designed to reach the Settlement Class Members. *See* Peak Decl. ¶ 24; Soneji Decl. ¶ 25. The Ninth Circuit has approved similar class notice. *See, e.g.*, *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (finding notice satisfied due process and Rule 23(e) where an initial email notice was supplemented by a postcard notice to those whose emails bounced back). Here, KCC will rely on the contact information compiled by Epiq during original Class Notice. When combined with KCC's process to confirm addresses through the National Change of Address database and subsequent skip tracing for any notice returned as undeliverable, nearly every class member should receive actual notice.

Moreover, the Notice contains all the critical information required to apprise Settlement Class Members of their rights under the Settlement and is written in simple, straightforward language in full compliance with Settlement Guidelines ¶ 3. The Email and Postcard Notice both detail how Settlement Class Members may make a Claim, opt out of the Settlement, or object to the Settlement, and both include the Settlement Class Member's Unique Identification Number, the Toll-Free Settlement Hotline, and a link to the Settlement Website. §§ 6.1, 6.2.1 & Exs. 2-3. The Website Notice is the long form notice, § 2.28.3, and provides detailed information, including: (1) basic background information about the Action; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Settlement Class Members can obtain benefits; (4) an explanation of how Settlement Class Members can opt out of or object to the Settlement; (5) an explanation that any

1   claims against Intero that could have been litigated in the Action will be released if the Settlement

2   Class Member does not opt out; (6) information regarding Class Counsel's forthcoming request for

3   Attorneys' Fees and Costs and Service Awards; (7) instructions to access the case docket via PACER;

4   (8) the Final Approval Hearing date (subject to change); (9) an explanation of eligibility for appearing

5   at the Final Approval Hearing; and (10) Class Counsel's contact information. Stlmt Agmt Ex. 4.

6         This approach to notice is more than adequate. *See, e.g.*, *Knutson v. Schwan's Home Serv., Inc.*, No.

7   3:12-cv-00964-GPC, 2014 WL 3519064, at *5 (S.D. Cal. July 14, 2014) (approving mailed notice where

8   notice would include the settlement website with full settlement details and the claim administrator's

9   toll free number); *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 10-cv-01777-AJB-NLS, 2012

10   WL 3809123, at *2 (S.D. Cal. Sept. 4, 2012) (same); *see also Rosenburg v. I.B.M.*, No. 06-cv-00430-PJH,

11   2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007). This information undoubtedly provides "sufficient

12   detail" to allow class members with adverse viewpoints to conduct further investigation and "come

13   forward to be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Accordingly, this notice

14   program will fully apprise Settlement Class Members of their rights under Rule 23(e) and should be

15   approved.

16   **VI.    Proposed schedule for final approval proceedings**

17         Finally, Plaintiffs ask the Court to schedule the time, date, and place of the Final Approval

18   Hearing to decide whether the Settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

19   Plaintiffs also request that the Court set other relevant deadlines as set forth in paragraph 46 of the

20   Soneji Declaration.

21   **VII.    Conclusion**

22         For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve

23   the Settlement, preliminary certify the Settlement Class, enter the Preliminary Approval Order, appoint

24   them as Class Representatives, appoint Reese LLP, Tycko & Zavareei LLP, and Bailey & Glasser LLP

25   as Class Counsel, appoint KCC as the Settlement Administrator, direct that Notice be distributed to

26   the Settlement Class, and schedule a Final Approval Hearing.

27

28

Date: October 29, 2021

**TYCKO & ZAVAREEI LLP**

By: */s/ Sabita J. Soneji*
Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
Mark Clifford (*pro hac vice*)
*mclifford@tzlegal.com*
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Charles D. Moore (*pro hac vice*)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

*Counsel for Plaintiffs and the Classes*