1  Sabita J. Soneji (State Bar No. 224262)
   *ssoneji@tzlegal.com*
2  **TYCKO & ZAVAREEI LLP**
   1970 Broadway, Suite 1070
3  Oakland, California 94612
   Telephone: (510) 254-6808
4  Facsimile: (202) 973-0950

5

   *Counsel for Plaintiffs Ruby Mitchell and Edward J. Kelly and the Classes*
6

7              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
8                    **SAN JOSE DIVISION**

9  RUBY MITCHELL and EDWARD J.            Case No. 5:18-cv-05623-BLF
   KELLY, *individually, and on behalf of a class of*
10 *similarly situated persons,*              **DECLARATION OF SABITA J. SONEJI IN**
                                          **SUPPORT OF PLAINTIFFS' MOTION FOR**
11                                         **PRELIMINARY APPROVAL OF CLASS**
                                          **ACTION SETTLEMENT AND FOR**
12                        Plaintiff,       **CERTIFICATION OF SETTLEMENT**
          vs.                             **CLASS**
13
   INTERO REAL ESTATE SERVICES,
14
                        Defendant.        Date: Request Submitted
15                                         Time: Request Submitted
                                          Place: Courtroom 3, 5th Floor
16                                         Judge: Honorable Beth Labson Freeman
17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Civil Local Rule 7-5, I, Sabita J. Soneji, declare as follows:

1.      I am a partner at the law firm of Tycko & Zavareei LLP, which is co-counsel for Ruby Mitchell and Edward J. Kelly, Plaintiffs in the above-captioned action ("Plaintiffs").

2.      I am a member in good standing of the bars of the State of California and of Washington, DC, as well admitted to practice in the United States District Courts for the Northern District of California, Central District of California, and District of Columbia.

3.      The facts set forth in this declaration are based in part upon my personal knowledge and in part upon the representations of my co-counsel at Tycko & Zavareei LLP, Reese LLP, and Bailey & Glasser LLP (collectively, "Counsel"), and I could competently testify to them if called upon to do so.

*Case Background*

4.      Before filing the original Complaint in this case, Counsel investigated the potential claims against Defendant Intero Real Estate Services ("Intero" and, together with Plaintiffs, the "Parties"). Counsel interviewed potential plaintiffs and gathered information about Intero's unlawful calling practices. Counsel expended resources researching and developing the legal claims at issue.

5.      Former Class Representative Ronald Chinitz filed his Class Action Complaint on September 13, 2018. *See* ECF No. 1. Intero filed its Answer on November 7, 2018. *See* ECF No. 9.

6.      After Intero answered the original Complaint, the Parties commenced discovery. Counsel served written discovery on Intero and third parties including Mojo Dialing Solutions, LLC ("Mojo"), deposed numerous Intero real estate agents, and deposed Intero under Federal Rule of Civil Procedure 30(b)(6), and Intero served written discovery requests upon Mr. Chinitz and deposed him.

7.      In early 2020, Mr. Chinitz filed his Motion for Class Certification. *See* ECF No. 70. On July 22, 2020, the Court granted the Motion for Class Certification, certified the National DNC Class and the Internal DNC Class, and rejected Intero's challenges to Plaintiffs' expert, Anya Verkhovskaya. *See* ECF No. 126. The Court subsequently denied Intero's Motion for Reconsideration. *See* ECF No. 138. Likewise, the Ninth Circuit denied Intero's Rule 23(f) petition. *See* ECF No. 143. Notice was distributed to potential Class Members in December 2020. *See* ECF Nos. 151, 153.

8.     On January 21, 2021, Plaintiffs moved for partial summary judgment on the issue of vicarious liability and on the Internal DNC Class injunctive relief claim. *See* ECF No. 157. The same day, Intero moved for summary judgment. *See* ECF No. 159. On April 12, 2021, the Court denied Intero's Motion for Summary Judgment in its entirety, and granted Plaintiffs' Motion for Partial Summary Judgment as to the issue of vicarious liability. *See* ECF No. 191.

9.     On the eve of the summary judgment hearing, then-Class Representative Ronald Chinitz engaged in improper settlement negotiations with Intero. Accordingly, Counsel moved to substitute Mr. Chinitz with the current named Plaintiffs, Ruby Mitchell and Edward J. Kelly. *See* ECF No. 178. Over Intero's objections, on May 4, 2021, the Court granted the motion to substitute and appointed Ms. Mitchell and Mr. Kelly as the new Class Representatives. *See* ECF No. 210. The Court also granted an earlier motion by Intero to amend its Answer to add two new affirmative defenses. *Id.* The Court ordered the parties to propose a schedule for additional discovery and briefing as to the new Class Representatives and Intero's new affirmative defenses. *See* ECF No. 207. The Court adopted Plaintiffs' proposed schedule on May 6, 2021. *See* ECF No. 213.

10.     Pursuant to the new schedule, Intero filed a Motion to Dismiss the First Amended Complaint on May 18, 2021. *See* ECF No. 217. The Court denied the motion as to Plaintiffs' TCPA claims. *See* ECF No. 221.

11.     Before and during the limited discovery period, the Parties conducted additional discovery including written discovery requests by both Plaintiffs and Intero, and depositions by Intero of both Plaintiffs. Plaintiffs also deposed a corporate representative of Intero pursuant to Rule 30(b)(6) regarding the affirmative defenses that Intero added to its amended answer. This discovery, as well as the prior discovery period and the Parties' extensive briefing, ensured that Plaintiffs and Counsel were well apprised of the salient legal and factual issues before reaching a decision to settle the Action.

12.     On July 26, 2021, Intero sought leave to file an additional motion for summary judgment, which the Court granted on July 30, 2021. *See* ECF No. 236. On August 6, 2021, Intero moved for summary judgment as to Plaintiffs' individual claims, and the Parties fully briefed the motion by August 31, 2021. On August 11, 2021, Plaintiffs moved for appointment as the class

1    representatives, and the Parties fully briefed the motion by September 1, 2021.

2                                        *Settlement Discussions*

3           13.     On April 1, 2021, the Court referred the Parties to Chief United States Magistrate

4    Judge Joseph C. Spero for settlement discussions. *See* ECF No. 186.

5           14.     On April 13, 2021, as a result of Intero's professed limited ability to pay any judgment

6    secured at trial, Chief Magistrate Judge Spero ordered Intero to produce to Plaintiffs, for settlement

7    purposes only, audited profit and loss statements and balance sheets for the preceding three years,

8    along with any applicable insurance policies. *See* ECF Nos. 192 & 193.

9           15.     In advance of the settlement conference, Intero provided to Counsel an unaudited

10   income statement, a balance sheet, and unfiled tax returns for the preceding three years, all of which

11   provided information related to Intero's ability to pay for a class-wide settlement. This information,

12   which Intero has warranted in the Settlement Agreement as being "true and accurate," shows that

13   Intero would not even be able to afford a low eight-figure settlement. Based on that data, Counsel

14   prepared a settlement conference statement and on July 7, 2021, provided it to both Chief Magistrate

15   Judge Spero and counsel for Intero.

16          16.     On July 21, 2021, the Parties engaged in a Zoom settlement conference before Chief

17   Magistrate Judge Spero, which Plaintiffs Ruby Mitchell and Edward J. Kelly and representatives of

18   Intero, including CEO Brian Crane, attended. *See* ECF No. 232.

19          17.     The case did not settle, and so on September 9, 2021, the Parties took part in another

20   Zoom settlement conference before Chief Magistrate Judge Spero, which was attended by

21   representatives of Intero, including CEO Brian Crane. *See* ECF No. 261. While the case again did not

22   settle, by the end of the day, the parties had made major progress toward agreement on the terms of

23   the Settlement relief for the Settlement Class.

24          18.     Chief Magistrate Judge Spero scheduled an additional 2.5 hour settlement conference

25   on September 22, 2021, at which the Parties reached agreement in principle on the terms of a

26   settlement of the entire case. *See* ECF Nos. 265 & 267.

27          19.     During these various settlement conferences, the Parties did not discuss attorneys' fees

28

and costs, or any potential Service Awards, until we had first agreed on material terms, including the definition of the Settlement Class, the Notice Plan, and the benefits to the Settlement Class. When attorneys' fees, costs, and Service Awards were discussed, they were discussed only insofar as the Parties agreed to a cap on the amounts that Plaintiffs may request under these categories. Intero retained its right to object to these amounts, and any amount not awarded in attorneys' fees, costs, or Service Awards will be distributed to the Settlement Class and in no event will those monies revert to Intero.

20.     The Parties then negotiated the precise terms of the Settlement Agreement, which was executed on October 27, 2021, and is now before the Court. A true and correct copy of the fully executed Settlement Agreement is attached to this declaration as **Exhibit A**.

21.     Other than the Settlement Agreement, there are no other agreements between Plaintiffs and Intero.

*The Settlement Administrator*

22.     Before selecting a Settlement Administrator, Intero engaged in a multi-week process of considering bids from five reputable administrators, and kept Counsel apprised of these efforts as they were ongoing. Each of the administrators provided similar competing bids, and their notice plans overlapped substantially.

23.     Counsel for Intero ultimately selected KCC Class Action Services LLC ("KCC"), a leading class action administration firm in the United States, to serve as the Settlement Administrator. Plaintiffs' Counsel did not object to the selection of KCC because they are confident in KCC's experience and expertise in administrating class action settlements. Counsel is also confident that KCC's proposed notice and administration plan fully complies with due process, Rule 23(e), relevant case law, and the Northern District of California's Procedural Guidance for Class Action Settlements.

24.     Class Counsel routinely rely on a variety of reputable class action administrators, including KCC. During the past two years, Class Counsel have engaged KCC on multiple occasions, including in the matters of *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333 (M.D.N.C.); *Ciccarelli v. Califia Farms, LLC*, No. 7:19-cv-08785-CS (S.D.N.Y.); *Shalikar v. Asahi Beer, USA*, BC702360 (Cal.

1   Sup. Ct.); *Worth v. CVS Pharmacy, Inc.*, No. 16-cv-0200498-SG (E.D.N.Y.); *Carnell Smith and Lenox*

2   *Magee v. Fifth Third Bank*, No. 1:18-cv-00464 (S.D. Ohio); *In Re GEICO General Insurance Company*, No.

3   4:19-cv-03768-HSG (N.D. Cal.); *Lembeck v Arvest Central Mortgage Co.*, No. 3:20-cv-3277-VC (N.D.

4   Cal.); *Abante Rooter and Plumbing, Mark Hankins, et al. v Alarm.com Inc.*, No. 4:15-cv-06314-YGR (N.D.

5   Cal.); *Bekker v. Neuberger*, No. 16-cv-6123 (S.D.N.Y.); *Cullinane v. Uber Technologies*, Inc., No. 1:14-cv-

6   14750-DPW (D. Mass.); *Henderson v. The Bank of New York Mellon Corp.*, No. 1:15-cv-10599-PBS (D.

7   Mass.); *Mey v. Got Warranty, Inc., et al.*, No. 5:15-cv-00101-JPB-JES (N.D. W. Va.); *Mey v. Patriot Payment*

8   *Group*, No. 5:15-cv-00027-JPB-JES (N.D. W. Va.); *Nistra v. Reliance Trust Company*, No. 16-cv-4773

9   (N.D. Ill.); *Schultz v. Edward Jones*, No. 16-cv-1346 (E.D. Mo.); and *Swain and Fiorito on behalf of ISCO*

10  *ESOP v. Wilmington Trust, N.A.*, No. 17-071-RGA-MPT (D. De.). A number of these cases involve

11  settlements that were reached outside the two-year window, but for which administration has

12  continued for some time. While Counsel has sufficient information to be confident in KCC's

13  qualifications, there is no ongoing relationship between KCC and Counsel as Counsel routinely solicit

14  bids from multiple settlement administrators, and often work with other administrators (e.g., Epiq and

15  Angeion) for each case where notice and/or claims administration is required. Moreover, none of the

16  Parties have a financial interest in KCC or otherwise have a relationship with KCC that could create

17  a conflict of interest.

18       25.    I have reviewed the proposed Notice Plan, which was drafted in conjunction with

19  Intero, and am confident that it is designed to reach as many Settlement Class Members as possible

20  and is the best notice practicable under the circumstances of this case. In light of the proposed notice

21  plan, Counsel believe that a claims rate of 10-20% is likely in this case.

22                          *Adequacy of Plaintiffs and Counsel*

23       26.    Plaintiffs Mitchell and Kelly assisted Counsel in this case by reviewing the pleadings,

24  responding to interrogatories, searching for and producing documents, sitting for their depositions,

25  participating in and being available during settlement conferences, and reviewing the Settlement

26  Agreement.

27       27.    Neither Ms. Mitchell nor Mr. Kelly have any conflicts with other Settlement Class

28

Declaration of Sabita J. Soneji in Support of
Motion for Preliminary Approval
*Mitchell v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF
5

Members. Both have in fact provided substantial assistance in prosecuting this case on behalf of absent class members.

28.     This Court previously appointed Tycko & Zavareei LLP and Reese LLP as Class Counsel for the National DNC Class and the Internal DNC Class when it granted class certification. In doing so, the Court found that "[plaintiff's] experienced class counsel have no conflict of interest with other class members and there is no basis to conclude that counsel will not vigorously represent the class." ECF No. 126.

29.     After obtaining class certification, Tycko & Zavareei LLP and Reese LLP have zealously represented, and will continue to zealously represent, the Settlement Class.

30.     Attached as **Exhibit B** is the firm resume of Tycko & Zavareei LLP.

31.     Attached as **Exhibit C** is the firm resume of Reese LLP.

32.     In August 2021, after the first Settlement Conference with Chief Magistrate Judge Spero did not lead to a settlement, Brian Glasser and John Barrett of Bailey & Glasser LLP were retained to assist with settlement negotiations and any potential trial in this case. Mr. Glasser and Mr. Barret were trial counsel for the class of plaintiffs in *Krakauer v. Dish Network, LLC*, Case No. 1:14-CV-333 (M.D.N.C.), and secured a jury verdict of over $61 million for violations of the TCPA's do-not-call provisions and successfully defended that verdict on appeal. They have brought their experience to bear on this case, zealously representing the interests of the Settlement Class, and substantially contributed to the ultimate resolution of this matter.

33.     Attached as **Exhibit D** is the firm resume of Bailey & Glasser LLP.

34.     As these resumes show, Counsel have significant experience in litigation, certification, and settlement of class action lawsuits, including those involving the TCPA. This experience, along with Counsel's extensive history of litigating the instant case, provides Counsel with a nuanced understanding of the legal and factual issues involved and informs our conclusion that this settlement is an excellent recovery for the Class.

*Fairness, Reasonableness, and Adequacy of the Proposed Settlement*

35.     On the basis of Counsel's investigation into this case, and experience with and

1   knowledge of the law and procedure governing the claims of Plaintiffs and the Settlement Class, it is

2   Counsel's belief that the recovery provided by the Settlement Agreement—$350 to each participating

3   Settlement Class Member and injunctive relief to ensure Intero's compliance with the TCPA—is an

4   excellent recovery that is in the best interests of the Class. The Settlement will provide monetary

5   benefits in the form of cash awards to Settlement Class members who submit a timely and valid claim.

6   Any funds remaining after distribution to the Settlement Class will be paid to a *cy pres* recipient jointly

7   selected by the parties and approved by the Court..

8       36.     Plaintiffs' best case at trial would have been an award of damages and injunctive relief

9   prohibiting further violations of the TCPA by Intero or its agents. While Plaintiffs and the Settlement

10  Class would have been entitled, if successful at trial, to statutory damages of up to $500 for each

11  unlawful call, or treble that amount if the violations were knowing or willful, such damages were far

12  from guaranteed. For one, the jury could have awarded far less than $500 (or even far less than $350)

13  for each unlawful call. Accordingly, in Counsel's view, a cash payment of $350 for each Settlement

14  Class Member is an excellent result considering the risks inherent in proving their case at trial and

15  ultimately securing a jury award greater than the relief obtained through the Settlement. Additionally,

16  as to the injunctive relief sought—improvements to Intero's TCPA compliance policies and practices

17  to prevent future unlawful calls—this has been secured through the Settlement.

18      37.     Plaintiffs face significant risks to their claims if this Settlement is not approved. Should

19  the case proceed in litigation, Plaintiffs could see their claims dismissed or narrowed by motions *in

20  limine*, at trial, or on a subsequent appeal. The jury could decline to credit Plaintiffs' evidence, including

21  their expert evidence, and a failure of proof on any element—many of which have been hotly

22  contested throughout the litigation—could doom the claims in whole or in part.

23      38.     Further, the Parties would incur the expense and burden of continuing to prepare for

24  trial, finalizing all pretrial filings, and conducting the trial. Even if Plaintiffs were to succeed on the

25  merits at trial, any recovery would likely be delayed by appeals, and the litigation could take years to

26  resolve. Yet, as discussed above, there is no guarantee that lengthy pretrial preparation and trial would

27  lead to greater benefits for the Settlement Class.

28

39.     In this context, the Settlement is an outstanding recovery that provides substantial relief to the Settlement Class without further delay. And the relief obtained through the Settlement Agreement is in line with (and, frankly, better than) settlements reached in other cases involving violations of the TCPA. *See, e.g.*, *Johnson v. Moss Bros. Auto Grp., Inc.*, No. 19-cv-02456-FMO-SP, 2021 WL 4556052, at *8 (C.D. Cal. June 25, 2021) (preliminarily approving TCPA class action settlement in which each class member would receive approximately $46, less fees and costs, regardless of the number of calls they received); *Odom v. ECA Mktg., Inc.*, No. 20-cv-00851-JGB-SHK, 2021 WL 4803488, at *3 (C.D. Cal. May 27, 2021) (preliminarily approving TCPA class action settlement in which each class member would receive approximately $35, regardless of the number of calls they received); *Larson v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2020 WL 3402406, at *6 (E.D. Cal. June 19, 2020) (finally approving TCPA class action settlement in which each class member received $156.95, regardless of how many text messages they received); *Ahmed v. HSBC BANK USA*, No. 15-cv-02057-FMO-SP, 2019 WL 13027266, at *4 (C.D. Cal. Dec. 30, 2019) (finally approving TCPA class action settlement in which each class member received approximately $92.39, regardless of how many calls they received).

### *Narrowing of the Settlement Class*

40.     During the course of Settlement Negotiations, the Parties agreed to narrow the scope of the National DNC Class—the only damages class in this case—to define the Settlement Class. Specifically, the Settlement Class Definition excludes (1) any phone number that received only zero-duration calls with the disposition code "Answering Machine" (which are the only zero-duration calls in the Mojo records at issue); and any phone numbers where the removal of zero-duration calls means the phone number did not receive 2 or more calls within a 12-month period; and (2) calls made by a real estate salesperson at a time when Intero or Intero Referral Services was not the salesperson's responsible broker, as reflected in the records maintained by the California Department of Real Estate ("DRE").

41.     The Parties plan to file a stipulation and proposed order to exclude the individuals associated with these excluded phone numbers from the Settlement Class, which will also include a

plan for providing Notice to those individuals excluded from the Settlement Class but who received Notice after the Court's prior ruling on class certification.

*Attorneys' Fees and Costs*

42.     Counsel's current litigation costs are approximately $341,285.81, including expert fees of $146,888.02.

43.     After subtracting these litigation costs (which will continue to increase through the settlement approval process) from the $2,775,000 cap on Attorneys' Fees and Costs agreed to by the Parties, Counsel will be seeking an award of attorneys' fees of approximately $2,433,714.19.

44.     To date, and not counting future time and effort on settlement administration and approval, Counsel's total current lodestar is $3,735,914.60 based on the 5,083.2 total hours expended to date at each firm's customary hourly rates.

45.     The approximately $2,433,714.19 in attorneys' fees that Counsel intends to seek thus reflects a modest multiplier of approximately 0.65 or less on their current lodestar.

*Proposed Case Schedule*

46.     The Settlement Agreement contemplates that the Court will adopt the following case schedule, subject to any modifications by the Court:

| Event | Deadline |
| --- | --- |
| Notice Deadline | 30 Days after the Court enters the Preliminary Approval Order |
| Fee and Incentive Motion Deadline | 25 Days after the Notice Deadline |
| Objection Deadline | 60 Days after the Notice Deadline |
| Opt-Out Deadline | 60 Days after the Notice Deadline |
| Claim Deadline | 60 Days after the Notice Deadline |
| Final Approval Motion Deadline | 30 Days after the Objection and Opt-Out Deadline |
| Final Approval Hearing | At least 125 Days after the Notice Deadline (i.e., at least 35 days after the Final Approval Motion Deadline) |
| Deadline for Intero to deposit $350.00 per Approved Claim into an interest-bearing escrow account maintained by the Settlement Administrator | Upon Final Approval of the Settlement, and after receiving specific payment instructions and all required tax information from the Settlement Administrator and all information needed to determine the identities of Claimants |

Declaration of Sabita J. Soneji in Support of
Motion for Preliminary Approval
*Mitchell v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF
9

| Event | Deadline |
|-------|----------|
| Deadline for the Settlement Administrator to have finished processing the claims and to have remitted the appropriate Settlement Relief amounts by check to Claimants | 60 Days after the Final Settlement Date |

47.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2021, at Sunnyvale, California

By: */s/ Sabita J. Soneji*

Sabita J. Soneji

*Counsel for Plaintiffs Ruby Mitchell and Edward J. Kelly and the Classes*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| RUBY MITCHELL and EDWARD J. KELLY, *individually, and on behalf of a class of similarly situated persons*, | Case No. 5:18-cv-05623-BLF |
| Plaintiff, | **SETTLEMENT AGREEMENT AND RELEASE** |
| vs. | |
| INTERO REAL ESTATE SERVICES, | |
| Defendant. | |

This Settlement Agreement and Release is entered into between and among Plaintiffs Ruby Mitchell and Edward J. Kelly, on behalf of themselves and all Settlement Class Members as defined herein, on the one hand, and Intero Real Estate Services ("Intero"), on the other (collectively "Parties" or "Settling Parties").

1.    **RECITALS**

WHEREAS, the above-captioned lawsuit is comprised of the Parties and claims alleged or that could have been alleged regarding Intero's alleged violations of the Telephone Consumer Protection Act ("TCPA") and other federal and state laws (the "Litigation").

WHEREAS, Plaintiffs have each asserted statutory and injunctive claims, on their own behalf and on behalf of classes of persons similarly situated, seeking monetary damages and other relief on behalf classes of persons who allegedly received unwanted telephone solicitations and telemarketing calls from Intero or its alleged agents.

- 1 -

WHEREAS, Intero denies all allegations of wrongful conduct and damages, denies liability to Plaintiffs or the classes, asserts that its conduct and practices are lawful and proper, and asserts numerous procedural and substantive defenses to Plaintiffs' claims, and Intero further denies that the Litigation satisfies the requirements to be tried as a class action under the applicable Federal Rules of Civil Procedure.

WHEREAS, the Parties have engaged in extensive arm's length negotiations concerning the claims alleged, the defenses presented, and the potential risk and uncertain outcomes of continued litigation for all Parties, first as part of a settlement conference with the Honorable Maria-Elaina James (Ret.), and later as part of multiple settlement conferences before the Honorable Joseph C. Spero, Chief Magistrate Judge of the U.S. District Court, Northern District of California, both of whom possess extensive experience in dispute resolution.

WHEREAS, Plaintiffs have conducted a thorough investigation of the facts and claims alleged herein through extensive litigation and discovery and as part of the settlement conference process and have taken into account the sharply contested issues involved in this litigation, the risks and costs to the Settlement Class of continued litigation and attendant appeals, the uncertain outcomes of continued litigation and attendant appeals, the substantial relief to be provided to the Settlement Class pursuant to this Settlement Agreement, and Intero's ability to satisfy an adverse judgment as verified by Plaintiffs' review of Intero's financial records. Plaintiffs believe a settlement on the terms set forth in this Settlement Agreement is fair, equitable, and in the best interests of the Settlement Class, particularly considering Intero's adverse financial condition, and have thus agreed to settle this Litigation on the terms set forth herein as reached with the assistance of the Honorable Joseph C. Spero.

WHEREAS, Intero, though expressly disclaiming any liability or wrongful conduct, but nonetheless recognizing the uncertainty of continued litigation and appeals, desires to resolve this Litigation to avoid further expense, to eliminate risk, and to resolve all claims brought by Plaintiffs on their own behalf and on behalf of the Settlement Class on the terms set forth in this Settlement Agreement, as reached with the assistance of Honorable Joseph C. Spero, and have thus agreed to settle this Litigation.

WHEREAS, Plaintiffs and Intero have agreed to settle and fully and finally resolve their disagreements on a claims-made basis for an amount equal to $350.00 for each class member who submits as valid claim consistent with the terms set forth herein, which shall include a full and complete release of Intero and Released Parties.

## 2.    DEFINITIONS

As used herein, the following terms have the meanings set forth below.

2.1.    "Action" or "Litigation" means the action currently styled as *Ruby Mitchell and Edward J. Kelly, et al. v. Intero Real Estate Services,* Case No. 18-cv-05623-BLF, U.S. District Court for the Northern District of California, San Jose Division.

2.2.    "Administrative Expenses" shall mean the costs of administering this Settlement Agreement from the date of execution through the completion of distribution of funds to the Settlement Class, including all amounts paid the Settlement Administrator, all costs of notice, and all costs of allocation and distribution of funds.

2.3.    "Approved Claim" means a Claim submitted by a Settlement Class Member for a Cash Award that is timely and submitted in accordance with the terms of this Settlement Agreement.

2.4.    "Attorneys' Fees and Costs" means such funds as may be awarded to Class Counsel by the Court to compensate them for their reasonable attorneys' fees, costs and other

litigation expenses incurred by Plaintiffs or Class Counsel in connection with the Litigation, including the costs incurred in paying for the original class notice.

2.5.    "CAFA Notice" means the notice Intero must provide pursuant to 28 U.S.C. Section 1715(b).

2.6.    "Cash Award" means payment in the amount of $350.00 to a Settlement Class Member who submits an Approved Claim.

2.7.    "Claim" means a written request for Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form in a form substantially similar to the document attached as **Exhibit 1** to this Settlement Agreement or in the form as ultimately approved by the Court.

2.8.    "Claim Form" means a set of documents in a form substantially similar to **Exhibit 1** attached to this Settlement Agreement, or in the form as ultimately approved by the Court.

2.9.    "Claimant" means any Settlement Class Member who submits an Approved Claim confirming that they were a user of the Residential Telephone Number on the dates (as reflected in the Mojo Dialing Solutions, LLC, calling records) the calls were initiated to that number.

2.10.    "Class Counsel" means the law firms of Tycko & Zavareei LLP, Reese LLP and Bailey & Glasser, LLP.

2.11.    "Class Notice" means the program of notice described in Section 6 of this Settlement Agreement to be provided to potential Settlement Class Members, including the Mail Notice, Email Notice, and Website Notice on the Settlement Website, which will notify potential Settlement Class Members about, among other things, their rights to opt out or object to the

Settlement, the preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.12. "Class Period" means September 13, 2014 through the date notice is provided to the settlement class.

2.13. "Class Representatives" means Plaintiffs Ruby Mitchell and Edward J. Kelly.

2.14. "Court" shall mean the United States District Court for the Northern District of California and the U.S. District Judge to which this Action assigned.

2.15. "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Settlement Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included. Further, when computing any period of time prescribed or allowed by this Settlement Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.

2.16. "Deadlines." As used herein, the Parties agree to the following deadlines, subject to Court approval:

2.16.1. "Notice Deadline" means the last day for the Settlement Administrator to send Mail Notice and Email Notice to potential Settlement Class Members. Mail and Email Notice shall be sent no later than thirty (30) Days after the Court's Preliminary Approval Order, such date being subject to approval or modification by the Court.

2.16.2. "Fee and Incentive Motion Deadline" means the last day for Plaintiffs to file a motion for an award of Attorneys' Fees and Costs, and a Service Award to Plaintiffs. The

Fee and Incentive Motion shall be filed twenty-five (25) days after the Notice Deadline, such

date being subject to approval or modification by the Court.

2.16.3.   "Objection Deadline" means the date identified in the Preliminary

Approval Order and Class Notice by which a Settlement Class Member must serve written

objections, if any, to the Settlement in accordance with Section 12 of this Settlement Agreement

in order to qualify them to be able to object to the Settlement. The Objection Deadline shall be

sixty (60) days after the Notice Deadline, such date being subject to approval or modification by

the Court.

2.16.4.   "Opt Out Deadline" means the date identified in the Preliminary

Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with

the Settlement Administrator in accordance with Section 11 of this Settlement Agreement in

order for a potential Settlement Class Member to be excluded from the Settlement Class. The

Opt-Out Deadline shall be sixty (60) Days after the Notice Deadline, such date being subject to

approval or modification by the Court.

2.16.5.   "Claim Deadline" means the last date by which a Claim submitted to the

Settlement Administrator by a Settlement Class Member must be postmarked or submitted

electronically, which will be sixty (60) Days after the Notice Deadline, such date being subject to

approval or modification by the Court. All Claims postmarked or submitted electronically at the

Settlement Website on or before the Claim Deadline shall be timely, and all Claims postmarked

or submitted electronically at the Settlement Website after the Claim Deadline shall be untimely

and barred from entitlement to any Settlement Relief.

2.16.6.   "Final Approval Motion Deadline" means the date by which Class

Counsel shall file the motion seeking final approval of the Settlement. The Final Approval

Motion Deadline shall be thirty (30) Days after the Objection and Opt-Out deadline, such date being subject to approval or modification by the Court.

2.17.   "Defense Counsel" means the law firm of Simmonds & Narita LLP and the law firm of Burr Forman LLP.

2.18.   "Final" with respect to the Final Approval Order, the Judgment, and any award of Attorneys' Fees and Costs means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Costs) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Final Approval Order and/or Judgment is set aside, modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Final Approval Order and/or Judgment shall not become Final.

2.19.   "Final Approval" the later date on which (1) the Court enters final judgment, (2) the Court enters final approval of attorneys' fees and expenses, and/or (3) all appellate rights with respect to this Settlement Agreement have expired or have been exhausted, culminating in affirmation of this settlement as proposed by the Parties.

2.20.   "Final Approval Order" means the Order Granting Final Approval of Class Action Settlement and Dismissing Class Plaintiffs' Claims, to be entered by the Court pursuant to the Settlement, the effect of which is the dismissal with prejudice of the Litigation and release of claims brought therein by Plaintiffs and the Settlement Class.

2.21.   "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Settlement Agreement are fair, reasonable, and adequate for the Settlement Class as a whole, and whether the Final Approval Order and the Judgment should be entered. The Parties shall seek to have the Final Approval Hearing on a date not earlier than one-

hundred and twenty-five (125) Days after the Notice Deadline, such date being subject to approval or modification by the Court.

2.22.   "Final Settlement Date" means the earliest date on which both the Final Approval Order and the Judgment are Final (as defined in Section 2.18). If no appeal has been taken from the Final Approval Order or the Judgment, the Final Settlement Date means the day after the last date on which either the Final Approval Order or the Judgment could be appealed. If any appeal has been taken from the Final Approval Order or from the Judgment, the Final Settlement Date means the date on which all appeals of either the Final Approval Order or the Judgment, including petitions for rehearing, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Approval Order and the Judgment.

2.23.   "Intero" means defendant Intero Real Estate Services, Inc.

2.24.   "Internal DNC Class" means: All persons in the United States who: (a) were on an internal list of persons who asked Intero not to call them ('Internal DNC List'), (b) received more than one call made on behalf of Intero by, or on behalf of, on Intero's California sales associates; (c) promoting Intero's goods or services; (d) in a 12-month period; (e) on their non-business telephone line; (f) at any time since September 14, 2014.

2.25.   "Judgment" means the judgment to be entered by the Court pursuant to Final Approval Order.

2.26.   "National DNC Class" means the class previously certified by the Court and defined as follows: All persons in the United States who: (a) received more than one call made on behalf of Intero by, or on behalf of, one of Intero's California sales associates; (b) promoting Intero's goods or services; (c) that was placed through the dialing platform provided by Mojo

Dialing Solutions, LLC, the calling records for which appear in one of 35 account files,

identified in Appendix A [to the Court's Class Certification Order, Docket No. 126]; (d) in a 12-

month period; (e) on their non-business telephone lines; (f) whose telephone number(s) were on

the NDNCR for at least 31 days; (g) at any time since September 13, 2014.

    2.27.    "NDNCR" means the National Do-Not-Call Registry maintained by the Federal

Trade Commission.

    2.28.    "Notice" means as follows:

        2.28.1.    "Postcard Notice" means the notice that is mailed by the Settlement

Administrator to potential Settlement Class Members, in a form substantially similar to **Exhibit**

**2** attached to this Settlement Agreement and/or as ultimately approved by the Court. The

Postcard Notice will be a double postcard that includes a tear-off Claim Form with prepaid

postage.

        2.28.2.    "Email Notice" means the notice that is emailed by the Settlement

Administrator to potential Settlement Class Members, in a form substantially similar to **Exhibit**

**3** attached to this Settlement Agreement and/or as ultimately approved by the Court.

        2.28.3.    "Website Notice" means the long form notice that is available to

Settlement Class Members on the Settlement Website, in a form substantially similar to **Exhibit**

**4** attached to this Settlement Agreement and/or as ultimately approved by the Court.

    2.29.    "Notice and Administrative Costs" means all reasonable and authorized costs and

expenses of disseminating and publishing the Class Notice in accordance with the Preliminary

Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement

Administrator in administering the Settlement, including but not limited to costs and expenses

associated with assisting Settlement Class Members, processing claims, escrowing funds, and issuing and mailing Settlement Relief.

2.30.    "Plaintiffs" mean Ruby Mitchell and Edward J. Kelly.

2.31.    "Preliminary Approval Motion" means Plaintiffs' motion for the Court to approve the Settlement preliminarily and to enter the Preliminary Approval Order, including all exhibits and documents attached thereto.

2.32.    "Preliminary Approval Order" means the order entered by the Court that provides for, among other things, preliminary approval of the Settlement as fair, reasonable, and adequate; preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to potential Settlement Class Members; and a finding that the proposed Class Notice is reasonably calculated to apprise potential Settlement Class Members of the material terms of the proposed Settlement, and potential Settlement Class Members' options and rights with respect thereto.

2.33.    "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons, as provided for in Section 10 of this Settlement Agreement.

2.34.    "Released Claims" means the claims released as provided for in Section 10 of this Settlement Agreement.

2.35.    "Released Persons" means: Intero and each of its respective divisions, parents, subsidiaries, affiliates, predecessors, investors, and parent companies, any direct or indirect subsidiary of Intero and its insurers and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and all of the past or present officers, directors,

employees, agents, brokers, distributors, representatives, owners, and attorneys of all such entities.

2.36. "Releasing Persons" means Plaintiffs, all Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

2.37. "Residential Telephone Number" means a telephone number used primarily for residential purposes.

2.38. "Request for Exclusion" means a written request from a potential Settlement Class Member that seeks to exclude the potential Settlement Class Member from the Settlement Class and that complies with all requirements in Section 11 of this Settlement Agreement.

2.39. "Service Award" means Court-approved compensation for Plaintiffs for their time and effort undertaken in the Litigation.

2.40. "Settlement" means the settlement set forth in this Settlement Agreement.

2.41. "Settlement Administrator" or "Claims Administrator" or "Class Administrator" means KCC Class Action Services LLC.

2.42. "Settlement Agreement" means this Settlement Agreement and Release, including all exhibits thereto.

2.43. "Settlement Class" or "Class" means the class of persons that will be certified by the Court for settlement purposes only, as more fully described in Section 3.1 herein.

2.44. "Settlement Class Member" means any person who falls within the definition of the Settlement Class and who does not submit a valid Request for Exclusion.

2.45. "Settlement Relief" means payment by Intero to Settlement Class Members who submit Approved Claims.

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5F-DEFD4C68D24A

2.46.   "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to Section **Error! Reference source not found.** of this Settlement Agreement, which shall have the Uniform Resource Locator ("URL") of www.InteroClassActionSettlement.com.

2.47.   "Settling Parties" means, collectively, Intero, Plaintiff Ruby Mitchell, Plaintiff Edward J. Kelly and all Releasing Persons.

2.48.   "TransUnion Reverse Lookup Data" means the reverse lookup data that was returned by TransUnion LLC to Epiq Class Action & Claims Solutions, Inc. ("Epiq") and used by Epiq to provide notice to the National DNC Class on December 31, 2020, as discussed in the Declaration of Cameron R. Azari, Esq. on Implementation of Notice Plan for Rule 23(b)(3) at Docket No. 172.

3.    **CLASS DEFINITION AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

3.1.   The Settling Parties agree to modify the National DNC Class as certified by the Court and to seek approval of the following "Settlement Class":

> All persons in the United States who: (a) received two or more calls on their residential telephone number (b) that had a duration of more than zero seconds; (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker (as reflected in the records maintained by the California Department of Real Estate ("DRE")); (d) promoting the purchase of Intero's goods or services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the call records for which appear in one of 35 account files, identified in Appendix A to the Court's order granting class certification in the Litigation; (f) within a 12-month period; (g) whose telephone number(s) were on the NDNCR for at least 31 days prior to the calls; and (h) at any time since September 13, 2014.

Intero represents and warrants that there are 37,962 telephone numbers contained in the Settlement Class. That number is subject to confirmation through confirmatory discovery.

Plaintiffs and Intero recognize that this number is less than the number of telephone numbers contained in the National DNC Class certified by the Court, and that the reduction is attributable to the elimination of approximately 30,000 telephone numbers which Intero represents are numbers eliminated from the class when the Parties agreed to remove zero-second duration calls and calls which were not initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker. Plaintiffs and Intero agree to file a Stipulation and Proposed Order providing for this modification of the National DNC Class and providing for Notice in the form attached hereto as **Exhibit 5** to be sent to those persons associated with the eliminated telephone numbers.

3.2.     This Settlement Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below. In the event that the Settlement is not finally approved, Intero shall be refunded any money that has not yet been expended, and the Litigation will resume as if there had been no conditional certification of the Settlement Class and no settlement.

3.3.     <u>Condition No. 1: District Court Approval</u>. The Settlement must be approved by the Court in accordance with the following steps:

3.3.1.    <u>Application for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice</u>.  After good-faith consultation with Defense Counsel, Class Counsel will present a Preliminary Approval Motion to the Court. The Preliminary Approval Motion shall include Class Notice, in forms substantially similar to **Exhibits 2 through 5** attached hereto. The Settling Parties shall, in good faith, take reasonable steps to secure expeditious entry by the Court of the Preliminary Approval Order.

3.3.2. <u>Settlement Class Conditional Certification</u>. Solely for the purposes of settlement, providing Class Notice and implementing this Settlement Agreement, Plaintiffs shall seek (and Intero will not oppose) orders of preliminary and final approval of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. If the Settlement is not finalized or finally approved by the Court for any reason whatsoever, the certification of the Settlement Class is voidable by any Party, the Litigation will return to its status as it existed prior to this Settlement Agreement, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated class certification proceedings or otherwise asserted in any other aspect of the Litigation or in any other proceeding.

3.3.3. <u>CAFA Notice</u>. Intero shall be responsible for timely compliance with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715(b). The mailings required by CAFA will be performed by the Class Administrator.  No later than 10 days before the hearing on the Preliminary Approval Motion, the Class Administrator shall file with the Court one or more declarations stating that the Class Administrator has complied with the mailings required by the CAFA notice obligations.

3.3.4. <u>Entry of Preliminary Approval Order</u>. The Parties will request that the Court enter a Preliminary Approval Order, which shall, among other things:

(a)     Certify for purposes of settlement a nationwide Settlement Class, approving Plaintiffs as class representatives and appointing Class Counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b)     Preliminarily approve the Settlement as fair, reasonable and adequate;

(c)     Order the issuance of Class Notice to the Settlement Class, and

determine that such Class Notice complies with all legal requirements, including, but not limited

to, the Due Process Clause of the United States Constitution;

(d)     Schedule a date and time for a Final Approval Hearing to

determine whether the Preliminary Approval Order should be finally approved by the Court;

(e)     Require Settlement Class Members who wish to exclude

themselves to submit an appropriate and timely written request for exclusion by the Opt-Out

Deadline, as directed in this Settlement Agreement and Class Notice, and advise that a failure to

do so shall bind those Settlement Class Members who remain in the Settlement Class;

(f)     Require Settlement Class Members who wish to object to this

Settlement Agreement to submit an appropriate and timely written statement by the Objection

Deadline, as directed in this Settlement Agreement and Class Notice, and advise that a failure to

do so shall prevent those Settlement Class Members from doing so;

(g)     Authorize the Settling Parties to take all necessary and appropriate

steps to establish the means necessary to implement this Settlement Agreement; and

(h)     Issue related orders to effectuate the preliminary approval of this

Settlement Agreement.

3.3.5.   Issuance of Class Notice. Pursuant to the Preliminary Approval Order to

be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in

accordance with Section 6 below.

3.3.6.   Final Approval Hearing. In connection with the Preliminary Approval

Motion, the Parties shall request that the Court schedule and conduct a hearing at least 125 days

after the Notice Deadline, at which time it will consider whether the Settlement is fair,

reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Plaintiffs, after good faith consultation with Defense Counsel, shall request that, on or after the Final Approval Hearing, the Court: (i) enter the Final Approval Order and the Judgment; (ii) determine the Attorneys' Fees and Costs that should be awarded to Class Counsel as contemplated in this Settlement Agreement; and (iii) determine the Service Award, if any, that should be awarded as contemplated by this Settlement Agreement. The Settling Parties agree to support entry of the Final Approval Order and the Judgment, although Intero shall retain the right to object to Class Counsel's petition for award of Attorneys' Fees and Costs. The Settling Parties will reasonably cooperate with one another in seeking entry of the Final Approval Order and of the Judgment.

3.4.     <u>Condition No. 2: Finality of Judgment</u>. The Court shall enter the Final Approval Order and the Judgment. The Final Approval Order and the Judgment must become Final in accordance with Section 2.18 above, and shall, among other things:

(a)     Find that (1) the Court has personal jurisdiction over all Settlement Class Members; (2) the Court has subject matter jurisdiction over the claims asserted in the Litigation; and (3) venue is proper;

(b)     Finally approve this Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as fair, reasonable, and adequate;

(c)     Finally certify the Settlement Class for settlement purposes only;

(d)     Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

(e)    Enter the Final Approval Order and the Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members with prejudice;

(f)    Make the Releases in Section 10 of this Settlement Agreement effective as of the date of Final Approval;

(g)    Permanently bar Plaintiffs and all Settlement Class Members who have not opted out of the Settlement from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

(h)    Find that, by operation of the entry of the Judgment, Plaintiffs and all Settlement Class Members who have not opted out of the Settlement shall be deemed to have forever released, relinquished, and discharged the Released Persons from any and all Released Claims;

(i)    Authorize the Settling Parties to implement the terms of this Settlement Agreement;

(j)    Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of this Settlement Agreement, the Final Approval Order, and the Judgment, and for any other necessary purpose; and

(k)    Issue related orders to effectuate the Final Approval of this Settlement Agreement and its implementation.

## 4.    SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF

In consideration for the Releases set forth in Section 10:

4.1.    Intero's representations regarding the number of Settlement Class Members assume that the telephone numbers of all Settlement Class Members were used for residential

purposes, and that the telephone numbers were registered on the National Do Not Call Registry.

Intero disputes that there is sufficient record evidence to support these assumptions or that they

accurately reflect what is necessary to establish a claim under applicable law, and Intero makes

them only for purpose of effectuating this Settlement.  Without conceding that the phone number

of any Settlement Class Member was a Residential Telephone Number, or that it was received by

the person who registered the number, Intero has identified 37,962 telephone numbers that

received a total of 171,584 calls or call attempts. These numbers are subject to confirmatory

discovery.

      4.1.1.   Upon Final Approval of the Settlement, and after receiving specific

payment instructions and all required tax information from the Class Administrator and all

information needed to determine the identities of Claimants, Intero will deposit $350 per

Approved Claim into an interest-bearing escrow account maintained by the Class Administrator.

The Class Administrator will hold these amounts until such time as the Parties authorize the

distribution of the funds to Claimants, which will be on or before the Distribution Date.  The

Distribution Date is the earliest date on which the Class Administrator may distribute funds to

Claimants.

      4.1.2.   All Cash Awards issued to Claimants via check will state on the face of

the check that the check will expire and become null and void unless cashed within one hundred

and eighty (180) Days after the date of issuance.  Cash Awards can be made via other means as

well, such as electronic deposit, Paypal, Venmo or other electronic payment options, subject to

the capabilities of the Class Administrator.

      4.1.3.   If any such payment is returned by the U.S. Postal Service as

undeliverable, or is not negotiated before it expires, neither Intero, the Settlement Administrator,

nor Class Counsel shall have any further obligations to any of the Settlement Class Members as to these payments, except that:

    4.1.3.1.  For any check returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will mail the check to the forwarding address;

    4.1.3.2.  If any of the Settlement Class Members contacts the Settlement Administrator or Class Counsel to request a replacement check, the Settlement Administrator will comply with that request by cancelling the initial check and issuing a replacement check, but the replacement check shall expire on the same date as the original check and the replacement check will state this on its face; and

    4.1.3.3.  It is the Parties' intent to distribute all Cash Awards for Approved Claims to Settlement Class Members. If, after distributing the Cash Awards for Approved Claims as set forth in this Section 4, any cash remains from uncashed checks, the Parties will jointly select a *cy pres* recipient, and Plaintiffs will move the Court for the Court's approval to have such cash from uncashed checks paid to the *cy pres* recipient. Under no circumstances shall any cash that was intended to be distributed as a Cash Award on an Approved Claim revert or otherwise be returned to Intero.

  4.2  In addition to the payment of Cash Awards to Claimants, Intero agrees to take the following actions in connection enhancing its existing policies, procedures, and training relating to compliance with the requirements of the TCPA:

    4.2.1  Intero will: (i) establish and implement written procedures to comply with the national do-not-call rules and (ii) institute procedures and a written policy for maintaining a

company list of persons who request not to be called, which will cover do-not-call requests made to Intero or to any representative or agent of Intero.

4.2.1.1 Intero's written policies and procedures for complying with the do-not-call rules will include a requirement that any Intero representative or agent making a call for telemarketing purposes on behalf of Intero must provide the called party with

- the name of the individual caller,

- the name of Intero or the Intero representative or agent on whose behalf the call is being made, and

- a telephone number or address at which Intero or the Intero representative or agent may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

4.2.1.2 Intero will maintain written policies, available upon demand, for maintaining a do-not-call list.

4.2.2    Intero will conduct annual training for all Intero representatives and agents regarding (i) Intero's procedures for compliance with the national do-not-call rules and (ii) the existence of, and how to use, the company do-not-call list.

4.2.3    Intero will maintain and record a list of telephone numbers that Intero and its representatives and agents may not contact because they are on the national do-not-call registry. Intero will use a process to prevent telephone solicitations to any telephone number on the national do-not-call registry and will employ a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5F-DBFD4C68D24A

made. Intero will maintain records documenting the process it has undertaken to comply with this paragraph 4.2.3.

        4.2.4   Intero will maintain a record of all consumer requests not to receive calls from Intero and its representatives.

        4.2.4.1 If Intero or any Intero representative or agent receives a request not to receive calls from Intero or any Intero representative or agent, Intero will record the request and place the requester's name, if provided, and telephone number on the company do-not-call list at the time the request is made.

        4.2.4.2 Intero will honor all do-not-call requests it receives within no more than 30 days from the date of the request.

        4.2.4.3 Intero will maintain and honor all do-not-call requests it receives for no less than 5 years from the time the request was made.

    4.3    Paragraphs 4.2 through 4.2.4.3 of the Settlement Agreement shall be effective for a period of two (2) years from the date of Final Approval of the Settlement.

## 5.    RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS

    5.1.    The parties agree that the Settlement Administrator will be responsible for all matters relating to the administration of this Settlement, as set forth herein. Those responsibilities include, but are not limited to, giving notice to the class, mailing the CAFA notices, obtaining updated addresses for Settlement Class Members, obtaining email addresses for Settlement Class Members, sending a reminder notice to Settlement Class Members for whom email addresses are available (and by mail for those for whom email addressed are not available), setting up and maintaining the Settlement Website and toll-free telephone number with interactive voice response ("IVR") technology, fielding inquiries about the Settlement, processing claims, acting as a liaison between Settlement Class Members and the Parties regarding claims information,

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5F-DBFD4C68D24A

approving Claims, rejecting any Claim Form where there is evidence of fraud (as determined by the Claims Administrator under policies and procedures developed by the Claims Administrator and approved by the Parties), directing the mailing or electronic distribution of Cash Awards to Settlement Class Members, and any other tasks reasonably required to effectuate the foregoing. The Claims Administrator will provide weekly updates on the claims status to counsel for all Parties.

5.2.     All Notice and Administrative Costs will be paid by Intero.

5.3.     The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner. Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, Email Notice, Website Notice, the Settlement Website, administration of Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Settlement Agreement.

5.4.     Both parties will coordinate with the Settlement Administrator to provide Notice to the Settlement Class, as provided in this Settlement Agreement.

5.5.     W9 Forms. The Settlement Administrator shall complete and provide to Intero any W9 forms necessary for Intero to implement this Settlement.

## 6.     NOTICE TO THE SETTLEMENT CLASS

6.1     Email Notice.  The Settlement Administrator will send Email Notice of the Settlement to the email addresses provided in the TransUnion Reverse Lookup Data no later than forty-five (45) days after the Court's Preliminary Approval Order, in a form substantially similar to **Exhibit 3** to this Settlement Agreement or as ultimately approved by the Court.  The Email Notice shall detail how Settlement Class Members may make a Claim for Settlement Relief, may opt out of the Settlement (as described in Section 11), or object to the Settlement (as described in Section 12)  The Email Notice shall also include the Settlement Class Member's Unique

- 22 -

Identification Number, the Toll-Free Settlement Hotline (as described in Section 6.4) and a link

to the Settlement Website (described in Section 6.3) at which copies of the Settlement

Agreement, Website Notice, Claim Form, and other relevant case filings may be downloaded,

and where Claims may be submitted.

6.2.    <u>Mail Notice</u>.  The Settlement Class Administrators shall mail Postcard Notice to

any physical mailing addresses provided in the TransUnion Reverse Lookup Data belonging to

names without an associated email address, in a form substantially similar to **Exhibit 2** to this

Settlement Agreement or as ultimately approved by the Court.  The Postcard Notice will be

mailed no later than forty-five (45) days after the Court's Preliminary Approval Order.  The

Settlement Administrator shall check the mailing list in the TransUnion Reverse Lookup Data

against the National Change of Address database ("NCOA'') before mailing.  The Settlement

Administrator may also run skip traces or reverse-lookups to obtain better addresses for

Settlement Class Members before mailing.

6.2.1    The Postcard Notice shall detail how Settlement Class Members may

make a Claim for Settlement Relief, may opt out of the Settlement (as described in Section 11),

or object to the Settlement (as described in Section 12).  The Postcard Notice shall also include

the Settlement Class Member's Unique Identification Number, the Toll-Free Settlement Hotline

(as described in Section 6.4) and a link to the Settlement Website (described in Section 6.3) at

which copies of the Settlement Agreement, Website Notice, Claim Form, and other relevant case

filings may be downloaded, and where Claims may be submitted.

6.2.2    For any Email Notices that are returned as undeliverable, the Settlement

Administrator will make two more attempts to deliver the Email Notice.  If Email Notice cannot

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5F-DEFD4C68D24A

be completed, the Settlement Administrator shall mail Postcard Notice as described in Section 6.2.

6.3.     <u>Settlement Website.</u> No later than the deadline to send Email and Postcard Notice, the Settlement Administrator shall establish a Settlement Website, which shall contain the Website Notice, in a form substantially similar to **Exhibit 4**, copies of the Settlement Agreement, Claim Form, and other relevant case filings which may be downloaded.  The Settlement Website shall require Settlement Class Members input their Unique Identification Number.  The Settlement Website shall contain instructions and allow Settlement Class Members to submit a Claim, which will include inputting their telephone number to determine if, in fact, they are a member of the Settlement Class.  The Settlement Website shall have a URL which identifies the Settlement Website as www.InteroClassActionSettlement.com.

6.3.1.   The Settlement Website shall remain open and accessible for not less than thirty (30) Days after the last day to cash any check mailed to Settlement Class Members.

6.3.2.   All costs associated with the Settlement Website will be paid by Intero.

6.4.     <u>Toll-Free Settlement Hotline</u>. The Settlement Administrator will establish and maintain an automated toll-free telephone line with IVR technology for persons in the Settlement Class to call for information regarding the Settlement, which will include instructions for how Settlement Class Members can submit a Claim over the phone, consistent with the terms of this Settlement Agreement.  The parties will mutually approve of scripts used by the Settlement Administrator in connection with the IVR process.

**7.     CLAIM FILING, REVIEW, AND APPROVAL PROCESS**

7.1.     <u>Claim Filing Process</u>. Settlement Class Members shall be permitted to make a Claim for Settlement Relief in one of three ways:

(a)     By completing an online Claim Form available on the Settlement Website and submitting that Claim Form online or by mail; or

(b)     By calling the Toll-Free Settlement Hotline and submitting a Claim by telephone; or

(c)     By mailing the tear-off double sided prepaid postcard claim form.

7.2.     Any Settlement Class Member who does not submit a completed Claim Form on or before the Claim Deadline shall be deemed to have waived any claim to Settlement Relief and any such Claim Form will be rejected.

7.3.     <u>Claim Review Process</u>. As soon as practicable, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, that each Claim Form was submitted in a timely fashion, and that the person submitting the Claim is a member of the Settlement Class.  The Settlement Administrator shall employ reasonable audit procedures and may request additional information from Claimants as appropriate for verification purposes.  In the event that more than one person submits a valid Claim with respect to the same telephone number, the Settlement Administrator shall send a follow-up Notice to each such persons requesting the time period during which they were a user of the telephone number.   For any persons who provide the time period during which they were a user of the telephone number to the Settlement Administrator, the Settlement Administrator will compare that information with the dates of the calls to the number in the Mojo Dialing Solutions, LLC, calling records attached as Appendix A to the Court's Order Granting Class Certification (Docket No. 126).  The Settlement Administrator will pay a Cash Award to each person who provides a date range that includes the dates of the calls reflected in the Mojo Dialing Solutions, LLC, calling records for the telephone number.

7.4.     <u>Notification</u>. Within ten (10) Days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Intero with a list of all Settlement Class Members

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5E-DBFD4C68D24A

who filed a Claim, whether the Claim was rejected or accepted, and if rejected, the reason it was rejected. The Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

7.5.    The Settlement Administrator shall have sixty (60) Days after the Final Settlement Date within which to process the Claims and remit the appropriate Settlement Relief amounts by check or other electronic means as set forth in paragraph 4.1.2 to Claimants.

## 8.    COVENANTS

The Settling Parties covenant and agree as follows:

8.1.    <u>Covenant Not to Sue</u>. Plaintiffs and Settlement Class Members covenant and agree not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims against any of the Released Persons. The foregoing covenant and this Settlement Agreement shall be a complete defense to any of the Released Claims against any of the Released Persons. However, this Settlement Agreement is not intended to and does not prohibit a Settlement Class Member from responding to inquiries from federal, state or local agencies and/or law enforcement, even if the inquiries relate to the Released Claims. Similarly, this Settlement Agreement is not intended to and does not prohibit a Settlement Class Member from bringing his or her concerns to federal, state or local agencies and/or law enforcement, even if those inquiries relate to the Released Claims.

8.2.    <u>Cooperation</u>. The Settling Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of the Final Approval Order and the Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all Class Notice documents and settlement administration

protocols, and the preparation and execution of all other reasonable documents necessary to

achieve Final Approval of the Settlement by the Court.

9.      **REPRESENTATIONS AND WARRANTIES**

9.1.    Plaintiffs' Representations and Warranties.

9.1.1.   Plaintiffs represent and warrant that they are the sole and exclusive owner

of all their own Released Claims and have not assigned or otherwise transferred any interest in

any of their Released Claims against any of the Released Persons, and further covenant that they

will not assign or otherwise transfer any interest in any of their Released Claims.

9.1.2.   Plaintiffs represent and warrant that they have no surviving claim or cause

of action against any of the Released Persons with respect to any of the Released Claims.

9.2.    Intero's Representations and Warranties.

9.2.1.   Intero represents and warrants that there are 37,962 telephone numbers

contained in the Settlement Class.

9.2.2.   Intero represents and warrants that it has provided Plaintiffs with true and

accurate financial records, including its balance sheet, income statement, and tax returns.

9.3.    The Settling Parties' Representations and Warranties. The Settling Parties, and

each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily

entering into this Settlement Agreement as a result of arm's-length negotiations among their

counsel, that in executing this Settlement Agreement, they are relying solely upon their own

judgment, belief, and knowledge, and the advice and recommendations of their own

independently selected counsel, concerning the nature, extent and duration of their rights and

claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

and that, except as provided herein, they have not been influenced to any extent whatsoever in

executing this Settlement Agreement by representations, statements, or omissions pertaining to

- 27 -

any of the foregoing matters by any Party or by any person representing any Party to this Settlement Agreement. Each of the Settling Parties assumes the risk of mistake as to facts or law.

**10.    Releases.**

10.1.    <u>Released Claims of Settlement Class</u>. Upon Final Approval, each member of the Settlement Class shall, by operation of the Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons in all capacities, including individual and trustee capacities, from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of Final Approval, that relate to or arise out of the calls that were placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the calling records for which appear in one of 35 account files, identified in Appendix A to the Court's Order Granting Class Certification (Docket No. 126). This release includes any and all claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations promulgated thereunder, and any and all claims for violation of any laws of any state that regulate, govern, prohibit or restrict the making, placing, dialing or initiating of calls to phone numbers on the NDNCR (or any state law equivalent) or to persons who asked not to be called or to be placed on an internal do-not-call list.

10.2.    Without in any way limiting their scope, the Released Claims cover by example and without limitation, any and all claims for attorneys' fees or costs incurred by Class Counsel,

Plaintiffs, or any Settlement Class Members in connection with or related in any manner to this

Settlement, the administration of this Settlement, and/or the Released Claims, except to the

extent otherwise specified in this Settlement Agreement.

10.3.   In connection with the Releases in Section 10.1, and without expanding their

scope in any way, Plaintiffs and each Settlement Class Member shall be deemed, as of the date

of Final Approval, to have waived any and all provisions, rights, benefits conferred by Section

1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or

equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims that the creditor or releasing party does
> not know or suspect to exist in his or her favor at the time of executing the release
> and that, which if known by him or her, would have materially affected his or her
> settlement with the debtor or released party.

10.4.   This Settlement Agreement and the Releases herein do not affect the rights of

Settlement Class Members who timely and properly submit a Request for Exclusion from the

Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.5.   The administration and consummation of the Settlement as embodied in this

Settlement Agreement shall be under the authority of the Court. The Court shall retain

jurisdiction to protect, preserve, and implement this Settlement Agreement, including, but not

limited to, enforcement of the Releases contained in this Settlement Agreement. The Court shall

retain jurisdiction in order to enter such further orders as may be necessary or appropriate in

administering and implementing the terms and provisions of this Settlement Agreement.

10.6.   Upon entry of the Final Approval Order and the Judgment: (i) this Settlement

Agreement shall be the exclusive remedy for any and all Settlement Class Members, except

those who have properly requested exclusion (opted out) in accordance with the terms and

provisions hereof; (ii) the Released Persons shall not be subject to liability or expense for any of

- 29 -

the Released Claims to any Settlement Class Member(s) except as set forth in this Settlement Agreement; and (iii) Settlement Class Members who have not opted out shall be permanently barred from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims.

10.7.    Nothing in this Settlement Agreement shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed therein. The Releases set forth herein are not intended to include the release of any rights or duties of the Settling Parties arising out of this Settlement Agreement, including the express warranties and covenants contained herein.

## 11.    OPT-OUT RIGHTS.

11.1.    A potential Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a Request for Exclusion that is postmarked no later than the Opt Out Deadline. The Request for Exclusion must: (a) identify the name and address of the potential Settlement Class Member requesting exclusion; (b) provide the phone number at which that potential Settlement Class Member was called by Intero, or someone acting on its behalf, during the Class Period; (c) be personally signed by the potential Settlement Class Member requesting exclusion; and (d) contain a statement that reasonably indicates a desire to be excluded from the Settlement.

11.2.    Any potential member of the Settlement Class who properly opts out of the Settlement Class by complying with all the requirements set forth in the preceding paragraph shall: (a) not be bound by any orders or judgments relating to the Settlement; (b) not be entitled to relief under, or be affected by, this Settlement Agreement; (c) not gain any rights by virtue of this Settlement Agreement; and (d) not be entitled to object to any aspect of the Settlement.

11.3.    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests for Exclusion within seven (7) Days after the Opt Out Deadline.

11.4.    Except for those potential members of the Settlement Class who timely and properly file a Request for Exclusion in accordance with Section 11, all other potential members of the Settlement Class will be deemed to be Settlement Class Members for all purposes under this Settlement Agreement, and upon Final Approval, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.    OBJECTIONS.

12.1.    <u>Overview</u>. Any potential Settlement Class Member who does not opt out of the Settlement will be a Settlement Class Member and may object to the Settlement. To object, the Settlement Class Member must comply with the procedures and deadlines in this Settlement Agreement.

12.2.    <u>Process</u>. Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order. The written objection must be filed with the Clerk of Court no later than the Objection Deadline.

12.2.1. The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include: (a) the name, address, and telephone number of the Settlement Class Member objecting and, if different, the telephone number at which the Settlement Class Member was called by Intero during the Settlement Class Period; (b) if represented by counsel, the name, address, and telephone number of the Settlement Class Member's counsel; (c) the basis for the objection; and (d) a statement of whether the Settlement Class Member objecting intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with all of the requirements of this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of this Settlement Agreement by appeal or other means.

12.3.    <u>Appearance</u>. Subject to approval of the Court, any Settlement Class Member who files and serves a written objection in accordance with Section 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1. The Notice of Intention to Appear must include the Settlement Class Member's full name, address, and telephone number, as well as copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in this Settlement Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing or raise any objections.

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5F-DEFD4C68D24A

13.     **SETTLEMENT APPROVAL.**

13.1.   Plaintiffs shall apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2.   Not later than seven (7) Days before the Final Approval Motion Deadline, the Settlement Administrator will provide the Parties with a declaration that the Class Notice has been disseminated in accordance with the Preliminary Approval Order.  The declaration shall identify the number of Requests for Exclusion to the Settlement, along with the number of claims received to date.

14.     **CERTIFICATION OF SETTLEMENT CLASS FOR SETTLEMENT PURPOSES.**

14.1.   The Parties entered this Settlement Agreement solely for the purposes of fully and finally resolving the Litigation along the lines and terms set forth herein. Nothing in this Settlement Agreement shall be construed as an admission by Intero or the Released Parties of any wrongdoing as asserted in the Litigation, or that this Litigation or any similar case is amenable to class certification for purposes of trial, or that any of the Released Claims are meritorious in any respect.

14.2.   The Parties agree, for the sole purpose of effecting a settlement, and upon the express terms and conditions set out in this Settlement Agreement, Plaintiffs shall seek, and Intero will not oppose, certification of the Settlement Class defined above. Plaintiffs, on behalf of themselves and the Settlement Class, acknowledge and agree that if this Settlement Agreement is not fully and finally approved by the Court without material change, the settlement is voidable at the election of either Party and, if voided, that Intero has not waived and has expressly reserved the right to challenge the certification of the Settlement Class and the substantive merits of Plaintiffs' claims in the Litigation, and to object to and appeal any order entered in any of the cases that comprise the consolidated Litigation.  Nothing in this Settlement

Agreement may be used in any judicial or administrative proceeding regarding the propriety of class certification outside of settlement. The Court's certification of the Settlement Class is not and shall not be deemed to be the adjudication of any fact or issue for purpose other than the accomplishment of the Settlement.

14.3.   If this Settlement is not approved by the Court for any reason, or is modified by the Court (including change to the release provided herein), or is otherwise terminated, then (1) this Settlement Agreement shall have no legal or persuasive effects and shall immediately become null and void, and the Parties expressly agree to do whatever is necessary legally and procedurally to return all cases that comprise this Litigation to their pre-settlement status, including filing all necessary joint motions; (2) this settlement and all aspects of it, including but not limited to, all negotiations, terms and documents created as a result of negotiations or the proposed settlement may not be used for any purpose in this or any other legal action unless the subject of that legal action is the settlement of the Litigation; (3) the Litigation shall revert to the same procedural and legal status existing prior to the Parties entering into this Settlement Agreement; (4) the Settlement Class shall be automatically decertified, and the Parties shall take whatever action is appropriate so that the Parties can be restored to their pre-settlement positions, and (5) all monies paid to the Settlement Administrator that had not been used at that time shall be returned to Intero within fourteen (14) days.

**15.   ATTORNEYS' FEES, COSTS, AND PLAINTIFFS' SERVICE AWARDS.**

15.1.   Class Counsel will petition the Court for an award of Attorneys' Fees and Costs for all attorney services and expenses related to this Litigation, including but not limited to, services rendered and to be rendered in connection with the Settlement Agreement and its implementation. The amount of Attorneys' Fees and Costs to be awarded to Class Counsel and payable by Intero within fourteen (14) days of Final Approval, unless otherwise agreed, shall be

determined by the Court.  Class Counsel agree they will not seek or accept Attorneys' Fees and

Costs exceeding $2,775,000.00. Intero reserves the right to object to the petition for Attorneys'

Fees and Costs, or any part thereof.  The Parties further agree that any portion of the Attorneys'

Fees and Costs up to the amounts set forth above that are requested but not approved by the

Court will inure to the benefit of the Settlement Class to be distributed pro rata to Claimants, and

that such amounts will not be returned to Intero.  Under no circumstances, may Plaintiffs, the

Classes, or Class Counsel seek or accept Attorneys' Fees and Costs that exceeds $2,775,000.00.

The Attorneys' Fees and Costs shall be awarded in addition to the amounts paid to the Settlement

Class. In other words, the amounts paid to the Settlement Class will not be reduced by the

amount of Attorneys' Fees and Costs awarded.

15.2.    The amount of Attorneys' Fees and Costs described herein is a material aspect of

this Agreement.  In the event Plaintiffs, the Settlement Class, or Class Counsel seek or are

awarded any amount of Attorneys' Fees and Costs that, in total, exceeds $2,775,000.00, Intero

shall have the right terminate this Agreement.  If Intero elects to exercise its right of termination,

Intero shall have no obligation to make any further payments required by this Agreement any

money held in escrow by the Settlement Administrator shall be returned to Intero with five (5)

days.

15.3.    Class Counsel hereby disclose that they have a joint prosecution agreement

("JPA") with a fee split agreement.  That agreement is that after Class Counsel are reimbursed

for their costs, attorney fees will be split as follows:  Tycko & Zavareei LLP: 47.5% of the fees,

Reese LLP: 47.5% of the fees; and, Bailey & Glasser, LLP: 5% of the fees.

15.4.    Plaintiffs may make an application to the Court for a Service Award not to exceed

$5,000 for each class representative.  Intero takes no position regarding the appropriateness of

such an award. If the Court approves a Service Award, the payment for the Service Award, in the

amount approved the Court, shall be made by check payable to "Tycko & Zavareei LLP

Attorney Trust Account" and shall be delivered to 1828 L Street NW, Suite 1000, Washington,

DC 20036 within twenty-one (21) days after Final Approval. The Parties further agree that any

portion of the Service Awards up to the amounts set forth above that are requested but not

approved by the Court will inure to the benefit of the Settlement Class to be distributed pro rata

to Claimants, and that such amounts will not be returned to Intero. In the event payment is

required under this Section, Plaintiffs will provide Intero a copy of their current W-9s within

fourteen (14) days after Final Approval. .

15.5.   The procedure for and the grant or denial or allowance or disallowance by the

Court of the Attorneys' Fees and Costs and Service Awards are to be considered by the Court

separately from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and

Costs and Service Awards, or any appeal from any order relating thereto or reversal or

modification thereof, will not operate to terminate or cancel this Settlement Agreement, or affect

or delay the finality of the Final Approval Order or Judgment approving this Settlement

Agreement and the Settlement, except as provided for in Section 15.2.

15.6.   As long as Plaintiffs' application for a Service Award is made in compliance with

this section, the Court's grant or denial of the application (and any subsequent appeal of that

ruling) will not operate to terminate or cancel this Agreement, or affect or delay the finality of

the Final Approval Order or Judgment approving this Agreement and Settlement.

16.    **TERMINATION AND EFFECT THEREOF.**

16.1.    This Settlement Agreement shall be terminable by any Party if any of the conditions of Section 3 are not fully satisfied unless the relevant conditions are waived in writing signed by authorized representatives of Plaintiffs and Intero.

16.2.    This Settlement Agreement shall also terminate at the discretion of Plaintiffs or Intero if, in the good faith exercise of discretion: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the Final Approval Order or Judgment, or any of the Court's findings of fact or conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur.

16.3.    At its sole discretion, without penalty or sanction, Intero may terminate this settlement and the Parties will return to their respective positions in the Litigation if more than 5% of the Settlement Class Members properly and timely opt out of the Settlement in accordance with Section 11 of this Agreement.

16.4.    If the Settlement Agreement is terminated as provided herein, the Settlement shall be null and void from its inception, and the Settling Parties will be restored to their respective positions in the Litigation as of the day prior to the date of the Preliminary Approval Order. In such event, the Parties shall move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Settlement Agreement, including any order certifying the Settlement Class for settlement purposes. Further, in such event, the terms and provisions of this Settlement Agreement will have no further force and effect with respect to the Settling Parties

- 37 -

and will not be used in the Litigation, or in any other proceeding for any purpose, shall not be deemed or construed to be an admission or confession by the Parties of any fact, matter, or proposition of law, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, nunc pro tunc.

## 17. MISCELLANEOUS PROVISIONS

17.1.    The Settling Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

17.2.    The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The amounts paid are to compromise the Claimants' claims for damages and the amounts paid represent the Claimants' compensation for such alleged damages.

17.3.    Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of Intero.

17.4.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

DocuSign Envelope ID: 168974C8-5B71-46A7-AB5F-DEFD4C68D24A

17.5.    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

17.6.    This Agreement may be amended or modified only by a written instrument signed by or on behalf of Plaintiffs and Intero or their respective successors-in-interest. Any material changes must be approved by the Court.

17.7.    This Agreement and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein. Except as otherwise provided herein, no Settling Party shall be responsible for paying fees, expenses, or other costs incurred by any other Settling Party.

17.8.    This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

17.9.    No party shall file any materials with the Court in support of the settlement that are inconsistent with the terms of this Settlement Agreement.

17.10.  The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

17.11.  None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Settling Party as the drafter thereof.

17.12.  The Settlement shall be governed by the laws of the State of California, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

17.13.  The following principles of interpretation apply to the Agreement: (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successors-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

17.14.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Final Approval Order and Judgment are entered.

17.15.  The Parties may execute this Settlement Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument. Electronic copies of the executed Settlement Agreement shall be considered an original and may be relied upon as such.

17.16.  All members of the Settlement Class shall be responsible for paying any and all federal, state, and local taxes, if any, due on the payments made to them under this Settlement Agreement. No opinion concerning the tax consequences of the proposed settlement to members of the Settlement Class or anyone else is given or will be given by the Parties or the Parties' counsel.

17.17.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties to this Settlement Agreement, Class Counsel, and the members of the Settlement Class,

and their respective heirs, predecessors, successors, and assigns. Nothing herein shall prevent Intero from assigning its rights and obligations.

17.18. All notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by email and mail to the following addresses:

17.19. All notices to Class Counsel shall be sent to Class Counsel, c/o:

> Sabita J. Soneji
> TYCKO & ZAVAREEI LLP
> 1970 Broadway, Suite 1000
> Oakland, CA 94612
>
> Michael R. Reese
> REESE LLP
> 100 West 93rd Street, 16th Floor
> New York, New York 10025
>
> Counsel for Plaintiff Ruby Mitchell, Edward J. Kelly, and the Class

17.20. All notices to Defense Counsel shall be sent to Defense Counsel, c/o:

> Tomio B. Narita
> SIMMONDS & NARITA LLP
> 44 Montgomery Street, Suite 3010
> San Francisco, California 94104-4816
>
> Counsel for Intero

17.21. The notice recipients and addresses designated above may be changed by written agreement of Plaintiffs and Intero.

17.22. Upon request, the Parties agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.

**On Behalf of Defendant Intero Real Estate Services:**

Dated: _____        By:    _____

                                    Name: _____

                                    Title: _____


**On Behalf of Plaintiffs and the Settlement Class:**

Dated: 10/26/2021                   By:    _____
                                           *Ruby Mitchell*
                                           6936C4C27A1640B...

                                    Ruby Mitchell

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: 10/26/2021                   By:    _____
                                           *Edward John Kelly*
                                           21B771A5DE4E436...

                                    Edward J. Kelly


**Approved as to form and content:**

For Plaintiffs Ruby Mitchell and Edward J.          For Intero Real Estate Services:
Kelly and the Class:

TYCKO & ZAVAREEI LLP                                SIMMONDS & NARITA LLP

By: _____

  Sabita J. Soneji                                  By: _____
  Email: ssoneji@tzlegal.com                          Tomio B. Narita
  1970 Broadway, Suite 1000                           Email: tnarita@snllp.com
  Oakland, California 94612                            R. Travis Campbell
                                                      Email: tcampbell@snllp.com
                                                      Margaret T. Cardasis
  REESE LLP                                           mcardasis@snllp.com
                                                      44 Montgomery Street, Suite 3010
  By: _____                   San Francisco, California 94104-4816
  Michael R. Reese
  100 West 93rd Street, 16th Floor
  New York, New York 10025


- 42 -

**On Behalf of Defendant Intero Real Estate Services:**

Dated: _____10/27/21_____     By: _____

Name: _____ Brian Crane

Title: _____ CEO

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _____     By: _____

Ruby Mitchell

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _____     By: _____

Edward J. Kelly

**Approved as to form and content:**

For Plaintiffs Ruby Mitchell and Edward J.
Kelly and the Class:
TYCKO & ZAVAREEI LLP

By: _____
    Sabita J. Soneji
    Email: ssoneji@tzlegal.com
    1970 Broadway, Suite 1000
    Oakland, California 94612

    REESE LLP

By: _____
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025

For Intero Real Estate Services:

SIMMONDS & NARITA LLP

By: _____
    Tomio B. Narita
    Email:  tnarita@snllp.com
    R. Travis Campbell
    Email:  tcampbell@snllp.com
    Margaret T. Cardasis
    mcardasis@snllp.com
    44 Montgomery Street, Suite 3010
    San Francisco, California 94104-4816

- 42 -

# Exhibit 1

**<u>Claim Form</u>**

Name:

Address:

Contact Phone Number:

Email Address:

Unique Identification Number:

I regularly used the following telephone numbers for residential purposes between September 13, 2014 and December 19, 2019:

_____     _____     _____

_____     _____     _____


I declare under penalty of perjury that the information provided above is true and correct.

Date: _____

Signature: _____

# Exhibit 2

**What is the lawsuit about?**    The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant"), through its agents, violated the Telephone Consumer Protection Act ("TCPA") by calling the Plaintiffs and as many as 37,962 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. The TCPA entitles consumers who prove they received calls that violate the Act to receive money and a court order to stop calls. Intero denies that it did anything wrong. **The Court has not decided who is right.**

**A settlement has been proposed to resolve this class action lawsuit.** Intero has agreed to pay each Settlement Class Member who submits a valid Claim **$350**. You may be a Settlement Class Member if your telephone number was on the National Do Not Call Registry for at least 31 days, and you received marketing calls placed through Mojo Dialing Solutions, LLC, by a specific list of real estate agents promoting Intero's services between September 13, 2014 and December 19, 2019.  **You received this notice because call records indicate you may be a Settlement Class Member.**

**How do I make a claim?**  Your Unique Identification Number is [insert number].  You may make a Claim for settlement relief by: (1) filling out, signing, and mailing this Claim Form back; or (2) submitting a Claim online at [insert website]; or (3) calling [insert hotline phone number] and providing information requested by the Settlement Administrator.

**The deadline to file a Claim is [insert date].**  If you make a Claim, you give up the right to sue separately for damages.

**The Settlement:** As part of the settlement, Intero may be required to pay service awards to Class Representatives who pursued this litigation; pay attorneys' fees and costs to the lawyers who brought this lawsuit; and pay Notice and Administration Costs.  Plaintiffs will request service awards of up to $5,000 each, and up to $2,775,000 in attorneys' fees and costs. You may find additional details about the Settlement at [insert website] or by calling [insert hotline phone number].

**Do I have a lawyer?** Yes.  The Court appointed Tycko & Zavareei LLP, Reese LLP and Bailey & Glasser, LLP as counsel for the Settlement Class, to be paid by Intero.  Or you may appear through an attorney at your own expense.

**What are your other options?** If you do not want to be legally bound by the Settlement, you must exclude yourself by [insert date] or exclude yourself from any claim you may have as more fully described in the Settlement Agreement, available at the Settlement Website. You may remain a Settlement Class Member and object to the Settlement by [insert date]. The website explains how to exclude yourself or object.

**Final Approval Hearing.** The Court has scheduled a hearing for [insert date] at [insert time] in Courtroom __ of the U.S. District Court for the Northern District of California, San Jose Division. At that time, it will decide whether to give Final Approval to the Settlement. The hearing may be changed without notice. It is not necessary for you to appear at this hearing, but you may attend at your own expense.

[web address]   •   [toll-free number]

Mitchell et. al v. Intero Real Estate
Services Class Action Administrator
PO Box XXXX
Portland, OR 97208-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO. 2882

**Court-Ordered Legal Notice**
*Mitchell, et al. v. Intero Real Estate Services, Case No. 5:18-cv-05623-BLF*

**Records obtained in this lawsuit show that you may have received calls promoting Intero Real Estate Services at a telephone number on the National Do Not Call Registry between September 13, 2014 and December 19, 2019. As a result, you may be a Settlement Class Member of a pending class action lawsuit.**

Important Notice about a
Class Action Lawsuit



**John Q.
Public 123
Locust St.
Anytown, OH 00000-0000**

# Exhibit 3

To: [Class Member email address]
From: Intero Real Estate Calls Class Action Notice Administrator
Subject: Notice of Class Action Settlement Regarding Intero Real Estate Services

_____

**A Court has directed that this Notice be mailed to you. You are not being sued.**
***This Notice may affect your legal rights. Please read it carefully.***

**Records obtained in a pending class action lawsuit titled *Mitchell, et al. v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF (N.D. Cal.), indicate that you may have received phone calls promoting Intero Real Estate Services at a telephone number registered on the National Do Not Call Registry between September 13, 2014 and December 19, 2019. As a result, you may be a Settlement Class Member in this case.**

**What is the lawsuit about?** The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant"), through its agents, violated the Telephone Consumer Protection Act ("TCPA") by calling Plaintiffs and as many as 37,962 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. The TCPA entitles consumers who prove they received illegal calls to recover money damages and get a court order stopping the calls. Intero denies that it did anything wrong. **The Court has not decided who is right.**

**A settlement has been proposed to resolve this class action lawsuit.** Intero has agreed to pay each Settlement Class Member who submits a valid Claim **$350**. You may be a Settlement Class Member if your telephone number was on the National Do Not Call Registry for at least 31 days, and you received marketing calls placed through Mojo Dialing Solutions, LLC, by a specific list of real estate agents promoting Intero's services between September 13, 2014 and December 19, 2019. **You received this notice because call records indicate you may be a Settlement Class Member.**

## CLICK HERE TO SUBMIT A CLAIM

**How do I make a claim?** Your Unique Identification Number is [insert number]. You may make a Claim for settlement relief by: (1) submitting a Claim online at [insert website]; (2) calling [insert hotline phone number] and providing information requested by the Settlement Administrator; or (3) if you received a postcard, filling out, signing and mailing the Claim Form to [insert administrator address].

**The deadline to file a Claim is [insert date].** If you make a Claim, you give up the right to sue separately for damages.

**The Settlement:** As part of the settlement, Intero may be required to pay service awards to Class Representatives who pursued this litigation; pay attorneys' fees and costs to the lawyers who brought this lawsuit; and pay Notice and Administration Costs. Plaintiffs will request service awards of up to $5,000 each, and up to $2,775,000 in attorneys' fees and costs. You may find additional details about the Settlement at [insert website] or by calling [insert hotline phone number].

**Do I have a lawyer?** Yes. The Court appointed Tycko & Zavareei LLP, Reese LLP and Bailey & Glasser, LLP as counsel for the Settlement Class, to be paid by Intero. Or you may appear through an

attorney at your own expense.

**What are your other options?** If you do not want to be legally bound by the Settlement, you must exclude yourself by [insert date].  If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement Website.  You may remain a Settlement Class Member and object to the Settlement by [insert date].  The website explains how to exclude yourself or object.

**Final Approval Hearing.**  The Court has scheduled a hearing for [insert date] at [insert time] in Courtroom 3 of the U.S. District Court for the Northern District of California, San Jose Division. At that time, it will decide whether to give Final Approval to the Settlement.  The hearing may be changed without notice.  It is not necessary for you to appear at this hearing, but you may attend at your own expense.

**More information** is available at [insert website] or by calling toll-free insert hotline phone number.

Exhibit 4

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*Mitchell, et al. v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF (N.D. Cal.)

# If you received phone calls promoting Intero Real Estate Services at a telephone number registered on the National Do Not Call Registry between September 13, 2014 and December 19, 2019, you may be entitled to benefits under a class action settlement.

*A court authorized this notice. This is not a solicitation.*

- The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant"), through its agents, violated the Telephone Consumer Protection Act ("TCPA") by calling Plaintiffs and as many as 37,962 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. The TCPA entitles consumers who prove they received illegal calls to recover money damages and get a court order stopping the calls. Intero denies that it did anything wrong. The Court has not decided who is right.

- If the Court approves the parties' settlement, Intero has agreed to pay each Settlement Class Member who submits a valid Claim **$350**. You may be a Settlement Class Member if your telephone number was on the National Do Not Call Registry for at least 31 days, and you received marketing calls placed through Mojo Dialing Solutions, LLC, by a specific list of real estate agents promoting Intero's services between September 13, 2014 and December 19, 2019.

- If the Court approves the parties' settlement, Intero may be required to pay service awards to Class Representatives who pursued this litigation; pay attorneys' fees and costs to the lawyers who brought this lawsuit; and pay Notice and Administration Costs. Plaintiffs will request service awards of up to $5,000 each, and up to $2,775,000 in attorneys' fees and costs. These payments will not reduce the amount of relief available to Settlement Class Members.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM BY:** _____ | This is the only way to get money as part of this Settlement.  You may make a Claim for settlement relief by: (1) submitting a Claim online at [insert website]; (2) calling [insert hotline phone number] and providing information requested by the Settlement Administrator; or (3) if you received a postcard, filling out, signing and mailing the Claim Form to [insert administrator address]. |
| **DO NOTHING** | If you are a Settlement Class Member and do nothing, you will not receive any money as part of the Settlement. You also will never be able to sue Intero separately over the legal claims in this lawsuit and will be bound by any judgment. |

| **ASK TO BE EXCLUDED FROM THE SETTLEMENT BY: _____** | If you are a Settlement Class Member and you request to be excluded from the Settlement, you won't be eligible to receive any money, but you will keep any rights to sue Intero separately over the legal claims in this lawsuit. |
|---|---|
| **OBJECT TO THE SETTLEMENT BY: _____** | If you are a Settlement Class Member and you would like to object to the Settlement, you must submit your objection in writing to the Court.  Even if you file a valid and timely objection, you can still submit a claim for money. |

- Your rights and options are explained in this notice and must be exercised by **[DATE]**.  The Court has scheduled a hearing for [insert date] at [insert time] in Courtroom 3 of the U.S. District Court for the Northern District of California, San Jose Division. At that time, it will decide whether to give Final Approval to the Settlement.  The hearing may be changed without notice.  It is not necessary for you to appear at this hearing, but you may attend at your own expense.

- Payments will be made on valid and timely claims if the Court approves the Settlement and after any appeals are resolved.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** .................................................................................................... PAGE 4
    1.  Why was this notice issued?
    2.  What is this class action about?
    3.  Why is there a settlement?

**WHO IS IN THE SETTLEMENT?** ..................................................................................... PAGE 4
    4.  How do I know if I am a Settlement Class Member?

**WHAT DOES THE SETTLEMENT PROVIDE?** .................................................................. PAGE 5
    5.  What am I eligible to get?

**HOW CAN I GET SETTLEMENT RELIEF?** ..................................................................... PAGE 5
    6.  How do I make a Claim for Settlement Relief?

**YOUR RIGHTS AND OTHER OPTIONS** ......................................................................... PAGE 5
    7.  What happens if I do nothing?
    8.  How do I exclude myself from the Settlement?
    9.  How do I object to the Settlement?

**THE LAWYERS REPRESENTING THE SETTLEMENT CLASS** ............................................. PAGE 6
    10.  Do I have a lawyer in this case?
    11.  How will the Class Counsel be paid?

**THE COURT'S FINAL APPROVAL HEARING** ................................................................. PAGE 7
    12.  When and where will the Court decide whether to approve the Settlement?
    13.  May I appear and speak at the Final Approval Hearing?

**GETTING MORE INFORMATION**.................................................................................................**PAGE 7**

    14.  Where can I get more information?

    15.  How do I access the Court's case docket through PACER?

# BASIC INFORMATION

## 1. Why was this notice issued?

The Court (as defined below) has authorized this Notice to let you know about a proposed Settlement of a class action lawsuit that may affect you. You have legal rights and options that you may exercise, as explained in this Notice, before the Court decides whether to approve the Settlement.  If the Court approves the Settlement and after any appeals are resolved, an administrator appointed by the Court will make payments as provided by the Settlement.  Because your rights may be affected by this Settlement, it is important that you read this Notice carefully.

If you received a Notice by email or mail, it is because records obtained in this case indicate that you may have received phone calls promoting Intero Real Estate Services ("Intero" or "Defendant") at a telephone number registered on the National Do Not Call Registry between September 13, 2014 and December 19, 2019.  As a result, you may be a Settlement Class Member.

Judge Beth Labson Freeman of the United States District Court for the Northern District of California (the "Court"), is currently overseeing the case. The case is known as *Mitchell, et al. v. Intero Real Estate Services,* Case No. 5:18-cv-05623-BLF (N.D. Cal.). The persons who sued are called the Plaintiffs. The company the Plaintiffs are suing, Intero, is called the Defendant.

## 2. What is this class action about?

In a class action, a person called the "Class Representative" (in this case, Ruby Mitchell and Edward J. Kelly) sues on behalf of a group (or groups) of people who have similar claims. Together, the Class Representatives and others with similar claims are all "Class Members" and are all part of the same "Class." One Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

The lawsuit claims that Intero Real Estate Services ("Intero" or "Defendant"), through its agents, violated the Telephone Consumer Protection Act ("TCPA") by calling Plaintiffs and as many as 37,962 others to solicit real estate business at telephone numbers registered on the National Do Not Call Registry. The TCPA entitles consumers who prove they received illegal calls to recover money damages and get a court order stopping the calls. Intero denies that it did anything wrong. **The Court has not decided who is right.**

## 3. Why is there a settlement?

The Court did not decide in favor of the Class Representatives or Intero.  Both sides agreed to a settlement instead of going to trial. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

# WHO IS IN THE SETTLEMENT?

## 4. How do I know if I am a Settlement Class Member?

The Court has decided that everyone who fits the following description is a Settlement Class Member:

All persons in the United States who: (a) received two or more calls on their residential telephone number (b) that had a duration of more than zero seconds; (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker (as reflected in the records maintained by the California Department of Real Estate ("DRE")); (d) promoting the purchase of Intero's goods or services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, Inc, the call records for which appear in one of 35 account files, identified in Appendix A to the Court's order granting class certification in the Litigation; (f) within a

12-month period; (h) whose telephone number(s) were on the NDNCR for at least 31 days prior to the calls; and (i) at any time since September 13, 2014.

**Note: Only calls made by certain Intero agents using the Mojo dialing service are included in this case.** You may have been called by other Intero agents or by Intero agents who did not use Mojo to call you; those calls are not part of this class action.

More information about the Settlement Class is available at [insert website] or by calling toll-fee [insert hotline phone number].

## WHAT DOES THE SETTLEMENT PROVIDE?

### 5. What am I eligible to get?

Intero has agreed to pay each Settlement Class Member who submits a valid Claim **$350**.

As part of the settlement, if approved by the Court, Intero may be required to pay service awards to Class Representatives who pursued this litigation; pay attorneys' fees and costs to the lawyers who brought this lawsuit; and pay Notice and Administration Costs. Plaintiffs will request service awards of up to $5,000 each, and up to $2,775,000 in attorneys' fees and costs. These payments will not reduce the amount of relief available to Settlement Class Members. You may find additional details about the Settlement at [insert website] or by calling [insert hotline phone number].

## HOW CAN I GET SETTLEMENT RELIEF?

### 6. How do I make a Claim for Settlement Relief?

You may make a Claim for Settlement Relief by: (1) submitting a Claim online at [insert website]; (2) calling [insert hotline phone number] and providing information requested by the Settlement Administrator; or (3) if you received a postcard, filling out, signing and mailing the Claim Form to [insert administrator address].

You will need your Unique Identification Number and the telephone number at which you received the calls to submit a Claim.  You can find your Unique Identification Number on the Postcard Notice and/or Email Notice you were sent.

## YOUR RIGHTS AND OTHER OPTIONS

If you are a Settlement Class Member, you must decide whether to stay in the Settlement Class or whether to exclude yourself by no later than **[DATE]**.

### 7. What happens if I do nothing?

If you are a Settlement Class Member and do nothing, you will stay in the Settlement Class.  If you stay in the Settlement Class, you will be bound by the Release in the Settlement.  That means that, if the Settlement is approved, you can't sue, continue to sue, or be a part of any other lawsuit against Intero and other released persons that relates to or arises out of calls that were placed through the dialing platform provided by Mojo Dialing Solutions, Inc., the calling records for which appear in one of 35 accounts, identified in Appendix A to the Court's Order Granting Class Certification.

### 8. How do I exclude myself from the Settlement?

If you exclude yourself from the Settlement Class—sometimes called "opting out" of the Settlement Class—you won't get any money from and cannot object to this Settlement.  However, you will be able to separately start your own lawsuit against, or continue to separately sue, Intero for the calls at issue in this case. If you exclude yourself, you will not be legally bound by the Settlement or the Court's judgment in this class action.

To exclude yourself from the Settlement Class, you must send a letter with the following information:
- Your name and address;
- The phone number(s) at which you received Intero calls between September 13, 2014 and the present;
- A statement that you wish to be excluded from the Class in *Mitchell, et al. v. Intero Real Estate Services*, Case No. 5:18-cv-05623-BLF (N.D. Cal.); and
- Your signature.

You must mail your exclusion request postmarked by **[DATE]**, to:

[insert class administrator address]

| 9. How do I object to the Settlement? |
| --- |

If you are a Settlement Class Member and do not exclude yourself from the Settlement, you can object to the Settlement, or any part of it.  You can state the reasons you think the Court should not approve the Settlement, and the Court will consider your reasons.

To object, you must file a written statement with the Court saying that you object to the proposed Settlement in *Mitchell, et al. v. Intero Real Estate Services*, Case No. 5:18-cv-05623-BLF (N.D. Cal.). To be valid, your objection must include: 1) your name, address, and telephone number; 2) the telephone number at which you received calls on behalf of Intero; 3) if represented by an attorney, the name, address, and telephone number of the attorney; 4) the basis for your objection to the Settlement; and 5) a statement of whether you intend to appear at the Final Approval Hearing, either with or without an attorney.  Any documents that you would like the Court to consider must also be attached to your objection.

Your written objection must be filed no later than: **[DATE]**. You must mail your objection to:

Clerk of the Court
280 South 1st Street, Room 2112
San Jose, CA 95113

## THE LAWYERS REPRESENTING THE SETTLEMENT CLASS

| 10. Do I have a lawyer in this case? |
| --- |

Yes, if you are a Settlement Class Member. The Court appointed the law firms of Tycko & Zavareei LLP, Reese LLP, and Bailey & Glasser, LLP to represent all Settlement Class Members in this case. They are called "Class Counsel." They are experienced in handling similar class action cases.

You do not need to hire your own lawyer because Class Counsel is working on your behalf. You do not have to pay Class Counsel out of your own pocket.

You may seek the advice and guidance of your own lawyer, if you wish, at your own expense.

You can contact Class Counsel by filling out a contact form on the Case Website at [WEB ADDRESS] or by calling 1-xxx-xxx-xxxx.

| 11. How will the Class Counsel and Class Representatives be paid? |
| --- |

Class Counsel will ask the Court to approve an award attorneys' fees and costs of up to $2,775,000 to compensate them for the work they've done in connection with this case.  Class Counsel will also request service awards of up to $5,000 each for the Class Representatives, as compensation for their time and effort.  Intero may object to these amounts and the Court may award less.  Intero has agreed to pay Class Counsel's attorneys' fees and costs (up to $2,775,000), the service awards (up to $5,000), and the Notice and Administration Costs, as approved by the Court. These payments will not reduce the amount of relief available to Settlement Class Members.

# THE COURT'S FINAL APPROVAL HEARING

## 12. When and where will the Court decide whether to approve the Settlement?

The Court will hold a hearing (the Final Approval Hearing) to decide whether to approve the Settlement.  The Final Approval Hearing will be held on [insert date] at [insert time] in Courtroom 3 of the U.S. District Court for the Northern District of California, San Jose Division.  The hearing may be held virtually and may be moved to different date or time without additional notice.  You may check the Settlement Website [insert website], the Court's PACER website [insert website], or Judge Freeman's calendar [insert website] for updates.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and whether to award Class Counsel attorneys' fees, costs, and service awards to the Class Representatives, as described above, and in what amounts.  If there are objections to the Settlement, the Court will consider them.  At or after the hearing, the Court will decide whether to approve the Settlement.  We do not know how long it will take the Court to issue its decision.

## 13. May I appear and speak at the Final Approval Hearing?

**You do not have to come to the Final Approval Hearing**.  You may attend, however, at your own expense with or without an attorney.  However, any Settlement Class Member who fails to object to the Settlement in the manner described in Section 9 above will not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and will not be permitted to appeal the Court's decision.

If you filed a timely objection in the manner describe in Section 9 above, you may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must file a written notice with the Court of your intention to appear at the Final Approval Hearing.  The notice must include: 1) your full name, address, and telephone number; and 2) copies of any papers, exhibits or other evidence that you intend to present to the Court in connection with the hearing.

Your written notice of intention to appear must be filed no later than: **[DATE]**. You must mail your notice of intention to appear to:

Clerk of the Court<br>
280 South 1st Street, Room 2112<br>
San Jose, CA 95113

# GETTING MORE INFORMATION

## 14. Where can I get more information?

The Settlement Website at [insert website] contains several court documents that provide additional information about this case, including the Settlement Agreement, the First Amended Class Action Complaint filed by the Plaintiffs, and Intero's Answer and Defenses, and the Court's Order Granting Preliminary Approval of the Settlement.  This website will be updated with the most current information about the lawsuit as it becomes available.

You may also call the Settlement Administrator toll free at [==insert hotline==] or write to [==insert settlement administrator==]

You may call or Class Counsel at 1-xxx-xxx-xxxx, if you have any questions. Before doing so, however, please read this full Notice carefully.

**Intero personnel, Intero agents, and Intero counsel are NOT authorized to discuss this case with you. Please do NOT call Intero about this case. Please direct all inquiries to Class Counsel or the Settlement Administrator.**

## 15. How do I access the Court's case docket through PACER?

PACER is available to anyone who registers for an account.  Sign up for one using the online registration process, at https://pacer.uscourts.gov/register-account.   You will be asked to provide your name, address, phone number, email address and date of birth.  For immediate access to court records, provide a credit card during registration. If you do not provide a credit card, an activation code will be sent by U.S. mail to the address you provided on the registration form. Please allow 7-10 business days for mail delivery.

There is no registration fee.  However, the Judicial Conference of the United States has established a fee for access to PACER.  Generally, documents cost $0.10 per page, but if your usage is less than $30 in a quarter, fees are waived.

To access the Court's docket in this case, log in to PACER at https://ecf.cand.uscourts.gov/cgi-bin/login.pl, using the Login name and password you obtained during the registration process.  Once logged in, click on "Query" at the top of the screen.  In the "Case Number" box, type in "5:18-cv-05623" click "Find this Case," and then click "Run Query."  Click "Docket Report," then click "Run Report." The Docket Report lists all the docket entries in the case.  If you know the date range or the document number(s) you are interested in, make the appropriate entries in the boxes; this will make the Docket Report shorter, and therefore less expensive to view.  When you view the docket report, you will see the titles of the documents that have been filed in the case, and you can then click on documents you would like to access.

# Exhibit 5

To: [Class Member email address]
From: Intero Real Estate Calls Class Action Notice Administrator
Subject: Notice of Class Action Regarding Intero Real Estate Services

_____

**A Court has directed that this Notice be mailed to you. You are not being sued.**

**On or about December 30, 2020, you received notice of a pending class action lawsuit titled *Chinitz v. Intero Real Estate Services*, No. 5:18-cv-05623-BLF (N.D. Cal.), stating that you may be a member of a class of persons who received phone calls promoting Intero Real Estate Services at a telephone number registered on the National Do Not Call Registry between September 13, 2014 and December 19, 2019.  A Settlement has been proposed to resolve this lawsuit.  We're notifying you that, according to records obtained in this lawsuit, you are not a member of the proposed Settlement Class.**

**More information** is available at [insert website] or by calling toll-free insert hotline phone number.

# EXHIBIT B



# Firm Resume

Jonathan Tycko and Hassan Zavareei founded Tycko & Zavareei LLP in 2002 when they left a large national firm to form a private public interest law firm. Since then, a wide range of clients have trusted the firm with their most difficult problems. Those clients include individuals fighting for their rights, tenants' associations battling to preserve decent and affordable housing, consumers seeking redress for unfair business practices, whistleblowers exposing fraud and corruption, and non-profit entities and businesses facing difficult litigation.

The firm's practice focuses on complex litigation, with a particular emphasis on consumer and other types of class actions, and *qui tam* and False Claims Act litigation. In its class action practice, the firm represent consumers who have been victims of corporate wrongdoing. The firm's attorneys bring a unique perspective to such litigation because many of them trained at major national defense firms where they obtained experience representing corporate defendants in such cases. This unique perspective enables the firm to anticipate and successfully counter the strategies commonly employed by corporate counsel defending class action litigation. Tycko & Zavareei LLP's attorneys have successfully obtained class certification, been appointed class counsel, and obtained approval of class action settlements with common funds totaling over $500 million.

Tycko & Zavareei LLP's sixteen attorneys graduated from some of the nation's finest law schools, including Harvard Law School, Columbia Law School, Duke University School of Law, UC Berkeley School of Law, Georgetown Law, and the University of Michigan Law School. They have served in prestigious clerkships for federal and state trial and appellate judges and have worked for low-income clients through competitive public interest fellowships. The firm's diversity makes it a leader amongst its peers, and the firm actively and successfully recruits attorneys who are women, people of color, and LGBTQ. To support its mission of litigating in the public interest, Tycko & Zavareei LLP offers a unique public interest fellowship for recent law graduates. Tycko & Zavareei LLP's attorneys practice in state and federal courts across the nation.

## Representative Cases

*Vergara v. Uber Technologies, Inc.*, **No. 1:15-cv-06972 (N.D. Ill.).** Tycko & Zavareei LLP served as Co-Lead Counsel in this case under the Telephone Consumer Protection Act, in which he obtained a class settlement of $20 million.

*In re Fifth Third Early Access Cash Advance Litigation*, **No. 1:12-cv-00851 (S.D. Ohio).** Tycko & Zavareei LLP was appointed Co-Lead Counsel in these consolidated payday lending cases, which are in discovery after a successful appeal before the Sixth Circuit.

*Farrell v. Bank of America, N.A.*, **No. 16-cv-00492 (S.D. Cal.).** As Co-Lead Counsel, Tycko & Zavareei LLP obtained a settlement valued at $66.6 million plus injunctive relief valued at $1.2 billion.

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, **No. 15-mn-02613 (D.S.C.).** Tycko & Zavareei LLP serves on the Plaintiffs Executive Committee in this case challenging TD Bank's overdraft fee practices. Tycko & Zavareei LLP assisted in obtaining a $70 million class settlement.

*In re Higher One Account Marketing & Sales Practices Litigation*, **No. 12-md-02407 (D. Conn.).** As Lead Counsel, Tycko & Zavareei LLP helped secure a $15 million common fund settlement with significant changes to business practices for illegal debit card fees.

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



*Duval v. Citizens Financial Group, Inc.*, **No. 10-cv-21080 (S.D. Fla.).** Tycko & Zavareei LLP was appointed Class Counsel and obtained a common fund settlement of $137.5 million.

*In re American Psychological Association Assessment Fee Litigation*, **No. 10-cv-01780 (D.D.C.).** Tycko & Zavareei LLP served as Co-Lead Counsel in this case challenging the APA's deceptive fee practices, and achieved a $9.02 million common fund settlement for the class.

*Lloyd v. Navy Federal Credit Union*, **No. 17-cv-1280 (S.D. Cal.).** As Co-Lead Counsel, Tycko & Zavareei LLP helped secure a $24.5 million common fund settlement on behalf of a class of NFCU customers harmed by the credit union's overdraft fee practices.

*Morgan v. Apple, Inc.*, **No. 17-cv-5277 (N.D. Cal.),** *Simmons v. Apple Inc.,* **No. 17CV312251 (Sup. Ct. Ca., Santa Clara Cty.).** Tycko & Zavareei LLP is currently serving as Lead Counsel in this class action challenging Apple's deceptive marketing of Powerbeats headphones and secured a $9.75 million settlement for the class, which is pending preliminary approval.

*Wallace v. Wells Fargo Bank, N.A.*, **No. 17CV31775 (Sup. Ct. Ca., Santa Clara Cty.).** Tycko & Zavareei LLP serve as Co-Lead Counsel in this case against Wells Fargo's overdraft fee practices. Tycko & Zavareei LLP recently moved for preliminary approval of a $10.5 million common fund class settlement.

*Roberts v. Capital One Financial Corporation*, **No. 16-cv-04841 (S.D.N.Y.).** As Co-Lead Counsel, Tycko & Zavareei LLP helped secure a $17 million settlement on behalf of Capital One customers forced to pay excessive overdraft fees.

*Hawkins v. First Tennessee Bank, N.A.*, **No. CT-0040851-11 (Cir. Ct. Shelby Cty. Tenn.).** As Co-Lead Counsel, Tycko & Zavareei LLP helped obtain a class settlement of $16.75 million on behalf of bank customers harmed by First Tennessee's predatory overdraft fees.

*Mascaro v. TD Bank, N.A.*, **No. 10-cv-21117 (S.D. Fla.).** Tycko & Zavareei LLP was appointed Class Counsel and was instrumental in obtaining a $62 million common fund on behalf of the class.

*Trombley v. National City Bank*, **No. 10-cv-00232 (D.D.C.).** Tycko & Zavareei LLP served as Lead Counsel and obtained a $12 million common fund settlement on behalf of a class of consumers.

*Taulava v. Bank of Hawaii*, **No. 11-1-0337-02 (Cir. Ct. of 1st Cir., Haw.).** As Co-Lead Counsel, Tycko & Zavareei LLP obtained a $9 million common fund for a class of customers who were harmed by Bank of Hawaii's overdraft fee practices.

*Bodnar v. Bank of America, N.A.*, **No. 14-cv-3224 (E.D. Pa.).** Tycko & Zavareei LLP served as lead Counsel and obtained a $27.5 million class settlement and significant injunctive relief.

*Lambert v. Navy Federal Credit Union*, **No. 19-cv-00103 (E.D. Va.).** Tycko & Zavareei LLP was appointed Class Counsel and helped secure a $16 million settlement on behalf of members of Navy Federal Credit Union who were harmed by the credit union's practice of assessing a second or third NSF Fee upon re-presentment of debit items or checks.

*Hamm v. Sharp Electronics Corp.*, **No. 19-cv-488 (M.D. Fla.).** Tycko & Zavareei LLP was appointed Co-Lead Counsel and was instrumental in providing relief valued at $109 million for class members exposed to a product defect in certain Sharp Microwave Drawer Ovens.

*Gibbs v. TCV V, LP & Gibbs v. Rees*, **Nos. 19-cv-789 & 20-cv-717 (E.D. Va.).** Tycko & Zavareei LLP was named class counsel in one of, if not, the largest unlawful tribal payday lending schemes. Thus far, class counsel has been able to obtain a settlement fund over $60 million as well as the cancellation of $380 million in loans.

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808





# Hassan A. Zavareei

## Partner

202.973.0900
hzavareei@tzlegal.com

Mr. Zavareei has devoted the last eighteen years to recovering hundreds of millions of dollars on behalf of consumers and workers. He has served in leadership roles in dozens of class action cases and has been appointed Class Counsel on behalf of numerous litigation and settlement classes. An accomplished and experienced attorney, Mr. Zavareei has litigated in state and federal courts across the nation in a wide range of practice areas; tried several cases to verdict; and successfully argued numerous appeals, including in the D.C. Circuit, the Fourth Circuit, and the Fifth Circuit.

After graduating from UC Berkeley School of Law, Mr. Zavareei joined the Washington, D.C. office of Gibson, Dunn & Crutcher LLP. There, he managed the defense of a nationwide class action brought against a major insurance carrier, along with other complex civil matters. In 2002, Mr. Zavareei founded Tycko & Zavareei LLP with his partner Jonathan Tycko.

Mr. Zavareei has served as lead counsel or co-counsel in dozens of class actions involving deceptive business practices, defective products, and/or privacy. He has been appointed to leadership roles in multiple cases. As Lead Counsel in an MDL against a financial services company that provided predatory debit cards to college students, Mr. Zavareei spearheaded a fifteen-million-dollar recovery for class members. He is currently serving as Co-Lead Counsel in consolidated proceedings against Fifth Third Bank, and on the Plaintiffs' Executive Committee in MDL litigation against TD Bank. As Co-Lead Counsel in *Farrell v. Bank of America*, a case challenging Bank of America's punitive overdraft fees, Mr. Zavareei secured a class settlement valued at $66.6 million in cash and debt relief, together with injunctive relief forcing the bank to change a practice that will save millions of low-income consumers approximately $1.2 billion in overdraft fees. In his Order granting final approval, Judge Lorenz of the U.S. District Court for the Southern District of California described the outcome as a "remarkable" accomplishment achieved through "tenacity and great skill."

### Education

UC Berkeley School of Law, 1995
*Order of the Coif*

Duke University, 1990
*cum laude*

### Bar Admissions

California
District of Columbia
Maryland
Supreme Court of the United States

### Memberships

Public Justice, Board Member
American Association for Justice

### Awards

Washington Lawyers Committee,
*Outstanding Achievement Award*

Super Lawyer

Lawdragon 500

### Presentations & Publications

Witness Before the Subcommittee on the Constitution and Civil Justice, 115th Congress

Witness Before the Civil Rules Advisory Committee, 2018, 2019

Editor, Duke Law School Center for Judicial Studies, Guidance on New Rule 23 Class Action Settlement Provisions

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Jonathan Tycko

## Partner

202.973.0900
jtycko@tzlegal.com



In his 25 years of practice, Jonathan Tycko has represented a wide range of clients, including individuals, Fortune 500 companies, privately-held business, and non-profit associations, in both trial and appellate courts around the country.  Although he continues to handle a variety of cases, his current practice is focused primarily on helping whistleblowers expose fraud and corruption through qui tam litigation under the False Claims Act and other similar whistleblower statutes.  Mr. Tycko's whistleblower clients have brought to light hundreds of millions of dollars in fraud in cases involving healthcare, government contracts, customs and import duties, banking and tax.

Prior to founding Tycko & Zavareei LLP in 2002, Mr. Tycko was with Gibson, Dunn & Crutcher LLP, one of the nation's top law firms. He received his law degree in 1992 from Columbia University Law School, and earned a B.A. degree, with honors, in 1989 from The Johns Hopkins University. After graduating from law school, Mr. Tycko served for two years as law clerk to Judge Alexander Harvey, II, of the United States District Court for the District of Maryland.

In addition to his private practice, Mr. Tycko is an active participant in other law-related and community activities. He currently serves on the Conference Committee of the Taxpayers Against Fraud Education Fund, charged with planning the premier annual conference of whistleblower attorneys and their counterparts at the United States Department of Justice and other government agencies.  He has taught as an Adjunct Professor at the George Washington University Law School.  He is a former member and Chairperson of the Rules of Professional Conduct Review Committee of the District of Columbia Bar, where he helped draft the ethics rules governing members of the bar.  And Mr. Tycko is a member of the Board of Trustees of Studio Theatre, one of the D.C. area's top non-profit theaters.

Mr. Tycko is admitted to practice before the courts of the District of Columbia, Maryland and New York, as well as before numerous federal courts, including the Supreme Court, the Circuit Courts for the D.C. Circuit, Third Circuit, Fourth Circuit, Fifth Circuit, Seventh Circuit, Ninth Circuit, Eleventh Circuit and Federal Circuit, the District Courts for the District of Columbia and District of Maryland,  the Southern District of New York, the Northern District of New York, the Western District of New York, and the Court of Federal Claims.

### Education

Columbia University Law School, 1992

The Johns Hopkins University, 1989, *with honors*

### Bar Admissions

District of Columbia
Maryland
New York
Supreme Court of the United States

### Memberships

American Association for Justice (AAJ)

Public Justice

Taxpayers Against Fraud Education Fund (TAFEF)

### Awards

Stone Scholar (all three years), Columbia Law School

Thomas E. Dewey Prize for Best Brief, Harlan Fiske Stone Moot Court Competition, Columbia Law School

Award of Litigation Excellence, CARECEN-The Central American Resource Center

Super Lawyers, 2012-current

Member of the D.C. Bar Leadership Academy

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Andrea R. Gold

## Partner

202.973.0900
agold@tzlegal.com



Andrea Gold has spent her legal career advocating for consumers, employees, and whistleblowers. Ms. Gold has litigated numerous complex cases, including through trial. Her extensive litigation experience benefits the firm's clients in both national class action cases as well as in qui tam whistleblower litigation.

She has served as trial counsel in two lengthy jury trials.

In her class action practice, Ms. Gold has successfully defended dispositive motions, navigated complex discovery, worked closely with leading experts, and obtained contested class certification. Her class action cases have involved, amongst other things, unlawful bank fees, product defects, violations of the Telephone Consumer Protection Act, and deceptive advertising and sales practices.

Ms. Gold also has significant civil rights experience. She has represented individuals and groups of employees in employment litigation, obtaining substantial recoveries for employees who faced discrimination, harassment, and other wrongful conduct. In addition, Ms. Gold has appellate experience in both state and federal court.

Prior to joining Tycko & Zavareei LLP, Ms. Gold was a Skadden fellow. The Skadden Fellowship Foundation was created by Skadden, Arps, Slate, Meagher & Flom LLP, one of the nation's top law firms, to support the work of new attorneys at public interest organizations around the country.

Ms. Gold earned her law degree from the University of Michigan Law School, where she was an associate editor of the Journal of Law Reform, co-President of the Law Students for Reproductive Choice, and a student attorney at the Family Law Project clinical program. Ms. Gold graduated with high distinction from the University of Michigan Ross School of Business in 2001, concentrating her studies in Finance and Marketing.

## Education

University of Michigan Law School, 2004

University of Michigan, Ross School of Business, 2001

## Bar Admissions

District of Columbia
Illinois
Maryland

## Memberships

American Association for Justice

National Associate of Consumer Advocates

National Employment Lawyers Association

Public Justice

Taxpayers Against Fraud Education Fund

## Awards

National Trial Lawyers, Top 100 Civil Plaintiff Lawyers, 2020

Super Lawyers, Rising Star

Skadden Fellow, Skadden Arps Slate Meagher & Flom LLP, 2004-2006

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Anna Haac

## Partner

202.973.0900
ahaac@tzlegal.com



Anna C. Haac is a Partner in Tycko & Zavareei LLP's Washington, D.C. office. She focuses her practice on consumer protection class actions and whistleblower litigation. Her prior experience at Covington & Burling LLP, one of the nation's most prestigious defense-side law firms, gives her a unique advantage when representing plaintiffs against large companies in complex cases. Since arriving at Tycko & Zavareei LLP, Ms. Haac has represented consumers in a wide range of practice areas, including product liability, false labeling, deceptive and unfair trade practices, and predatory financial practices. Her whistleblower practice involves claims for fraud on federal and state governments across an equally broad spectrum of industries, including health care fraud, customs fraud, and government contracting fraud.

Ms. Haac has helped secure multimillion-dollar relief on behalf of the classes and whistleblowers she represents. Ms. Haac also serves as the D.C. Co-Chair of the National Association of Consumer Advocates and as Co-Chair of the Antitrust and Consumer Law Section Steering Committee of the D.C. Bar.

Ms. Haac earned her law degree cum laude from the University of Michigan Law School in 2006 and went on to clerk for the Honorable Catherine C. Blake of the United States District Court for the District of Maryland. Prior to law school, Ms. Haac graduated with a B.A. in political science with highest distinction from the Honors Program at the University of North Carolina at Chapel Hill.

Ms. Haac is a member of the District of Columbia and Maryland state bars. She is also admitted to the United States Court of Appeals for the Second, Third, and Fourth Circuits and the United States District Courts for the District of Columbia, District of Maryland, and the Eastern District of Michigan, among others.

### Education

University of Michigan Law School, 2006, *cum laude*

University of North Carolina at Chapel Hill, 2002, *highest honors*

### Bar Admissions

District of Columbia
Maryland

### Memberships

Antitrust & Consumer Protection Section of District of Columbia Bar, Co-Chair

National Association of Consumer Advocates, District of Columbia Co-Chair

### Awards

Super Lawyers, *Rising Star*, 2015

### Presentations & Publications

Discussion Leader, "Practical Ideas about Properly Framing the Issues and Educating the Court and Public in Filings Responding to Increasing Attacks on Class Action Settlements and Fees," Invitation-Only Cambridge Forum on Plaintiffs' Class Action Litigation (October 2020)

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Annick M. Persinger

## Partner

510.254.6808
apersinger@tzlegal.com



Annick M. Persinger leads Tycko & Zavareei LLP's California office as California's Managing Partner. While at Tycko & Zavareei LLP, Ms. Persinger has dedicated her practice to utilizing California's prohibitions against unfair competition and false advertising to advocate for consumers. Ms. Persinger has taken on financial institutions, companies that take advantage of consumers with deceptive advertising, tech companies that disregard user privacy, companies that sell defective products, and mortgage loan servicers. Ms. Persinger also represents whistleblowers who expose their employer's fraudulent practices.

Ms. Persinger graduated magna cum laude as a member of the Order of the Coif from the University of California, Hastings College of the Law in 2010. While in law school, Ms. Persinger served as a member of Hastings Women's Law Journal, and authored two published articles. In 2008, Ms. Persinger received an award for Best Oral Argument in the first year moot court competition. In 2007, Ms. Persinger graduated cum laude from the University of California, San Diego with a B.A. in Sociology, and minors in Law & Society and Psychology.

Following law school, Ms. Persinger worked as a legal research attorney for Judge John E. Munter in Complex Litigation at the San Francisco Superior Court.

Ms. Persinger served as an elected board member of the Bay Area Lawyers for Individual Freedom (BALIF) from 2017 to 2019, and as Co-Chair of BALIF from 2018 to 2019. During her term on the BALIF Board of Directors, Ms. Persinger advocated for LGBTQI community members with intersectional identities, and promoted anti-racism and anti-genderism. Ms. Persinger now serves as a Steering Committee member for the Cambridge Forum on Plaintiffs' Food Fraud Litigation.

### Education

University of California Hastings College of Law, 2010 *Magna Cum Laude,* Order of the Coif

University of California San Diego, 2007 *Cum Laude*

### Bar Admissions

California

### Memberships

American Association for Justice

Plaintiffs' Food Fraud Litigation, 2020 Steering Committee Member

Public Justice

### Awards

Super Lawyer, Rising Star 2020

UC Hastings, *Best Oral Argument* 2008

---

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Kristen G. Simplicio

## Partner

202.973.0900
ksimplicio@tzlegal.com



Kristen G. Simplicio has devoted her career to representing victims of false advertising and corporate fraud. Prior to joining Tycko & Zavareei LLP's D.C. office in 2020, she spent ten years at a boutique class action firm in California. While there, she successfully litigated over a dozen false advertising cases against manufacturers of a variety of consumer products, including olive oil, flushable wipes, beverages, and chocolate. In connection with this work, she helped to obtain millions of dollars in refunds to consumers, as well as changed practices.

In addition to her product labeling work, Ms. Simplicio has represented plaintiffs in a wide variety of areas. For example, she was the lead associate on RICO case on behalf of small business owners against 18 defendants in the credit card processing industry. In connection with that case, she obtained a preliminary injunction halting an illegal $10 million debt collection scheme, and later, helped to secure refunds and changed practices for the victims. She has also represented victims of other debt collectors, as well as those harmed by unlawful background and credit reporting, including a pro bono matter performed in conjunction with the Lawyers' Committee for Civil Rights of the San Francisco Bay Area. Ms. Simplicio also worked on a lawsuit against government agencies, which were charging unconstitutional fines and fees in connection with toll collection.

Ms. Simplicio graduated cum laude from American University, Washington College of Law in 2007. She holds a bachelor's degree from McGill University. She began her legal career at the United States Department of Labor, where she advised on regulations pertaining to group health insurance plans. Before and during law school, Ms. Simplicio worked for other plaintiffs' law firms.

Ms. Simplicio serves as the D.C. Co-Chair of the National Association of Consumer Advocates. She is admitted to practice in California and the District of Columbia.

### Education

American University, Washington College of Law, 2007 *cum laude*
McGill University, 1999

### Bar Admissions

California
District of Columbia

### Memberships

National Association of Consumer Advocates
American Association for Justice

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Sabita J. Soneji

## Partner

510.254.6808
ssoneji@tzlegal.com



In almost 20 years of practice, Sabita J. Soneji has developed extensive experience in litigation and legal policy at both the federal and state level and a passion for fighting consumer fraud. Now a Partner in Tycko & Zavareei LLP's Oakland office, she focuses on consumer protection class actions and whistleblower litigation.  In addition to her success with novel Telephone Consumer Protection cases, False Claims Act cases involving insurance fraud, and deceptive and false advertising cases, Ms. Soneji serves in leadership on multi-district litigation against Juul, for its manufacture and marketing to youth of an addictive nicotine product. Ms. Soneji also successfully represents consumers harmed by massive data breaches and by corporate practices that collect and monetize user data without consent. She serves as head of the firm's Privacy and Data Breach Group.

Ms. Soneji began that work during her time with the United States Department of Justice, as Senior Counsel to the Assistant Attorney General. In that role, she oversaw civil and criminal prosecution of various forms of financial fraud that arose in the wake of the 2008 recession.  For that work, Ms. Soneji partnered with other federal agencies, state attorneys' general, and consumer advocacy groups.  Beyond that affirmative work, Ms. Soneji worked to defend various federal programs, including the Affordable Care Act in nationwide litigation.

Ms. Soneji has extensive civil litigation experience from her four years with international law firm, her work as an Assistant United States Attorney in the Northern District of California, and from serving as Deputy County Counsel for Santa Clara County, handling civil litigation on behalf of the County including regulatory, civil rights, and employment matters.  She has successfully argued motions and conducted trials in both state and federal court and negotiated settlements in complex multi-party disputes.

Early in her career, Ms. Soneji clerked for the Honorable Gladys Kessler on the United States District Court for the District of Columbia s, during which she assisted the judge in overseeing the largest civil case in American history, United States v. Phillip Morris, et al., a civil RICO case brought against major tobacco manufacturers for fraud in the marketing, sale, and design of cigarettes.  The opinion in that case paved the way for Congress to authorize FDA regulation of cigarettes.

Ms. Soneji is a graduate of the University of Houston, summa cum laude, with degrees in Math and Political Science, and Georgetown University Law Center, magna cum laude.

## Education

Georgetown University Law Center, *magna cum laude*

University of Houston, *summa cum laude*

## Bar Admissions

District of Columbia
California

## Memberships

American Association for Justice (AAJ)

Public Justice

Taxpayers Against Fraud Education Fund (TAFEF)

## Awards

Attorney General's Award 2014

## Presentations & Publications

NITA Trial Skills Faculty 2010-present

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Eva Gunasekera

## Partner

202.417.3655
eva@tzlegal.com



Bringing 16 years of complex litigation experience practice, Eva Gunasekera, the former Senior Counsel for Health Care Fraud at the United States Department of Justice, is now representing whistleblowers. Ms. Gunasekera has spent the better part of her career enforcing the False Claims Act and the Stark and Anti-Kickback laws.

Highly strategic, Ms. Gunasekera has many notable successes under her belt, sizeable recoveries under the False Claims Act, and has held companies accountable for fraudulent conduct that harmed important government programs such as Medicare and Medicaid. With deep health care fraud expertise, she has investigated, litigated, and settled cases involving all federal health care programs (Medicare, Medicaid, TRICARE, FEHB). Ms. Gunasekera is an expert on analyzing complex health care data sets, including Medicare and Medicaid payment data and trends, to identify potentially fraudulent practices. She has enforced anti-fraud laws and represented whistleblowers across industries: pharmaceutical manufacturers, health care providers, hospitals, physicians, physician groups, laboratories, managed care, pharmacies, hospice and nursing home providers, financial institutions, government suppliers, automotive, small businesses, and defense contractors. Many of her investigations involved parallel criminal proceedings and compliance and whistleblower programs of health care organizations, including those subjected to Corporate Integrity Agreements and oversight by Independent Review Organizations, as required by the U.S. Department of Health and Human Services, Office of Inspector General (HHS-OIG).

After graduating with her Master's in Public Administration from Ohio University, and from Georgetown University Law Center, Ms. Gunasekera practiced law at two international law firms. She acted as second chair during administrative trials and handled complex commercial litigation. Ms. Gunasekera also played a significant role on the team that represented the Enron Creditors Recovery Corp in the bankruptcy proceeding, successfully returning billions of dollars to creditors in the wake of the Enron scandal. Further, Ms. Gunasekera represented clients in pro bono matters, including the successful defense of an individual seeking asylum and as guardian ad litem for three children.

## Education

J.D., Georgetown University Law Center, 2004

M.A., Ohio University, 2001

B.A, Ohio University, 2000

## Bar Admissions

District of Columbia

Ohio

## Memberships

Taxpayers Against Fraud Education Fund (TAFEF)

Federal Bar Association Qui Tam Section

Public Justice

## Presentations & Publications

"Whistleblower Rewards 101" – Scottsdale (Arizona) Bar Association (March 9, 2021)

"Should the False Claims Act be Amended to Define Falsity?" - Federal Bar Association, Qui Tam Section (February 17, 2021)

Law review article: False Claims Act, the opioid crisis, whistleblowing, Emory University Law School, February 26, 2019

---

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd. Suite 1101
Los Angeles, CA 90024
510.254.6808



# Renée Brooker

## Partner

202.417.3664
reneebrooker@tzlegal.com



Bringing 30 years of practice, knowledge, and expertise as a former prosecutor in a senior leadership position at the United States Department of Justice, Renée Brooker is now representing whistleblowers. While at the Department of Justice for over two decades, Ms. Brooker was responsible for billions of dollars in recoveries under whistleblower laws. As an accomplished and experienced attorney, Ms. Brooker has advised and represented whistleblowers under the False Claims Act (FCA), the Anti-Kickback Statute and Stark Law, FIRREA (bank fraud, mail, and wire fraud), the Financial Institutions Anti-Fraud Enforcement Act (FIAFE), and the Whistleblower Programs of the SEC, the CFTC, and the IRS.

As Assistant Director within the Civil Division of the United States Department of Justice, Ms. Brooker was responsible for sizeable recoveries and successful judgments under the False Claims Act, FIRREA, and civil RICO in almost every industry: pharmaceutical, health care, defense, financial services, government procurement, small business, insurance, tobacco products, and higher education.

Ms. Brooker received her law degree in 1990 from Georgetown University Law Center, and a B.S. degree in 1987 from Temple University. After graduating from Georgetown, Ms. Brooker served as a Law Clerk to Judge Noël Kramer in the District of Columbia for one year before joining the United States Department of Education as an attorney. Ms. Brooker was hired as part of the enforcement response to Congressional investigations of fraud in federal student aid programs affecting consumers and taxpayers. Prior to joining Tycko & Zavareei LLP in 2020, Ms. Brooker worked at another prominent whistleblower firm where she advised and represented whistleblowers while expanding the firm's whistleblower practice. Ms. Brooker also served as a member of the United States Department of Justice-appointed Independent Corporate Compliance Monitor and Auditor for Volkswagen under its Plea Agreement and Consent Decree with the United States Department of Justice.

### Education

J.D., Georgetown University Law Center
B.S., Temple University

### Bar Admissions

District of Columbia

Pennsylvania

### Memberships

Taxpayers Against Fraud Education Fund (TAFEF)

Board Member, Federal Bar Association Qui Tam Section

National Employment Lawyers Association (NELA)

### Awards

Department of Justice Commendation Award for recovering billions of dollars under the Big Lender Initiative, 2016

Council of the Inspectors General on Integrity and Efficiency Award for Excellence for $1.2 billion False Claims Act settlement with Wells Fargo, 2016

Department of Justice Award for "a record of outstanding actions and accomplishments," 2015

Attorney General's Award for Fraud Prevention, 2011

Department of Justice Award for prosecuting Big Tobacco under RICO, 2005

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd. Suite 1101
Los Angeles, CA 90024
510.254.6808



# David W. Lawler

## Of Counsel

202.973.0900
dlawler@tzlegal.com



Mr. Lawler joined Tycko & Zavareei LLP in January 2012. He has over twenty years of commercial litigation experience, including an expertise in eDiscovery and complex case management. At the firm Mr. Lawler has represented consumers in a numerous practice areas, including product liability, false labeling, deceptive and unfair trade practices, and antitrust class actions litigation.

Before joining Tycko & Zavareei LLP, Mr. Lawler was an associate in the litigation departments at McKenna & Cuneo LLP and Swidler Berlin Shereff Friedman LLP.

Among Mr. Lawler's career achievements include the co-drafting of appellate briefs which resulted in rare reversal and entry of judgment in favor of client, US Court of Appeals for the Fourth Circuit.

Mr. Lawler is a member of the District of Columbia Bar, as well as numerous federal courts.

### Education

Creighton University School of Law, 1997

University of California, Berkeley School of Law, 1989

### Bar Admissions

District of Columbia

### Memberships

American Association for Justice

Public Justice

## Representative Cases

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Penn.) (complex price-fixing action)

*Morgan v. Apple, Inc.,* Case No. 4:17-cv-5277(N.D. Cal.) (multimillion-dollar case alleging defects in high-end Powerbeats headphone)

*In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (described by the Department of Justice as the largest antitrust case in history, recovering over $1.2 billion for classes)

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Victoria Hoekstra

## Staff Attorney

510.254.6808
vhoekstra@tzlegal.com



Victoria Hoekstra is highly skilled in e-Discovery.  She was hired by Tycko & Zavareei LLP in 2018 to help with a custom's fraud case and later became a staff attorney.  Currently she is working on a class action against Juul for marketing e-cigarettes to youth.

Victoria began her legal career at Paul, Hastings in Los Angeles.  She moved to a small law firm and later became in-house counsel at an art store where she also ran an art education program.  Victoria worked on many matters in these positions including business transactions, intellectual property rights and litigation involving accountant's malpractice, deceptive business practices, securities fraud and Elder Abuse.

In recent time, Victoria has worked on many e-Discovery projects related to large scale litigation and regulatory reviews by the DOJ, FTC, SEC, FDA and the DEA.  Projects have involved breach of contract, personal injury, antitrust investigations (mergers and anti-competitive violations), anti-kickback violations, intellectual property, stock transactions, breaches of fiduciary duty and general fraud including fraudulent marketing related to the sale of opioids.  Industries include pharmaceuticals, healthcare, ride-sharing platforms, telecommunications, retail, manufacturing, education, publishing, digital advertising, software development and implementation, data contracts, banking, insurance and government contracts.  Victoria has also worked on compliance projects related to reviews by the DOJ and she had a long-term project answering search warrants, court orders and subpoenas related to Google products.  In this capacity, Victoria helped law enforcement investigate critical crimes, but also attentive to privacy laws.

Victoria is a Certified Public Accountant and prior to law school she worked as an auditor for a large CPA firm.  Victoria was also a sole proprietor of an Internet bookstore for many years.

Victoria received a B.S. in Economics from University of California, Los Angeles.  She received her Juris Doctorate from the University of California, Berkeley School of Law and she attended Oxford University (Christ Church) in England as a visiting scholar studying Philosophy.

### Education

University of California, Berkeley School of Law, J.D., 1988

University of California Los Angeles College of Law, B.S. Economics, 1982

### Bar Admissions

California

### Memberships

Public Justice

CPA, California Public Accountancy

---

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808





# Mark A. Clifford

## Associate

202.973.0900
mclifford@tzlegal.com

Mr. Clifford zealously represents plaintiffs in class action litigation challenging corporate greed and practices that place profits over people. He is actively litigating cases against financial institutions, big tobacco, and the insurance industry over fraudulent, unfair, and unlawful conduct that has harmed millions of consumers. He also is litigating a number of data breach cases, in which the personal information of millions of innocent victims was stolen due to the lax security practices of major corporations. In addition to his consumer protection practice, Mr. Clifford represents whistleblowers who come forward with information about fraud on government programs.

Prior to joining Tycko & Zavareei LLP in 2019, Mr. Clifford was an Associate in the Washington, D.C. office of Covington & Burling LLP, one of the nation's top defense-side firms. He uses his knowledge of how the other side operates to advance the interests of clients harmed by corporate wrongdoing. During his time at Covington, Mr. Clifford represented corporations in complex litigation and government investigations, including matters involving whistleblower allegations in the healthcare and technology industries. He also maintained an active *pro bono* practice, representing indigent defendants in immigration and criminal matters.

Mr. Clifford graduated *magna cum laude* from Georgetown University Law Center in 2015. While in law school, he was an Executive Editor of the Georgetown Law Journal. Following law school, Mr. Clifford clerked for the Honorable Catherine C. Blake of the United States District Court for the District of Maryland. Prior to law school, he worked on several political campaigns following his graduation with honors from the University of Georgia in 2009 with a Bachelor of Arts in International Affairs and a Master of Public Administration.

Mr. Clifford is admitted to practice law in the District of Columbia, Maryland, the United States District Court for the District of Maryland, and the United States Court of Appeals for the Fourth Circuit.

## Education

Georgetown University Law Center, 2015 *magna cum laude*

University of Georgia, 2009

## Bar Admissions

District of Columbia

Maryland

## Memberships

American Constitution Society

LGBT Bar Association of the District of Columbia

Public Justice

## Awards

Medina S. and John M. Vasily Endowed Scholarship (GULC)

Law Center Scholar (GULC)

CALI Award – Contracts (GULC)

## Presentations & Publications

Georgetown Law Journal, Executive Editor (2014 – 2015)

Co-Author, "The LGBT Community" in *Divide, Develop, and Rule: Human Rights Violations in Ethiopia*, UW College of Law (2018)

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Mallory Morales

## Associate

510.254.6808
mmorales@tzlegal.com



Mallory Morales graduated magna cum laude from Boston University in 2013, with a degree in Anthropology and Religion.  After graduation she worked at the Massachusetts Attorney General's Office as a mediator for its consumer advocacy division, and then as a paralegal in the division of open government.

She earned her law degree from the University of California, Berkeley School of Law in 2018, where she was elected Editor-in-Chief of the California Law Review.  While in law school Ms. Morales also participated in La Raza Law Students' Association, Women of Color Collective, La Raza Law Journal, and First Generation Professionals.  She interned for the East Bay Community Law Center and externed for the Honorable William H. Alsup on the United State District Court, Northern District of California.

Prior to joining Tycko & Zavareei LLP in 2020, Ms. Morales practiced commercial litigation at Morrison & Foerster LLP in San Francisco.  She maintained a pro bono practice in civil rights litigation and indigent criminal defense.

Ms. Morales is admitted to the State Bar of California and the bars of the United States District Courts for the Northern District of California and Eastern District of California.

### Education

University of California, Berkeley School of Law, 2018

Boston University, 2013, *magna cum laude*

### Bar Admissions

California

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808



# Dia Rasinariu

## Associate

202.973.0900
drasinariu@tzlegal.com



Dia Rasinariu graduated *cum laude* from Harvard Law School in 2016. While in law school, Ms. Rasinariu served as an Executive Editor of the *Harvard Law Review*. She was also a member of HLS Lambda. Following law school, Ms. Rasinariu clerked for the Honorable Diana Gribbon Motz on the United States Court of Appeals for the Fourth Circuit. Ms. Rasinariu earned her Bachelor of Arts, with distinction, from Cornell University in 2011, with majors in Government and in Economics.

Prior to joining Tycko & Zavareei LLP in 2021, Ms. Rasinariu was a litigation associate in the Washington, D.C. office of Jones Day. Ms. Rasinariu maintained an active pro bono practice, representing clients on civil rights, asylum, and domestic violence matters.

Ms. Rasinariu is a member of the District of Columbia and Illinois state bars. She is also admitted to practice before the United States District Court for the District of Maryland and the United States Courts of Appeals for the Fourth and Sixth Circuits.

### Education

Harvard Law School, 2016
*cum laude*

Cornell University, 2011
*with distinction*

### Bar Admissions

Illinois
District of Columbia

### Memberships

Public Justice

### Awards

Super Lawyers, Rising Star 2020

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808





# Lauren Kuhlik

## Associate

202.973.0900
lkuhlik@tzlegal.com

Prior to joining Tycko & Zavareei in 2021, Lauren Kuhlik was a fellow at the National Prison Project of the American Civil Liberties Union, where she engaged in litigation and other advocacy to stop unconstitutional and illegal practices by prison and jail administrators and ICE. She focused on improving conditions of confinement for pregnant and postpartum people, as well as fighting to eliminate the inhumane practice of solitary confinement. During the COVID-19 crisis, Ms. Kuhlik maintained an extensive habeas practice seeking to secure the release of detained individuals with medical vulnerabilities.

Ms. Kuhlik graduated cum laude from Harvard Law School in 2017. She also received a Masters in Public Health from the Harvard T.H. Chan School of Public Health in 2017. Following law school, Ms. Kuhlik clerked for the Honorable Stephen Glickman of the District of Columbia Court of Appeals. She has published articles regarding the treatment of pregnant incarcerated people in the Harvard Law and Policy Review and the Harvard Civil Rights-Civil Liberties Law Review. Ms. Kuhlik has also published about gender and incarceration in USA Today and Ms. Magazine, among others.

## Education

Harvard Law School, 2017 *Cum Laude*

Harvard T.H. Chan School of Public Health, M.P.H., 2017

Wesleyan University, BA in Philosophy with Honors, 2011

## Bar Admissions

District of Columbia

Virginia (inactive)

## Memberships

Public Justice

## Publications & Presentations

National Abortion Federation Annual Meeting (2021)

Pregnancy, Systematic Disregard and Degradation, and Carceral Institutions, Harvard Law & Policy Review (2020)

Harvard Law & Policy Review Fall Symposium (2019)

Society of Family Planning Annual Meeting (2019)

George Mason University Law School Civil Rights Law Journal Symposium (2019)

Pregnancy Behind Bars: The Constitutional Argument for Reproductive Healthcare Access in Prison, Harvard Civil Rights & Civil Liberties Law Review (2017)

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808





# Allison W. Parr

## Associate

202.973.0900
aparr@tzlegal.com

Prior to joining Tycko & Zavareei in 2021, Allison W. Parr was an associate in the Washington, D.C. office of Mayer Brown LLP, where she represented corporations in complex commercial litigation, including cases involving unfair competition and false advertising claims. Previously, Ms. Parr was a litigation associate in the New York office of Kramer Levin Naftalis & Frankel LLP, where she maintained an active pro bono practice in LGBTQ civil rights.

Ms. Parr graduated from the Georgetown University Law Center in 2018, where she served as the Articles and Notes Editor for the Food and Drug Law Journal. During law school, Ms. Parr externed for the Commercial Litigation Branch, Fraud Section of the Department of Justice, where she assisted with cases involving allegations of fraud against the government. Ms. Parr received her Bachelor of Music from the Peabody Institute of the Johns Hopkins University in 2013.

Ms. Parr is admitted to practice in New York and the District of Columbia.

## Education

Georgetown University, 2018

John Hopkins University, 2013
*Dean's List with High Honors*

## Bar Admissions

New York
District of Columbia

## Memberships

Public Justice

## Presentations & Publications

Agribusiness and Antibiotics: A Market-Based Solution, 73 Food & Drug L.J. 338 (2018)

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808





# Glenn Chappell

## Associate

202.973.0900
gchappell@tzlegal.com

Glenn Chappell is an associate in the Washington, D.C. office. Prior to joining Tycko & Zavareei, he was an associate in the Washington, D.C. office of Gibson, Dunn & Crutcher LLP, one of the nation's most prestigious defense-side firms. During his time at Gibson Dunn, Mr. Chappell represented corporations in complex litigation at the trial and appellate levels, including the United States Supreme Court. He also maintained an active pro bono practice that focused on police and sentencing reform.

Mr. Chappell graduated summa cum laude from Duke University School of Law in 2017, where he served as Managing Editor of the *Duke Law Journal* and Senior Research Editor of the *Duke Law & Technology Review*. While in law school, he dedicated more than 450 hours to pro bono work.

After graduating law school, Mr. Chappell clerked for the Honorable Gerald Bard Tjoflat of the United States Court of Appeals for the Eleventh Circuit and the Honorable Anthony J. Trenga of the United States District Court for the Eastern District of Virginia. Before law school, he worked as a manager in the manufacturing industry. He graduated with honors from Saint Leo University, earning a Bachelor of Arts in Business Administration. His legal scholarship has appeared in multiple publications, including the *Duke Law Journal* and the *University of Richmond Law Review*.

## Education

Duke University School of Law, 2017
*Summa Cum Laude,* Order of the Coif

Saint Leo University, 2011 *Cum Laude*

## Bar Admissions

District of Columbia

Virginia

## Memberships

Order of the Coif

Virginia Equality Bar Association

American Constitution Society

Virginia Bar Association

## Publications

*The Historical Case for Constitutional "Concepts"*, 53 UNIVERSITY OF RICHMOND LAW REVIEW 373 (2019)

*Health Care's Other "Big Deal": Direct Primary Care Regulation in Contemporary American Health Law*, 66 DUKE LAW JOURNAL 1331 (2017)

*Seeking Rights, Not Rent: How Litigation Finance Can Help Break Copyright's Precedent Gridlock*, 15 DUKE LAW & TECHNOLOGY REVIEW 269 (2017)

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808





# Leora N. Friedman

## Fellow

202.417.3669
lfriedman@tzlegal.com

Leora Friedman received her J.D. from Georgetown University Law Center in 2020.

At Georgetown Law, Leora obtained diverse legal experience through experiential courses led by the O'Neill Institute for National and Global Health Law and by the Institute for Constitutional Advocacy and Protection. In addition, she authored papers proposing new legal frameworks for addressing the negative health impacts of electronic cigarettes and improving pandemic preparedness through writing-intensive coursework.

During law school, Leora also served as an intern for the Department of Justice's Office of Vaccine Litigation and its Consumer Protection Branch. She was an Executive Editor for the Georgetown Environmental Law Review, which published her note "Recommending Judicial Reconstruction of Title VI to Curb Environmental Racism: A Recklessness-Based Theory of Discriminatory Intent."

Previously, Leora was the Rockefeller Foundation's Princeton Project 55 Fellow from 2014-2015 and, thereafter, aided international health advocacy campaigns at Global Health Strategies.

She graduated from Princeton University with an A.B. in Politics in 2014.

## Education

Georgetown University Law Center, 2020
Princeton University, 2014

## Bar Admissions

District of Columbia

## Memberships

Public Justice

Executive Editor, Georgetown Environmental Law Review, 2019–2020

## Publications

*Recommending Judicial Reconstruction of Title VI to Curb Environmental Racism: A Recklessness-Based Theory of Discriminatory Intent*, 32 Geo. Env't L. Rev. 421 (2020)

---

Tycko & Zavareei LLP
1828 L St. NW Suite 1000
Washington, DC 20036
202.973.0900

Tycko & Zavareei LLP
1970 Broadway Suite 1070
Oakland, CA 94612
510.254.6808

Tycko & Zavareei LLP
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
510.254.6808

# Exhibit C

# REESE LLP

Reese LLP represents consumers in a wide array of class action litigation throughout the nation. The attorneys of Reese LLP are skilled litigators with years of experience in federal and state courts. Reese LLP is based in New York, New York with offices also in California and Minnesota.

Recent and current cases litigated by the attorneys of Reese LLP on behalf of consumers include the following:

*Hasemann v. Gerber Products Co.*, case no. 15-cv-02995-MKB-RER (E.D.N.Y.)(case involving misrepresentation of health benefits of baby formula in violation of New York consumer protection laws); *Worth v. CVS Pharmacy, Inc.*, case no. 16-cv-00498 (E.D.N.Y.); (E.D.N.Y.)(class action for alleged misrepresentations regarding health benefits of dietary supplement); *Roper v. Big Heart Pet Brands, Inc.*, case no. 19-cv-00406-DAD (E.D. Cal.)(class action regarding pet food); *Ackerman v. The Coca-Cola Co.*, 09-CV-0395 (JG) (RML) (E.D.N.Y.)(class action for violation of California and New York's consumer protection laws pertaining to health beverages); *Rapaport-Hecht v. Seventh Generation, Inc.*, 14-cv-9087-KMK (S.D.N.Y.)(class action for violation of California and New York's consumer protection laws pertaining to personal care products); *Berkson v. GoGo, LLC,* 14-cv-1199-JWB-LW (E.D.N.Y.)(class action regarding improper automatic renewal clauses); *Chin v. RCN Corporation*, 08-cv-7349 RJS (S.D.N.Y.)(class action for violation of Virginia's consumer protection law by I.S.P. throttling consumers' use of internet); *Bodoin v. Impeccable L.L.C.*, Index. No. 601801/08 (N.Y. Sup. Ct.)(individual action for conspiracy and fraud); *Huyer v. Wells Fargo & Co.*, 08-CV-507 (S.D. Iowa)(class action for violation of the RICO Act pertaining to mortgage related fees); *Murphy v. DirecTV, Inc.*, 07-CV-06545 FMC (C.D. Cal.)(class action for violation of California's consumer protection laws); *Bain v. Silver Point Capital Partnership LLP,* Index No. 114284/06 (N.Y. Sup. Ct.)(individual action for breach of contract and fraud); *Siemers v. Wells Fargo & Co.*, C-05-4518 WHA (N.D. Cal.)(class action for violation of § 10(b) of the Securities Exchange Act of 1934 pertaining to improper mutual fund fees); *Dover Capital Ltd. v. Galvex Estonia OU*, Index No. 113485/06 (N.Y. Sup. Ct.)(individual action for breach of contract involving an Eastern European steel company); *All-Star Carts and Vehicles Inc. v. BFI Canada Income Fund*, 08-CV-1816 LDW (E.D.N.Y.)(class action for violation of the Sherman Antitrust Act pertaining to waste hauling services for small businesses on Long Island); *Petlack v. S.C. Johnson & Son, Inc.*, 08-CV-00820 CNC (E.D. Wisconsin)(class action for violation of Wisconsin consumer protection law pertaining to environmental benefits of household cleaning products); *Wong v. Alacer Corp.*, (San Francisco Superior Court)(class action for violation of California's consumer protection laws pertaining to deceptive representations regarding health benefits of dietary supplement's ability to improve immune system); *Howerton v. Cargill, Inc.* (D. Hawaii)(class action for violation of various consumer protection laws regarding sugar substitute); *Yoo v. Wendy's International, Inc.*, 07-CV-04515 FMC (C.D. Cal.)(class action for violation of California's consumer protection laws pertaining to adverse health effects of partially hydrogenated oils in popular food products).

### The Attorneys of Reese LLP

**Michael R. Reese**

Mr. Reese is the founding partner of Reese LLP where he litigates consumer protection and antitrust cases as class actions and on behalf of individual clients. Prior to entering private practice in 2000, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting violent and white-collar crime.

Achievements by Mr. Reese on behalf of consumers span a wide array of actions. For example, in *Yoo v. Wendy's International Inc.*, Mr. Reese was appointed class counsel by the court and commended on achieving a settlement that eliminated trans-fat from a popular food source. *See Yoo v. Wendy's Int'l Inc.*, No. 07-CV-04515-FMC (JCx) (C.D. Cal. 2007) (stating that counsel "*has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy*"). In *Chin v. RCN Corporation*, Mr. Reese was appointed class counsel and commended by the court for stopping RCN's practice of throttling its Internet customers through adverse network management practices. *See Chin v. RCN Corp.*, No. 08-CV-7349(RJS)(KNF), 2010 WL 3958794, 2010 U.S. Dist. LEXIS 96302 (S.D.N.Y. Sept. 8, 2010) (stating that "*class counsel is qualified, experienced, and able to conduct the litigation*").

Victories by Mr. Reese and his firm include a $6.1 million class action settlement in *Howerton v. Cargill, Inc.* (D. Hawaii) for consumers of Truvia branded sweetener; a $6.4 million class action settlement in the matter of *Wong v. Alacer Corp.* (S.F. Superior Court) for consumers of Emergen-C branded dietary supplement; and, a $25 million dollar settlement for mortgagees in *Huyer v. Wells Fargo & Co.* (S.D. Iowa).

Mr. Reese and his firm are frequently appointed as co-lead counsel in food related multi-district litigations, including, but not limited to: *In re Vitaminwater Sales and Marketing Practices Litigation*, case no. 11-md-2215-DLI-RML (E.D.N.Y.); *In re Frito-Lay N.A. "All-Natural" Sales & Marketing Litigation*, case no. 12-md-02413-RRM-RLM (E.D.N.Y.); and, *In re Hill's Pet Nutrition, Inc. Dog Food Products Liability Litig.*, case no. 19-md-2887-JAR-TT (D. Kansas).

Mr. Reese is a frequent lecturer and author on issues of class actions and food law. Mr. Reese co-hosts an annual two day food law conference with Professor Michael Roberts of UCLA; presents at the annual conference of the Consumer Brands Association (formerly known as the Grocery Manufacturers' Association); presented at Union Internationale des Advocats Annual Congress in Porto, Portugal. Recent articles on food law and class actions appear in publications by the American Bar Association and the Union Internationale des Advocats.

Mr. Reese is also the chairperson of the Cambridge Forum Conference on Food Fraud and is also an executive committee member of the Plaintiffs' Class Action Roundtable, where he lectures on an annual basis on issues related to class actions.

Mr. Reese is also an adjunct professor at Brooklyn Law School where he teaches on class actions as well as food law.

Mr. Reese also is on the advisory boards for the University of California, Los Angeles School of Law Resnick Center for Food Law and Policy and Wellness in the Schools in New York, New York.

Mr. Reese is a member of the state bars of New York and California as well as numerous federal district and appellate courts. Mr. Reese received his juris doctorate from the University of Virginia in 1996 and his bachelor's degree from New College in 1993.

## Sue J. Nam

Ms. Nam is based in New York where she focuses on consumer class actions.  Ms. Nam also runs the appellate practice at the firm and has represented clients before the Second and Ninth Circuits, as well as The Court of Appeals in New York.  Ms. Nam also specialized in copyright law and represents photographers and other visual artists who have had their copyright protected works infringed.

Prior to joining the firm, Ms. Nam was the General Counsel for NexCen Brands, Inc., a publicly traded company that owned a portfolio of consumer brands in food, fashion and homeware.

Previously, Ms. Nam was Intellectual Property Counsel and Assistant Corporate Secretary at Prudential Financial, Inc., and she was an associate specializing in intellectual property and litigation at the law firms of Brobeck Phleger & Harrison LLP in San Francisco, California and Gibson Dunn & Crutcher LLP in New York, New York.

Ms. Nam clerked for the Second Circuit prior to joining private practice.

Ms. Nam received her juris doctorate from Yale Law School in 1994. She received a bachelor's degree with distinction from Northwestern University in 1991.

## Carlos F. Ramirez

Mr. Ramirez is an accomplished trial attorney based in New York, where he focuses his practice on the litigation of consumer class actions. Prior to entering private practice in 2001, Mr. Ramirez served as an Assistant District Attorney at the Manhattan District Attorney's Office where he served as a trial attorney prosecuting both violent and white-collar crimes.

Previous and current consumer fraud class actions litigated by Mr. Ramirez include *Hasemann v. Gerber Products Co.*, case no. 15-cv-02995-MKB-RER (E.D.N.Y.)(case involving misrepresentation of health benefits of baby formula in violation of New York consumer protection laws); *Coe v. General Mills, Inc.*, No. 15-cv-5112-TEH (N.D. Cal.) (involving false advertisement claims relating to the Cheerios Protein breakfast cereal); *In re Santa Fe Natural Tobacco Company Marketing & Sales Practices Litigation*, 16-md-2695-JB/LF (D.N.M.)(involving the deceptive marketing of cigarettes as "natural" and "additive free"); *Lamar v. The Coca-Cola Company, et al.*, No. 17-CA-4801 (D.C. Superior Ct.) (involving the deceptive marketing of sugar drinks as safe for health); and

Mr. Ramirez is a member of the state bars of New York and New Jersey. He is also a member of the bars of the U.S. District Courts for the Eastern District of New York and Southern District of New York. Mr. Ramirez received his juris doctorate from the Fordham University School of Law in 1997 and his bachelor's degree from CUNY-Joh Jay College in 1994.

## George V. Granade II

Mr. Granade is a partner at Reese LLP based in Los Angeles, California, where he focuses on consumer class actions. Cases Mr. Granade has worked on include:

- *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496-JAL (S.D. Fla.) (involving "Snyder's," "Cape Cod," "EatSmart," and "Padrinos" brand food products labeled as "natural" and allegedly containing genetically-modified organisms and other synthetic ingredients);

- *In re: Frito-Lay North America, Inc. "All Natural" Litigation*, No. 1:12-md-02413-RRM-RLM (E.D.N.Y.) (involving "SunChips," "Tostitos," and "Bean Dip" products labeled as "natural" and allegedly containing genetically-modified organisms); and

- *Martin v. Cargill, Inc.*, No. 0:13-cv-02563-RHK-JJG (D. Minn.) (involving "Truvia" sweetener product labeled as "natural" and allegedly containing highly processed ingredients).

Mr. Granade received his juris doctorate from New York University School of Law in 2011. He received a master's degree from the University of Georgia at Athens in 2005 with distinction and a bachelor's degree from the University of Georgia at Athens in 2003, *magna cum laude* and with High Honors.

Mr. Granade is a member of the state bars of Georgia, New York, and California. He is also a member of the bar of the U.S. Courts of Appeals for the Second Circuit and Ninth Circuit, as well as the bars of the U.S. District Courts for the Eastern District of New York, Southern District of New York, Western District of New York, Northern District of New York, Southern District of Illinois, Northern District of Illinois, Northern District of California, Southern District of California, Central District of California, and Eastern District of California.

## Charles D. Moore

Mr. Moore is based in Minneapolis, Minnesota where he focuses on both consumer as well as employment class actions.

Mr. Moore has worked on a number of high profile class actions at Reese LLP as well as his prior firm where he worked as co-counsel with Reese LLP on numerous matters. His notable cases include *Marino v. Coach, Inc.*, Case. No. 1:16-cv-01122-VEC (OTW) (Lead) (S.D.N.Y.) (involving deceptive reference pricing in the sale of outlet merchandise); *Raporport-Hecht v. Seventh Generation, Inc.*, Case No. 7:14-cv-09087-KMK (S.D.N.Y.) (involving the deceptive advertising of household products as "natural"); *Gay v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM (S.D. Fla.) (involving deceptive advertising of personal care products as "natural"): *Frohberg v. Cumberland Packing Corp.*, Case No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.) (involving deceptive advertising of food products as "natural"); *Baharenstan v. Venus Laboratories, Inc. d/b/a Earth Friendly Products, Inc.*, Case No. 3:15-cv-03578-EDL (N.D. Cal.) (involving deceptive advertising of household products as "natural"); *Sienkaniec v. Uber Technologies, Inc.*, Case No. 17-cv-04489-PJS-FLN (D. Minn.) (involving the misclassification of Uber drivers as independent contractors); *Dang v. Samsung Electronics Co.*, 673 F. App'x 779

(9th Cir. 2017) (*cert denied* 138 S. Ct. 203) (rejecting shrink-wrap terms in California for purposes of arbitration).

Mr. Moore is a member of the state bar of Minnesota. He is also a member of the bar of the U.S. District Court for the District of Minnesota. Mr. Moore received his juris doctorate from Hamline University School of Law in 2013, and his bachelor's degree from the University of North Dakota in 2007.

## Lance N. Stott

Mr. Stott is based in Austin, Texas from where he litigates consumer class actions. Previous and current consumer fraud class actions litigated by Mr. Stott include *Davis v. Toshiba America Consumer Products* for allegedly defective DVD players; *Bennight v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective television sets; *Spencer v. Pioneer Electronics (USA) Inc. et al.* for allegedly defective DVD players; and, *Okland v. Travelocity.com, Inc.*, for deceptive pricing for online hotel reservations.

Mr. Stott is a member of the state bar of Texas. Mr. Stott received his juris doctorate from the University of Texas in 1996 and his bachelor's degree from New College in 1993.

# EXHIBIT D

**HOME OFFICE:**

**WEST VIRGINIA**
209 Capitol Street
Charleston, WV 25301

**SATELLITE OFFICES:**

**ALABAMA**
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244

**CALIFORNIA**
1999 Harrison Street, Suite 660
Oakland, CA 94612

**DELAWARE**
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE 19808

**FLORIDA**
360 Central Avenue, Suite 1500
St. Petersburg, FL 33701

**IDAHO**
800 West Main St., Suite 1460
Boise, ID 83702

**ILLINOIS**
318 W. Adams St., Suite 1606
Chicago, IL 60606

**IOWA**
PO Box 197
Ankeny, IA 50023

**MASSACHUSETTS**
99 High Street, Suite 304
Boston, MA 02110

**MISSOURI**
8012 Bonhomme Avenue, Suite 300
Clayton, MO 63105

**NEW JERSEY**
923 Haddonfield Rd, Suite 307
Cherry Hill, NJ 08002

**WASHINGTON, D.C.**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007

**WEST VIRGINIA**
6 Canyon Road, Suite 200
Morgantown, WV 26508

**Toll Free: 877-852-0342**
**Facsimile: 304-342-1110**

# BAILEY GLASSER LLP

www.baileyglasser.com

**BAILEY GLASSER** LLP

## Introduction

Bailey Glasser LLP ("BG") was founded by Ben Bailey and Brian Glasser in Charleston, West Virginia in 1999. Since then, the firm has grown to include over 75 lawyers in 17 offices, including Charleston and Morgantown, West Virginia, as well as Alabama, California, Delaware, Pennsylvania, Florida, Massachusetts, Missouri, New Jersey, New York, Texas, Idaho, Iowa, and Washington, D.C.

Since its inception, clients have relied on BG to handle their most challenging and consequential legal issues, regionally and nationwide.  The firm represents plaintiffs and defendants, including individuals, businesses and governments. BG's corporate practice handles business matters ranging from the negotiation and execution of billions of dollars in commercial transactions, to IPOs, to assisting foreign businesses with investments in U.S. assets. Lawyers throughout the country call upon the firm to access BG's unique blend of resources, trial experience, and expertise.  Our litigation group has a substantial practice in complex multidistrict ("MDL") and class action litigation, with an emphasis on automotive defect, consumer protection, other products liability, and commercial litigation, including antitrust matters, which was particularly noted in a recent *Chambers & Partners 2021* accolade.

BG continues to expand its knowledge and experience in the complex MDLs and class action litigations, while maintaining numerous leadership appointments in current and previous litigations.

### Accolades include:

*National Law Journal –* 35 Most Influential Law Firms in America (2020)

*Chambers USA* (2020) *– Commercial Litigation –* Band 1

*Best Law Firms in America* - Commercial Litigation and Bet-the-Company Litigation (2020)

*Best Law Firms in America* -Best Law Firms for High Stakes Litigation (2019)

*Best Lawyers – Lawyer of the Year –* Criminal Defense: White Collar, Brian Glasser

*Forbes* - Top Corporate Law Firm (2019)

*National Trial Lawyers –* Top 100 Trial Lawyers



**BAILEY GLASSER** LLP

### Bailey Glasser Litigation Capabilities

Litigation of every kind has been the cornerstone of Bailey Glasser's success since our inception. We have initiated and defended billion-dollar actions nationwide in state courts, federal courts, and before arbitrators and mediators. Our opposing counsel has included some of the largest law firms in the country and we have emerged victorious. We represent the full spectrum of business interests and industries, from solo entrepreneurs to multi-national corporations, from coal miners to fashion designers.

*In its 2021 USA Guide, **Chambers & Partners** notes that Bailey Glasser has an "impressive team offering experience in both defense and plaintiff representation, regularly handling litigation with significant commercial and political implications. Adept in federal bankruptcies and cases concerning the medical, legal, and financial sectors, and **has a niche antitrust practice**. Handles both regional and national matters."*



Bailey Glasser's trial lawyers bring vast experience in resolving business disputes including antitrust, class actions of every kind, breach of contract, breach of fiduciary duty, tortious interference, fraud, fraudulent transfer actions, and numerous other federal and state statutes. And although at Bailey Glasser "we try cases," we also recognize that a preferred outcome may be obtained by negotiation or at an early stage in a lawsuit. Our demonstrated willingness and skill in taking cases to trial gives our clients an advantage throughout the litigation process.

**BAILEY GLASSER** LLP

### Electronically-Stored Information Practice Group

 Another advantage we bring to our litigation practice is our unique Electronically-Stored Information ("ESI") Group that not only helps our clients drill down into discovery during cases, but also helps control costs.  Bailey Glasser's Electronically Stored Information (ESI) team employs a firm command of evolving best practices, emergent technologies, and established legal principles and rules to ensure that our corporate and individual clients preserve, collect, and manage ESI, and conduct e-Discovery, with strategic confidence.  Katherine Charonko, a member of this proposed team and the ESI Practice Group Leader, is a thought leader and pioneer in the field of ESI and is a Certified e-Discovery Specialist ("CEDS"), a globally recognized credential. She regularly speaks on ESI issues around the country.

Charonko has been appointed to leadership roles in e-Discovery in three multidistrict litigations and  provides efficient, cost-effective, and detail-oriented support for all significant BG litigations from beginning to end. Charonko's practice group evaluates technical and ESI needs; crafts litigation holds; coordinates custodial interviews; conducts document collections; implements aggressive preservation management; negotiates and drafts ESI protocols and protective orders; manages massive discovery libraries; conducts document review; navigates discovery challenges presented by the European Union's General Data Protection Regulation (GDPR) and other privacy regulations; and provides trial support.  No modern litigation can happen well without this function and BG is well situated to handle all e-Discovery issues that can arise.

**BAILEY GLASSER** LLP

### Representative Telephone Consumer Protection Act (TCPA) Plaintiffs' Class Action Cases Include:

**Krakauer v. Dish Network. L.L.C.,** No. 1:14-CV-00333-CCE-JEP (M.D. NC) **-** Won five-day jury trial and a treble damages award from the court, resulting in $61.3 million judgment against DISH Network for thousands of telemarketing calls placed to numbers on the National Do Not Call Registry in violation of the TCPA; co-led the trial team, and argued the appeal resulting in a complete affirmance by the US Court of Appeals for the Fourth Circuit. The class, led by class representative Dr. Thomas Krakauer of Bahama, North Carolina, alleged Dish was liable for more than 51,000 telemarketing calls placed by a defunct DISH dealer to persons whose telephone numbers were on the National Do Not Call Registry.

**In re: Monitronics Int'l, Inc. Telephone Consumer Protection Act Litigation,** MDL No. 2493 (N.D. W. Va.) – The firm served as co-lead MDL counsel which resulted in winning a $28 million TCPA settlement for nationwide class of consumers who received alarm-system telemarketing calls.

**Hankins v. Alarm.com, No. 4:15-cv-06314** (N.D. CA) - The firm successfully represented a class of consumers in a certified TCPA class action against Alarm.com. Alarm.com agreed to pay $28 million to settle a TCPA class action, which involved allegations it sent unlawful telemarketing communications to more than 1.2 million consumers. This was one of the largest TCPA class action settlements on record.

**Desai v. ADT Security, No. 11 C 1925** (N.D. IL) - Served on a team of lawyers that won one of the largest ever vicarious-liability TCPA settlements – $15 million for a nationwide class of consumers subjected to nuisance telemarketing calls.

**Mey v. Frontier Communications ADT Security, No. 3:13-cv-01191** (CT) - Obtained an $11 million class action settlement against Frontier Communications for telephone calls that violated the TCPA by placing thousands of illegal telemarketing calls. The class, led by class representative by Diana Mey, alleged that calls commissioned by Frontier and placed to them by Virido on the Five9 predictive dialer pursuant to a contract between Frontier and Virido using a list of telephone numbers that Frontier provided. The complaint alleged that the calling practices violated the TCPA's Do Not Call provisions and the statute's prohibition against autodialed and prerecorded calls to cellphones.

# BAILEY GLASSER LLP



Partner
**Brian A. Glasser**

Washington, DC
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
T: 202.463.2101; 304.345.6555
F: 202.463.2103
bglasser@baileyglasser.com

---

Brian Glasser, a Rhodes scholar and founding partner of the firm, is an experienced trial lawyer who represents a diverse array of plaintiffs and defendants throughout the United States. He has tried cases in 11 different states.

Brian's practice also regularly includes negotiating and managing the execution of billions of dollars of business transactions. From time to time, Brian has represented governors, members of Congress, and high-ranked agency officials in ticklish personal, political, or criminal inquiries, including state and federal impeachment proceedings.

His exceptional rapport with clients and broad experience over 25 years of practice ensures that clients repeatedly call upon him to handle their most sensitive legal challenges.

Brian has been featured in a variety of publications throughout his career including:

- Yellowstone Club Trustee Offers Bounty to Find Blixseth's Missing Millions

- Objections Overruled – Court is in Session with Legal Powerhouse Brian Glasser

- Bailey & Glasser – A Different Kind of Legal Powerhouse

- Attorney Charges Into Legal Arena

.
**Here are a few examples of Brian's work:**

**2021**

- Obtained, as co-trial counsel, a verdict on behalf of Ramaco Resources Inc. of approximately $32.6 million against Chubb related insurance companies for breach of contract in a denial of insurance coverage case. - Verdict Form 343, Verdict Form 348

**BAILEY GLASSER** LLP

.
**2020**

- Tried two cases by Zoom in Delaware concerning the interpretation of a shareholder rights agreement and a Limited Liability Company Agreement's restrictions on transfer of units.
- Obtained a confidential settlement on behalf of more than 120 residents, including many who were killed and injured, of an apartment building complex in Maryland that was destroyed by a natural gas explosion.

.
**2019**

- In the DISH Network case discussed below, the US Court of Appeals for the Fourth Circuit upheld the $61.34 million trial verdict.
- Obtained, as co-trial counsel, an arbitration award of over $10 million for client S&N Communications, Inc. against Bechtel Infrastructure Corporation for breach of contract in the engineering and construction of a high-speed fiber optic network.

.
**2018**

- In the Allegheny Energy case discussed below, the Ohio Court of Appeals upheld the $2 million trial court judgment.
- Obtained, as co-trial counsel, an arbitration award of over $1.9 million on behalf of Protech Solutions, Inc. against Conduent State & Local Solutions, Inc., for breach of a Strategic Alliance for teaming on the design, development and implementation of a custom software solution.
- Resolved damage suits for more than $800 million arising out of events of force majeure, alleged lease defaults, and for lost coal, against Hillsboro Energy LLC and Macoupin Energy LLC for approximately $190 million, paid over 15 years.

.
**2017**

- Obtained, as co-trial counsel, a verdict on behalf of ERISA plan participants of approximately $29.7 million against Wilmington Trust for breach of fiduciary duty in the valuation and purchase of a defense contractor on behalf of an ESOP plan. Memorandum Opinion
- Obtained, as lead trial counsel, a verdict on behalf of a class of consumers of approximately $20.5 million against DISH Network, Inc., for over 51,000 violations of the Telephone Consumer Protection Act for calling numbers protected by the National Do Not Call registry. Verdict Sheet The Court then increased the jury award up to $61.34 million because we proved willfulness. Memorandum Opinion and Order

**BAILEY GLASSER** LLP

- Obtained, as lead trial counsel, a verdict for more than $2 million against Allegheny Energy, Inc., in a uniform commercial code case over breach of a contract for the sale of goods.

.
**2016**

- In the Yellowstone Mountain Club case discussed below, the United States Court of Appeals for the Ninth Circuit rejected all defendant Tim Blixseth's challenges to the verdict and reversed the trial court's reduction to $40 million, reinstating the original fraud judgment for more than $286 million.
- In the Yellowstone Mountain Club BLX case discussed below, the United States Court of Appeals for the Ninth Circuit upheld the trial court's breach of contract judgment for over $219 million against Tim Blixseth.
- In the Sallyport case discussed below, the United States Court of Appeals for the Second Circuit upheld the trial court verdict for more than $21 million.

.
**2015**

- Lead counsel to Foresight Reserves, L.P., in the sale of a non-controlling 50% interest in its subsidiary Foresight Energy L.P. (NYSE: FELP) to Murray Energy Corporation for $1.375 billion.
- Lead counsel to Kameron Collieries ULC in its acquisition of 100% of the Donkin Project, a large undeveloped coal reserve in the Cape Breton region of Nova Scotia, Canada, from Glencore Xstrata, a global mining and trading company based out of Barr, Switzerland and Morien Resources Corporation, a Canadian royalty company.

.
**2014**

- Obtained, as Trustee of the Yellowstone Club Liquidating Trust, judgment against Tim Blixseth for $219.8 million for breach of a promissory note contract.
- Served as counsel to Foresight Reserves, L.P., in the $2.4 billion initial public offering of common units of its subsidiary Foresight Energy Partners, L.P. (NYSE: FELP).
  https://www.youtube.com/watch?v=5FnxjsLh7Cg
- Obtained, as lead trial counsel, a $21.1 million dollar verdict against Sallyport Global Holdings, Inc., in a breach of contract valuation case in federal court in New York City.
  Published Decision »

.
**2013**

- Counsel to Foresight Energy LLC in connection with its $1.55 billion refinancing, involving a bond, term loan and revolver combination.
- Served as Trustee for the Yellowstone Club Liquidating Trust.

**BAILEY GLASSER** LLP

.
**2012**

- Served on the Board of Directors of Tory Burch, LLC as the Chris Burch designee during the period of a contentious dispute over investor rights. The case was resolved by agreement.
- Counsel to the issuer in Foresight Energy LLC's $200 million bolt-on financing.

.
**2011**

- Lead counsel defending International Industries Inc. from a $127 million breach of contract claim. After five years of litigation, the Court limited the plaintiff's maximum recovery to $2 million and the case was quickly resolved.

.
**2010**

- Co-lead trial counsel in the Yellowstone Mountain Club fraud case in Montana, obtaining a $286 million verdict against property developer and former owner Tim Blixseth for fraud. The trial court reduced the judgment to $40 million and upon defendant's appeal, we cross-appealed.
- Lead counsel in Foresight Energy, LLC's $690 million refinancing.

.
**2009**

- Lead trial counsel in a case of first impression respecting the power of the United States Mine Safety and Health Administration to impose ventilation plans on mine operators.
- Lead counsel for Colt LLC's sale of $255 million in coal reserves.
- Lead counsel for Macoupin Energy LLC's sale/leaseback of $143.7 million in coal reserves.

.
**2008**

- Retained by the Trustee of the Refco Liquidating Trust and obtained a significant confidential settlement on his behalf.
- Served on trial team in major nationwide product liability case that settled prior to trial.

.

**2007**

- Lead counsel for Adena Minerals LLC's sale of coal and transportation assets in return for a significant percentage of Natural Resource Partners, LP (NYSE: NRP) and a 22% interest in NRP's general partner.

**BAILEY GLASSER** LLP

- Lead counsel for the West Virginia class and coordinating/lead negotiator for multistate class in a $62.5 million settlement with H&R Block (NYSE: HRB). The West Virginia share was $32.5 million.
- Served as sell-side counsel in a significant private equity investment by Riverstone Holdings, LLC, a private equity fund manager, in Foresight Reserves, L.P.

**Earlier Matters**

- Co-lead trial counsel for plaintiffs in a mass action under the Surface Coal Mining and Reclamation Act obtaining compensation for damage to water wells and homes.
- Lead trial counsel for the plaintiffs in a mass action of first impression under the Surface Coal Mining and Reclamation Act, establishing rights for off-permit damages from dust fall.
- Served as co-counsel in the Petition and Briefing stage at the United States Supreme Court in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 US 598 (2001).
- Special Assistant Attorney General for the State of West Virginia in the Mountaintop Removal, Cumulative Hydrologic Impact Analysis, and Bonding Litigations from 1999-2003. This series of cases involved several injunction hearings and numerous complex federal and state issues resulting in fundamental changes in the mining and environmental laws of West Virginia and the region.
- Tried numerous civil and criminal cases to verdict in state and federal court, in arbitration, and before state and federal agencies.

**Awards & Accolades**

*Best Lawyers in America,* Commercial Litigation and Criminal Defense: White-Collar (2010 - 2020)

*Chambers USA*, West Virginia: General Commercial (2015 - 2021) and Corporate/Commercial (2018 - 2021)

"Top 100 Trial Lawyers," National Trial Lawyers

*Best Lawyers in America,* "Lawyer of the Year Criminal Defense: White Collar," (2019)

*Super Lawyers,* West Virginia, General Litigation and Business Litigation (2007 - 2021)

**Clerkships**

Law Clerk, Hon. M. Blane Michael, US Court of Appeals for the Fourth Circuit (1994 - 1995)

**Practice Areas**

Appellate Advocacy

Banking & Financial Services

Bankruptcy & Business Reorganization

**BAILEY GLASSER** LLP

Business & Finance

Business Valuation

Catastrophic Personal Injury

Class Actions

Commercial Litigation

Consumer Litigation

Criminal Defense & Internal Investigations

Energy - Mining

Energy - Oil & Gas

Environmental

ERISA, Employee Benefits & Trust Litigation

Insurance Recovery

Life Sciences

MDL Panels

Medical Device & Drugs

Mergers & Acquisitions

Personal Injury & Product Liability

Private & Family Businesses

Product Liability

Telephone Consumer Protection Act (TCPA)

**Education**

J.D., Harvard Law School, 1994, *cum laude*

B.A., Oxford University, 1991

B.A., West Virginia University, 1988, *summa cum laude,* Rhodes Scholar – 1988, Truman Scholar - 1987

**Admissions**

District of Columbia

West Virginia

US Supreme Court

US Court of Appeals for the First Circuit

US Court of Appeals for the Second Circuit

US Court of Appeals for the Third Circuit

US Court of Appeals for the Fourth Circuit

US Court of Appeals for the Sixth Circuit

US Court of Appeals for the Seventh Circuit

**BAILEY GLASSER** LLP

US Court of Federal Claims
US District Court, Northern District of West Virginia
US District Court, Southern District of West Virginia

**Community and Professional Activities**

West Virginia State Bar
Hon. John A. Field, Jr., Inn of Court
Permanent Member, Judicial Conference for the US Court of Appeals for the Fourth Circuit

# BAILEY GLASSER LLP



Partner
**John W. Barrett**

Washington, DC
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
T: 202.463.2101; 304.345.6555
F: 202.463.2103
jbarrett@baileyglasser.com

**"It takes skilled counsel to successfully manage an 18,000-plus member class action. It takes a different set of highly developed skills to successfully achieve a jury verdict…. Class counsel persisted in a case where the defendant contested nearly every issue. Against this backdrop, Class Counsel achieved an excellent result on behalf of the class."**

*Krakauer v. DISH Network, L.L.C.,* 2018 WL 6305785, *3 (M.D. N.C., Dec. 3, 2018)

John Barrett is among a handful of lawyers nationally to have won class action, mass action, and individual plaintiff jury trials in federal and state court, and successfully argued appeals to uphold verdicts won in those cases. John represents consumers in class action lawsuits brought under federal telemarketing laws (TCPA), consumer protection statutes, and consumer warranty laws.

John's creative, trial-focused approach has helped win over $200 million for consumers in class action litigation. Most recently, John was co-lead trial and lead appellate counsel in a first-of-its-kind TCPA class action lawsuit resulting in a $61.3 million trial judgment, with complete affirmance on appeal, which John argued before the Fourth Circuit.

In the last five years, John has led efforts to recover more than $130 million in TCPA class actions; co-led the team in securing an unprecedented product liability class action settlement against a Brazilian pistol manufacturer ($30 million in cash, and warranty modifications valued at over $200 million); and served as special assistant attorney general recovering over $10 million for violations of West Virginia consumer protection law.

John especially values his relationships with referring co-counsel throughout the country. He also serves as President of Bailey Glasser.

**BAILEY GLASSER** LLP

**Awards & Accolades**

*Best Lawyers in America,* Mass Tort Litigation / Class Actions – Plaintiffs (2020-2022)
*Super Lawyers,* West Virginia, Class Action/Mass Torts, Consumer Law (2021)

Fellow, West Virginia Bar Foundation (2018)
AV rated by Martindale-Hubbell
Fellow, Litigation Counsel of America (2020, 2021)

**Clerkships**

Law Clerk, Hon. Charles H. Haden II, Chief US District Court Judge, Southern District of West Virginia
(1996 - 1998)

**Government Service / Previous Employment**

Executive Director, Common Cause West Virginia (1990 - 1993)

**Practice Areas**

Appellate Advocacy
Class Actions
Commercial Litigation
Consumer Litigation
Telephone Consumer Protection Act (TCPA)

**Education**

J.D., Boston University School of Law, 1996, *cum laude*, Edward F. Hennessey Distinguished Scholar,
Exec. Editor, *Public Interest Law Journal*, Dean's Scholar in Labor Law
B.A., University of Pennsylvania, 1988

**Admissions**

West Virginia
Massachusetts
US Supreme Court
US Court of Appeals for the Fourth Circuit
US Court of Appeals for the Sixth Circuit
US Court of Appeals for the Eleventh Circuit
US District Court, Northern District of West Virginia
US District Court, Southern District of West Virginia
US District Court, Eastern District of Michigan
US District Court, Western District of Michigan

**BAILEY GLASSER LLP**

US District Court, Northern District of Illinois

Supreme Court of Appeals of West Virginia

**Representative Matters**

- Won five-day jury trial and a treble damages award from the court, resulting in $61.3 million judgment against DISH Network for thousands of telemarketing calls placed to numbers on the National Do Not Call Registry in violation of the TCPA; co-led the trial team, and argued the appeal resulting in a complete affirmance by the US Court of Appeals for the Fourth Circuit; case featured in the *Wall Street Journal* and CBS Evening News

- Won a $28 million TCPA settlement for nationwide class of consumers who received alarm-system telemarketing calls in *In re Monitronics*; lawsuit featured on NBC's Today Show; served as co-lead MDL counsel

- Settled TCPA class action for $28 million in *Hankins v. Alarm.com* for nationwide class

- Won TCPA class action settlement of $11 million in *Mey v. Frontier Communications*

- Won precedent-setting product liability class action against Brazilian pistol manufacturer; settlement provided for free exchange of defective pistols for new, nondefective pistols, unlimited by any claims period; cash payments of $30 million, and total settlement value of $240 million; case featured in *Newsweek*

- Won $3.7 million settlement in TCPA class action against Patriot Payment Group and North American Bancard

- Resolved TCPA class action against Venture Data, LLC for $2.1 million

- Appointed special assistant attorney general in a series of *parens patriae* actions against retail pharmacies, generating more than $10 million; argued and won related appeal in *West Virginia v. CVS Pharmacy, Inc.*

- Co-led mass action cases to successful jury verdict in a six-week trial for hundreds of West Virginia residents against coal companies, alleging novel legal theory that the companies violated state mining laws when they destroyed residents' groundwater supplies

**Selected Speaking Engagements**

- "You've Got Your Class Action Verdict - Now What? Getting to Final Judgment and Beyond," Mass Torts Made Perfect, Class Action Track, Las Vegas, October 2019

- "Class Action Ethics," American Association for Justice (AAJ), 2019 Annual Convention, San Diego, July 2019

- "Ethical Issues Unique to the Consumer Space," Practising Law Institute, 23rd Annual Consumer Financial Services Institute, New York (March 2018); Chicago (May 2018); San Francisco (June 2018)

- "Introduction to Raising and Litigating TCPA Claims," National Consumer Law Center, Fair Debt Collections Practices Act Conference, Chicago, March 2018

**BAILEY GLASSER** LLP

- "Getting to Judgment in TCPA Cases," National Consumer Law Center, Fair Debt Collections Practices Act Conference, Chicago, March 2018
- "Hot Topics in Ethical Class Action Practice," National Consumer Law Center, Class Action Symposium, Washington, DC, November 2017
- "Introduction to TCPA Litigation, Maximizing the Value of Individual TCPA Cases," National Consumer Law Center, 26th Annual Consumer Rights Litigation Conference, Washington, DC, November 2017
- "TCPA Litigation," Practising Law Institute, 22nd Annual Consumer Financial Services Institute, Chicago, March 2017

**Community and Professional Activities**

Chair, Development Advisory Group, Legal Aid of West Virginia

Trustee, University of Charleston

Member, Visiting Committee, West Virginia University College of Law

Treasurer, Smith for West Virginia Governor 2020

National Association of Consumer Advocates

West Virginia and American Associations for Justice

Public Justice