UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD CHINITZ, et al., | Case No. 18-cv-05623-BLF |
| Plaintiffs, | |
| v. | |
| INTERO REAL ESTATE SERVICES, | |
| Defendant. | |

**DECLARATION OF CARLA A. PEAK IN SUPPORT OF SETTLEMENT NOTICE PROGRAM**

I, Carla A. Peak, declare as follows:

1.  My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2.  I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.  I am the Vice President of Legal Notification Services for KCC Class Action Services, LLC ("KCC"), a firm that provides comprehensive class action services, including claims administration, legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. Our experience includes many of the largest and most complex settlement administrations of both private litigation and of actions brought by state and federal government regulators. KCC has been retained to administer more

than 7,000 class actions and distributed settlement payments totaling well over a trillion dollars in assets.

4. This Declaration describes KCC's experience, as well as the proposed notice plan (the "Notice Plan") designed to provide notice to class members for this class action settlement. KCC will work with both parties to implement the Notice Plan, as well as make any decisions about notice and administration.

## EXPERIENCE

5. KCC has administered class action administrations for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Some Telephone Consumer Protection Act ("TCPA") cases in which KCC has been involved include: *Abante Rooter and Plumbing v. Alarm.com, Inc.*, No. 15-cv-06314 (N.D. Cal.); *Abante Rooter and Plumbing v. Oh Insurance Agency*, No. 1:15-cv-09025 (N.D. Ill.); *Abdeljalil v. GE Capital Retail Bank*, No. 12-cv-02078 (S.D. Cal.); *Adams v. AllianceOne Receivables Management, Inc.*, No. 08-cv-00248 (S.D. Cal.); *Allard v. SCI Direct, Inc. d/b/a Neptune Society*, No. 17-cv-04692 (N.D. Ill.); *Allen v. JPMorgan Chase Bank*, No. 13-cv-08285 (N.D. Ill.); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-04069 (N.D. Ill.); *Biringer v. First Family Insurance, Inc.*, No. 14-cv-566 (N.D. Fla.); *Boise v. ACE American Insurance Co.*, No. 15-cv-21264, (S.D. Fla.); *Charvat v. AEP Energy*, No. 14-cv-3121 (N.D. Ill.); *Coffman v. Glide Talk, Ltd.*, No. 13-cv-05190 (N.D. Ill.); *Connor v. JPMorgan*, No. 10-cv-01284 (S.D. Cal.); *Couser v. Comenity Bank*, No. 12-cv-02484 (N.D. Cal.); *Couser v. Dish One Satellite, LLC*, No. 15-cv-02218 (C.D. Cal.); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462 (N.D. Ill.); *Crossley v. Joya Communications, Inc.*, No. 16CH14771, (Circuit Court of Cook County, Ill.); *Cummings v. Sallie*

*Mae, Inc.*, No. 12-cv-9984 (N.D. Ill.); *Davenport v. Discover*, No. 15-cv-06052 (N.D. Ill.); *Etzkorn v. 3 Day Blinds*, No. 17-cv-02836 (E.D. Mo.); *Griffith v. ContextMedia, Inc.*, No. 16-cv-02900 (N.D. Ill.); *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 (N.D. Cal.); *Guarisma v. Blue Cross Blue Shield of Florida*, No. 13-cv-21016 (S.D. Fla.); *Hageman v. AT&T Mobility LLC*, No. 13-cv-50 (D. Mont.); *Hetherington v. Omaha Steaks*, No. 13-cv-2152 (D. Ore.); *Horn v. iCan Benefit Group LLC*, No. 17-cv-81027 (S.D. Fla.); *In re Life Time Fitness*, MDL No. 2564 (D. Minn.); *In Re Midland Credit Management, Inc. TCPA Litigation*, No. 11-md-2286 (S.D. Cal.); *In Re: Monitronics International, Inc. TCPA Litigation*, No. 13-md-2493 (N.D. W.Va.); *In re: Portfolio Recovery Associates, LLC TCPA Litigation*, No. 11-md-02295 (S.D. Cal.); *Jonsson v. USCB, Inc.*, No. 13-cv-8166 (C.D. Cal.); *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.); *Lee v. Global Tel Link Corporation*, No. 15-cv-02495, (C.D. Cal.); *Lees v. Anthem Ins. Cos., Inc.*, No. 13-cv-01411 (E.D. Mo.); *Leung v. XPO Settlement*, No. 15-cv-03877 (N.D. Ill.); *Luster v. Duncan Solutions*, No. 14-cv-00112 (N.D. Ga.); *Luster v. Wells Fargo*, No. 15-cv-01058 (N.D. Ga.); *Martin v. Global Marketing Research Services, Inc.*, No. 14-cv-1290 (M.D. Fla.); *Martinez v. Medicredit, Inc.*, No. 17-cv-02809 (E.D. Mo.); *Medina v. Enhanced Recovery Company LLC d/b/a ERC*, No. 15-cv-14342 (S.D. Fla.); *Melito v. American Eagle Outfitters*, No. 14-cv-02440 (S.D.N.Y.); *Mey v. Patriot Payment Group*, No. 15-cv-00027 (N.D. W.Va.); *Newman v. AmeriCredit*, No. 11-cv-3041 (S.D. Cal.); *Olsen v. ContextLogic Inc.*, No. 2019CH06737 (Circuit Court of Cook County, Ill.); *Prater v. Medicredit, Inc.*, No. 14-cv-00159 (E.D. Mo.); *Prather v. Wells Fargo*, No. 15-cv-04231 (M.D. Ga.); *R. Fellen, Inc. v. Rehabcare Group, Inc.*, No. 14-cv-0208 (E.D. Cal.); *Reginald Moore v. Family Dollar Stores, Inc.*, No. 14-cv-01542 (E.D. Mo.); *Rinky Dink Inc. v. World Business Lenders LLC*, No. 14-cv-00268 (W.D. Wash.); *Schwyhart v. AmSher Collection Services*, No. 15-cv-01175 (N.D. Ala.); *Sherman v. Kaiser Foundation Health*

*Plan, Inc.*, No. 13-cv-00981 (S.D. Cal.); *Shestopal v. Follett Higher Education Group Inc.*, No. 15-cv-8980 (N.D. Ill.); *Slovin v. Sunrun, Inc.*, No. 4:15-cv-05340 (N.D. Cal.); *Steinfeld v. Discover Financial Services*, No. 12-cv-01118 (N.D. Cal.); *Wannemacher v. Carrington Mortgage Servs.*, No. 12-cv-02016 (C.D. Cal.); *West v. California Service Bureau, Inc.*, No. 16-cv-03124 (N.D. Cal.); *Willis v. iHeartMedia, Inc.*, No. 2016CH02455 (Circuit Court of Cook County, Ill.).

6. I have personally been involved in many large and significant cases, including *In re Experian Data Breach Litigation*, No. 8:15-cv-01592 (C.D. Cal.), a national data breach class action involving over 15 million T-Mobile consumers whose information was stored on an Experian server; *In re: The Home Depot, Inc., Customer Data Security Breach Litig.,* No. 1:14-md-02583 (N.D. Ga.), a national data breach class action involving over 40 million consumers who made credit or debit card purchases in a Home Depot store; *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third party payors and consumers that purchased or paid for the brand and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No. 8:11-cv-01733 (C.D. Cal.), a national product defect case involving class members who experienced or may experience the overheating of an automatic dishwasher control board; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

## NOTICE PLAN DETAILS

### *Class Definition*

7. The Class is defined as all persons in the United States who: (a) received two or more calls on their residential telephone number (b) that had a duration of more than zero seconds; (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker (as reflected in the records maintained by the California Department of Real Estate ("DRE")); (d) promoting the purchase of Intero's goods or services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the call records for which appear in one of 35 account files, identified in Appendix A to the Court's order granting class certification in the Litigation; (f) within a 12-month period; (h) whose telephone number(s) were on the NDNCR for at least 31 days prior to the calls; and (i) at any time since September 13, 2014.

### *Individual Notice*

8. The parties have provided KCC with a list of the telephone numbers and corresponding contact information that was used to effectuate notice during class certification. This list is expected to contain 171,843 email addresses and 68,890 postal addresses for Class Members, as well as 140,598 email addresses and 56,365 postal addresses for individuals who were provided with notice during the class certification stage but are not included in this settlement (Non-Settlement Class Members).

9. KCC will use this list to send the settlement notice via email to all potential Class Members for whom an email address is available, as well as all Non-Settlement Class Members who were previously notified of the class certification. The email notice that will be sent to potential Class Members will contain a summary of the settlement as well as a link to the case website. The email notice that will be sent to Non-Settlement Class Members will inform them

that they are not included in the class action settlement. The content of the email notices will be included in the body of the email, rather than as an attachment, to avoid spam filters and improve deliverability. For any email sent to potential Class Members that bounces back or is known not to have been successfully delivered, KCC will send a settlement notice in the form of a double-sided postcard via United States Postal Service (USPS), to the corresponding postal address, if and where applicable. For any email sent to Non-Settlement Class Members that bounces back or is known not to have been successfully delivered, KCC will send a single-sided postcard notice informing them that they are not included in the class action settlement via USPS, to the corresponding postal address, if and where applicable.

10. In addition, KCC will send a double-sided postcard notice via USPS to potential Class Members for whom a postal address, but not a valid email address, is available. The double-sided postcard notice will contain a summary of the settlement as well as a detachable claim form that includes Business Reply Mail (pre-paid) postage. KCC will send a single-sided postcard notice via USPS to Non-Settlement Class Members for whom a postal address, but not a valid email address, is available.

11. Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[1] database maintained by USPS; certified via the Coding Accuracy Support System (CASS);[2] and verified through Delivery Point Validation (DPV).[3] Class Members Notices returned by USPS as undeliverable will be re-mailed to any address available through postal

---

[1] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[2] Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[3] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, further address searches may be conducted using credit and other public source databases to attempt to locate new addresses. If a new address is located, a notice will be mailed to it and the notice list will be updated.

*Media Campaign*

12. In addition to the individual notice effort described above, KCC will implement a consumer media campaign.

13. Specifically, KCC will cause approximately 25 million digital impressions to be distributed via various websites and the social media platform, Facebook. The impressions will be layered to target adults nationwide as well as web users who are actively searching for homes for sale, mortgages, home purchase loans, real estate agencies, or consumer real estate services, and to appear on real estate websites or apps such as Zillow, Homes, Realtor, Redfin, Movoto, Trulia, and Estately. The notices will appear on both desktop and mobile devices, including tablets and smartphones, in display and native ad formats. All digital media notices will include an embedded link to the case website.

14. The digital media campaign will be routinely monitored by KCC's digital specialists to analyze key campaign performance indicators (KPIs), such as click-through rates (CTRs) and costs per action (CPAs). This knowledge will be leveraged to allocate placements to sites that have demonstrated successful KPIs throughout the duration of the campaign.

*Response Mechanisms*

15. KCC will establish and maintain a case-specific website to allow Class Members to obtain additional information and documents about the settlement. Class Members will also be able to review a list of Frequently Asked Questions and Answers, input their telephone number to determine if it is included in the settlement, and file a claim form.

16. KCC will establish a case-specific toll-free number to allow Class Members to call to learn more about the case in the form of frequently asked questions. The toll-free number will also allow Class Members to request to have additional information mailed to them.

## CLAIMS PROCESS

17. To obtain a settlement payment, Class Members must submit a claim form online or by mail. The individual notices include a unique identifier or "Claim ID" that may be used by the Class Member to expedite claims filing by "pre-populating" name, mailing address, and/or email address information. The Claim ID will be provided on the claim portion of the Double-Sided Postcard Notice and included in the Email Notice. Settlement Class Members who wish to file a claim online may enter their Claim ID to view and submit a claim form that has been automatically pre-populated with information corresponding to their unique identifier.

18. The claim form seeks information necessary to validate and process Class Members claims, such as their full name, mailing address, current telephone number, the telephone number that they claim they received allegedly unlawful calls, as well as their signature as verification that all information provided on the claim form is accurate. If a claim is denied due to lack of signature or other required information, the Settlement Class Member will be notified and provided with an opportunity to correct the claim.

19. KCC will process all claim forms in accordance with the Settlement Agreement. For purposes of this settlement and the costs of administration, KCC has estimated that approximately 10-20% of the Class will file a claim. However, the claims rate could be more or less than estimated and will ultimately be determined at the conclusion of the administration.

**CAFA NOTIFICATION**

20. Upon filing of the Settlement Agreement with Court, KCC will work with Defense Counsel to fulfill the notice requirements of the Class Action Fairness Act ("CAFA"). KCC will include information detailing CAFA notice fulfillment in a separate report.

**NOTICE PLAN COSTS**

21. KCC estimates that the notice and settlement administration will cost between $168,360 and $176,811. These costs are based upon the scope of work currently contemplated, and include tasks such as data intake and processing, the CAFA mailing to state Attorneys General and the US Attorney General, distributing the e-mail Notice, printing and mailing the Double-Sided Postcard Notice, address searches, re-mailing Double-Sided Postcard Notices to updated and/or newly located addresses, printing and mailing the Single-Sided Postcard Notice, postage, the digital media campaign, declaration in support of preliminary approval, weekly case reporting, setting up and maintaining the Settlement Website, processing exclusion requests, automated call support including script drafting and management, monthly maintenance fees, updates, listening to, transcribing and responding to voicemails, processing claims filed, curing deficient claims, staff hours, claim calculations, disbursements and handling, and staff hours.

22. The costs of settlement administration are consistent with industry standards and cases of similar size and expected scope. These estimated costs are the product of extensive pre-administration consultation with the parties on the expected scope of work. Notice and settlement administration costs as a general matter are a combination of media placements, unitized pricing, and hourly rates. While KCC can and does project costs based upon input from the parties about the likely engagement, informed by our own past experience, ultimately we are a neutral third party administrator tasked with handling any administrative tasks requested and required by the

administration, regardless of whether the administration falls within projections or greatly exceeds them. These realities are beyond KCC's control, and cannot be altered by KCC to limit the work required.

## CONCLUSION

23. The Notice Plan is expected to reach 70-95% of the Class through the direct notice efforts described above. Coverage will be further enhanced through the consumer media campaign.

24. In my opinion, the Notice Plan proposed is consistent with other effective settlement notice programs. It is the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Notice is consistent with the guidelines set forth in Rule 23, the Manual for Complex Litigation, Fourth, and the Federal Judicial Center's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide which considers 70-95% reach among class members to be a "high percentage" and reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of October 2021, at Ocean City, New Jersey.

*/s/ Carla Peak*

Carla A. Peak