Sabita J. Soneji (State Bar No. 224262)
ssoneji@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Hassan A. Zavareei (State Bar No. 181547)
hzavareei@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Brian A. Glasser (*pro hac vice*)
bglasser@baileyglasser.com
John W. Barrett (*pro hac vice*)
jbarrett@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

Charles D. Moore (*pro hac vice*)
cmoore@reesellp.com
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500

*Court Appointed Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

RUBY MITCHELL *and* EDWARD J. KELLY, *individually, and on behalf of a class of similarly situated persons*,

Plaintiffs,

v.

INTERO REAL ESTATE SERVICES,

Defendant.

Case No. 5:18-cv-05623-BLF

**PLAINTIFFS RUBY MITCHELL'S AND EDWARD J. KELLY'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 20, 2022
Time: 9:00 a.m.
Place: Courtroom 3, 5th Floor
Judge: Honorable Beth Labson Freeman

1    **TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

2         **PLEASE TAKE NOTICE** that on October 20, 2022, at 9:00 a.m., or as soon thereafter as

3    this matter may be heard, in Courtroom 3, 5th Floor, before the Honorable Beth Labson Freeman,

4    Plaintiffs Ruby Mitchell and Edward J. Kelly (together, "Plaintiffs") will and hereby do respectfully

5    move this Court for final approval of the class action Settlement reached in this case.

6         Plaintiffs seek approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e),

7    the Civil Local Rules of the United States District Court for the Northern District of California, and

8    this District's Procedural Guidance for Class Action Settlements because the Settlement is fair,

9    reasonable, and adequate. Plaintiffs also seek entry of an order approving the Class Notice and finally

10   certifying the Settlement Class for settlement purposes.

11        Plaintiffs base the motion on the following documents: this Notice of Motion and Motion;

12   the accompanying Memorandum of Points and Authorities; the pleadings, record, and other filings in

13   the case; the Declaration of George V. Granade; the Declaration of Settlement Administrator re:

14   Notice Procedures; and such other oral and written points, authorities, and evidence as the parties

15   may present at the time of the hearing on the motion. Intero does not oppose this motion.

16                                              Respectfully submitted,

17   Date: August 19, 2022                      **REESE LLP**

18                                       By:  _/s/ George V. Granade_
                                              George V. Granade (State Bar No. 316050)
19                                            *ggranade@reesellp.com*
                                              8484 Wilshire Boulevard, Suite 515
20                                            Los Angeles, California 90211
                                              Telephone: (310) 393-0070
21
                                              **REESE LLP**
22                                            Michael R. Reese (State Bar No. 206773)
                                              *mreese@reesellp.com*
23                                            100 West 93rd Street, 16th Floor
                                              New York, New York 10025
24                                            Telephone: (212) 643-0500

25                                            **REESE LLP**
                                              Charles D. Moore (*pro hac vice*)
26                                            *cmoore@reesellp.com*
                                              100 South 5th Street, Suite 1900
27                                            Minneapolis, Minnesota 55402
                                              Telephone: (212) 643-0500
28

---

**TYCKO & ZAVAREEI LLP**
Sabita J. Soneji (State Bar No. 224262)
*ssoneji@tzlegal.com*
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

*Court Appointed Co-Lead Class Counsel*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .......................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.      Introduction ......................................................................................................................... 1

II.     Factual and Procedural Background ................................................................................... 2

III.    The Key Terms of the Settlement Agreement ................................................................... 5

        A.      The Settlement Class ............................................................................................... 5

        B.      The Benefits to the Settlement Class ..................................................................... 5

                1.      Monetary benefits ....................................................................................... 5

                2.      Injunctive relief ........................................................................................... 6

        C.      Class Member Release ............................................................................................. 7

        D.      Notice and Administrative Costs, Attorneys' Fees and Costs, and Service
                Awards ....................................................................................................................... 8

IV.     Class Notice Was the Best Practicable and Was Reasonably Calculated to Inform the
        Settlement Class of Its Rights .............................................................................................. 8

        A.      The Class Notice Documents Are Sufficient ......................................................... 8

        B.      The Notice Plan Was Successfully Implemented .................................................. 9

V.      The Settlement is Fair, Reasonable, and Adequate and Merits Final Approval ............ 10

        A.      Rule 23(e)(2)(A): Plaintiffs and Class Counsel have adequately represented
                the Settlement Class ............................................................................................... 11

        B.      Rule 23(e)(2)(B): The Settlement is the product of arm's-length negotiations ........... 11

        C.      Rule 23(e)(2)(C): The relief for the Settlement Class is substantial ..................... 14

                1.      Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal .................. 14

                2.      Rule 23(e)(2)(C)(ii): The proposed method of distributing relief and
                        of processing Claims is and will be effective ......................................... 16

                3.      Rule 23(e)(2)(C)(iii): The terms and timing of the proposed award of
                        Attorneys' Fees and Costs are fair and reasonable ................................. 16

                4.      Rule 23(e)(2)(C)(iv): There are no material supplemental agreements ........... 16

        D.      Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably .......... 17

        E.      Additional Ninth Circuit factors favor final approval ......................................... 17

| | | | | |
|---|---|---|---|---|
| | 1. | The amount offered in Settlement | ................................................................ | 17 |
| | 2. | The experience and views of Class Counsel | ...................................................... | 19 |
| | 3. | Government participation | .................................................................................. | 19 |
| | 4. | The Settlement enjoys overwhelming Settlement Class support | ..................... | 19 |

VI.    The Court Should Finally Certify the Settlement Class for Settlement Purposes................... 20

VII.    Conclusion................................................................................................................................. 22

1

# **TABLE OF AUTHORITIES**

2

**CASES**

3

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) .................................................................................. 13

4

*Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF,
   2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .................................................. 12, 17, 18

5

*Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST,
   2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ................................................ 11, 17, 20

6

7

*Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG,
   2022 WL 2918361 (E.D. Cal. July 25, 2022) ............................................................ 13

8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................... 8, 10, 11, 19

9

10

*Contreras v. Armstrong Flooring, Inc.*, No. 20-cv-03087-PSG-SK,
   2021 WL 4352299 (C.D. Cal. July 6, 2021) .............................................................. 14

11

*Dennis v. Kellogg Co.*, No. 09-cv-1786-L-WMC,
   2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................................................... 16

12

13

*Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723-JSC,
   2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ............................................................. 14

14

*Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-02349-MMA-BGS,
   2016 WL 402249 (S.D. Cal. Jan. 29, 2016) .............................................................. 18

15

16

*Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF,
   2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) .......................................................... 21

17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................... 10, 14

18

19

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................................... 20

20

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................... 12

21

22

*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......................................................... 17

23

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................... 10

24

25

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 19

26

*In re Online DVD Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................... 10

27

28

*Izor v. Abacus Data Sys., Inc.*, No. 19-cv-01057-HSG,
   2020 WL 12597674 (N.D. Cal. Dec. 21, 2020) ................................................................15, 20

*JS Halberstam Irrevocable Grantor Tr. v. Davis*, No. 3:21-cv-00413-SI,
   2022 WL 1449106 (D. Or. May 9, 2022) ................................................................................. 12

*Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC,
   2014 WL 3519064 (S.D. Cal. July 14, 2014) ............................................................................. 9

*Larson v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO,
   2020 WL 3402406 (E.D. Cal. June 19, 2020) ...............................................15, 16, 18, 20

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) .................................................................................................. 21

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................................................ 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................................. 9

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................... 15

*Odom v. ECA Mktg., Inc.*, No. 20-cv-00851-JGB-SHK,
   2021 WL 7185059 (C.D. Cal. Dec. 22, 2021) ....................................................................15, 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .............................................................................................10, 14

*Perks v. Activehours, Inc.*, No. 5:19-cv-05543-BLF,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ....................................................................11, 12

*Pinon v. Daimler AG*, No. 1:18-cv-03984-MHC,
   2021 WL 6285941 (N.D. Ga. Nov. 30, 2021) ......................................................................... 12

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-cv-00268-JCC,
   2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ...................................................................... 18

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................................. 14

*Schuchardt v. L. Off. of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016) ........................................................................................... 19

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................................................... 9

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ................................................................................................ 21

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................................................ 13

*Walker v. Life Ins. Co.*, No. 10-cv-09198-JVS-JDE,
  2021 WL 6618814 (C.D. Cal. June 7, 2021) ............................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 20

*Wilson v. Gateway, Inc.*, No. 09-cv-07560-GW-VBK,
  2014 WL 12704846 (C.D. Cal. Oct. 6, 2014) ........................................... 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) .............................................................. 21

*Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ......................................... 19

**S**TATUTES

Class Action Fairness Act, 28 U.S.C. § 1715 ........................................... 4, 19

Telephone Consumer Protection Act, 47 U.S.C. § 227 ......................... passim

**O**THER **A**UTHORITIES

47 C.F.R. § 64.1200 .................................................................................. 1

**M**ANUAL FOR **C**OMPLEX **L**ITIGATION § 21.312 ............................................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Nearly four years after commencement of this TCPA[1] class action against Intero, which involved hard-fought factual and legal disagreements every step of the way from case filing to the threshold of trial, Plaintiffs now move for final approval of the Parties' class action Settlement. The Settlement achieves an exceptional result for the Settlement Class, as it will supply a Cash Award of $350 to every Settlement Class Member who submits an Approved Claim, provides for robust and meaningful injunctive relief, and covers Notice and Administrative Costs, Attorneys' Fees and Costs, and Service Awards for the Class Representatives. This is so despite Intero's stated significantly limited ability to pay, for which Intero has furnished evidentiary support. Furthermore, the injunctive relief agreed to by Intero here will provide significant benefit to class members, as Intero has agreed to implement policies and procedures that fully comply with 47 C.F.R. § 64.1200(c)(2) and (d) (TCPA's "do-not-call" procedures) for two years following Final Approval. Presented with this extraordinary relief, no Settlement Class Member has objected to any portion of the Settlement, and there have been only three requests for exclusion, all of which were untimely.

The Settlement is fair, reasonable, and adequate to all concerned and therefore merits final approval—easily meeting or exceeding the standards used within this Circuit, as discussed below. Plaintiffs and Class Counsel have adequately and vigorously represented the Settlement Class, and Class Counsel endorse the Settlement. The Settling Parties did not discuss any award of Attorneys' Fees and Costs during their arm's-length negotiations, undertaken with the adept assistance of Chief Magistrate Judge Joseph C. Spero, until after they had agreed upon relief for the Settlement Class. The Settlement Agreement contains no clear-sailing provision preventing Intero from objecting to the fee

---

[1] Unless otherwise indicated, capitalized terms are defined in the Settlement Agreement and Release. *See generally* Decl. Soneji Supp. Pls.' Mot. Prelim. Approval Class Action Stlmt, Ex. A (Stlmt Agmt & Release), ECF No. 277-2 (filed November 1, 2021).

1    award requested by Class Counsel, and Intero did not object thereto.[2]

2        The Settlement will distribute substantial compensation to the Settlement Class, treats

3    Settlement Class Members equitably, and provides that no portion of the requested Attorneys' Fees

4    and Costs will revert to Intero. This Settlement is a superb result for the Settlement Class.

5        On April 7, 2022, the Court preliminarily approved the Settlement. ECF No. 285. Since then,

6    the Parties have complied with the Settlement Agreement and the Court's Preliminary Approval Order

7    and delivered notice to the Settlement Class.

8        For all of these reasons and as detailed below, Plaintiffs submit that the Settlement is fair,

9    reasonable, and adequate and warrants final approval. Therefore, Plaintiffs respectfully request that

10    the Court finally approve the Settlement; finally certify the Settlement Class for settlement purposes;

11    affirm the appointment of Plaintiffs as Settlement Class Representatives; affirm the appointment of

12    Tycko & Zavareei LLP, Reese LLP, and Bailey & Glasser LLP as Class Counsel; and enter the Final

13    Approval Order. Intero does not oppose this motion.

14    **II.    Factual and Procedural Background**

15        Pursuant to the Northern District of California's Procedural Guidance for Class Action

16    Settlements ("Settlement Guidelines"), Plaintiffs respectfully refer the Court to the Memorandum of

17    Points and Authorities in Support of their Motion for Award of Attorneys' Fees and Costs and Service

18    Awards, as well as the declarations of Sabita J. Soneji and Michael R. Reese which accompany that

19    motion, for a detailed discussion of the factual and procedural background of the case. ECF No. 289

20    at 2-5; ECF No. 289-2 at ¶¶ 4-26; ECF No. 289-4 at ¶¶ 6-35; Settlement Guidelines, Final Approval

21    ¶ 2. Additionally, Plaintiffs provide the update below regarding the Class Notice program.

22        After preliminary approval, the Parties provided Notice of the Settlement in accordance with

23    the Parties' Settlement Agreement and the Court's Preliminary Approval Order. *See* Decl. Stlmt

24    Admin. re: Notice Procedures ¶¶ 2-14 ("Admin. Decl."). The Settlement Class is comprised of all

---

[2] The deadline to object to Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service

Awards (ECF No. 289) passed without opposition on July 6, 2022.

1  individuals who used a total of 37,962 unique telephone numbers over an approximately 7.5-year

2  period. § 3.1.[3] Thus, the precise number of individuals in the Settlement Class is unknown; the

3  Settlement Class may be comprised of a somewhat lower number of individuals (if a single individual

4  used multiple telephone numbers) or may be comprised of a somewhat higher number (if multiple

5  individuals used the same telephone number at different time periods). The contact information for

6  Settlement Class Members was generated using the list of 37,962 telephone numbers, which Intero

7  provided KCC. Admin. Decl. ¶ 2. Because the list included multiple "hits" for each phone number

8  where applicable, the contact list for notice purposes was much larger. *See id.*

9          To disseminate the notice, KCC carried out the terms of the Settlement Agreement as follows:

10  (1) on May 6, 2022, after the Settlement Website went live, KCC sent an Email Notice to potential

11  email addresses for Current Class Members (Admin. Decl. ¶¶ 4, 12), sent a different email notice

12  (referred to as the "goodbye" email notice) to potential email addresses for Former Class Members

13  (*id.* at ¶ 4), caused the Notice to be printed and mailed in the form of a Class Notice postcard to the

14  potential mailing addresses for Current Class Members for whom no email address could be found

15  (*id.* at ¶ 7), and caused the Notice to be printed and mailed in the form of a "goodbye" notice postcard

16  to potential mailing addresses for Former Class Members for whom no email address could be found

17  (*id.*); (2) on June 13, 2022, KCC sent a "goodbye" email notice to potential email addresses for Former

18  Class Members whose notice was undeliverable (*id.* at ¶ 5), sent two email notice blasts to potential

19  email addresses for Current Class Members whose notice was undeliverable (*id.*), and sent a Postcard

20  Notice to the potential mailing addresses for Current Class Members whose Email Notice returned as

21  undeliverable and who had a physical address (*id.* at ¶ 8); (3) on June 24, 2022, KCC sent an email

22  notice to potential email addresses for Current Class Members who had not yet filed a claim (*id.* at ¶

23  6); (4) on June 28, 2022, KCC sent postcards to all potential mailing addresses for Current Class

24  Members who had not yet filed a claim (*id.* at ¶ 9); and (5) KCC performed address searches through

25  credit bureau and/or other public source databases for 18,558 Postcard Notices returned by the USPS

26  with undeliverable addresses, was able to find updated addresses for 841 of those, and promptly re-

27

28  _____
[3] Unless otherwise specified, all section (§) references are to sections of the Settlement Agreement.

mailed Postcard Notices to the newfound addresses (*id.* at ¶ 10).

Additionally, KCC (1) purchased approximately 25,000,000 impressions to be distributed via various websites and Facebook from May 6, 2022 through June 5, 2022,[4] Admin. Decl. ¶ 11; (2) on or before May 6, 2022, created the Settlement Website, which contained the Long Form Notice and other case-related documents as well as an online claim filing portal, *id.* at ¶¶ 12, 14; and (3) on or before May 6, 2022, established a toll-free telephone hotline, *id.* at ¶ 13.

On April 12, 2022, the Settlement Administrator filed a declaration stating that on November 12, 2021, the Settlement Administrator caused notice to be mailed to the United States Attorney General and the Attorneys General of each of the 50 states and the District of Columbia in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Decl. Stlmt Admin. re: CAFA Notice Procedures, ECF No. 287.

The deadline to submit claims, objections, and requests for exclusion was July 6, 2022. Admin. Decl. ¶¶ 14, 17, 18. As of July 26, 2022, KCC had received 11,119 Claim Forms. *Id.* at ¶ 14. Upon notice from KCC that it had deemed 1,922 of these claims late—around 17% of the total claims received—the Parties met and conferred regarding acceptance of claims received by KCC after the claims deadline. Decl. George V. Granade ¶ 13 ("Granade Decl."). The Parties ultimately agreed that all claims that had been signed by the claims deadline would be deemed valid, so long as they had been postmarked by July 11, 2022, or, if not postmarked, received by KCC by July 14, 2022.[5] *Id.*

KCC and the Parties are in the process of reviewing the late claims to calculate the total number of valid claims, but based on Plaintiffs' counsel's review of claim-related information and a sampling of claim forms provided by KCC, Plaintiffs preliminarily estimate that approximately

---

[4] A total of 29,195,440 impressions were delivered, resulting in an additional 4,195,440 impressions at no extra charge. Admin. Decl. ¶ 11.

[5] As part of this meet-and-confer process, KCC agreed to pay all expenses associated with supplemental notice sent by KCC that Defendant contended was not contemplated by the Settlement Agreement. Granade Decl. ¶ 13.

1  40-60% of the previously rejected late claims will be validated on account of the agreement discussed

2  above. Granade Decl. ¶ 14. KCC is also in the process of requesting supplemental information from

3  claimants where multiple claimants submitted claims on the same telephone number, as contemplated

4  by the Settlement Agreement. Admin. Decl. ¶ 16; § 7.3. Plaintiffs will be prepared to apprise the Court

5  as to the outcome of this process.

6       As to requests for exclusion and objections, KCC has received three untimely requests for

7  exclusion and no objections. Admin. Decl. ¶¶ 17-18.

8  **III.    The Key Terms of the Settlement Agreement**

9       The material terms of the Settlement are summarized below.

10      **A.    The Settlement Class**

11      The Settlement Class is defined as: "All persons in the United States who: (a) received two or

12  more calls on their residential telephone number; (b) that had a duration of more than zero seconds;

13  (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral

14  Services was the salesperson's responsible broker (as reflected in the records maintained by the

15  California Department of Real Estate ('DRE')); (d) promoting the purchase of Intero's goods or

16  services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the call

17  records for which appear in one of 35 account files, identified in Appendix A to the Court's order

18  granting class certification in the Litigation; (f) within a 12-month period; (g) whose telephone

19  number(s) were on the NDNCR for at least 31 days prior to the calls; and (h) at any time since

20  September 13, 2014. Excluded from the Settlement Class are: (a) Intero; (b) any entity in which Intero

21  has a controlling interest; (c) Intero's officers, directors, legal representatives, successors, subsidiaries,

22  and assigns; (d) any judicial officer presiding over this matter, as well as members of their immediate

23  family and members of their judicial staff; and (e) any judge sitting in the presiding court system who

24  may hear an appeal of any judgment entered." Preliminary Approval Order ¶ 5; *see also* §§ 2.43, 2.44,

25  3.1, 14.2.

26      **B.    The Benefits to the Settlement Class**

27          **1.    Monetary benefits**

28      The Settlement provides for payment of a a $350 Cash Award to every Settlement Class Member

1    who submits a timely, valid Approved Claim. §§ 4.1.1, 7.3. For those valid Claims where more than

2    one person made a Claim with respect to the same telephone number, the Class Administrator is

3    required to send a follow-up Notice to each such person requesting the time period during which they

4    were a user of the telephone number. § 7.3. For any persons who provide the time period during

5    which they were a user of the telephone number to the Class Administrator, the Class Administrator

6    will compare that information with the dates of the calls to the number in the Mojo calling records

7    attached as Appendix A to the Court's Order Granting Class Certification, ECF No. 126. § 7.3. The

8    Class Administrator will pay a Cash Award to each person who provides a date range that includes

9    the dates of the calls reflected in the Mojo calling records for the telephone number. *Id.*

10        KCC will have 60 Days after the Final Settlement Date in which to process the Claims and

11   remit the appropriate Settlement Relief amounts to Claimants. § 7.5. Cash Awards may be made by

12   checks or by other electronic payment options such as electronic deposit, PayPal, and Venmo, subject

13   to KCC's capabilities. § 4.1.2.

14                    **2.       Injunctive relief**

15        The Settlement Agreement provides for vital injunctive relief with an estimated value of $22.5

16   million, including development and implementation of procedures to ensure compliance with the

17   TCPA's do-not-call provisions and training for Intero representatives. §§ 4.2-3. Specifically, Intero has

18   agreed to "(i) establish and implement written procedures to comply with the national do-not-call rules

19   and (ii) institute procedures and a written policy for maintaining a company list of persons who request

20   not to be called, which will cover do-not-call requests made to Intero or to any representative or agent

21   of Intero." § 4.2.1. Intero's policy for maintaining a do-not-call list will be "available upon

22   demand." § 4.2.1.2. Intero's policies also "will include a requirement that any Intero representative or

23   agent making a call for telemarketing purposes on behalf of Intero must provide the called party with

24   the name of the individual caller, the name of Intero or the Intero representative or agent on whose

25   behalf the call is being made, and a telephone number or address at which Intero or the Intero

26   representative or agent may be contacted." § 4.2.1.1.

27        Further, Intero "will conduct annual training for all Intero representatives and agents regarding

28   (i) Intero's procedures for compliance with the national do-not-call rules and (ii) the existence of, and

1   how to use, the company do-not-call list." § 4.2.2. And Intero will "maintain and record a list of

2   telephone numbers that Intero and its representatives and agents may not contact because they are on

3   the [NDNCR]," "use a process to prevent telephone solicitations to any telephone number on the

4   [NDNCR]," "employ a version of the [NDNCR] obtained from the administrator of the registry no

5   more than 31 days prior to the date any call is made," and "maintain records documenting the process

6   it has undertaken to comply with" these requirements. § 4.2.3.

7       Finally, Intero will maintain a record of all consumer requests not to receive calls from Intero

8   and its representatives. § 4.2.4. Specifically, "[i]f Intero or any Intero representative or agent receives

9   a request not to receive calls from Intero or any Intero representative or agent, Intero will record the

10  request and place the requester's name, if provided, and telephone number on the company do-not-

11  call list at the time the request is made." § 4.2.4.1. Intero will "honor all do-not-call requests it receives

12  within no more than 30 days from the date of the request," § 4.2.4.2, and "maintain and honor all do-

13  not-call requests it receives for no less than 5 years from the time the request was made," § 4.2.4.3.

14      The Settlement's injunctive relief provisions will remain in effect for at least two years after

15  the date of Final Approval. § 4.3.

16      The estimated value of the injunctive relief of $22.5 million is based on the following

17  calculation: During the Class Period, Intero real estate agents are alleged to have made 171,584

18  unwanted calls. *See* § 4.1. As the Class Period is approximately 7.5 years long, Intero real estate agents

19  are alleged to have made approximately 22,800 unwanted calls per year. As the injunctive relief period

20  is two years, it can be estimated that approximately 22,800 unwanted calls are prevented for each of

21  those two years—totaling the prevention of over 45,000 unwanted telephone calls. As the TCPA

22  authorizes statutory damages of $500 per unwanted call, this equals $22,500,000 ($500 x 45,000).

23  **C.    Class Member Release**

24      In exchange for this meaningful monetary and injunctive relief, Settlement Class Members are

25  providing a narrowly tailored release of all claims that arise out of the calls placed through the Mojo

26  dialing platform, the calling records for which appear in one of 35 account files, identified in Appendix

27  A to the Court's Order Granting Class Certification. §§ 2.34-37, 10.1-7.

28

**D.    Notice and Administrative Costs, Attorneys' Fees and Costs, and Service Awards**

The Settlement requires Intero to pay all Notice and Administrative Costs, separate from any amounts paid to the Settlement Class. *See* § 5.2. Pursuant to an agreement between the Parties and KCC, Intero will not be required to pay any Notice and Administrative Costs associated with the email notices that were sent on June 24, 2022, and the postcard notices that were sent on June 28, 2022. Granade Decl. ¶ 13. KCC has agreed not to charge the Parties for those Notice and Administrative Costs. *Id.* Accordingly, the total Notice and Administrative Costs are estimated to be no less than $227,004.05. Admin. Decl. ¶ 19.

In accordance with the Settlement Agreement, Class Counsel have petitioned the Court for Attorneys' Fees and Costs in the amount of $2,775,000,[6] §§ 2.4, 15.1, and Service Awards in the amount of $5,000 for each Class Representative, § 15.4. *See* ECF No. 289.

**IV.    Class Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of Its Rights**

**A.    The Class Notice Documents Are Sufficient**

In the Ninth Circuit, notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the Notice contained all the critical information required to apprise Settlement Class Members of their rights under the Settlement and is written in simple, straightforward language in full compliance with Settlement Guidelines ¶ 3. The Email and Postcard Notice both detailed how Settlement Class Members could make a Claim, opt out of the Settlement, or object to the Settlement, and both included the Settlement Class Member's Unique Identification Number, the Toll-Free Settlement Hotline, and a link to the Settlement Website. §§ 6.1, 6.2.1 & Exs. 2-3. The Website Notice was the long form notice, § 2.28.3, and provided detailed information, including: (1) basic background

---

[6] Importantly, payment of the $350 Cash Awards to the Settlement Class Members is not contingent upon approval of the requested Attorneys' Fees and Costs, §§ 15.1, 15.5-6, and Intero retained the right to object to the petition for Attorneys' Fees and Costs or any part thereof, § 15.1.

information about the Action; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Settlement Class Members can obtain benefits; (4) an explanation of how Settlement Class Members can opt out of or object to the Settlement; (5) an explanation that any claims against Intero that could have been litigated in the Action will be released if the Settlement Class Member does not opt out; (6) information regarding Class Counsel's request for Attorneys' Fees and Costs and Service Awards; (7) instructions to access the case docket via PACER; (8) the Final Approval Hearing date (subject to change); (9) an explanation of eligibility for appearing at the Final Approval Hearing; and (10) Class Counsel's contact information. Stlmt Agmt Ex. 4.

This approach to notice is more than adequate. *See, e.g.*, *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-00964-GPC, 2014 WL 3519064, at *5 (S.D. Cal. July 14, 2014) (approving mailed notice where notice would include the settlement website with full settlement details and the claim administrator's toll free number). Accordingly, the notice program fully apprised Settlement Class Members of their rights under Rule 23(e) and should be finally approved.

### B.    The Notice Plan Was Successfully Implemented

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *Silber v. Mahon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Here, as discussed above, the Notice Plan commenced on May 6, 2022. The Notice Plan included various methods of attempting to contact the users of the 37,962 Settlement Class telephone numbers using the best available contact information, and it fully complied with the terms of the Settlement, the Settlement Guidelines, the Court's Preliminary Approval Order, and the requirements of Rule 23(e) and due process. *See generally* Admin. Decl. & Exs. A-F. The Ninth Circuit has approved

1    similar class notice. *See, e.g.*, *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)

2    (finding notice satisfied due process and Rule 23(e) where an initial email notice was supplemented by

3    a postcard notice to those whose emails bounced back).

4    **V.    The Settlement is Fair, Reasonable, and Adequate and Merits Final Approval**

5         The law favors the settlement of class actions. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926

6    F.3d 539, 556 (9th Cir. 2019) (en banc). "[T]he decision to approve or reject a settlement is committed

7    to the sound discretion of the trial judge because [she] is 'exposed to the litigants, and their strategies,

8    positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To grant final

9    approval of a proposed settlement, Federal Rule of Civil Procedure 23(e) requires the court to

10    determine whether the settlement is "fundamentally fair, adequate, and reasonable." *Id.* "It is the

11    settlement taken as a whole, rather than the individual component parts, that must be examined for

12    overall fairness." *Id.* When evaluating a proposed settlement, "the court's intrusion upon what is

13    otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited

14    to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud

15    or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

16    whole, is fair, reasonable and adequate to all concerned." *Officers for Just. v. Civ. Serv. Comm'n of City &*

17    *Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

18         In assessing whether a class action settlement is fair, reasonable, and adequate, Federal Civil

19    Procedure Rule 23(e)(2) requires courts to consider the following factors: "(A) the class representatives

20    and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's

21    length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and

22    delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

23    class, including the method of processing class-member claims; (iii) the terms of any proposed award

24    of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under

25    Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." FED. R.

26    CIV. P. 23(e)(2).

27         Before the 2018 revisions to Rule 23(e), the Ninth Circuit had developed its own list of factors

28    to be considered when approving a class action settlement, which include: "(1) the strength of the

1   plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk

2   of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the

3   extent of discovery completed and the stage of the proceedings; (6) the experience and views of

4   counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to

5   the proposed settlement." *Churchill Vill., L.L.C.*, 361 F.3d at 575.

6        As discussed below, the Settlement is procedurally and substantively fair, reasonable, and

7   adequate, passes muster under Rule 23(e) and the *Churchill* factors, and merits final approval.

8        **A.      Rule 23(e)(2)(A): Plaintiffs and Class Counsel have adequately represented the**

9               **Settlement Class**

10        Rule 23(e)(2)(A) requires the Court to determine whether "the class representatives and class

11   counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). The Court previously

12   found that Plaintiffs and Class Counsel adequately represented the Class in its order granting class

13   certification, ECF No. 126 at 17, and in granting preliminary approval, Preliminary Approval Order

14   ¶ 6. No contrary evidence has emerged, and Plaintiffs and Class Counsel have continued to represent

15   the interests of the class throughout the claims process. *Perks v. Activehours, Inc.*, No. 5:19-cv-05543-

16   BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021). Based on the excellent results they attained

17   for the Settlement Class Members and the high-quality work necessary to do so, Plaintiffs and Class

18   Counsel have demonstrated they adequately represent the Settlement Class.

19        **B.      Rule 23(e)(2)(B): The Settlement is the product of arm's-length negotiations**

20        Under Rule 23(e)(2)(B), the Court should consider whether "the [proposed settlement] was

21   negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). For the reasons below, this factor favors final

22   approval.

23        ***First***, Class Counsel negotiated the Settlement based on ample information. The Parties

24   conducted extensive discovery, and they have vigorously litigated this case to the eve of trial. *See*

25   Granade Decl. ¶ 5. Thus, Plaintiffs and Class Counsel were well apprised of the salient legal and factual

26   issues before reaching the decision to settle the Action. *Id.*; *see also Cabiness v. Educ. Fin. Sols., LLC*, No.

27   16-cv-01109-JST, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (holding that "the parties

28   conducted sufficient discovery to make an informed decision about the adequacy of the settlement"

1    because "[a]t the time of settlement, the parties had spent almost two years engaged in litigation,

2    including dispositive motions, discovery, and depositions").

3         *Second*, the close involvement of Chief Magistrate Judge Joseph C. Spero, a highly

4    experienced settlement conference judge, throughout the settlement negotiation process exemplifies

5    an arm's-length negotiation process. *Perks*, 2021 WL 1146038, at *5 ("The Settlement was also the

6    product of arm's-length negotiations through mediation sessions and follow-up communications

7    supervised by United States Magistrate Judge Laurel Beeler."); *see also Broomfield v. Craft Brew All., Inc.*,

8    No. 17-cv-01027-BLF, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (granting final approval

9    where settlement "was the product of arm's-length negotiations between experienced counsel with

10   the aid of a respected mediator"). Before agreeing to terms of the Settlement, the Parties engaged in

11   three intensive settlement conferences with Chief Magistrate Judge Spero. Granade Decl. ¶ 6.

12        *Third*, the Parties negotiated a cap on Attorneys' Fees and Costs and Service Awards only

13   after they had agreed on the relief for the Settlement Class, Granade Decl. ¶ 7, which favors final

14   approval, *JS Halberstam Irrevocable Grantor Tr. v. Davis*, No. 3:21-cv-00413-SI, 2022 WL 1449106, at *4

15   (D. Or. May 9, 2022) (finding no collusion and granting final approval where parties reached

16   agreement on fees "only after they had agreed to the substantive terms of the Settlement"); *Pinon v.

17   Daimler AG*, No. 1:18-cv-03984-MHC, 2021 WL 6285941, at *7 (N.D. Ga. Nov. 30, 2021) (finally

18   approving settlement where "the parties negotiated attorneys' fees for Class Counsel only after

19   reaching agreement on the terms of the relief to the Class"); *Walker v. Life Ins. Co.*, No. 10-cv-09198-

20   JVS-JDE, 2021 WL 6618814, at *10 (C.D. Cal. June 7, 2021) (holding that the fact that "[t]he

21   provisions in the Settlement Agreement regarding attorneys' fees and costs were negotiated following

22   negotiation of relief to the Class" weighed against a finding of collusion). And the Settlement is not

23   contingent on the award of Attorneys' Fees and Costs or the Service Awards, §§ 15.5-6, which is

24   indicative of a fair and arm's-length settlement process. Fed. R. Civ. P. 23 advisory committee's note

25   to 2018 amendment.

26        *Finally*, the indicia of collusion the Ninth Circuit identified in *In re Bluetooth Headset Products

27   Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ("*Bluetooth*"), are not present. To "smoke out potential

28   collusion," the Court "must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief

1    provided for the class.'" *Briseno v. Henderson*, 998 F.3d 1014, 1023-24 (9th Cir. 2021). To scrutinize

2    attorneys' fee arrangements, the Court should evaluate the "red flags" identified in *Bluetooth*, which

3    are: (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the

4    parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a

5    request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or

6    "reverter" clause that returns unawarded fees to the defendant, rather than the class. *Id.* at 1023. "The

7    presence of these three signs is not a death knell—but when they exist, 'they require[ ] the district

8    court to examine them, . . . develop the record to support its final approval decision,' and thereby

9    'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Cavazos v. Salas*

10   *Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 WL 2918361, at *4 (E.D. Cal. July 25, 2022). "Thus,

11   while this court has wide latitude to determine whether a settlement is substantively fair, it is held to

12   a higher procedural standard, and . . . [it] must show it has explored comprehensively all factors, and

13   must give a reasoned response to all non-frivolous objections." *Id.*

14          Here, Class Counsel will not receive a disproportionate distribution of the Settlement. The

15   Settlement made approximately $13,286,700 available for Settlement Class Members to claim

16   (approximately 37,962 Settlement Class Members, § 4.1, times $350 per Settlement Class Member, §

17   4.1.1), and as discussed above, the Settlement's injunctive relief is estimated to be worth $22.5 million.

18   *See infra* p. 7. In contrast, pursuant to the Settlement Agreement, Class Counsel sought fees of

19   $2,425,304.44, ECF No. 289 at 13 (Class Counsel sought fees of $2,425,304.44 and litigation costs of

20   $349,695.56, for a total of $2,775,000); *see also* § 15.1, and no Settlement Class Member has objected

21   to this amount, Admin. Decl. ¶ 18. The fee amount is not so disproportionately high that it suggests

22   collusion, as it represents about 18.3% of the amount Intero made available in cash payment to the

23   Settlement Class Members for the Settlement and around 6% of the combined estimated value of the

24   injunction and the cash available to the Settlement Class Members. Moreover, the amount of the

25   requested Attorneys' Fees and Costs does not raise concerns of collusion because the Court has

26   discretion to choose between the percentage-of-the-fund and the lodestar method, *Vizcaino v. Microsoft*

27   *Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002), and, as discussed in the fee petition, Class Counsel's fee

28   request is a negative multiplier of their total lodestar, *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723-

1    JSC, 2022 WL 425559, at *7 (N.D. Cal. Feb. 11, 2022) ("[G]iven that the fees requested are 36 percent

2    of Class Counsel's lodestar the Court finds that while the high percentage is a red flag, it does not raise

3    a concern regarding collusion."); ECF No. 289 at 13. Further weighing against a finding that the fee

4    amount is disproportionate is the fact that the settlement was negotiated with the assistance of an

5    experienced settlement conference judge, Chief Magistrate Judge Spero.

6           Second, there is no clear sailing agreement, as Intero reserved the right to object to the petition

7    for Attorneys' Fees or Costs or any part thereof. § 15.1. Thus, this factor favors approval. *Contreras*

8    *v. Armstrong Flooring, Inc.*, No. 20-cv-03087-PSG-SK, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021).

9           And third, the Settlement Agreement contains no "reverter" clause. Instead, any Attorneys'

10   Fees and Costs that are "requested but not approved by the Court will inure to the benefit of the

11   Settlement Class to be distributed pro rata to Claimants," and "such amounts will not be returned to

12   Intero." § 15.1. Further, if after distributing the Cash Awards any cash remains from uncashed checks,

13   the Parties will jointly select a *cy pres* recipient, and Plaintiffs will move the Court for the Court's

14   approval to have such residual funds paid to the *cy pres* recipient. § 4.1.3.3.

15          The absence of any indicia of collusion further establishes the Settlement is worthy of final

16   approval. *Contreras*, 2021 WL 4352299, at *8.

17   **C.      Rule 23(e)(2)(C): The relief for the Settlement Class is substantial**

18          **1.      Rule 23(e)(2)(C)(i): The costs, risks, and delay of trial and appeal**

19          Consistent with Rule 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the

20   plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of

21   maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026.

22          As the Ninth Circuit has stated, in assessing the probability and likelihood of success, "the

23   district court's determination is nothing more than 'an amalgam of delicate balancing, gross

24   approximations and rough justice.'" *Officers for Just.*, 688 F.2d at 625. There is no "particular formula"

25   to be applied, but the court may presume the parties' counsel and the mediator arrived at a reasonable

26   range of settlement by considering plaintiff's likelihood of recovery. *Rodriguez v. W. Publ'g Corp.*, 563

27   F.3d 948, 965 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance

28   and approval are preferable to lengthy and expensive litigation with uncertain results." *Izor v. Abacus*

1  *Data Sys., Inc.*, No. 19-cv-01057-HSG, 2020 WL 12597674, at *5 (N.D. Cal. Dec. 21, 2020). Moreover,

2  "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l*

3  *Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

4       **First**, the strengths and risks of Plaintiffs' case weigh in favor of final approval. While Plaintiffs

5  and Class Counsel are confident in the strength of the claims and their evidence, including expert

6  testimony, they recognize the risks and uncertainties posed by Intero's defenses and the potential

7  difficulties in proving liability, especially in complex actions such as this one. Granade Decl. ¶ 8. It is

8  possible Plaintiffs' claims could be dismissed or narrowed by motions *in limine*, at trial, or on appeal.

9  *Id.* The jury could decline to credit Plaintiffs' evidence, including the Mojo call records or their critical

10  expert testimony, or could decline to award at least $350 per class member on account of Intero's

11  TCPA violations. *Id.* A failure of proof on any element—many of which have been hotly contested

12  throughout the litigation—could doom the claims in whole or in part. *Id.*

13       These risks must be balanced against the extraordinary anticipated Settlement result: if the

14  Settlement is finally approved, Settlement Class Members who submit Approved Claims will each

15  receive $350 in immediate monetary relief. §§ 4.1.1, 7.3. Additionally, as a direct result of this litigation,

16  Intero has agreed to substantial injunctive relief. §§ 4.2-3. This factor therefore favors final approval.

17  *Odom v. ECA Mktg., Inc.*, No. 20-cv-00851-JGB-SHK, 2021 WL 7185059, at *5 (C.D. Cal. Dec. 22,

18  2021) (granting final approval and finding it "significant that the class members will receive 'immediate

19  recovery by way of the compromise [in contrast] to the mere possibility of relief in the future, after

20  protracted and expensive litigation'").

21       **Second**, the risk, expense, complexity, and likely duration of further litigation support final

22  approval as well. Although the parties have been litigating this case for almost four years, "that timeline

23  would be extended even further by litigating this case to a final resolution through a jury trial." *Larson*

24  *v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2020 WL 3402406, at *5 (E.D. Cal. June 19,

25  2020). "The parties' expenses would increase as litigation costs continue to accrue, and any recovery

26  of a monetary judgment, which is not guaranteed, would be prolonged." *Id.* Moreover, the limitations

27  on Intero's financial ability to pay a final judgment may have substantially narrowed the Settlement

28  Class Members' actual recovery after trial. *See* Granade Decl. ¶¶ 9-10; § 9.2.2. "By contrast, the

1   settlement in this action provides compensation that is available now, without the additional time and

2   risk of decisions that would likely be subject to lengthy appeals processes." *Larson*, 2020 WL 3402406,

3   at *5. "Thus, consideration of this factor also weighs in favor of granting final approval." *Id.*; *accord*

4   *Dennis v. Kellogg Co.*, No. 09-cv-1786-L-WMC, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013).

5       **2.      Rule 23(e)(2)(C)(ii): The proposed method of distributing relief and of**

6               **processing Claims is and will be effective**

7           Under Rule 23(e)(2)(C)(ii), the Court should consider "the effectiveness of [the] proposed

8   method of distributing relief to the class, including the method of processing class-member claims."

9   FED. R. CIV. P. 23(e)(2)(C)(ii). Here, Settlement Class Members who sought monetary compensation

10  under the Settlement were only required to submit a Claim Form with basic questions about contact

11  information and the residential telephone number(s) they used during the class period. Stlmt Agmt

12  Ex. 1, ECF No. 277-2. All payments to Settlement Class Members will be in the form of a check or

13  electronic payment, at the option of the Settlement Class Member. § 4.1.2. This procedure is Claimant-

14  friendly, efficient, cost-effective, proportional, and reasonable.

15      **3.      Rule 23(e)(2)(C)(iii): The terms and timing of the proposed award of**

16              **Attorneys' Fees and Costs are fair and reasonable**

17          Under Rule 23(e)(2)(C)(iii), the Court should consider "the terms of any proposed award of

18  attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). As detailed in their

19  Memorandum of Points and Authorities in Support of their Motion for Award of Attorneys' Fees and

20  Costs and Service Awards filed on June 1, 2022, Plaintiffs' request for attorneys' fees and costs is

21  reasonable under the lodestar method with a percentage of the fund crosscheck. ECF No. 289. Class

22  Counsel's lodestar has continued to increase since then.

23      **4.      Rule 23(e)(2)(C)(iv): There are no material supplemental agreements**

24          Rules 23(e)(2)(C)(iv) and 23(e)(3) require identification of all agreements. In an abundance of

25  caution and mindful of the Rules Advisory Committee's admonition that "[d]oubts should be resolved

26  in the favor of identification," Plaintiffs note that, as described above (*see supra* Part II), the Parties and

27  KCC conferred during the claims process on the acceptance of late claims and the payment of certain

28  administrative expenses, and were able to reach an agreement without Court intervention. Granade

1   Decl. ¶ 13. Other than the Settlement Agreement, there are no further agreements between Plaintiffs

2   and Intero. *Id.*

3       **D.**    **Rule 23(e)(2)(D): The Settlement treats Settlement Class Members equitably**

4       Under Rule 23(e)(2)(D), the Court should consider whether "the [settlement] proposal treats

5   class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Advisory Committee

6   states that matters courts consider under the provision include "whether the apportionment of relief

7   among class members takes appropriate account of differences among their claims, and whether the

8   scope of the release may affect class members in different ways that bear on the apportionment of

9   relief." FED. R. CIV. P. 23(e)(2)(D) advisory committee's note to 2018 amendment.

10       Here, each Settlement Class Member has been and will continue to be treated equitably. Each

11   Settlement Class Member who makes an Approved Claim will receive $350, § 4.1.1; *see also* § 7.3, and

12   the injunctive relief equally benefits each Settlement Class Member, *see* §§ 4.2-3. The Released Claims

13   are also identical across all Settlement Class Members. §§ 2.33-36, 10.1-7. Additionally, "[a]lthough the

14   class representatives seek service awards, the service awards . . . are reasonable and do not constitute

15   inequitable treatment of class members." *Broomfield*, 2020 WL 1972505, at *9; *see also* ECF No. 289 at

16   6-7.

17       For all these reasons, this factor supports final approval of the Settlement. *See In re Google LLC*

18   *St. View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18,

19   2020) (finding class members were treated equitably where all received identical relief).

20       **E.**    **Additional Ninth Circuit factors favor final approval**

21           **1.**    **The amount offered in Settlement**

22       The amount offered in settlement favors approval. "In assessing the consideration obtained

23   by the class members in a class action settlement, 'it is the complete package taken as a whole, rather

24   than the individual component parts, that must be examined for overall fairness.'" *Cabiness*, 2019 WL

25   1369929, at *5. It is well settled that "[t]he fact that a proposed settlement may only amount to a

26   fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

27   grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242

28   (9th Cir. 1998).

1    Despite the obstacles Plaintiffs faced, they and Class Counsel, with the assistance of Chief

2    Magistrate Judge Spero, negotiated a settlement that exceeds many similar TCPA class action

3    settlements. The $350 recovery for each Settlement Class Member who submits an Approved Claim,

4    with no cap on the amount Intero may have to pay, represents an excellent recovery for the Settlement

5    Class. *See* §§ 4.1, 4.1.1, 7.3. In comparison, in *Odom v. ECA Marketing, Inc.*, the court granted final

6    approval in a TCPA class action settlement where class members were expected to receive "over $100"

7    each. *Odom*, 2021 WL 7185059, at *6; *see also Larson*, 2020 WL 3402406, at *6 (granting final approval

8    in TCPA class action settlement where class members would receive $156.95 each); *Franklin v. Wells*

9    *Fargo Bank, N.A.*, No. 14-cv-02349-MMA-BGS, 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016)

10   (collecting TCPA class action settlements and finding a range of $20 to $100 value per class member

11   claim, and granting final approval to settlement where class members received approximately $71.16

12   each). "And while monetary relief was available to only those class members who submitted [valid]

13   claims, the use of a claims process is not inherently suspect." *Broomfield*, 2020 WL 1972505, at *9.

14   Furthermore, Intero has produced evidence reflecting an inability to pay. Granade Decl. ¶ 10;

15   §§ 4.1, 9.2.2. Nonetheless, Class Counsel achieved a substantial monetary recovery for the Settlement

16   Class. That Class Counsel did so despite limitations on Intero's ability to pay further supports the

17   fairness, reasonableness, and adequacy of the Settlement. *See Rinky Dink, Inc. v. World Bus. Lenders,*

18   *LLC*, No. 14-cv-00268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016) (nothing that the

19   fact that defendant did not have the ability to pay a larger settlement weighed in favor of finding the

20   relief to be adequate).

21   Finally, the significant injunctive relief that the Settlement Agreement supplies weighs in favor

22   of final approval. *Broomfield*, 2020 WL 1972505, at *9. Class Counsel estimate the agreed-upon

23   injunction may prevent unwanted calls valued at $22,500,000 in statutory damages that otherwise

24   would have occurred during the two-year injunctive relief period. *See supra* p. 7. Class Counsel base

25   this estimate on the following: During the Class Period, which is roughly 7.5 years long, § 2.12, the

26   Settlement Class received 171,584 unwanted calls, § 4.1, or roughly 22,800 unwanted calls per year.

27   Thus, during the two-year injunctive relief period, roughly 45,000 unwanted calls will be prevented.

28   *See* § 4.3. At the statutory rate of up to $500 per call, this represents up to $22,500,000 in statutory

1   damages. *See* 47 U.S.C. § 227(c)(5)(B).

2   **2.      The experience and views of Class Counsel**

3   Class Counsel are experienced in class action litigation, including TCPA cases, and they have

4   a nuanced understanding of the legal and factual issues involved in this case. They fully endorse the

5   Settlement as fair, adequate, and reasonable. Granade Decl. ¶ 11. This *Churchill* factor weighs in favor

6   of final approval. *See Wilson v. Gateway, Inc.*, No. 09-cv-07560-GW-VBK, 2014 WL 12704846, at *5

7   (C.D. Cal. Oct. 6, 2014) ("Class Counsel's experience and recommendation thus weigh in favor of

8   finding the settlement fair."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)

9   ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

10   **3.      Government participation**

11   Under CAFA, a defendant participating in a proposed class action settlement is required to

12   serve upon the appropriate state official of each State in which a class member resides and the

13   appropriate federal official a notice of the proposed settlement. 28 U.S.C. § 1715(b). As discussed

14   above, Intero has complied with CAFA's notice requirements by providing notice of the Settlement

15   to the United States' Attorney General and the Attorneys General of all 50 states and the District of

16   Columbia, on November 12, 2021. Decl. Stlmt Admin. re: CAFA Notice Procedures ¶¶ 2-3, ECF No.

17   287. No governmental participant has objected. Granade Decl. ¶ 12. As such, this factor supports

18   final approval. *Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) (where no

19   government official lodged any objection after receiving notice of proposed class action settlement,

20   "this factor favors the Settlement Agreement").

21   **4.      The Settlement enjoys overwhelming Settlement Class support**

22   A positive class response to a settlement, as evidenced by a small percentage of opt outs and

23   objections, supports final approval. *Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL

24   1531171, at *9 (N.D. Cal. Apr. 19, 2021) ("[T]he absence of a large number of objections to a proposed

25   class action settlement raises a strong presumption that the terms of a proposed class settlement action

26   are favorable to the class members.").

27   In this case, the opt-out and objection deadline was on July 6, 2022. Preliminary Approval

28   Order ¶ 32. No Settlement Class Members have objected and only three requests for exclusion have

1    been received, all of which were late. Admin. Decl. ¶¶ 17-18. This almost universally favorable

2    response supports final approval of the Settlement. *See, e.g., Izor*, 2020 WL 12597674, at *8 ("The

3    Court finds that the lack of opt-outs and the absence of any well-founded objections indicates

4    overwhelming support among the Class Members and weighs in favor of approval."); *Larson*, 2020

5    WL 3402406, at *7 ("The absence of objections to a proposed class action settlement in this case

6    strongly supports the conclusion that the settlement is fair, reasonable, and adequate."); *Cabiness*, 2019

7    WL 1369929, at *6 ("Here, the reaction of the class was almost universally favorable. No class member

8    has filed an objection to the settlement, and only one class member has chosen to opt out.").

9    **VI.    The Court Should Finally Certify the Settlement Class for Settlement Purposes**

10            In the Preliminary Approval Order, the Court conditionally certified the Settlement Class for

11    settlement purposes only. ECF No. 285. For all the reasons set forth in Plaintiff' preliminary approval

12    briefing, incorporated by reference herein, and the Preliminary Approval Order, the Court should

13    finally certify the Settlement Class, as it continues to meet all the requirements of Rule 23(a) and (b)(3).

14            Specifically, numerosity is satisfied because the Settlement Class consists of approximately

15    37,962 members who received calls placed through the Mojo dialing platform, the call records for

16    which appear in one of 35 account files, identified in Appendix A to the Court's order granting class

17    certification in the Litigation. §§ 3.1, 7.3, 9.2.1. Thus, joinder of all Settlement Class Members is

18    impracticable. *See* FED. R. CIV. P. 23(a)(1).

19            "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the

20    same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of

21    classwide resolution—which means that determination of its truth or falsity will resolve an issue that

22    is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

23    U.S. 338, 349-50 (2011). Here, commonality is readily satisfied. The remaining common questions of

24    law and fact are "whether Intero's California sales associates, or dialing services they engaged, called

25    numbers on the NDNCR" and "whether the telemarketing calls by Intero's California sales associates

26    were intended to encourage the purchase of Intero's services." ECF No. 126 at 14.

27            For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class

28    members, such that typicality is met. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

1    The typicality requirement ensures "the interest of the named representative aligns with the interests

2    of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Plaintiffs

3    are typical of the Settlement Class Members because they received calls from Intero to their residential

4    phone numbers after they placed their numbers on the NDNCR. *See* Mot. Appointment, ECF No.

5    239; First Am. Compl. ¶¶ 11-28, ECF No. 211; *see also* ECF No. 126 at 16.

6         Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement. *See Lerwill*

7    *v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). As the Court held in certifying a

8    litigation class, ECF No. 126 at 17, and in granting preliminary approval, Preliminary Approval Order

9    ¶ 6, Plaintiffs and Class Counsel have no antagonistic or conflicting interests with the Settlement Class

10   Members, and they have prosecuted the action vigorously.

11        Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are sufficiently

12   cohesive to warrant adjudication by representation." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134

13   (9th Cir. 2016). The Settlement Class readily satisfies predominance because the questions common

14   to all Settlement Class Members—including whether Intero's California sales associates violated the

15   TCPA by using the Mojo platform to call numbers on the NDNCR and whether these calls were

16   intended to encourage the purchase of Intero's services—substantially outweigh any possible issues

17   that are individual to each Settlement Class Member. *See Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF,

18   2018 WL 4691169, at *4 (N.D. Cal. Sept. 27, 2018) (finally approving settlement class); *see also* ECF

19   No. 126 at 20-25.

20        Given the predominance of common issues and the number of Settlement Class Members, a

21   class action is a superior mechanism for adjudicating the claims at issue, and the Settlement Class

22   meets Rule 23(b)(3)'s superiority requirement. *Gergetz*, 2018 WL 4691169, at *4.

23        For these reasons, the Court should finally certify the Settlement Class.

24

25

26

27

28

1

## VII.    Conclusion

2          The Settlement, which secures $350 in immediate monetary relief to every Settlement Class

3    Member who submits an Approved Claim, represents an excellent result for the Settlement Class,

4    particularly given the risks in the Action. Furthermore, Intero has agreed to broad injunctive relief to

5    prevent violation of the TCPA. The Settlement more than satisfies the fairness and reasonableness

6    standards of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).

7          For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court (1)

8    grant final approval to the Settlement; (2) finally certify the Settlement Class for settlement purposes;

9    (3) affirm the appointment of Plaintiffs Ruby Mitchell and Edward J. Kelly as the Class

10    Representatives; (4) affirm the appointment of Tycko & Zavareei LLP, Reese LLP, and Bailey &

11    Glasser LLP as Class Counsel; and (5) enter the Final Approval Order.

12                                        Respectfully submitted,

13    Date: August 19, 2022                    **REESE LLP**

14                                        By:  _/s/ George V. Granade_
15                                            George V. Granade (State Bar No. 316050)
                                            *ggranade@reesellp.com*
16                                            8484 Wilshire Boulevard, Suite 515
                                            Los Angeles, California 90211
17                                            Telephone: (310) 393-0070

18                                            **REESE LLP**
                                            Michael R. Reese (State Bar No. 206773)
19                                            *mreese@reesellp.com*
                                            100 West 93rd Street, 16th Floor
20                                            New York, New York 10025
                                            Telephone: (212) 643-0500

21                                            **REESE LLP**
                                            Charles D. Moore (*pro hac vice*)
22                                            *cmoore@reesellp.com*
                                            100 South 5th Street, Suite 1900
23                                            Minneapolis, Minnesota 55402
                                            Telephone: (212) 643-0500

24                                            **TYCKO & ZAVAREEI LLP**
25                                            Sabita J. Soneji (State Bar No. 224262)
                                            *ssoneji@tzlegal.com*
26                                            1970 Broadway, Suite 1070
                                            Oakland, California 94612
27                                            Telephone: (510) 254-6808

28

1

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (State Bar No. 181547)
*hzavareei@tzlegal.com*
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900

**BAILEY & GLASSER LLP**
Brian A. Glasser (*pro hac vice*)
*bglasser@baileyglasser.com*
John W. Barrett (*pro hac vice*)
*jbarrett@baileyglasser.com*
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

*Court Appointed Co-Lead Class Counsel*