UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RONALD CHINITZ, et al.,

        Plaintiffs,

v.

INTERO REAL ESTATE SERVICES,

        Defendant.

Case No. 18-cv-05623-BLF

**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**

[Re: ECF Nos. 294, 289]

Before the Court are (1) Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and (2) Plaintiffs' Motion for an Award of Attorneys' Fees and Costs and Service Awards ("Fees Motion"). *See* ECF Nos. 294, 289. Three opt-outs have been filed and there are no objectors. The Court held a hearing on the motions on October 20, 2022. For the reasons stated on the record and explained below, the Court GRANTS both motions.

### I. BACKGROUND

On September 13, 2018, former named plaintiff Ronald Chinitz initiated a class action lawsuit alleging Intero violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations, 47 C.F.R. § 64.1200, as well as California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210 ("UCL"). ECF No. 1. Chinitz alleged he received, inter alia, unwanted telephone solicitations on behalf of Intero to residential telephone lines he had previously registered on the National Do Not Call ("DNC") Registry and repeated unwanted telemarketing calls on his residential telephone lines after he had asked Intero and/or its agents not to call him back. The Court certified the National DNC Class and the Internal DNC Class (the latter as to injunctive relief only). ECF No. 126 at 27. Chinitz sought approval of a

1  class notice plan for the National DNC Class, ECF No. 131, which the Court approved in part,
2  ECF No. 151.
3        Plaintiffs moved for partial summary judgment and Intero moved for summary judgment.
4  ECF Nos. 157, 159.  In March 2021, Plaintiffs filed a motion to amend the scheduling order,
5  amend the Complaint, and substitute the class representative ("Motion to Substitute") because
6  Chinitz, unbeknownst to Class Counsel, had attempted to negotiate a settlement directly with
7  Intero.  *See* ECF No. 178-1.  On April 12, 2021, the Court granted in part and denied in part the
8  certified class's motion for partial summary judgment, holding Intero "vicariously liable for calls
9  made by its corporate sales associates and agents based on apparent authority."  ECF No. 191 at 8.
10  The Court denied Intero's summary judgment motion, except as to the UCL claim.  *Id.* at 13-16.
11  The Court granted the Motion to Substitute, ECF No. 210, and Plaintiffs filed a First Amended
12  Complaint adding allegations specific to Mitchell and Kelly, ECF No. 211.  Intero moved to
13  dismiss, ECF No. 217, and the Court dismissed the UCL claim, ECF No. 221.  Intero filed an
14  amended answer.  ECF No. 226.
15        Meanwhile, on April 1, 2021, the Court referred the parties to Chief United States
16  Magistrate Judge Joseph C. Spero for settlement discussions.  ECF No. 186.  On April 13, 2021,
17  based on Intero's professed limited ability to pay any judgment secured at trial, Chief Magistrate
18  Judge Spero ordered Intero to produce to Plaintiffs various financial documents.  *See* ECF Nos.
19  192-193.  In advance of the settlement conference, Intero provided to Class Counsel various
20  documents, and Class Counsel hired a forensic accounting expert to examine the financials.  ECF
21  Nos. 289-2 ("Soneji Decl.") ¶ 21, 289-3 ("Reese Decl.") ¶ 32.  The parties participated in Zoom
22  settlement conferences before Chief Magistrate Judge Spero in July and September 2021.  *See*
23  ECF Nos. 232, 261.  Chief Magistrate Judge Spero scheduled an additional 2.5-hour settlement
24  conference on September 22, 2021, at which the parties reached agreement in principle on the
25  terms of a settlement of the entire case.  *See* ECF Nos. 265, 267.  They then negotiated the precise
26  terms of the Settlement Agreement, which was executed on October 27, 2021.  Soneji Decl. ¶ 26;
27  Reese Decl. ¶¶ 33-35.
28        Plaintiffs filed their Motion for Preliminary Approval on October 29, 2021.  *See* ECF Nos.

277, 279.  The Parties did not discuss fees and expenses until after agreement on the terms of the settlement for the class.  Soneji Decl. ¶ 25; Reese Decl. ¶ 34.  This Court held a hearing on the Motion for Preliminary Approval on April 7, 2022 and entered an order granting preliminary approval the same day.  *See* ECF No. 285 ("Preliminary Approval Order").

The Settlement Class is defined as:

> All persons in the United States who: (a) received two or more calls on their residential telephone number; (b) that had a duration of more than zero seconds; (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker (as reflected in the records maintained by the California Department of Real Estate ('DRE')); (d) promoting the purchase of Intero's goods or services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the call records for which appear in one of 35 account files, identified in Appendix A to the Court's order granting class certification in the Litigation; (f) within a 12-month period; (g) whose telephone number(s) were on the NDNCR for at least 31 days prior to the calls; and (h) at any time since September 13, 2014.

Excluded from the Settlement Class are: "(a) Intero; (b) any entity in which Intero has a controlling interest; (c) Intero's officers, directors, legal representatives, successors, subsidiaries, and assigns; (d) any judicial officer presiding over this matter, as well as members of their immediate family and members of their judicial staff; and (e) any judge sitting in the presiding court system who may hear an appeal of any judgment entered."  Preliminary Approval Order ¶ 5; *see also* ECF No. 277-2 Ex. A ("Settlement") §§ 2.43, 2.44, 3.1, 14.2.  Any class member who submits a timely, valid Approved Claim will receive a payment of $350.  Settlement §§ 4.1.1, 7.3.  The Settlement Agreement also provides injunctive relief, including development and implementation of procedures to ensure compliance with the TCPA's do-not-call provisions and training for Intero representatives.  Settlement §§ 4.2-4.3.

After preliminary approval, the parties provided Notice of the Settlement in accordance with the Settlement Agreement and Preliminary Approval Order.  *See* ECF No. 294-3 ("Admin. Decl.") ¶¶ 2-14.  The Settlement Class is comprised of all individuals who used a total of 37,962 unique telephone numbers over an approximately 7.5-year period.  Settlement § 3.1.  Thus, the precise number of individuals in the Settlement Class is unknown. The contact information for Settlement Class Members was generated using the list of 37,962 telephone numbers, which Intero

3

provided to the Settlement Administrator ("KCC"). Admin. Decl. ¶ 2. Because the list included multiple "hits" for each phone number where applicable, the contact list for notice purposes was much larger. *See id.* To disseminate the notice, KCC carried out the terms of the Settlement Agreement. *See id.* ¶¶ 2-13.

The deadline to submit claims, objections, and requests for exclusion was July 6, 2022. Admin. Decl. ¶¶ 14, 17, 18. As of July 26, 2022, KCC had received 11,119 Claim Forms. *Id.* ¶ 14. Upon notice from KCC that it had deemed 1,922 of these claims late—around 17% of the total claims received—the Parties met and conferred regarding acceptance of claims received by KCC after the deadline. ECF No. 294-2 ("Granade Decl.") ¶ 13. The Parties ultimately agreed that all claims that had been signed by the claims deadline would be deemed valid, so long as they had been postmarked by July 11, 2022, or, if not postmarked, received by KCC by July 14, 2022. *Id.* Under this agreement, 1,275 additional claims were deemed timely. *See* ECF No. 301-1 ("Supp. Admin. Decl.") ¶ 11. As to requests for exclusion and objections, KCC received three requests for exclusion and no objections. Admin. Decl. ¶¶ 17-18.

KCC requested supplemental information from claimants where multiple claimants submitted claims on the same telephone number, as contemplated by the Settlement Agreement. Admin. Decl. ¶ 16; Settlement Agreement § 7.3. Plaintiffs moved the Court for supplemental notice to these claimants, ECF No. 298, which Defendant opposed, ECF No. 299, and the Court granted, ECF No. 303.

Plaintiffs moved for final approval on August 19, 2022. *See* Final Approval Motion. On October 19, 2022, Plaintiffs filed a supplemental declaration from the Settlement Administrator. *See* Supp. Admin. Decl.

Plaintiffs seeks (1) final approval of the proposed class action settlement; (2) approval of Class Counsel's application for $2,775,000 in attorneys' fees and costs; and (3) approval of Named Plaintiffs' request for service awards of $5,000 each. *See* Final Approval Motion at 2; Fees Motion at 1. The Court heard Plaintiffs' motions on October 20, 2022.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Rule 23 Certification Requirements

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

#### 1. The Class Meets the Requirements for Certification Under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule— those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court previously granted class certification in this case for a class that is quite similar to the Settlement Class. *See* ECF No. 126. Since the Court granted class certification, the parties stipulated to amend the class definition. *See* ECF No. 284. The Court certified the following National DNC Class: "All persons in the United States who: (a) received more than one call made on behalf of Intero by, or on behalf of, one of Intero's California sales associates; (b) promoting

5

1   Intero's goods or services; (c) that was placed through the dialing platform provided by Mojo

2   Dialing Solutions, Inc., the calling records for which appear in one of 35 account files, identified

3   in Appendix A; (d) in a 12-month period; (e) on their non-business telephone lines; (f) whose

4   telephone number(s) were on the NDNCR for at least 31 days; (g) at any time since September 13,

5   2014." ECF No. 126. The parties stipulated to amend the class definition as follows:

> All persons in the United States who: (a) received two or more calls on their residential telephone number (b) that had a duration of more than zero seconds; (c) initiated by, or on behalf of, a real estate salesperson at a time when Intero or Intero Referral Services was the salesperson's responsible broker (as reflected in the records maintained by the California Department of Real Estate ("DRE")); (d) promoting the purchase of Intero's goods or services; (e) placed through the dialing platform provided by Mojo Dialing Solutions, LLC, the call records for which appear in one of 35 account files, identified in Appendix A to the Court's order granting class certification in the Litigation; (f) within a 12-month period; (g) whose telephone number(s) were on the NDNCR for at least 31 days prior to the calls; and (h) at any time since September 13, 2014.

13  ECF No. 284. The amendment does not change the Court's analysis in the class certification

14  order. Further, the Court is not aware of any facts that undermine the Court's conclusion in

15  certifying the class, either in the class certification order or the preliminary approval order. But

16  the Court reviews briefly each of the Rule 23 requirements again.

17      Under Rule 23(a), the Court concludes that joinder of thousands class members would be

18  impracticable under the circumstances of this case. *See Arroyo v. Int'l Paper Co.*, No. 17-cv-

19  06211-BLF, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019) ("Numerosity is presumed where

20  the plaintiff class contains forty or more members."). The commonality requirement is met

21  because the key issue in the case is the same for all class members—whether Intero made phone

22  calls in violation of the TCPA. Named Plaintiffs' claims are typical of those of the Settlement

23  Class, as they suffered the same injury from the same course of conduct. *See Hanlon v. Chrysler

24  Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires that the claims of the class

25  representative are "reasonably co-extensive with those of absent class members"). Finally, to

26  determine Plaintiffs' adequacy, the Court must answer two questions: "(1) do the named plaintiffs

27  and their counsel have any conflicts of interest with other class members and (2) will the named

28  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco*

6

1   *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).  There is

2   no evidence of any conflict of interest that would preclude Mitchell and Kelly from acting as class

3   representatives or their counsel from acting as Class Counsel, and the Court is not concerned that

4   Class Counsel has not vigorously litigated this action on behalf of the class.

5         Now turning to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes

6   are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

7   The common question in this case—whether Defendant violated the TCPA—predominates over

8   individual questions among the class members.  Further, the damages are the same for each class

9   member.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  And a class action is the

10  superior method of adjudication given the small individual recovery and its manageability.  *See*

11  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the

12  putative class members' potential individual monetary recovery, class certification may be the

13  only feasible means for them to adjudicate their claims.").

14        Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that

15  certification of the class for settlement purposes is appropriate.

### 2. The Settlement is Fundamentally Fair, Adequate, and Reasonable

17        Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

18  certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's

19  approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class

20  settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  Moreover, "[a] district court's approval

21  of a class-action settlement must be accompanied by a finding that the settlement is 'fair,

22  reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting

23  Fed. R. Civ. P. 23(e)).  "[A] district court's only role in reviewing the substance of that settlement

24  is to ensure that it is fair, adequate, and free from collusion."  *Id.* at 819 (internal quotation marks

25  and citation omitted).  In making that determination, the district court is guided by an eight-factor

26  test articulated by the Ninth Circuit in *Hanlon*.  Those factors include:

27      the strength of the plaintiffs' case; the risk, expense, complexity, and likely
        duration of further litigation; the risk of maintaining class action status throughout
28      the trial; the amount offered in settlement; the extent of discovery completed and

the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors).

### a. Notice Was Adequate

The Court previously approved Plaintiffs' plan for providing notice to the class when it granted preliminary approval of the class action settlement. Preliminary Approval Order ¶ 8. Prior to granting preliminary approval, the Court carefully examined the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and the constitutional requirements of Due Process. *See id.* Plaintiffs now provide two declarations from a Senior Project Manager at the Settlement Administrator explaining the implementation of the plan. *See* Admin. Decl.; Supp. Admin. Decl. Based on those declarations, the Settlement Administrator complied with the notice plan, and it ultimately received 11,713 claims based on the 37,962 Settlement Class telephone numbers. *See id.* ¶ 2. Based on the implementation details of the notice plan, the Court is satisfied that the Settlement Class has received the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### b. *Hanlon* Factors

The Court now turns to the *Hanlon* factors. Under the first and second factors, the court considers (1) the strength of Plaintiffs' case, weighing the likelihood of success on the merits and the range of possible recovery; and (2) the risk, expense, complexity, and duration of further litigation. *See Hanlon*, 150 F.3d at 1026. Plaintiffs recognize the risks in going to trial, such as the possibility that a jury could decline to credit Plaintiffs' evidence and expert. Further, a jury may choose to award less than $350 in damages per class member, and Intero's ability to pay could limit any final judgment. The complexities in this case are evident, as it has already been in litigation for almost four years. Accordingly, Plaintiffs' success was not assured, and significant risk, expense, complexity, and time likely lay ahead if the parties did not settle. Therefore, the Court finds that the first and second *Hanlon* factors favor settlement.

Under the third factor—the risk of maintaining class action status throughout the trial—since the Court granted class certification, there was little risk related to maintaining class action

status throughout the trial. *See Hanlon*, 150 F.3d at 1026.

Fourth, the settlement recovery for the class members is substantial given the circumstances of the case. Each class member who submits a claim will receive a payment of $350. *See* Settlement Agreement §§ 4.1.1, 7.3. The Court finds this to be a significant payout, particularly considering the scale of the alleged harm.

Under the fifth *Hanlon* factor, courts consider "the extent of discovery completed and the stage of the proceedings." *Hanlon*, 150 F.3d at 1026. In this case, settlement was reached after years of litigation and substantial discovery, including depositions of Rule 30(b)(6) witnesses, experts, and class members; production of records; and use of experts. Granade Decl. ¶ 5; Soneji Decl. ¶ 6-10, 15, 29; Reese Decl. 25-27. The Court is satisfied that the parties were sufficiently familiar with the issues in this case to have informed opinions regarding its strengths and weaknesses under factor five.

The sixth *Hanlon* factor—the experience and views of counsel—favors approving the settlement. *See Hanlon*, 150 F.3d at 1026. Class Counsel's conclusion is that the Settlement is fair and reasonable and in the best interest of the settlement class. Granade Decl. ¶ 11. Further, Class Counsel has demonstrated their thorough understanding of the strengths and weaknesses of this case and their extensive experience litigating prior employment class actions cases. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and the type of litigation in general).

The seventh *Hanlon* factor is neutral, since there was no government participant in the case. *See Hanlon*, 150 F.3d at 1026.

Under the eighth *Hanlon* factor, the Court considers the "reaction of the class members to the proposed settlement." *See Hanlon*, 150 F.3d at 1026. While notice was given to thousands of class members, no objections have been filed and there have only been three opt-outs from the class. *See* Admin. Decl. ¶¶ 17-18. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 (N.D. Cal. 2017) (quoting *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-

WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014)).

Based on those factors, and after considering the record as a whole guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the settlement is not the result of collusion, and that the settlement is fair, adequate, and reasonable.

\* \* \*

Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED.

### III.    MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

Class Counsel seeks an award of $2,775,000 in attorneys' fees and costs. *See* Fees Motion at 1. Further, Named Plaintiffs seek service awards of $5,000 each. *See id.*

#### A.    Attorney's Fees and Costs

##### 1.    Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "In this circuit, there are two primary methods to calculate attorneys fees: the lodestar method and the percentage-of-recovery method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). "For claims-made settlements," as here, "the lodestar method is appropriate." *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568, at *11 (N.D. Cal. July 23, 2021).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42 (quoting *Hanlon*, 150 F.3d at 1029).

In claims-made settlements, a cross-check on the reasonableness of the attorneys' fee

10

award can be done using the percentage-of-recovery method. *See Online DVD-Rental*, 779 F.3d at 949 ("One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method."). Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 F.3d at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). If there is no common fund, the Court uses a constructive fund. The Court "may include settlement administration costs, litigation expenses, and the allotment for attorneys' fees in its valuation of a constructive fund for its percentage of recovery cross-check analysis because this is the 'total amount defendants were willing to spend to settle the case.'" *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *16 (N.D. Cal. Feb. 5, 2020) (quoting *In re Bluetooth*, 654 F.3d at 945). Further, "Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed." *Patel v. Trans Union, LLC*, No. 14-CV-00522-LB, 2018 WL 1258194, at *6 (N.D. Cal. Mar. 11, 2018). If the settlement includes injunctive relief, there is a danger that the parties will overestimate its value to inflate fees, so "courts must be particularly careful when ascribing value to injunctive relief for purposes of determining attorneys' fees, and avoid doing so altogether if the value of the injunctive relief is not easily measurable." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations omitted).

### 2. Discussion

Class Counsel seeks an award of attorneys' fees and costs totaling $2,775,000. Fee Motion at 7-15. The costs total $349,695.56 and the fees total $2,425,304.44. *Id.* at 13. Based on 5,224.8 hours of work, there is a lodestar of $3,946,054.90, producing a negative multiplier of 0.62. *Id.*

11

1        The Court first approves the $349,695.56 in costs. The Court has reviewed Class
2   Counsel's itemized lists of costs and finds that all of the expenses were necessary to the
3   prosecution of this litigation. *See* Soneji Decl. ¶ 35, Ex. B; Reese Decl. ¶ 47, Ex. 2.
4        The Court also finds the amount of attorneys' fees to be reasonable and in line with rates
5   approved in this District for attorneys of similar skill and experience. A percentage of the
6   common fund cross-check supports the reasonableness of the fees requested. Class Counsel states
7   that the total lodestar from inception of this case through settlement is $3,946,054.90. *See* Fees
8   Motion at 7. The hourly rates charged by Class Counsel have been approved by multiple courts in
9   California as well as New York and Washington, D.C., which is where Class Counsel are located.
10  *See* Fees Motion at 7-10; Soneji Decl. ¶¶ 34-40; Reese Decl. ¶¶ 43-46. Further, the Court finds
11  the number of hours expended to be reasonable. *See* Fees Motion at 10-13, Soneji Decl. ¶¶ 34, 39,
12  Exs. A, C; Reese Decl. ¶ 42, Ex. 1. Using $3,946,054.90 as the lodestar results in a negative
13  multiplier of approximately 0.62 after subtracting costs and expenses from the total amount of fees
14  requested. *See* Fees Motion at 13-14. "A negative multiplier 'strongly suggests the
15  reasonablenesss of [a] negotiated fee.'" *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, No.
16  19-cv-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sept. 10, 2021) (quoting *Rosado v. Ebay*
17  *Inc.*, No. 12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016)). The Court
18  considers this to be a reasonable multiplier, particularly in light of the significant effort Class
19  Counsel expended litigating this case.
20       The percentage-of-recovery cross-check also supports the reasonableness of the fee award.
21  *See* Fees Motion at 15. As a preliminary matter, the Court disagrees with the value of the
22  constructive fund calculated by Plaintiffs. *See id.* The Court calculates a constructive fund value
23  of approximately $11.4 million based on the following: (1) $170,000 in administration costs, *see*
24  ECF No. 277-3 ¶ 21; (2) $2,775,000 in attorneys' fees and costs; (3) $3.5 million in cash value,
25  calculated based on the $350 cash payment being paid to those who submitted claims, *see* ECF
26  Supp. Admin. Decl. ¶ 2 (stating 11,713 claims received); and (4) $5 million as the value of
27  injunctive relief, based on an estimated 45,000 fewer calls, each valued at one-third of the $350
28  claim rate, *see* Final Approval Motion at 7 (estimating 45,000 fewer calls due to injunctive relief).

12

1   Using this total amount, the attorneys' fees award (including costs) is 21% of the constructive

2   fund, which is below the 25% "benchmark" in this circuit.  *Bluetooth*, 654 F.3d at 942.

3   Accordingly, the requested fee amount is reasonable.

### B. Service Award

Named Plaintiffs Ruby Mitchell and Edward J. Kelly each seek a service award of $5,000. *See* Fee Motion at 6-7. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  The declaration of Plaintiffs' attorney describes the work they did for this case, including meeting with the attorneys, searching for and providing documents, assisting with the drafting of pleadings and documents for the case, reviewing pleadings and documents for the case, preparing for depositions, sitting for depositions, joining a Settlement Conference with Chief Magistrate Judge Spero, and planning the logistics for their anticipated trial appearances.  Soneji Decl. ¶¶ 27-33.  The work Plaintiffs describe in connection with this case is typical for a named plaintiff.

The Court typically awards an enhancement award around $5,000.  *See Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021) ("Service awards as high as $5,000 are presumptively reasonable in this judicial district.").  This award is also consistent with other service awards for TCPA actions in California.  *See Cabiness v. Ed. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 WL 1369929, at *8 (N.D. Cal. Mar. 26, 2019) (approving $5,000 service award for named plaintiff in TCPA case); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014) (approving combined $10,000 service award in TCPA case with two named plaintiffs).  Accordingly, the Court approves a $5,000 service award for both Mitchell and Kelly.

IV.  **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiffs' Motion for Final Approval of Class Action Settlement is GRANTED;

(2) $2,775,000 in attorneys' fees and costs for Class Counsel is APPROVED;

(3) A service award for Mitchell and Kelly is APPROVED in the amount of $5,000 each; and

(4) The timely requests for exclusion by Joseph Ponte, Hosea Colvin, and Ada Colvin are APPROVED.

**IT IS SO ORDERED.**

Dated:  October 28, 2022

_____
BETH LABSON FREEMAN
United States District Judge